1

2

3

4

5

The Honorable Tiffany M. Cartwright

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

STATE OF ARIZONA, et al.,

              PLAINTIFFS,

    v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; and LEE ZELDIN, in his
official capacity as Administrator of the
U.S. Environmental Protection Agency,

              DEFENDANTS.

NO. 2:25-CV-02015-TMC

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:
DECEMBER 12, 2025

ORAL ARGUMENT
REQUESTED

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

1

## TABLE OF CONTENTS

2

I.      INTRODUCTION ................................................................................................ 1

3

II.     BACKGROUND ................................................................................................. 3

4

    A.  Congress Authorizes and Appropriates Funds for Solar for All ................................ 3

5

    B.  Plaintiffs Design and Implement Their SFA Programs ............................ 3

6

    C.  President Trump Directs Elimination of GGRF, Including SFA .............................. 5

7

    D.  Congress Enacts H.R. 1 .............................................................. 6

8

    E.  EPA Terminates the SFA Program ......................................................... 7

9

    F.  Defendants Issue and Implement the Deobligation Directive .................................. 8

10

    G.  Defendants Demand Plaintiffs Close Out their Grants ........................... 9

11

III.    LEGAL STANDARD ........................................................................................ 10

12

IV.     ARGUMENT .................................................................................................... 11

13

    A.  This Court Has Jurisdiction ................................................................. 11

14

    B.  Plaintiffs Are Likely to Succeed on the Merits of Their Claims ............................ 12

15

        1.  The Deobligation Directive Is Final Agency Action ..................................... 13

16

        2.  The Deobligation Directive Is Contrary to H.R. 1's Plain Language, and Defendants Lacked Authority to Adopt It ........................................................ 13

17

18

            a.  H.R. 1 rescinds only unobligated funds .................................................. 14

19

            b.  H.R. 1's repeal of CAA Section 134 is prospective only and neither requires nor authorizes Defendants' rescission of obligated funds .......... 15

20

        3.  Defendants' Deobligation Directive Is Arbitrary and Capricious .................. 17

21

            a.  Defendants' Deobligation Directive Lacked Reasoned Explanation ....... 18

22

            b.  Defendants Failed to Consider Plaintiffs' Reliance Interests in Implementing the Deobligation Directive ................................. 19

23

24

        4.  The Deobligation Directive Is Unconstitutional ............................................. 20

25

    C.  Plaintiffs Face Irreparable Harm Absent a Preliminary Injunction ........................ 21

26

        1.  Defendants' Actions Present a Substantial Risk of Deobligation and/or Reprogramming ................................................................... 22

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

2.    Plaintiffs Will Suffer Irreparable Harm If EPA Forces Closeout or Takes Enforcement Action for Failure to Close Out ................................................. 24

D.    The Balance of Equities and Public Interest Factors Strongly Favor Entry of a Preliminary Injunction ............................................................................................. 25

V.    CONCLUSION ............................................................................................................. 26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

# I.    INTRODUCTION

In 2022, the United States made historic commitments to reduce greenhouse gas emissions and mitigate climate change by creating the Greenhouse Gas Reduction Fund (GGRF). GGRF was a first-of-its-kind, nationwide program designed to address climate change, stimulate the economy, and promote energy independence and grid reliability while also lowering energy costs. GGRF included funding for Solar for All (SFA), a grant program supporting solar energy projects in low-income and disadvantaged communities. EPA worked with grant recipients, including Plaintiffs, to develop individual programming and work plans. By early 2025, Plaintiffs made substantial investments in planning and executing grant-funded projects. With this cooperation and investment, the SFA Program was poised to benefit over 900,000 households by 2026.

But as soon as President Trump began his second term, he began eviscerating these commitments. Within hours of being sworn in, President Trump directed agencies to undo climate-related programs. The Office of Management and Budget froze hundreds of millions of dollars of federal funds awarded to states for programs like SFA, but a court quickly ordered that OMB unfreeze the funds. Still, the federal government continued its efforts to end clean energy programs. Once EPA Administrator Zeldin was confirmed, he baselessly attacked GGRF programs as wasteful, fraudulent, and criminal.

This coordinated smear campaign culminated in the events leading to this litigation. In early July, President Trump signed H.R. 1 (also known as the "One Big Beautiful Bill Act"), which repealed the provisions that created GGRF, including SFA, and rescinded unobligated funds appropriated for GGRF. H.R. 1 did not, however, rescind *obligated* funds—i.e., funds that had already been awarded to grant recipients. Aside from designated administrative costs, all SFA funds were already obligated when H.R. 1 passed.

Nevertheless, on August 7, 2025, Defendants announced—via social media—that the SFA Program was being terminated. Later that day, each of the Plaintiffs (or "States")

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

received boilerplate notices from EPA terminating their SFA grants and stating that H.R. 1 "effectively and completely terminated the statutory authority and all appropriations related to Solar for All." Within a week, and without any explanation, Defendants moved most Plaintiffs' accounts from "active" to "liquidated" status and reduced all Plaintiffs' account balances to a mere fraction of the original award—before any administrative disputes could be submitted, let alone resolved in good faith. Some Plaintiffs lost over 90% of their funds, and, collectively, Plaintiffs lost more than $2.5 billion. Plaintiffs filed administrative disputes with EPA challenging the termination of their SFA awards. But EPA demanded that Plaintiffs "close out" their SFA grants within 120 days of the alleged termination. Plaintiffs then brought two lawsuits: one in the Court of Federal Claims to enforce contractual obligations under their individual SFA awards, and this action challenging Defendants' termination of the SFA Program and related internal guidance as a violation of the Administrative Procedure Act and Constitution. In late October, shortly after issuing their closeout demand, Defendants declared that Plaintiffs' timely administrative disputes were "moot," citing only an undefined "current lawsuit." At every juncture, Defendants obstructed Plaintiffs' attempts to obtain relief and clarity through established, lawful channels.

Here, Plaintiffs challenge two agency actions arising from Defendants' incorrect interpretation of H.R. 1: Defendants' illegal termination of the SFA Program; and Defendants' unauthorized attempts to deobligate funds awarded under the SFA Program. Compl. ¶¶ 11-13, ECF No. 1 ("Compl."). Plaintiffs will ultimately seek to vacate these unlawful actions and compel reinstatement of the SFA Program. But an order requiring reinstatement of the Program is only meaningful if the amounts that Congress appropriated for SFA retain their character and are available for SFA once again, and if Plaintiffs' SFA grants are not prematurely closed out. So, for now, Plaintiffs seek a preliminary injunction freezing SFA funds where they are to ensure they are not reprogrammed, and enjoining closeout of Plaintiffs' grants.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Ave STE 2000
Seattle, WA 98104
(206) 464-7744

## II.    BACKGROUND

### A.    Congress Authorizes and Appropriates Funds for Solar for All

In 2022, then-President Biden signed the Inflation Reduction Act (IRA). Pub. L. No. 117-169 (2022). The IRA created GGRF, instructed EPA to develop three competitive grant programs, and appropriated $27 billion for that purpose. Pub. L. No. 117-169, Sec. 60103, 136 Stat. 2065-66 (formerly codified at 42 U.S.C. §7434(a), hereinafter CAA Section 134). Of that $27 billion, Congress appropriated $26.97 billion "to make grants," including $7 billion to "enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies, including distributed technologies on residential rooftops." CAA Section 134(a)(1). Congress directed the funding "remain available" for obligation "until September 30, 2024." *Id.* Congress also appropriated $30 million for "the administrative costs necessary to carry out activities under this section" to remain available until September 30, 2031. CAA Section 134(a)(4).

Pursuant to that authorization, EPA established the SFA Program. Compl. ¶¶ 48-50. By April 2024, EPA selected sixty applicants, including Plaintiffs, to receive awards.[1] These awards would serve over 900,000 households in low-income and disadvantaged communities and create an estimated 200,000 well-paying clean energy jobs.[2]

### B.    Plaintiffs Design and Implement Their SFA Programs

Throughout 2024, Plaintiffs worked with EPA to negotiate their SFA budgets and work plans. This collaboration was an explicit part of the SFA Program.[3] Each State's work plan outlined the State's proposal for planning and implementing its SFA programs. *See, e.g.*, Nguyen-WA Decl. ¶¶ 15-16; Goodman-KY Decl. ¶¶ 13-15; Carrillo-CA Decl. ¶¶ 16-17. By

---

[1] Press Release, U.S. Env't Prot. Agency, *Biden-Harris Administration Announces $7 Billion Solar for All Grants to Deliver Residential Solar, Saving Low-Income Americans $350 Million Annually and Advancing Environmental Justice Across America* (Apr. 22, 2024), https://www.epa.gov/newsreleases/biden-harris-administration-announces-7-billion-solar-all-grants-deliver-residential.

