# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF ARIZONA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>    Defendants. | NO. 2:25-cv-02015-TMC<br><br>DECLARATION OF DEANA CARRILLO IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

I, Deana Carrillo, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of California. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with California Energy Commission (CEC) staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Director of the Reliability, Renewable Energy, and Decarbonization Incentives (RREDI) Division at the CEC. The CEC is responsible for a variety of duties,

including, but not limited to, statewide energy demand forecasting and reliability planning; the permitting of thermal power plants of 50 megawatts or greater; overseeing compliance and enforcement of permits and operations for said power plants; developing efficiency standards for appliances and buildings and load management standards for utilities; and promoting the development and deployment of low carbon fuels, infrastructure for zero and near-zero emission vehicles, and advanced vehicle technologies. RREDI Division is responsible for programs that advance renewable energy, distributed energy resources, grid reliability, and building decarbonization.

3. I have approximately 20 years of public service experience with a successful track record in leading and advising on public engagement and policy development, program development and implementation, and oversight. I have served in my current role as the Director over the RREDI Division for about 4 years, since being promoted to this role in 2021. I initially joined the CEC in November 2020 serving as branch manager over the Local Assistance Financing Office, which focused on loans and incentives. I came to the CEC after working for 16 years under the California State Treasurer's Office, which sits at the nexus of public finance and public policy; there I worked on various grant, financing and incentive programs that leveraged public dollars with private capital to support the state's policy goals. I started my career at the California Treasurer's Office after earning a bachelor's degree in political science from the University of California at Santa Cruz, and also have a Master's in Public Policy from the University of California at Los Angeles.

4. In my capacity as Director of the RREDI Division of the CEC, I am responsible for over 100 multidisciplinary staff that currently implement a $3 billion portfolio over a dozen programs designed to transform the market with new technologies that save energy, costs and reduce greenhouse gas emissions. My division was responsible for informing California's application in response to the United States Environmental Protection Agency (EPA)'s Notice of Funding Opportunity (NOFO), EPA-R-HQ-SFA-23-01, outlining application requirements

DECLARATION OF DEANA CARRILLO         2
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

1  for the Solar For All (SFA) program. I was personally engaged in informing CEC's application
2  for the SFA program, transferring the primary award to the California Public Utilities
3  Commission (CPUC), and guiding the program development for the portion of the SFA award
4  that the CEC is implementing.

5      5.   I submit this declaration in support of the Plaintiff States' Motion for a
6  Preliminary Injunction and to provide details on the ways in which the EPA's termination of the
7  SFA Program will harm California.

**The Solar for All (SFA) Program**

6.   I understand that the Inflation Reduction Act of 2022, Public Law No. 117-169 (2022) (Inflation Reduction Act or IRA), among other things, amended the Clean Air Act to authorize and appropriate to EPA $7 billion, to remain available until September 30, 2024, to make competitive grants to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies. Public Law 117-169, Sec. 60103, 136 Stat. 2065-66 (codified at 42 U.S.C. § 7434). I am aware that this $7 billion appropriation was part of the Congress's larger efforts to create the Greenhouse Gas Reduction Fund, a $27 billion investment to combat the climate crisis by supporting greenhouse gas emission- and air pollution-reducing projects in communities across the country.

7.   I understand that, in accordance with Congress' directive, EPA designed and launched the SFA Program, and that SFA was intended to encourage the deployment of residential distributed solar energy to lower energy bills for millions of Americans and catalyze transformation in markets serving low-income and disadvantaged communities. My understanding is that SFA grantees would provide subsidies and other financial assistance to residential rooftop and residential-serving community solar projects and benefit low-income and disadvantaged communities, in addition to project-deployment technical assistance such as workforce development, community outreach, and other support to help overcome barriers to solar deployment.

8. I understand that on June 28, 2023, EPA published its NOFO, EPA-R-HQ-SFA-23-01, outlining application requirements for the SFA program. The NOFO indicated that, pursuant to the Inflation Reduction Act and the Clean Air Act, EPA would award up to 60 grants to states, territories, tribal governments, municipalities, and eligible nonprofits to expand the number of low-income and disadvantaged communities that have access to affordable, resilient, and clean solar energy programs.