[2] *Id.*

[3] *Id.*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  August 2024, EPA had approved Plaintiffs' budgets and plans, and each Plaintiff had signed a

2  grant agreement with EPA. *See, e.g.*, Dykes-CT Decl. ¶¶ 11-12; Magruder-MD Decl. ¶¶ 13-14;

3  Benner-OR Decl. ¶¶ 11-12. By executing the grant agreements, EPA obligated the full amount

4  of each Plaintiff's SFA award. *See, e.g.*, Nguyen-WA Decl. ¶ 13, Ex. 1; Shirley-PA Decl. ¶ 15;

5  *see also Maine Cmty. Health Options v. United States*, 590 U.S. 296, 307-08 (2020) (defining

6  "obligation" as a "definite commitment that creates a legal liability of the government for the

7  payment of goods and services ordered or received").

8        Many Plaintiffs took time to further develop their SFA offerings in collaboration with

9  EPA. For example, Washington hired and trained staff to administer its SFA programming;

10  engaged with stakeholders to design workforce development efforts; coordinated with state

11  electric utilities; entered into contracts to administer a single-family home solar energy

12  installation program; and finalized guidelines for loans and other financial assistance. Nguyen-

13  WA Decl. ¶¶ 19-21. Arizona launched the Solar for All Arizonans Advisory Council to

14  provide input on SFA programming; developed materials for the public; and prepared requests

15  for grant applications and procurement processes. Mahoney-AZ Decl. ¶¶ 15-17. Several

16  Plaintiffs also used the planning period to collaborate with tribal governments to ensure that

17  SFA programming was accessible to tribes. *See, e.g.*, Mahoney-AZ Decl.  ¶ 16; Tesfai-CA

18  Decl. ¶ 23; Gomez-CO Decl. ¶ 13; Wang-MI Decl. ¶ 19; Pawlisch-MN Decl. ¶¶ 14-15; Stair-

19  NM Decl. ¶ 14, 17; Rikkers-WI Decl. ¶ 17; Nguyen-WA Decl. ¶¶ 17, 20. Many Plaintiffs took

20  similar steps to develop their SFA programming, with plans to launch in late 2025 or early

21  2026. Carrillo-CA Decl. ¶¶ 18-21; Gomez-CO Decl. ¶¶ 18-21; Dykes-CT Decl. ¶¶ 15-20;

22  Goodman-KY Decl. ¶¶ 13-18; Magruder-MD Decl. ¶¶ 15-18; Burgess-ME Decl. ¶¶ 17-21;

23  Pawlisch-MN Decl. ¶¶ 14-16; Oomen-NJ Decl. ¶¶ 15-18; Woosley-NC Decl. ¶¶ 21-26;

24  Poisson-NY Decl. ¶¶ 15-18; Benner-OR Decl. ¶¶ 14-18; Shirley-PA Decl. ¶¶ 19-23; Bailey-

25  VT Decl. ¶¶ 14-18; Rikkers-WI Decl. ¶¶ 16-19.

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Other Plaintiffs moved more quickly to begin offering SFA programming. Burger-DC

2  Decl. ¶¶ 17-20; Mahony-MA Decl. ¶¶ 16-19; Wang-MI Decl. ¶¶ 16-20; Lau-HI Decl. ¶¶ 15-

3  18; Meister-IL Decl. ¶ 18; Stair-NM Decl. ¶¶ 14-18; Kearns-RI Decl. ¶¶ 15-18. For example,

4  the District of Columbia began implementing its SFA program in December 2024. In

5  coordination with EPA, the District executed sub-awards with coalition partners; advanced

6  program administration and compliance systems; launched community outreach initiatives; and

7  began financing solar projects totaling tens of millions of dollars, with plans to take advantage

8  of existing solar tax credits set to expire in December 2025. Burger-DC Decl. ¶¶ 17-19.

9  **C.    President Trump Directs Elimination of GGRF, Including SFA**

10    Hours after being sworn into office, President Trump issued an executive order entitled

11  *Unleashing American Energy*, directing agencies to undo so-called "Green New Deal"

12  programs created by the IRA. Exec. Order No. 14,154, 90 Fed. Reg. 8535, Sec. 7 (Jan. 30,

13  2025). Shortly thereafter, EPA froze all SFA funding pursuant to an OMB directive to agency

14  heads to "temporarily paus[e] all activities related to the obligation or disbursement of EPA

15  Federal financial assistance" implicated by recent executive orders, "including . . . financial

16  assistance for . . . the green new deal." *See New York v. Trump*, Complaint for Declaratory and

17  Injunctive Relief, Case No. 1:25-cv-00039-JJM-PAS, ECF No. 1 (D.R.I. Jan. 28, 2025). Only

18  after a district court ordered the funds unfrozen did EPA restore access to SFA funds. *See New*

19  *York v. Trump*, 764 F. Supp. 3d 46 (D.R.I. 2025); *New York v. Trump*, 769 F. Supp. 3d 119

20  (D.R.I. 2025); Dykes-CT Decl. ¶ 16; Meister-IL Decl. ¶ 20.

21    Thereafter, Administrator Zeldin repeatedly signaled his plan to eliminate GGRF and

22  similar programs. *See Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 102-03

23  (D.D.C. 2025) (detailing public comments by Administrator Zeldin, including that "the entire

24  scheme" of GGRF grant programs was "criminal"). And, during the first six months of his

25  tenure, Administrator Zeldin oversaw the arbitrary termination of many EPA grant programs,

26  drawing multiple lawsuits. *See, e.g.*, *id.*; *Appalachian Voices v. E.P.A.*, Case No. 1:25-cv-

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC                    5                    ATTORNEY GENERAL OF WASHINGTON
                                                                  Environmental Protection Division
                                                                  800 Fifth Avenue STE 2000
                                                                  Seattle, WA 98104
                                                                  (206) 464-7744

1    01982-PLF, ECF No. 1. (D.C. Cir. June 25, 2025); *Green & Healthy Home Initiative, Inc. v.*

2    *E.P.A.*, 788 F. Supp. 3d 676, 699-700 (D. Md. 2025); *Sustainability Inst. v. Trump*, 784 F.

3    Supp. 3d 861, 871 (D.S.C. 2025).

4    **D.    Congress Enacts H.R. 1**

5        On July 3, 2025, Congress passed H.R. 1. Section 60002 repealed CAA Section 134,

6    the provision that appropriated funds and directed EPA to expend those funds for the SFA

7    Program. Section 60002 also rescinded "the *unobligated* balances of amounts made available

8    to carry out" CAA Section 134. Pub. L. No. 119-21 (emphasis added). President Trump signed

9    the bill into law the following day.

10        By its plain text, H.R. 1 rescinded only unobligated portions of the $27 billion

11    originally appropriated for GGRF. However, all of the $7 billion appropriated for SFA grants

12    under Section 134(a)(1) had already been obligated in accordance with Congress's instructions

13    well before September 30, 2024. Compl. ¶ 7. Thus, there were *no* unobligated SFA grant funds

14    that H.R. 1 could rescind. The only GGRF funding that remained unobligated on July 3, 2025,

15    was approximately $19 million of the original $30 million appropriated for EPA's

16    administrative costs. Compl. ¶¶ 81-83.

17        Legislative materials confirm that H.R. 1 did not affect obligated funds. For example,

18    one Senator noted the Congressional Budget Office's undisputed finding that "[t]he repeal and

19    rescission together only saved the $19 million EPA had remaining to oversee the program."

20    171 Cong. Rec. S4281-03 (daily ed. July 9, 2025) (statement of Sen. Sheldon Whitehouse).