**SFA Application**

9. On October 12, 2023, I understand that the California Infrastructure Economic Development Bank (IBank) submitted an application under the NOFO as the lead applicant on behalf of a coalition of entities representing the State of California, including the California Strategic Growth Council, CEC, CPUC, and California Employment Development Department (EDD). On May 29, 2024, CEC agreed to be designated as the lead applicant for the State of California's SFA award.

10. In developing its application, CEC consulted with a number of stakeholders. These included tribal organizations such as the Blue Lake Rancheria, Hoopa Valley Tribal Council, Yurok Tribe, California Tribal Business Alliance, Torres Martinez Desert Cahuilla Indians regarding tribal initiatives; utility providers including the state's largest investor-owned utilities (Pacific Gas & Electric, San Diego Gas and Electric, and Southern California Edison), Los Angeles Department of Water and Power, eight (8) Community Choice Aggregators, the California Municipal Utilities Association, Southern California Public Power Authority, and various other municipal utilities expressing their commitment to equitable access to clean energy in low income and disadvantaged communities; as well as a number of other stakeholders including the San Francisco Environment Department, California Environmental Justice Alliance, and Center for Sustainable Energy.

11. On July 8, 2024, CEC (on behalf of the coalition of the State of California's entities involved in the submission of the application responding to the NOFO) received a notice

of award in the amount of $249,800,000; a portion of this award was for in-kind technical assistance services of $400,000 from the National Renewable Energy Laboratory. A true and correct copy of EPA' July 8, 2024, award is attached hereto as **Exhibit 1**.

12. On September 3, 2024, CEC transferred the State of California's interest in the SFA funding to CPUC and requested that EPA designate CPUC as the lead applicant of the SFA award.

13. The EPA approved the request to transfer the State of California's SFA award to CPUC. On December 16, 2024, EPA transmitted an Assistance Agreement to CPUC as the SFA recipient, who then sent a copy to CEC. A true and correct copy of the Assistance Agreement is attached hereto as **Exhibit 2**.

14. EPA obligated the entire $249,800,000 balance of the SFA award as of December 16, 2024; a portion of this award was for in-kind technical assistance services of $400,000 from the National Renewable Energy Laboratory. The funds that appeared shortly thereafter were mistakenly placed by EPA in CEC's Automated Standard Application for Payments (ASAP) accounts as of January 23, 2025. These funds should have been placed in CPUC's account, as the prime recipient. However, I understand that EPA later transferred the funds, after an administrative delay, to CPUC's ASAP account in late March of 2025.

15. Upon transferring the State of California's interest in the SFA award to the CPUC and CPUC becoming the prime recipient of the SFA award, CEC became a subrecipient of the award. On July 2, 2025, CEC executed an Interagency Agreement with CPUC that specified CEC's scope of work as well as invoicing and payment transfer procedures between the agencies. A true and correct copy of the Interagency Agreement is attached hereto as **Exhibit 3.**

**California Plans and Designs for SFA Offerings**

16. I understand that upon becoming lead applicant of the State of California's SFA award, CPUC negotiated its work plan and budget with EPA, and that CPUC submitted a draft Work Plan to EPA on October 9, 2024. The joint Work Plan included CEC's work plan for

planning, designing, and implementing its portion of the SFA program. After incorporating revisions in the joint Work Plan to address feedback from EPA, CPUC submitted the final version on November 19, 2024. A true and correct copy of CEC's work plan (that was included in the joint Work Plan) is attached hereto as **Exhibit 4.**

17. CEC's work plan proposed to develop a grant funding opportunity to deploy rooftop solar (single and multifamily), community solar, and associated storage for low-income and disadvantaged communities (LIDACs), including tribes, in California's publicly owned utility (POU) service territories.

18. Pursuant to its approved Work Plan, CEC elected to take a full Program Planning Year to design and be ready for implementing its SFA program focused on POU territories.