21    Committee debates further reflect the bipartisan understanding that obligated funds would not

22    be affected. *See, e.g.*, House Committee on Energy and Commerce, Full Committee Markup of

23    Budget Reconciliation Text Part 1, at 5:40:34-5:40:40 (YouTube, May 13, 2025),

24    https://www.youtube.com/live/J4fGR1CiNGg?si=0kz8e0kADDcUT35Q&t=20423 (last visited

25    Oct. 9, 2025) (testimony from Representative Morgan Griffith (R-VA) that "[i]f the grant has

26    already been granted and the money is obligated, then our language does not affect that"); *id.* at

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC                    6                    ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   5:41:55-5:42:02 (testimony from Representative Brett Guthrie (R-KY) that H.R. 1 "does not

2   close the grants on any obligated funds").

3   **E.      EPA Terminates the SFA Program**

4           Nonetheless, on August 7, 2025, Administrator Zeldin announced the termination of the

5   SFA program through EPA's X account. Compl. ¶ 90. In the post and in an accompanying

6   YouTube video, Administrator Zeldin disparaged SFA as a "boondoggle"[4] and a "grift."[5] He

7   asserted that EPA no longer had statutory authority or appropriated funds to administer the

8   program. *Id.*

9           That same day, Plaintiffs received substantively identical letters from EPA purporting

10  to "terminate the SFA Program and existing grants" ("Termination Memoranda"). *See, e.g.*,

11  Nguyen-WA Decl. ¶ 23, Ex. 4. EPA explained that H.R. 1 "effectively and completely

12  terminated the statutory authority and all appropriations related to [SFA]." *Id.* EPA stated it

13  "no longer possesses the substantive legal authority or financial appropriations needed" to

14  implement and oversee SFA and was therefore terminating the program. *Id.*

15          EPA "recognize[d] that program participants may have begun to rely on [SFA] funds,"

16  but claimed that "due to the early nature of such expenditures . . . any harms to interests suffered

17  [would] be remedied and remediable by the close out processes outlined in the program grants."

18  *Id.* The Termination Memoranda assured Plaintiffs that they could continue to request payment

19  from their Automated Standard Application for Payments (ASAP) accounts for costs incurred

20  for work up to the date of the Memoranda. *Id.* Finally, the Termination Memoranda

21  "encouraged" Plaintiffs to "carefully review and discharge [their] closeout responsibilities set

22  forth in 2 C.F.R. § 200.344-45." *Id.*

23

24

25          [4] Lee Zeldin (@epaleezeldin), X (Aug. 7, 2025, 1:07 AM),
    https://x.com/epaleezeldin/status/1953518426602803684. *See also* Compl. ¶ 90 (screenshot of Zeldin X post).

26          [5] U.S. Env't Prot. Agency, *Administrator Lee Zeldin Announces EPA Is Ending Solar For All*,
    YOUTUBE (Aug. 8, 2025), https://www.youtube.com/watch?v=CfU3bYKmBOA.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC                7                ATTORNEY GENERAL OF WASHINGTON
                                                         Environmental Protection Division
                                                         800 Fifth Avenue STE 2000
                                                         Seattle, WA 98104
                                                         (206) 464-7744

**F.    Defendants Issue and Implement the Deobligation Directive**

EPA immediately began to block access to Plaintiffs' SFA funds. On August 8, EPA suspended or disappeared most Plaintiffs' SFA ASAP accounts. *See, e.g.*, Nguyen-WA Decl. ¶ 25. The accounts were restored, but EPA re-labeled most of them "liquidated," and changed the performance dates on the accounts to reflect the August 7 termination. *Id.* Most troublingly, EPA drained approximately 90% of the funds from Plaintiffs' accounts. *See, e.g.*, *id.*; Poisson-NY Decl. ¶ 22; Lau-HI Decl. ¶ 23; *see also* Declaration of Gregg A. Treml at ¶¶ 5-6, *Harris Cnty. v. E.P.A.*, Case No. 1:25-cv-03646-TSC, ECF No. 20-1 (attesting that EPA "deobligated 93% of the [SFA] grant funds for each recipient" and "preserved a recorded obligation of 7% of the grant funds…to pay allowable costs") (D.D.C. Nov. 10, 2025) (Treml Dec.).

Defendants did not explain this sudden change. *See, e.g.*, Nguyen-WA Decl. ¶ 26. However, since most Plaintiffs saw their accounts drained at nearly the same time and by a similar proportion of their original award, the only conclusion is that Defendants issued a program-wide instruction ("Deobligation Directive") directing liquidation of Plaintiffs' SFA accounts and clawback of nearly all SFA funds. Compl. ¶ 104; *see also* Treml Dec. ¶ 5.

The consequences of the Deobligation Directive are profound. Congress's SFA appropriation was a time-limited, multi-year appropriation; EPA obligated all $7 billion by August 2024, before the appropriation expired on September 30, 2024. Thus, at the close of fiscal year 2024, these obligated funds should have been placed in an "expired" account and should retain their 2024 fiscal-year identity, consistent with federal appropriations law. U.S. Gov't Accountability Off., Principles of Federal Appropriations Law, Third ed., Vol. I (2004) ("GAO Red Book"), at 5-72, available at https://www.gao.gov/assets/2019-11/202437.pdf. So long as these funds retain their obligated FY2024 status, Plaintiffs could draw from the funds to implement their SFA programs for five years. *Id.* But as is, Plaintiffs cannot access these funds, and so cannot use them to implement their SFA programs. *Id.* at 5-71. If the funds are

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

deobligated, the funds would only be available to cover adjustments of existing SFA-related obligations. *See id.* at 5-80.[6]

However, media reports reflect Defendants' disregard for these constraints. *See, e.g.,* Anna Kramer and Mark Alfred, *Billions in Taxpayer Dollars Have Become Virtually Untraceable,* NOTUS (Sept. 25, 2025), available at https://www.notus.org/trump-white-house/billions-taxpayer-dollars-virtually-untraceable-appropriations-trump-omb-russ-vought; Luke Broadwater, *Trump Signs Memo Expanding His Authority to Spend Federal Money*, N.Y. TIMES (Oct. 15, 2025), available at https://www.nytimes.com/2025/10/15/us/politics/trump-federal-funds-government-shutdown.html. Defendants' draining of Plaintiffs' SFA accounts creates a significant risk that Defendants will reprogram these funds, revert them to the general fund of the Treasury, or otherwise disappear them so the funds can no longer be used for a reinstated SFA Program.

By September 5, each Plaintiff submitted an administrative dispute challenging the termination of their SFA grants on constitutional and statutory grounds ("Disputes"). *See, e.g.*, Nguyen-WA Decl. ¶¶ 27-28, Ex. 5 and 6. Plaintiffs requested that EPA rescind the Termination Memoranda, reinstate the Assistance Agreement for the original awarded amount, scope of work, and performance period, and restore the funding to Plaintiffs' ASAP accounts to pre-termination levels. *See, e.g.*, Nguyen-WA Decl. ¶ 28, Ex. 6 at 14.

## G.    Defendants Demand Plaintiffs Close Out their Grants

Around October 1, EPA emailed "closeout procedural guidance" to each Plaintiff, demanding that Plaintiffs complete the closeout process for their SFA grants within 120 calendar days of their purported termination, *i.e.*, by early December. *See, e.g.*, Nguyen-WA Decl. ¶ 29, Ex. 7. Under federal regulations, the "closeout" process occurs when "all administrative actions and required work of [a] Federal award have been completed," 2 C.F.R.

---

[6] In other litigation, Defendants have cited to 42 U.S.C. § 4370f, not the principles and laws cited in the GAO Red Book. Treml Dec. ¶ 7. Regardless of which applies, Defendants must maintain the funds for a period of time to satisfy obligations for allowable costs.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

§ 200.344(a), or EPA lawfully terminates the grant pursuant to 2 C.F.R. § 200.340(a), *see id.* § 200.340(d). The closeout process requires that the grant recipient submit final financial and performance reports and liquidate financial obligations incurred under the award. *Id.* § 200.344. EPA did not acknowledge Plaintiffs' Disputes or explain why these timely Disputes did not toll the closeout period. *See* 2 C.F.R. § 200.344(a) (closeout may occur only after EPA "determines that all administrative actions and required work of the Federal award have been completed").