19. During this year, CEC did the following:

   a. Conducted program administration tasks such as hiring and training staff, including a CEC SFA Program Lead and CEC SFA Unit Supervisor, and began the recruitment process for two Energy Analyst (EA) staff positions (including completing internal process to establish the two staff positions, advertising the open positions to seek applicants, processing the applications, and contacting candidates for interviews).

   b. Established operating procedures with state partners (CPUC, Employment Development Department (EDD)) to coordinate SFA activities, including an Interagency Agreement with CPUC specifying CEC's scope of work and invoicing procedures.

   c. Held weekly meetings and developed reporting and invoicing mechanisms with state partners.

   d. Conducted multiple briefing sessions to update upper management and commissioners and seek feedback on strategies and proposed solicitation plan.

e. Implemented various outreach strategies and community engagement to ensure that stakeholder perspectives were incorporated into the design of competitive solicitation proposals. For example, staff developed and maintained a CEC SFA webpage where stakeholders can sign up for a listserv, view upcoming events, and access program documents.

f. Conducted extensive stakeholder outreach to POUs, solar developers, community benefit organizations (CBOs), and tribal organizations. This included one-on-one meetings as well as group presentations to POU associations and tribal groups.

g. Developed a tribal engagement and inclusion plan and hosted two tribal listening sessions to gather feedback on tribal needs.

h. Participated in a joint agency informational webinar with state partners (CPUC and EDD) to provide information about the California SFA program to stakeholders.

i. Drafted and released a solicitation concept proposal on July 11, 2025, to describe staff's proposed design of the solicitation that would be released before the end of the year and seek feedback from stakeholders for consideration in finalizing the solicitation design.

j. Hosted a CEC SFA public workshop on July 30, 2025, to answer questions and solicit stakeholder feedback on the solicitation concept proposal, and received multiple written comments from stakeholders by August 11, 2025.

20. CEC also used the Program Planning Year to further develop the program outlined in its application. For example, CEC did the following:

      a. Engaged with stakeholders to solicit input from the solar industry, utilities, CBOs, and tribal organizations related to solar deployment for LIDACs.

      b. Held 17 one-on-one meetings with stakeholders to ask in-depth questions and listen to responses.

      c. Developed and published a Request for Information (RFI) to gather written feedback from stakeholders on how CEC's SFA program can best align with their needs.

      d. Developed and published a solicitation concept proposal describing funding allocation, eligible applicants and projects, federal requirements, and scoring criteria for public feedback.

      e. Joined a master CEC-wide contract with a vendor (Guidehouse) for federal compliance consulting services.

      f. Explored options for technical assistance services.

21. CEC actively worked on designing and preparing to launch its SFA programming throughout 2025 and anticipated it would launch CEC's SFA programming in the fourth quarter of 2025.

**EPA Eliminates the SFA Program and Terminates CEC's SFA Grant**

22. On August 7, 2025, I became aware that EPA had decided to terminate the SFA Program. EPA announced the decision through an X post from EPA Administrator Zeldin. The post is reproduced below.[1]

---

[1] Lee Zeldin (@epaleezeldin), X (Aug. 7, 2025, 11:07 AM), https://x.com/epaleezeldin/status/1953518426602803684



23. Later that same day, CEC learned that CPUC had received a letter from EPA purporting to terminate California's SFA grant (Termination Letter).

24. The Termination Letter stated that the One Big Beautiful Bill Act (OBBBA) had repealed the underlying authority for the SFA program and rescinded unobligated amounts to carry out the program. EPA stated that it believed OBBBA had "effectively and completely terminated the statutory authority and all appropriations related to Solar for All" and "no longer possesses either the substantive legal authority or the financial appropriations" needed to continue the SFA program.

25. Prior to EPA's transmission of the Termination Letter, CPUC's ASAP account contained the entirety of CEC's SFA subaward. However, I understand that, after CPUC received EPA's Termination Letter, CPUC halted all disbursements from the ASAP account. My understanding is that CPUC did so to make clear that it was not consenting to the termination of the program or engaging in the closeout process. As of the date of this Declaration, that remains the case.

**Termination of CEC's SFA Anticipated Subaward Has and Will Harm California and its Residents**

26. The loss of the Solar for All Program will harm California and its residents.

27. The portion of California's SFA Program that CEC has been expecting to administer would serve approximately 7,956 low-income households, reducing electric utility bills by a 20-30 percent average savings per benefiting household. With the loss of the SFA Program, Californians will be irreparably harmed because CEC will no longer be able to offer grants to deploy rooftop solar (single and multifamily), community solar, or associated storage installations benefiting low-income households, or enabling upgrades for roof repair or replacement and/or electrical work.