On October 15, Plaintiffs filed a lawsuit in the United States Court of Federal Claims over EPA's termination of their individual SFA grants, No. 1:25-cv-01738-LAS. On October 16, Plaintiffs filed the instant complaint. Between October 22 and October 27, each Plaintiff received a letter from EPA declaring their Disputes moot because "there is a current lawsuit in place regarding the validity of the termination of your assistance agreement." *See, e.g.*, Nguyen-WA Decl. ¶ 30, Ex. 8. EPA did not identify which "lawsuit" purportedly mooted out the Disputes or provide any further explanation, nor did they respond to Plaintiffs' subsequent requests for clarity. *Id.* ¶ 31, Ex. 9.

## III.    LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of relief; (3) that the balance of equities tips in the movant's favor; and (4) that granting relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a government entity is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The Ninth Circuit has adopted a "'sliding scale' variant of the *Winter* test," *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024), which requires "a lesser showing than likelihood of success on the merits" if the equities tip sharply in the plaintiffs' favor. *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

## IV.    ARGUMENT

Plaintiffs ask this Court to freeze congressionally appropriated SFA funds—both the money still in Plaintiffs' SFA accounts and the money Defendants unlawfully drained from those accounts—to preserve the Court's ability to reinstate the SFA Program and prevent Defendants from moving these funds beyond this Court's reach. To facilitate the preservation of that status quo, Plaintiffs also request that the Court stay closeout of Plaintiffs' SFA grants to ensure that Defendants do not drain the remaining funds in Plaintiffs' SFA accounts upon closeout or otherwise shut down the SFA Program.

Plaintiffs are entitled to this narrow relief. *First*, Plaintiffs are likely to succeed on the merits of their APA and constitutional claims. Because Defendants have no legal basis to terminate the SFA Program, Defendants cannot lawfully deobligate or reprogram SFA funds or demand that Plaintiffs close out their grants during the pendency of this litigation. *Second*, Plaintiffs have been and will continue to be irreparably harmed by the Deobligation Directive. Absent a preliminary injunction, the Deobligation Directive could ultimately deprive Plaintiffs—and this Court—of the opportunity for final relief on the merits. *Third*, the balance of the equities and public interest clearly favor a preliminary injunction to prevent further harm to Plaintiffs caused by the Deobligation Directive.

### A.    This Court Has Jurisdiction

Plaintiffs bring claims for equitable and injunctive relief under the APA and Constitution. This Court plainly has jurisdiction. *See, e.g.*, *Rhode Island v. Trump*, 155 F.4th 35, 45-46 (1st Cir. 2025); *State of Wash. v. U.S. Dep't of Com.*, Case No. C25-1507-MJP, 2025 WL 2978833, at *5-6 (W.D. Wash. Oct. 22, 2025).

The Tucker Act does not change this straightforward analysis. The Tucker Act "impliedly forbids an APA action seeking injunctive and declaratory relief only if [the] action is a disguised breach-of-contract claim.'" *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, -- F.4th ---, 2025 WL 2884805, at *4-6 (9th Cir. 2025) (citation

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

omitted) (holding that "non-contractual source of Plaintiffs' rights is dispositive" of court's

jurisdiction to resolve constitutional and APA claims). Here, Plaintiffs allege they are injured

by Defendants' violations of statutes and the Constitution, not any breach of the grant terms,

and they challenge Defendants' internal guidance and policies. *Id.*; *Washington v. U.S. Dep't of*

*Educ.*, Case No. C25-1228-KKE, 2025 WL 2966255, at *8-9 (W.D. Wash. Oct. 21, 2025);

Compl. ¶¶ 11-12, 131-176. Plaintiffs seek declaratory and injunctive relief, and APA remedies

to vacate Defendants' illegal actions, not contract damages specific to each Plaintiff.[7]

Compl. ¶ 13, Prayer for Relief. Preliminarily enjoining Defendants from repurposing or

otherwise making unavailable previously obligated funds preserves the status quo—and the

Court's ultimate ability to order reinstatement of the SFA Program. *Fellowship of Christian*

*Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684-85 (9th Cir. 2023) (en

banc) (status quo is "the legally relevant relationship between the parties before the

controversy arose").

   Thus, Plaintiffs' claims are well within this Court's jurisdiction. *See NIH v. Am. Pub.*

*Health Assoc.*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring) (challenge to "agency

guidance" proper in district court even if "guidance discusses internal policies relate[d] to

grants").

**B.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

   Under the APA, a court "shall hold unlawful and set aside" any agency action that is in

excess of the agency's "statutory jurisdiction, authority, or limitations"; is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law"; or is "contrary to

constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)-(C). The

---

[7] Plaintiffs' separate Court of Federal Claims action seeks payment of money due to the Plaintiffs under the SFA program as an additional form of relief. *See NIH,* 145 S. Ct. at 2662 (finding that "two-track litigation" is appropriate) (Barrett, J., concurring).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  Deobligation Directive is all three. It also impermissibly encroaches on Congress's power of

2  the purse, in violation of the Appropriations Clause and the separation of powers doctrine.

### 1.    The Deobligation Directive Is Final Agency Action

4  Defendants are implementing a coordinated policy to unlawfully terminate SFA,

5  including by unilaterally draining the funding appropriated for the program. *See* Compl.

6  ¶¶ 105-112. This is final agency action. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). *First*, the

7  Deobligation Directive marks the consummation of the agency's decisionmaking process,

8  because its position is "definitive," *Her Majesty the Queen in Right of Ontario v. U.S. E.P.A.*,

9  912 F.2d 1525, 1531 (D.C. Cir. 1990), and not "merely tentative" or "interlocutory." *Bennett*,

10  520 U.S. at 178. The Deobligation Directive reflects Defendants' decision to immediately claw

11  back funds obligated to SFA recipients. Defendants "not only decided to take these steps,

12  [they] then in fact . . . implemented them." *New York v. Trump*, 767 F. Supp. 3d 44, 79

13  (S.D.N.Y. 2025); Treml Dec. ¶¶ 5-6. *Second*, because of the Deobligation Directive, Plaintiffs

14  can no longer implement their SFA programs and will be forced to shutter existing projects.

15  Stripping Plaintiffs of their ability to carry out a major program is plainly a "concrete

16  consequence[]" signifying final agency action. *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943

17  F.3d 953, 956 (D.C. Cir. 2019).

### 2.    The Deobligation Directive Is Contrary to H.R. 1's Plain Language, and Defendants Lacked Authority to Adopt It

19  Under the APA, a court should set aside agency action that is "not in accordance with

20  law," 5 U.S.C. § 706(2)(A), exceeds an agency's "statutory jurisdiction, authority, or

21  limitations," or is "short of statutory right," 5 U.S.C. § 706(2)(C).

22  Defendants violated the law by removing funds from Plaintiffs' ASAP accounts—

23  stealing, in plain terms—that Congress directed be spent on SFA. Defendants attempt to justify

24  their overreach by claiming that H.R.1 rescinded "both the grant appropriations and the EPA's

25  administrative cost appropriation" and "completely terminated the statutory authority and all

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

appropriations related to Solar for All" and, therefore, EPA "no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring" of SFA. Nguyen-WA Decl. ¶ 23, Ex. 4.

Defendants are wrong. Section 60002 of H.R.1 does two things: it repeals CAA Section 134 (Repeal Clause) and it rescinds "unobligated balances of amounts made available to carry out that section" (Rescission Clause). Pub. L. No. 119-21. But it does not require or permit Defendants to deobligate funds already obligated to Plaintiffs. Defendants' implementation of the Deobligation Directive—including draining Plaintiffs' ASAP accounts of billions of dollars in obligated funds—is contrary to law because it is based on Defendants' erroneous interpretation of H.R. 1. Defendants also acted in excess of statutory authority in issuing the Deobligation Directive because Congress did not authorize Defendants to rescind already-obligated SFA funds.

### a. H.R. 1 rescinds only unobligated funds

"In construing the provisions of a statute, we begin by looking at the language of the statute to determine whether it has a plain meaning." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017). "If the language [of the statute] has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." *Id.*

By its plain language, H.R. 1 only rescinded "the unobligated balances of amounts made available to carry out" CAA Section 134. Pub. L. 119-21. EPA concedes as much in the Termination Memoranda, stating that Section 60002 directs "the rescission of the administrative appropriation in section 134(a)(4)." Nguyen-WA Decl. ¶ 23, Ex. 4; *see also id.* (Section 60002 "rescinds unobligated amounts to carry out Section 134"). Nothing in the law empowered Defendants to rescind the billions of dollars in SFA funds that were already obligated to Plaintiffs.