28. The premature end of the SFA Program also harms CEC as an employer. CEC had used SFA funding to hire 2 employees (a Program Lead and Unit Supervisor). CEC was in the process of hiring two additional employees at the time of the EPA Termination Letter, and hiring efforts have since been paused. CEC will be unable to recuperate staff time and resources already invested into program implementation. Given the State of California's current budget outlook, it is unlikely that CEC will be able to secure state funding to cover administrative costs or redirect funds from other programs, as they are facing similar constraints. If CEC had to redirect state funds, programs including, without limitation, improvement of plumbing and ventilation at schools, decarbonization of existing buildings, and incentives for construction of new zero-emission homes would suffer losses. Moreover, even the uncertainty caused by EPA's termination of the Program is likely to causes many qualified applicants not to wait, and instead take positions elsewhere. CEC faces a risk of reputational harm as potential applicants see that CEC is unable to hire candidates for job openings it previously posted, and creates the risk that candidates are more likely to perceive CEC jobs as "high risk."

29. Other harms resulting from the loss of the SFA Program include reputational harm to CEC due to loss of confidence from stakeholders located in and/or serving low-income

DECLARATION OF DEANA CARRILLO
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

10

1  communities. The SFA Program promised to lower household electric utility bills for Program
2  participants by a minimum of 20 percent, which is a substantial amount, and now CEC will have
3  to retract its Program offerings as a result of federal actions. This harms CEC's legitimacy and
4  its relationships with low-income communities and tribes that may not view government funding
5  (state or federal) as reliable. The CEC had previously communicated the anticipated 20 percent
6  utility bill savings for Program participants to the public in numerous communications,
7  including, among others, its July 30, 2025 webinar notice and associated presentation materials.
8  A true and correct copy of CEC's July 30, 2025 webinar notice is attached hereto as **Exhibit 5**.
9  A true and correct copy of CEC's July 30, 2025, webinar presentation is attached hereto as
10 **Exhibit 6**.

11       30.     Members of the community have already conveyed concerns regarding the
12 reliability and availability of SFA funding to CEC. During stakeholder engagement meetings
13 regarding Solar For All, for instance, CEC staff regularly received inquiries and addressed
14 concerns regarding the reliability of federal funds. During a public workshop held on July 30,
15 2025, CEC staff proactively addressed this concern by stating the fact that California's SFA
16 award was obligated, and that we were continuing to move forward with the SFA solicitation
17 on the basis that funding was committed.[2] https://energy.zoom.us/rec/play/yUZes7bfwG
18 m4Bfv16co5v4eQy483MUFhArieTdYDiK8tWDPs3nxV77mQkCaGARLm0mOaVJAdG9xl
19 GdL3.vrSjwkp-sNv6DOpk?eagerLoadZvaPages=sidemenu.billing.plan_management&
20 accessLevel=meeting&canPlayFromShare=true&from=share_recording_detail&continueMode
21 =true&componentName=rec-play&originRequestUrl=https://energy.zoom.us/rec/share/

---

[2] *See* timestamp 05:30 in the Zoom workshop recording, available at:
https://energy.zoom.us/rec/play/yUZes7bfwGm4Bfv16co5v4eQy483MUFhArieTdYDiK8tWDPs3nxV77mQkCaGARLm0mOaVJAdG9xlGdL3.vrSjwkp-sNv6DOpk?eagerLoadZvaPages=sidemenu.billing.plan_management&accessLevel=meeting&canPlayFromShare=true&from=share_recording_detail&continueMode=true&componentName=rec-play&originRequestUrl=https%3A%2F%2Fenergy.zoom.us%2Frec%2Fshare%2FbDA0MwXz9iFGsrp0FIm2GJv4LZrpt8OaOphIap4tsa-040h22OJeGjErGOGoQNnQ.uzHDRDNbN1eqBJNp (HOMES Zoom Workshop Recording). A true and correct copy of a document transcribing July 30, 2025 Zoom Workshop Recording using Zoom transcribing feature (Zoom Transcript) is attached hereto as **Exhibit 7.**

bDA0MwXz9iFGsrp0FIm2GJv4LZrpt8OaOphIap4tsa-040h22OJeGjErGOGoQNnQ.uzHDRDNbN1eqBJNp If EPA terminates the SFA Program, CEC's reputation and goodwill will continue to be harmed in a similar manner.