For federal budget purposes, an award becomes an "obligation" because it is "a definite commitment that creates a legal liability of the government for the payment of goods

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

and services ordered or received, or a legal duty on the part of the United States that could mature into a legal liability[.]" U.S. Gov't Accountability Off., *A Glossary of Terms Used in the Federal Budget Process*, at 70. (Sept. 2005), available at https://www.gao.gov/assets/gao-05-734sp.pdf. Congress appropriated $7 billion to the EPA "to make grants" for zero-emission technologies by September 30, 2024. CAA Section 134(a)(1). There is no dispute that EPA obligated all $7 billion of the funds to eligible SFA grantees by the statutory deadline, and that those funds remained obligated on July 3, 2025. Compl. ¶ 7.

Thus, insofar as the Deobligation Directive relies on the Rescission Clause, it is plainly unlawful. The Rescission Clause did not touch Plaintiffs' already-obligated funds.

> **b.**    **H.R. 1's repeal of CAA Section 134 is prospective only and neither requires nor authorizes Defendants' rescission of obligated funds**

Defendants also interpreted Section 60002's Repeal Clause to mean that EPA lacked both legal authority and financial appropriations to administer SFA. Compl. ¶¶ 92-93. Defendants are, again, wrong, for two reasons.

*First,* the Repeal Clause has prospective effect only. "[C]ourts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder,* 566 U.S. 257, 266 (2012). H.R. 1 contains no express retroactivity provision. Nevertheless, Defendants concluded that, by repealing Section 134, H.R. 1 retroactively undid the statutory basis for SFA grants, requiring the immediate termination of the SFA Program, plus clawback and deobligation of (most, but not all) awarded funds. Defendants' interpretation conflicts with the presumption against implied retroactivity because it has the effect of unwinding a congressional directive that EPA has fully performed.

Section 134 was both an authorizing statute and an appropriations statute: it instructed EPA to establish grant programs within GGRF, and appropriated funds for that specific purpose, until September 30, 2024. EPA awarded all the money Congress appropriated for

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION -- No. 2:25-CV-02015-TMC

15

ATTORNEY GENERAL OF WASHINGTON Environmental Protection Division 800 Fifth Avenue STE 2000 Seattle, WA 98104 (206) 464-7744

the SFA Program before the appropriation expired. H.R. 1's repeal of Section 134 in 2025,

therefore, did not impact grants EPA made in 2024. *Cf. Landgraf v. USI Film Prods.*, 511

U.S. 244, 257 (1994) ("A statement that a statute will become effective on a certain date does

not even arguably suggest that it has any application to conduct that occurred at an earlier

date."). Nor does the repeal of Section 134 mean that amounts lawfully obligated to Plaintiffs

must (or can) be clawed back and deobligated. *Bowen v. Georgetown University Hosp.*, 488

U.S. 204, 210 (1988) (holding agency lacked authority to adopt rules requiring  entities to

return reimbursed Medicare payments, even if statute did allow agency to adopt retroactive

rules for adjudications); *see also* 1 U.S.C. § 109 ("The repeal of any statute shall not have the

effect to release or extinguish any … liability incurred under such statute, unless the

repealing Act shall so expressly provide[.]"). Legislative history confirms that the Repeal

Clause "does not close the grants on any obligated funds." *See, e.g.*, House Committee on

Energy and Commerce, Full Committee Markup of Budget Reconciliation Text Part 1,

(YouTube, May 13, 2025), https://www.youtube.com/live/J4fGR1CiNGg?si=0kz8e0kADDc

UT35Q&t=20423 (last visited Oct. 9, 2025) at 5:41:55-5:42:02 (testimony from

Representative Brett Guthrie (R-KY); *id.* at 5:40:34-5:40:40 (testimony from Representative

Morgan Griffith (R-VA) that "[i]f the grant has already been granted and the money is

obligated, then our language does not affect that").

Nor does the repeal of Section 134 eliminate Defendants' authority to administer the

SFA Program for current SFA recipients. By leaving obligated funds untouched, Congress

intended for EPA to continue administering those funds. EPA's continued authority to

administer the SFA Program can also be implied from its continued funding to do so. Barely

five months before it purported to terminate the SFA Program, EPA was appropriated over $3

billion for "Environmental Programs and Management" for Fiscal Year 2025, Pub. L. No. 119-

4, Sec. 1802(3), 139 Stat. 30 (Mar. 15, 2025), which EPA previously tapped to support GGRF

implementation. *See, e.g.,* U.S. Env't Prot. Agency, *Fiscal Year 2025 Justification of*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    *Appropriation Estimates for the Committee on Appropriations, Tab 05: Environmental*

2    *Programs and Management* 40 (March 2024), https://www.epa.gov/system/files/documents/

3    2024-04/fy25-cj-05-epm.pdf (hereinafter *EPA FY2025 Justification*) (requesting additional

4    funding to support GGRF implementation).

5    　　　*Second,* Defendants' strained reading of the Repeal Clause would render the

6    Rescission Clause superfluous. If this Court accepts Defendants' conclusion that the Repeal

7    Clause "terminated all appropriations related to [SFA]" such that EPA "no longer possesses

8    . . . the financial appropriations needed to continue" the SFA program, then there would be

9    no need for Congress to also "rescind" the unobligated balances of those appropriations. But

10   courts must avoid creating superfluity among and within various sections of the same statute.

11   *Tulelake Irrigation Dist. v. United States Fish & Wildlife Serv.,* 40 F.4th 930, 936 (9th Cir.

12   2022). Here, both clauses of Section 60002 easily can—and thus must—be read as a

13   consistent whole: the Rescission Clause cancels the unobligated balance of Congress's prior

14   appropriation (a mere $19 million), and the Repeal Clause has the effect of ensuring that no

15   future Congress can appropriate funds for SFA grants without enacting a new authorizing

16   statute. Neither clause touched obligated SFA funds, or EPA's authority to administer those

17   funds, which it can do using funds separately appropriated for "environmental programs and

18   management, including necessary expenses not otherwise provided for." *EPA FY2025*

19   *Justification* at 40. Had Congress intended H.R. 1 to reach obligated funds, it could have said

20   as much. It said the opposite.

21   　　　H.R. 1 did not deobligate SFA funds and did not give Defendants the authority to

22   rescind *obligated* funds. Defendants' Deobligation Directive is, therefore, contrary to law,

23   exceeds Defendants' statutory authority, and should be set aside.

24   　　　**3.　　Defendants' Deobligation Directive Is Arbitrary and Capricious**

25   　　　Defendants' Deobligation Directive is also arbitrary and capricious. An agency action

26   is arbitrary and capricious if it is not reasonable or reasonably explained or if the agency

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

failed to consider reliance interests. *See F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*, 59 U.S. 1, 30 (2020). Here, the Deobligation Directive is arbitrary and capricious twice over: (1) it lacks a reasoned basis; and (2) Defendants failed to consider Plaintiffs' reliance interests.

### a.    Defendants' Deobligation Directive Lacked Reasoned Explanation

If an agency is changing position, courts "insist that an agency examine the relevant data and articulate a satisfactory explanation for its action." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quotation omitted). Defendants issued their Deobligation Directive on the false premise that "Congress has made its intent clear" via H.R. 1 "that the SFA program is no longer to operate." This explanation is unreasoned and unreasonable.

*First,* Defendants never provided Plaintiffs with *any* explanation for the Directive, let alone a reasoned one. Defendants' reasoning is not just deficient—it simply does not exist. *Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1034 (9th Cir. 2010); *Martin Luther King Jr., County v. Turner*, 785 F. Supp. 3d 863, 888-89 (W.D. Wash. 2025) ("rote incorporation" of federal law in grant agreements, "does not constitute 'reasoned decisionmaking'"). Instead, Defendants clawed back funds from Plaintiffs' ASAP accounts without providing any basis for changing the status of most Plaintiffs' accounts to suspended and/or liquidated, explaining how they determined the amounts to remain available, or providing any authority for reducing the account balances. Defendants arbitrarily and capriciously reduced Plaintiffs' ASAP account balances by 90% or more, without any apparent consideration of Plaintiffs' progress toward their individual work plans or their outstanding obligations to subgrantees.[8]

---

[8] To the extent Defendants have now provided *post hoc* rationalizations in other litigation, those inconsistent explanations further illustrate Defendants' arbitrary and capricious actions. *Compare* Nguyen-WA Decl. ¶ 23, Ex. 4 (not citing any provision of 2 CFR § 200.340 to justify termination) *with* Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order at 33, *Harris*

1    *Second*, Defendants failed to reasonably explain their conclusion that H.R. 1

2    "effectively and completely terminated . . . all appropriations related to [SFA]" and thus

3    justified the Deobligation Directive. *See, e.g.*, Nguyen-WA Decl. ¶ 23, Ex. 4. As discussed,

4    Defendants' interpretation of H.R. 1 to rescind "all" SFA funding, including obligated

5    funding, contradicts the plain meaning of the statute, not to mention its legislative history.