31. EPA's efforts to revoke previously obligated funds have impaired, and will continue to impair, CEC's reputation and goodwill even beyond the confines of this specific program. On August 8, 2025, CEC staff hosted a public workshop specific to its implementation of the U.S. Department of Energy's Home Efficiency Rebates (HOMES) Program, authorized by the Inflation Reduction Act Section 50121, in which staff was soliciting feedback on proposed program design and a solicitation concept proposal. During that workshop, CEC staff received several written and verbal questions regarding the viability of the HOMES program funding and stakeholders' skepticism about participating in a federally funded program in light of the federal government's efforts to terminate or dismantle grant programs, including SFA. Comments and timestamps from the HOMES Zoom Workshop Recording including CEC staff responses, are listed below.

   a. CEC stated: "We have not received any indication from the Department of Energy of any funding changes to these programs." Ex. 7 at 21:31-00:21:38.

   b. In response, an anonymous attendee asked the CEC how that statement was squared with consistent actions and statements from the Trump administration that suggest all IRA funding, including obligated and contracted funds, are to be withheld/cancelled. Ex. 7 at 39:10-39:24. The attendee's question is also reflected in an excel spreadsheet tracking written questions from stakeholders at the HOMES Zoom Workshop and kept in the ordinary course of business by CEC staff, a true and correct copy of which is attached hereto as **Exhibit 8**.

   c. A representative from the electrical industry stated: "I mean, what's the likelihood that they just basically sit on this thing and never actually let you spend the money." Ex. 7 at 1:40:09-1:40:41.

        d.        The CEO of a home upgrade company expressed concern about going to a bank and requesting a loan given the current administration's behavior. The CEO further requested that the CEC actively pursue publicly alternate pathways for the SFA Program because that behavior poses acute risk to contractors, aggregators, and the statewide implementer that suggests participation will be very muted given the risk imposed by the federal government's unreliability. Ex. 7 at 1:52:32-1:54:27.

        e.        A representative from the electrical industry inquired about how the CEC is learning from the cancellation of the Solar for All program given the unpredictability of the federal administration in terms of risk management for contractors and the potential HOMES statewide implementer. Ex. 7 at 1:56:58-01:57:59.

32.        In addition, CEC staff received the following written questions from stakeholders submitted via the written Zoom Q&A:

        a.        "Is this workshop still relevant given recent and easily anticipated federal funding cuts? (Please give us workshop participants some confidence that we are not wasting our time engaging with this program)" (Anonymous Attendee). Ex. 8. "What alternatives is CEC developing given uncertainty of federal funding? Or is CEC developing only one plan, that assumes federal funding comes through as was assumed when this program design process commenced?" (Anonymous Attendee). *Id.*

33.        The HOMES Zoom Workshop Recording shows CEC staff responding to these questions, as noted in the timestamps above, by stating that no indication of funding changes to these programs have been received and that CEC staff are continuing to work with DOE.

34.        Moreover, CEC acted in reasonable reliance on the continued existence of the SFA Program. CEC expended more than 3,700 employee hours on SFA programming. These employees were from all disciplines, including clerical, technical, legal, financial, and more. In so doing, CEC had to forgo other funding opportunities, program structures, and work on other CEC programs. There is no way to recover this lost time or effort.

35. Nor can CEC simply backfill with state funds to keep its SFA offerings available. Given the State of California's current budget outlook, it is not anticipated that state funding will be available to cover administrative costs or redirect funds from other programs, as the State is facing budgetary constraints. The SFA program also allowed CEC to work closely with EPA in developing its work plan. The loss of that collaboration and programmatic support will cause irreparable harm to CEC.

**Conclusion**

36. EPA's decision to terminate the entire Solar for All program, including the subgrant awarded to CEC, has caused and will continue to cause irreparable harm to the State of California and its residents.

I declare under penalty of perjury under the laws the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of November, 2025, at Sacramento, California.

*Deana Carrillo*
Deana Carrillo
Director, Reliability, Renewable Energy, and Decarbonization Incentives Division
California Energy Commission