6    H.R. 1, by its clear text, rescinded only "the unobligated balances of amounts" appropriated

7    for SFA; it did not rescind any of the $7 billion in appropriated funding that had already been

8    obligated. *Supra* at pp. 14-15.

9    *Third*, Defendants have not reasonably explained their conclusion that H.R. 1

10   "effectively and completely terminated . . . the statutory authority related to [SFA]." *See, e.g.*,

11   Nguyen-WA Decl. ¶ 23, Ex. 4. In reaching this conclusion, Defendants appear to suggest that

12   H.R. 1's repeal of Section 134 retroactively undid the statutory basis for the SFA grants and

13   rendered the original awarding of those grants improper. But, as discussed above, this

14   interpretation is wrong. *Supra* at pp. 15-17.

15              **b.    Defendants Failed to Consider Plaintiffs' Reliance Interests in
                        Implementing the Deobligation Directive**
16

17   Agencies also act arbitrarily and capriciously when they fail to "assess whether there

18   were reliance interests, determine whether they were significant, and weigh any such interests

19   against competing policy concerns." *Regents of the Univ. of Cal.,* 59 U.S. at 33. Defendants

20   failed to account for Plaintiffs' significant reliance interests before implementing the

     Deobligation Directive.
21
22   Defendants cannot deny the significant reliance interests here; to the contrary, they

23   specifically acknowledge them. The Termination Memoranda state that harms caused to grant

24   recipients could be "remedied and remediable by the close out process" that follows

25   _____
     *County v. E.P.A.*, Case No. 1:25-CV-03646-TSC, ECF No. 20 (D.D.C. Nov. 10, 2025) (arguing EPA terminated
26   Harris County's SFA grant based on changes in program goals and agency priorities under 2 CFR §
     200.340(a)(4)),

termination. *See, e.g.*, Nguyen-WA Decl. ¶ 23, Ex. 4. Defendants also assured Plaintiffs that SFA funds would remain available to cover "allowable costs incurred up to the date of the [Termination Memoranda]" and "reasonable and necessary [closeout] costs." *Id.* Yet within a week of issuing the Termination Memoranda, Defendants removed up to 93% of Plaintiffs' obligated funds from their ASAP accounts without explanation.

Defendants' lip service to Plaintiffs' initial expenditures ignores the actual scope of Plaintiffs' reliance interests. Plaintiffs have spent months developing SFA programs, and many Plaintiffs were almost ready to launch. *See, e.g.*, Pawlisch-MN Decl. ¶ 17; Granahan-IL Decl. ¶¶ 18-21; Magruder-MD Decl. ¶ 18. Other Plaintiffs had already launched their SFA offerings. *See, e.g.*, Gomez-CO Decl. ¶ 21; Burger-DC Decl. ¶¶ 17-20; Lau-HI Decl. ¶¶ 15-18. Moreover, Plaintiffs had entered into vendor, contractor, and subrecipient agreements, made commitments to tribal partners, and otherwise represented to their residents that new opportunities for solar power and reduced energy bills were in the wings. *See, e.g.*, Mahoney-AZ Decl. ¶¶ 31-34; Benner-OR Decl. ¶¶ 31-34; Carrillo-CA Decl. ¶¶ 29-35. Many Plaintiffs were relying heavily—if not exclusively—on these funds and EPA's technical support for their solar energy programs and to meet their state-mandated climate goals. *See, e.g.*, Burger-DC Decl. ¶¶ 31-32; Mahony-MA Decl. ¶¶ 40-41. That Plaintiffs could potentially recover a small sliver of their expenses through the grant closeout process (a process that would be premature while litigation is pending) does not make Plaintiffs whole, and discounts Plaintiffs' accrued expenses and non-monetary reliance interests. Defendants ignored these reliance interests in draining Plaintiffs' ASAP accounts and therefore acted arbitrarily and capriciously.

### 4.    The Deobligation Directive Is Unconstitutional

Plaintiffs are likely to succeed on the merits of their constitutional claims too.

Congress possesses "exclusive power over the purse." *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018). The Appropriations Clause, art. I, § 9, cl. 7, provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

20

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Appropriations made by Law." Congress also possesses the exclusive power to legislate. U.S. Const., art. I, § 1. This Separation of Powers is "an integral part of the Founders' design." *San Francisco,* 897 F.3d at 1232. Thus, the Executive Branch "is without authority to thwart congressional will by canceling appropriations passed by Congress." *Id*. Defendants' apparent "policy disagreement" with Congress about how federal funds are to be spent "is not a lawful ground for [the agency] to decline to continue [a] congressionally mandated [program]." *In re Aiken County*, 725 F.3d 255, 260 (D.C. Cir. 2013) (Kavanaugh, J.). Through the Deobligation Directive, Defendants unilaterally ordered the cancellation of funds appropriated by Congress for the SFA Program. Because the time allotted by Congress for EPA to appropriate funds to grant recipients for the SFA program ended in September 2024, EPA has essentially thwarted Congress' intention to support solar initiatives nationwide, as EPA now lacks the statutory authority to allocate funds at all under the program. Congress never authorized Defendants to terminate obligated funds. Thus, Defendants have usurped Congress's exclusive authority to decide how federal dollars are spent, in violation of the Appropriations Clause and separation of powers.

**C.    Plaintiffs Face Irreparable Harm Absent a Preliminary Injunction**

Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief" enjoining the Deobligation Directive. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021). Irreparable harm is "harm for which there is no adequate legal remedy," i.e., harm that is not compensable with money damages. *Id.* at 677 (quotation omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Together Emps v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021) (a "preliminary injunction preserves the court's ability to grant final relief"). Here, absent an injunction, Plaintiffs will be irreparably harmed by Defendants' efforts to deobligate SFA funds.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

21

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

2

**1.      Defendants' Actions Present a Substantial Risk of Deobligation and/or Reprogramming**

3

Plaintiffs have seen their available balance of SFA funds drop by upwards of 90%.

4

Mahoney-AZ Decl. ¶ 23; Tesfai-CA Decl. ¶ 30; Gomez-CO Decl. ¶ 26; Dykes-CT Decl. ¶¶ 25-

5

26; Burger-DC Decl. ¶ 23; Lau-HI Decl. ¶ 23; Meister-IL Decl. ¶ 27; Goodman-KY Decl.

6

¶ 23; Mahony-MA Decl. ¶ 25; Magruder-MD Decl. ¶¶ 23-24; Burgess-ME Decl. ¶ 25; Wang-

7

MI Decl. ¶ 24; Pawlisch-MN Decl. ¶ 21; Oomen-NJ Decl. ¶¶ 22-23; Stair-NM Decl. ¶ 24;

8

Poisson-NY Decl. ¶ 22; Woosley-NC Decl. ¶¶ 30; Benner-OR Decl. ¶ 23; Shirley-PA Decl. ¶

9

30; Kearns-RI Decl. ¶¶ 23-24; Bailey-VT Decl. ¶¶ 22-23; Nguyen-WA Decl. ¶ 25; Rikkers-WI

10

Decl. ¶ 24;. *see also* Treml Dec. ¶¶ 5-6. Over $2.5 billion in obligated funds disappeared from

11

Plaintiffs' accounts without explanation.  Although EPA has now stated in other litigation that

12

the funds are maintained in an SFA-specific Treasury account, to remain available until

13

September 2031, *see* Treml Dec. ¶ 7, Defendants have failed to assure Plaintiffs that the funds

14

removed from their accounts will not be reprogrammed, or that the funds remaining in their

accounts will not be deobligated or otherwise removed. Either move would be unlawful.

15

Deobligation, reprogramming, or reverting the funds to the general fund of the Treasury

16

could doom Plaintiffs' projects under the SFA Program. When Congress appropriated funds

17

for the SFA Program, it stated that the funds would "remain available until September 30,

18

2024." CAA Section 134(a)(1). This means that September 30, 2024, was the last day that

19

Defendants could make new obligations for SFA and that the appropriation has now expired.

20

GAO Red Book at 5-6. To the extent that Defendants already unlawfully deobligated any SFA

21

funds, those deobligated SFA funds should remain in an expired account "to cover appropriate

22

adjustments" pursuant to federal appropriations law. *Id.* at 5-80. But by issuing the

23

Deobligation Directive and immediately clawing back and deobligating funds upon

24

termination, *see* Treml Dec. ¶ 5, Defendants flouted the presumption that deobligation is

25

improper until the closeout process is complete and Defendants have a final tabulation of how

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    much is owed to Plaintiffs and what remains available to be deobligated. *See* 2 C.F.R. §

2    200.344(f). This suggests Defendants are not complying with federal law and have no intention

3    of allowing Plaintiffs to use the funds as Congress intended. And, if forced to prematurely

4    close out their accounts, the SFA funds that presently remain in Plaintiffs' ASAP accounts will

5    promptly be deobligated. 2 C.F.R. § 200.344(c), (e), (f).

6          Should the Court ultimately vacate Defendants' termination of the SFA Program (or

7    order Defendants to engage with Plaintiffs' administrative disputes in good faith), there will

8    need to be funds available to effectuate that order. Preliminary relief prohibiting deobligation

9    or diversion of SFA funds is thus critical to preserving a remedy in this case. *See* 5 U.S.C. §

10   705 ("[T]o prevent irreparable injury, the reviewing court . . . may issue all necessary and

11   appropriate process . . . to preserve status or rights pending conclusion of the review

12   proceedings."); *see also Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (affirming

13   injunction freezing "assets in danger of dissipation or depletion" to "preserve the status quo

14   pending final determination of the questions raised by the bill"); *Oregon Council for Humans*

15   *v. U.S. DOGE Serv.*, --- F. Supp. 3d ---, 2025 WL 2237478, at *37 (D. Or. 2025).

16         As discussed above, the Trump Administration has claimed unprecedented (and anti-

17   constitutional) authority to "repurpose" appropriated funds away from their congressionally

18   mandated purpose and toward different programs the Administration prefers. Should that

19   happen here, Defendants will doubtless argue that the funds are out of this Court's reach. *Cnty.*

20   *of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 138 (2d Cir. 2010) ("Once the congressional

21   appropriations relating to the funds sought by private litigants have been lawfully distributed—

22   and therefore exhausted—by a federal agency," courts lack authority to grant relief with

23   respect to those funds); *Ambach v. Bell,* 686 F.2d 974, 986 (D.C. Cir.1982) ("Once the chapter

24   1 funds are distributed to the States and obligated, they cannot be recouped. It will be

25   impossible in the absence of a preliminary injunction to award the plaintiffs the relief they

26   request if they should eventually prevail on the merits."). A preliminary injunction is therefore

essential to prevent Defendants from effectively mooting this case through their own unconstitutional acts. This risk alone is grounds to preliminarily enjoin the Deobligation Directive during the pendency of this litigation.

2.     **Plaintiffs Will Suffer Irreparable Harm If EPA Forces Closeout or Takes Enforcement Action for Failure to Close Out**

Plaintiffs will also be irreparably harmed if Defendants force Plaintiffs to close out their awards or unilaterally do so themselves. The irreparable harm here flows from the closeout procedures' specific administrative requirements, which require Plaintiffs to "liquidate all financial obligations incurred" under their SFA grants upon closeout. 2 C.F.R. § 200.340(c). This means that Plaintiffs would be forced to break agreements and terminate employment contracts if closeout occurs. *See, e.g.* Burger-DC Decl. ¶¶ 31, 34-35; Mahoney-AZ Decl. ¶ 36; Oomen-NJ Decl. ¶¶ 32-34; Pawlisch-MN Decl. ¶¶ 30, 32; Nguyen-WA Decl. ¶ 34-36; Magruder-MD Decl. ¶¶ 34-35; Bailey-VT Decl. ¶¶ 33-34. This harm is uncompensable; even if Defendants eventually return to administering the SFA Program and Plaintiffs attempt to re-start their programs, nothing can be done about the delay and loss of confidence among partners and stakeholders in States' SFA program implementation. Carrillo-CA Decl. ¶¶ 29-33; Wang-MI Decl. ¶ 42; Mahony-MA Decl. ¶ 37. *East Bay Sanctuary Covenant*, 993 F.3d at 677 (intangible injuries to reputation and goodwill support irreparable harm showing); *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021). Plaintiffs' reputations may suffer additional, irreparable harm if EPA takes enforcement action against them for failing to comply with closeout requirements. 2 C.F.R. § 200.339; 2 C.F.R. § 200.344(i) (penalty for non-compliance includes "report[ing] the recipient's material failure to comply with the terms and conditions of the Federal award in SAM.gov"). *See* Tesfai-CA Decl. ¶ 46; Mahony-MA Decl. ¶ 42; Stair-NM Decl. ¶ 48. Moreover, it will be impossible for many Plaintiffs to continue operating their SFA programs if closeout is forced upon them. Many Plaintiffs were relying on the continued availability of SFA funds and EPA programmatic support to launch and operate their

PLAINTIFFS' MOTION FOR
PREPRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

24

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

programs. *See, e.g.*, Gomez-CO Decl. ¶ 45; Stair-NM Decl. ¶¶ 46-47; Benner-OR Decl. ¶ 37; Nguyen-WA Decl. ¶ 38; Rikkers-WI Decl. ¶ 39-41. This is plainly irreparable harm. *RFE/RL, Inc. v. Lake*, 772 F. Supp. 3d 79, 85 (D.D.C. 2025).

**D.    The Balance of Equities and Public Interest Factors Strongly Favor Entry of a Preliminary Injunction**

When, as here, the government is a party, the balance of the equities and the public interest merge. *Nken*, 556 U.S. at 435. "When weighing these factors, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief paying particular regard for the public consequences that would result from granting the emergency relief sought." *Rhode Island v. Trump*, 781 F. Supp. 3d 25, 54 (D.R.I. 2025) (quoting *Winter*, 555 U.S. at 24) (cleaned up). The balance of equities and the public interest strongly favor entry of a preliminary injunction here.

Plaintiffs' high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "There is generally no public interest in the perpetuation of unlawful agency action," whereas there is substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (internal quotation omitted). For the reasons described above, Defendants' Deobligation Directive was illegal several times over. Public interest thus favors an injunction *Washington v. Trump*, 768 F. Supp. 3d 1239, 1280 (W.D. Wash. 2025) ("The rule of law is secured by a strong public interest that the laws 'enacted by their representatives are not imperiled by executive fiat.'") (quoting *E. Bay Sanctuary Covenant*, 932 F.3d at 779). And, if the Deobligation Directive is not enjoined, all the time and effort Plaintiffs have invested in their SFA programs will be wasted.

By contrast, Defendants suffer no hardship from preserving the funds that remain or were previously in Plaintiffs' accounts consistent with federal law. *League of Women Voters*,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

25

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

838 F.3d at 12. An injunction here would only require Defendants to comply with the law and maintain the status quo. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (no irreparable harm to government "from an injunction that merely ends an unlawful practice or reads a statute as required."). It would not require Defendants to disburse any funds, unlike the injunctive relief the Supreme Court stayed in *Department of Ed. v. California*, 604 U.S. 650, 145 S. Ct. 966, 221 L.Ed.2d 515 (2025) and *NIH*. Rather, Plaintiffs seek only to prevent Defendants from potentially mooting out their claims by closing out their SFA grants, or reprogramming or recharacterizing SFA funds. The preliminary injunction would ensure the availability of some remedy if Plaintiffs ultimately prevail on their claims.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enjoin Defendants from (a) reprogramming, recharacterizing, or otherwise making unavailable by any means the funds that were obligated to Plaintiffs for SFA pursuant to Congress's directive, (b) otherwise deobligating any SFA funds that remain obligated to Plaintiffs, including by closing out Plaintiffs' SFA grants or requiring Plaintiffs to do so, and (c) taking enforcement action against Plaintiffs for failing to close out.

DATED this 14th day of November 2025.

/ / /

/ / /

/ / /

/ /

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

26

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    I certify that this memorandum contains 8399 words, in compliance with the Local

2    Civil Rules.

3

4    **KRISTIN K. MAYES**                          **NICHOLAS W. BROWN**
     Attorney General of Arizona                   Attorney General of Washington

5

6    By:  */s/ Mary M. Curtin*                     */s/ C. L. Junine So*
     MARY M. CURTIN                                C. L. JUNINE SO, WSBA # 58779

7    Senior Litigation Counsel                     LEAH A. BROWN, WSBA # 45803
     ALEXA G. SALAS                                SARAH E. SMITH-LEVY, WSBA # 55770

8    Assistant Attorney General                    Assistant Attorneys General
     Office of the Arizona Attorney General        Environmental Protection Division

9    2005 N. Central Ave.                          800 Fifth Avenue, Suite 2000
     Phoenix, Arizona 85004                        Seattle, Washington 98104

10   Mary.Curtin@azag.gov                          206-464-7744

11   Alexa.Salas@azag.gov                          junine.so@atg.wa.gov
                                                   leah.brown@atg.wa.gov

12   *Attorneys for the State of Arizona*          sarah.e.smith-levy@atg.wa.gov

13                                                 *Attorneys for the State of Washington*

14   **KEITH ELLISON**                             **BRIAN L. SCHWALB**

15   Attorney General of Minnesota                 Attorney General for the District of Columbia

16   By: */s/ Ryan Pesch*                          By: */s/ Lauren M. Marks*
     RYAN PESCH                                    LAUREN M. MARKS

17   CAT RIOS-KEATING                              Special Assistant Attorney General
     *Special Assistant Attorneys General*         Office of the Attorney General

18   BRIAN CARTER**                                for the District of Columbia

19   *Special Counsel*                             400 6th Street, N.W., 10th Floor
     Office of the Minnesota Attorney General      Washington, D.C. 20001

20   445 Minnesota Street, Suite 600               Lauren.marks@dc.gov
     St. Paul, MN  55101

21   (651) 728-7116                                *Attorneys for the District of Columbia*

22   ryan.pesch@ag.state.mn.us
     catherine.rios-keating@ag.state.mn.us

23   brian.carter@ag.state.mn.us

24   *Counsel for the State of Minnesota*

25

26

1

2

**ROB BONTA**
Attorney General of California

3

By: */s/ Marie Elizabeth Logan*
MARIE ELIZABETH LOGAN

4

REBECCA HUNTER
ABIGAIL BLODGETT

5

DYLAN C. REDOR
THEODORE A. MCCOMBS

6

MYUNG PARK

7

Deputy Attorneys General
California Department of Justice

8

1515 Clay Street
Oakland, CA 94612

9

Marie.Logan@doj.ca.gov

10

*Attorneys for the State of California*

11

12

13

**WILLIAM TONG**
Attorney General of Connecticut

14

By: */s/ Jill Lacedonia*

15

JILL LACEDONIA
Assistant Attorney General

16

165 Capitol Avenue
Hartford, CT 06106

17

(860) 808-5250

18

Jill.Lacedonia@ct.gov

19

*Attorneys for the State of Connecticut*

20

21

22

23

24

25

26

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Carrie Noteboom*
CARRIE NOTEBOOM
Assistant Deputy Attorney General
DAVID MOSKOWITZ
Deputy Solicitor General
CYNTHIA VITALE
Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
Carrie.Noteboom@coag.gov
David.Moskowitz@coag.gov
Cynthia.Vitale@coag.gov

*Attorneys for the State of Colorado*

**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: */s/ Kaliko'onālani D. Fernandes*
DAVID D. DAY
Special Assistant to the Attorney General
KALIKO'ONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai'i*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

28

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Katharine Roller*
KATHARINE ROLLER
Complex Litigation Counsel
ELIZABETH B. SCOTT
Assistant Attorney General
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(773) 519-1842
Katharine.roller@ilag.gov

*Attorneys for the State of Illinois*

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE**
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
Attorney General of Maine

By: */s/ Caleb Elwell*
CALEB E. ELWELL
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8545
Caleb.elwell@maine.gov

*Attorneys for the State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
*Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

29

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of
Massachusetts

By: */s/ Amy Laura Cahn*
AMY LAURA CAHN
TERRENCE VALES
*Assistant Attorney General*
One Ashburton Place
Boston, MA 02108
(617) 963-2277
amy.laura.cahn@mass.gov
terrence.vales@mass.gov
*Attorneys for the Commonwealth of
Massachusetts*

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

By: */s/ Daniel Resler*
DANIEL RESLER
LAUREN E. VAN DRIESEN**
JACK VENTURA**
*Deputy Attorneys General*
Office of the Attorney General
33 Washington Street, Ninth Floor
Newark, NJ 07101
(973) 648-4726
Daniel.Resler@law.njoag.gov

*Counsel for the State of New Jersey*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
NEIL GIOVANATTI
POLLY SYNK
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
SynkP@michigan.gov

*Attorneys for the State of Michigan*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ J. Spenser Lotz*
J. SPENSER LOTZ
Assistant Attorney General
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 616-7560
slotz@nmdoj.gov

*Attorneys for the State of New Mexico*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

30

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

2

**LETITIA JAMES**
Attorney General of New York

3

By: */s/ Matthew Eisenson*
MATTHEW EISENSON

4

KELSEA SUAREZ
*Assistant Attorneys General*

5

Environmental Protection Bureau

6

Office of the Attorney General
28 Liberty Street, 19th Floor

7

New York, NY 10005
(212) 416-8481

8

matthew.eisenson@ag.ny.gov

9

*Attorneys for the State of New York*

10

11

**DAN RAYFIELD**
Attorney General of Oregon

12

By: */s/ Coby Howell*

13

COBY HOWELL
Senior Assistant Attorney General

14

Oregon Department of Justice
100 SW Market St.

15

Portland, OR 97201
Telephone: (971) 283-8657

16

Fax: (971) 673-5000

17

Email: Coby.Howell@doj.oregon.gov

18

*Attorneys for the State of Oregon*

19

20

21

22

23

24

25

26

**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD
Chief Deputy Attorney General

By: */s/ Daniel T. Wilkes*
DANIEL T. WILKES
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncdoj.gov

*Attorneys for the State of North Carolina*

**MICHAEL A. BRAYMER**
Chief Counsel
Department of Environmental Protection

By: */s/ Michael J. Heilman*
MICHAEL J. HEILMAN*
Litigation Coordinator
Department of Environmental Protection Office
of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222
Phone: 412-442-4241
Email: mheilman@pa.gov

*Attorney for JESSICA SHIRLEY, Chair of the
Pennsylvania Energy Development Authority*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

31

1

2

**PETER F. NERONHA**
Attorney General of Rhode Island

**CHARITY R. CLARK**
Attorney General of Vermont

3

By: */s/ Nicholas M. Vaz*
NICHOLAS M. VAZ

By:     */s/ Jonathan T. Rose*
JONATHAN T. ROSE

4

Special Assistant Attorney General
Office of the Attorney General

Solicitor General
109 State Street

5

Environment and Energy Unit Chief
150 South Main Street

Montpelier, VT 05609
(802) 828-3171

6

Providence, Rhode Island 02903
(401) 274-4400 ext. 2297

jonathan.rose@vermont.gov

7

nvaz@riag.ri.gov

*Attorneys for the State of Vermont*

8

9

*Attorneys for the State of Rhode Island*

10

**WISCONSIN ECONOMIC**
**DEVELOPMENT CORPORATION**

11

Jennifer H. Campbell
Chief Legal Officer

12

13

By: */s/ Jennifer H. Campbell*
JENNIFER H. CAMPBELL**

14

2352 S. Park St., Suite 303
Madison, WI 53713

15

(608) 210-6811
jennifer.campbell@wedc.org

16

17

*Attorney for Wisconsin Economic*
*Development Corporation*

18

19

*pro hac vice application forthcoming
**pro hac vice application pending

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-CV-02015-TMC

32

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744