# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF ARIZONA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, <br><br> Defendants. | NO. 2:25-cv-02015-TMC <br><br> DECLARATION OF BRIAN GRANAHAN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

I, Brian Granahan, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I submit this declaration to provide details on the ways in which the Environmental Protection Agency's ("EPA") termination of the Solar for All ("SFA") Program has harmed Illinois.

2. I am the Director of the Illinois Power Agency ("IPA" or "Agency"), a body politic and corporate created under the laws of the State of Illinois. 20 ILCS 3855/1-5(13). I have

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

worked as Agency Director since October 2022. Prior to my role as the Director, I served as the Agency's Chief Legal Counsel for over eight years.

3. I have worked on energy and environmental policy and related matters since 2007, with a particular focus on supporting renewable energy development. My professional experience includes serving as a Clean Energy Advocate for Environment Illinois, a legal and policy advisor to the Chairman of the Illinois Commerce Commission (the State's public utilities commission), and as a Vice President for strategic consulting firm Tur Partners and with the startup The Sustainability Exchange LLC.

4. I have a Bachelor of Science Degree with Honors from the University of Iowa in Political Science (obtained in 1999) and a Juris Doctor Degree from New York University School of Law (obtained in 2003). In a volunteer capacity, I have also served as the Vice President of the Board of Directors of the Clean Energy States Alliance and as a Board Member for Green Economy Chicago and the Illinois Environmental Council.

5. In my capacity as Director of the IPA, I am responsible for leading and overseeing the staff that manage IPA programs and competitive procurements used to facilitate the development of new renewable energy projects. These include the Illinois Solar for All program, an income-eligible solar incentive program authorized under Section 1-56(b) of the Illinois Power Agency Act. 20 ILCS 3855/1-56(b). I also have responsibilities for the development of clean energy policy in Illinois, including working in partnership with other Illinois State agencies and the Office of the Governor on administrative and legislative initiatives designed to facilitate additional renewable energy development.

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6. I am a resident of the State of Illinois. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with IPA staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

**Illinois Power Agency**

7. The Illinois Power Agency was established in 2007 pursuant to the Illinois Power Agency Act (the "IPA Act"). 20 ILCS 3855. Its powers and duties are set forth in 20 ILCS 3855/1-20. Among its responsibilities are: 1) developing procurement plans, including an electricity procurement plan, a zero-emission standard procurement plan, a carbon-free mitigation credit procurement plan, and a long-term renewable resources procurement plan, and 2) conducting procurement events and administering programs to achieve these plans. The Agency is focused specifically on the electricity supply requirements of residential and small commercial customers who receive fixed-price default electricity supply service from Illinois electric utilities.

8. Along with developing procurement plans and conducting procurement events, the Agency also administers programs for implementation of the State's renewable portfolio standard ("RPS"). Under the Illinois RPS, the Agency administers and executes processes for the procurement and retirement of renewable energy credits ("RECs") by Illinois electric utilities to ensure that a progressively larger annual share of electricity supply is met through renewable energy generation. RECs constitute the environmental attributes of 1 megawatt hour (MWh) of electricity generation produced by a qualifying renewable energy generation facility decoupled from the underlying electricity itself. Under Illinois law, RECs are used to both determine

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

progress toward RPS goals and provide consideration for incentive payments used to facilitate new renewable energy generating facilities, such as community solar farms and rooftop photovoltaics.

9. As part of the implementation of the Illinois RPS, the IPA administers the Illinois Solar for All Program, which is separate and apart from the federal Solar for All Program (SFA) discussed below. The Illinois Solar for All Program, which was created pursuant to Public Act 99-0906 (effective July 1, 2017) and formally launched in 2019, provides incentives for solar projects that serve households earning no more than 80% of the Area Median Income, low-income and environmental justice communities, and non-profits and public facilities that serve those communities. 20 ILCS 3855/1-56. A core objective of Illinois Solar for All is to guarantee significant bill savings for income-eligible households and reduce the energy burden for disadvantaged communities. The Illinois Solar for All Program is funded through utility-collected ratepayer funds and through monies available in the State's Renewable Energy Resources Fund, which is a finite funding source without ongoing inputs outside of the Solar for All subgrant awarded by the Illinois Finance Authority, which received a Solar for All grant from the U.S. Environmental Protection Agency ("EPA").

**The Federal Solar for All Program**

10. In 2022, then-President Biden signed the Inflation Reduction Act. Inflation Reduction Act of 2022, Public Law No. 117-169 (2022). Among other things, the Inflation Reduction Act amended the Clean Air Act to authorize and appropriate $7 billion to the EPA, to remain available until September 30, 2024, to make competitive grants to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies. *Id*., Sec.

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

60103, 136 Stat. 2065-66 (codified at 42 U.S.C. § 7434). This $7 billion appropriation was part of Congress's Greenhouse Gas Reduction Fund, a $27 billion investment to combat the climate crisis by supporting greenhouse gas- and air pollution-reducing projects in communities across the country.

11. In accordance with Congress' directive, EPA designed and launched the federal SFA program. SFA was intended to encourage the deployment of residential distributed solar energy to lower energy bills for millions of Americans and catalyze transformation in markets serving low-income and disadvantaged communities. SFA grantees would provide subsidies and other financial assistance to residential rooftop and residential-serving community solar projects in and benefiting low-income and disadvantaged communities, in addition to project-deployment technical assistance such as workforce development, community outreach, and other support to help overcome barriers to solar deployment.

12. On June 28, 2023, EPA published its Notice of Funding Opportunity ("NOFO"), EPA-R-HQ-SFA-23-01, outlining application requirements for the SFA program.[1] The NOFO indicated that, pursuant to the Inflation Reduction Act and the Clean Air Act, EPA would award up to 60 grants to States, territories, Tribal governments, municipalities, and eligible nonprofits to expand the number of low-income and disadvantaged communities that have access to affordable, resilient, and clean solar energy programs.

13. Per the NOFO, to qualify as a low-income and disadvantaged community, a beneficiary must meet at least one of the following categories: (a) communities identified as disadvantaged by the Climate and Economic Screening Justice Tool for mapping; (b) a limited

---

[1] https://www.grants.gov/search-results-detail/348957

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

number of additional communities identified as disadvantaged by EPA's Environmental Justice Screening and Mapping tool; (c) geographically dispersed low-income households; and (d) properties providing affordable housing.

**Illinois Finance Authority Applied for and Received SFA Funding**

14. The Illinois Finance Authority (IFA) applied for and received $156,120,000 of SFA funding from EPA on July 8, 2024. *See generally*, **IFA Declaration**.

15. The IFA's proposal for SFA funding included a subgrant to expand two Illinois Solar for All ("ILSFA" or Illinois Solar for All) subprograms, the Community Solar subprogram and the Residential Solar (Small) subprogram. The IPA worked with the IFA to design a proposal that would build upon the existing Illinois Solar for All program that sought to achieve the same objectives as the EPA Solar for All program, namely supporting access to solar projects for income-eligible households and communities. Rather than create a parallel or duplicate program to utilize federal funding, the Illinois grant proposal expanded the budget of the Illinois Solar for All program to leverage the existing administrative infrastructure, brand recognition, and network of solar vendors to increase the direct impact of federal funds.

16. On January 28, 2025, the IPA and the IFA executed an inter-governmental agreement authorizing a subaward from the IFA to the IPA. As a subgrantee, the IPA would incorporate the subgrant into the ILSFA budget and accept, review, and award contracts for REC payments funded by the SFA subgrant. The IPA would also ensure such projects met federal grant requirements and report on outcomes to the IFA.

17. Under the ILSFA Community Solar subprogram, the IPA, as a subgrantee, would receive $11 million annually for five years to expand the budget for the subprogram. The

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Community Solar subprogram provides incentive payments to the program applicant in exchange for the RECs generated by a qualifying new community solar project. The REC incentive payments bring down the cost of that project and allow the community solar developer to provide higher savings to income-eligible subscribers. Community solar projects that receive REC incentive payments through ILSFA cannot charge subscribers more than 50% of the value of the energy savings credited to the subscriber's utility bill, thereby guaranteeing that income-eligible subscribers receive at least 50% of the savings generated by their community solar subscription. Additionally, projects that participate in the ILSFA Community Solar subprogram must demonstrate community engagement in the development of the project, adhere to robust consumer protection standards, be built by workers receiving the applicable prevailing wage rate, and employ a minimum number of job trainees from eligible programs on the project construction workforce.

18. The IPA was taking steps in preparation to finalize a contract award to a solar company for $1.5 million in REC incentives, funded from the $11 million first year allocation of SFA funding drawn down earlier this year, but EPA's abrupt termination of the SFA program on August 7, 2025, occurred right as the IPA was finalizing the REC contract. This project is a community solar project 800 kW in size, which would serve approximately 200 income-eligible households and generate savings for those households on the order of approximately $8,800 over 20 years, or about $400 per household per year.

19. The IPA is scheduled to open the next ILSFA Community Solar application window on October 6, 2025; funding for that program cycle was intended to include the remaining SFA funding from the last program year (which is still in the IPA's possession) and

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

the $11 million from the SFA subgrant second year's allocation, totaling about $20 million in additional funds to support community solar projects. The IPA also planned to release guidance documents detailing the approach to allocating federal funds to projects for public comment throughout August and September 2025, and aimed to finalize the guidance for applicants by September 15, 2025.

20. The Residential Solar (Small) subprogram (or "Small Residential subprogram") offers REC incentives for solar projects installed at residential buildings of 1-4 units where the resident households (or, in the case of a 4-unit building, three out of the four units) earn no more than 80% of the area median income. The program prohibits upfront costs and requires that the customer receives 50% of the value of the produced by the system, seen as bill savings.

21. Due to a sharp increase in applications to the Small Residential subprogram in the first half of 2025, the IPA planned to request disbursement of the first annual allocation of $10 million for the Residential Solar (Small) subprogram in October or November 2025, to award REC incentive contracts to additional projects. On average, each project would generate about $1,300-1,860 in customer savings in the first year, and approximately $16,000-21,000 over the life of the project. The $10 million would allow ILSFA to re-open the application portal to accept up to approximately 350 additional project applications, and vendors have told the Program Administrator that they already have dozens of projects ready for submission.

22. The IPA is required under Illinois law to file a revised Long Term Renewable Resources Procurement Plan ("Long-Term Plan") with the Illinois Commerce Commission ("ICC") by October 20, 2025, which contains proposed budgets for each subprogram of the Illinois Solar for All for the program years spanning June 1, 2026 to May 31, 2028, as well as

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

detailed requirements for projects that receive incentives through its programs. The IPA planned for those budgets to include the annual $11 million allocation from the federal SFA award in the annual Community Solar subprogram budget. The Long-Term Plan is then subject to a docketed proceeding before the ICC, with an Order approving the Long-Term Plan and the budgets contained therein required under law by February 17, 2026. The EPA's termination of the SFA Program creates uncertainty for the IPA over its budgeting and obligatory multi-year planning process for establishing program design and requirements, which is subject to review and approval by the ICC. Specifically, the IPA does not know whether to include the annual $11 million allocation from the SFA award in its planned budget for the Community Solar subprogram, or the annual $10 million allocation in its budget for the Small Residential subprogram.

23. Per the IPA Act, "no additional funds shall be deposited into the Illinois Power Agency Renewable Energy Resources Fund unless directed by order of the Commission." The Commission's Order approving the IPA's 2024 Long-Term Renewable Resources Procurement Act approved deposits into the Renewable Energy Resources Fund from the subgrant of SFA funds from the IFA to the IPA.

24. Per the IPA Act, the IPA must hold federal funding for the ILSFA Community Solar Program in the Renewable Energy Resources Fund until a project is complete, whereafter the IPA can disburse REC delivery contract payments to the Approved Vendor (the entity which sells RECs under an ILSFA REC delivery contract). 20 ILCS 3855/1-56(b)(2).

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**EPA Eliminates Solar For All and Terminates Illinois's SFA Grant**

25. On August 7, 2025, I became aware that EPA was planning to terminate the entire SFA program, as well as all grants awarded under the program. It appears that EPA first announced the decision through an X post from EPA Administrator Zeldin. The post is reproduced below.[2]



Lee Zeldin
@epaleezeldin

The One Big Beautiful Bill eliminated the Greenhouse Gas Reduction Fund, which included a $7 billion pot called "Solar for All".

In some cases, your tax dollars were diluted through up to FOUR pass-through entities, each taking their own cut off the top!

The bottom line is this: EPA no longer has the statutory authority to administer the program or the appropriated funds to keep this boondoggle alive.

Today, the Trump EPA is announcing that we are ending Solar for All for good, saving US taxpayers ANOTHER $7 BILLION!

26. On August 7, 2025, the IFA received a letter from EPA terminating its SFA grant. The IFA notified the IPA of this termination on August 7, 2025.

27. The IPA immediately paused all work on implementing the SFA subgrant, in accordance with the EPA communication.

**Termination of the SFA Program Has and Will Harm Illinois and its Residents**

28. The loss of the federal SFA Program will harm Illinois and its residents.

---

[2] Lee Zeldin (@epaleezeldin), X (Aug. 7, 2025, 11:07 AM), https://x.com/epaleezeldin/status/1953518426602803684.

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

29. The IPA expected to serve approximately 3,000-4,000 low-income households through Community Solar projects utilizing SFA funding and approximately 1,000-1,300 low-income households through the Small Residential subprogram. With the loss of the previously obligated funds, the IPA will no longer be able to expand ILSFA and will have substantially less funding to support solar project deployment in Illinois.

30. The loss of SFA funding means that approximately 600 income-eligible households in Illinois who could have otherwise participated in ILSFA's Community Solar Program this year will not realize savings of approximately $700 in the first year, and about $10,000 per household over 15 years. Likewise, approximately 350 eligible households that could have participated in the Small Residential subprogram this year with the SFA funding will not realize an estimated savings of $1,300 in the first year and $21,000 in total, as a result of EPA's termination of SFA funding.

31. Including the funding it has already received but not yet disbursed, the IPA may lose up to $85 million in expected funding for ILSFA over the entire five years of the program.

32. The IPA's third-party program administrator has also incurred approximately $28,900 in costs from staff time. The IPA planned to seek reimbursement for these additional costs from the Administrative Costs portion of the SFA grant. The IPA is unsure whether it can seek reimbursement for such costs and is also unsure whether it can distribute the $11 million drawn down from its allocated funds and currently in the IPA's possession because of the following language in the Assistance Amendment the IFA received: "The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after

DECLARATION OF BRIAN GRANAHAN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award of amendment mailing date."

33. In addition, based on Illinois Solar for All job trainee requirements, SFA-funded projects would employ at least 30 job trainees in Illinois' solar industry. This compounds the harm already caused to the solar industry by the Trump Administration's early end of federal tax credits for distributed solar.

34. More generally, loss of the SFA Program and the loss of federal support for solar energy generally will harm Illinois and its residents. The IPA has included SFA subgrant funding in public estimates of future budgets, has indicated to program participants that the program will accommodate additional projects, and has made planning decisions based on the supporting programs that the IFA planned to launch—such as home repair grants and working capital loans for small businesses. Unraveling those planned program updates and budget expansions will harm the trust that the IPA has built over several years with the businesses that serve income-eligible communities, the community-based organizations that help promote the ILSFA program, and with the communities themselves. Without the SFA subgrant, Illinois will not be able to support thousands of behind-the-meter solar installations and community solar subscriptions that would save residents money at a time when electricity rates are drastically increasing. Reducing the deployment of solar generation projects will also hinder the IPA's ability to procure the statutorily-required quantities of RECs needed to meet Illinois' Renewable Portfolio Standard and will negatively impact the health of Illinois residents by prolonging pollution from non-renewable sources of electricity.

DECLARATION OF BRIAN GRANAHAN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

35. Moreover, the IPA acted in reasonable reliance on SFA's fully-obligated funding continuing to be available for the entire five-year program window. IPA staff expended hundreds of employee hours on SFA programming. In so doing, the IPA had to shift work to other staff, delay long-term strategic projects, and increase oversight of its Program Administrator as new processes were developed. There is no way to recover this lost time or effort.

36. The IPA cannot simply replace EPA's SFA Program resources with state resources. The non-federal funding for REC incentives awarded by ILSFA comes from two independent sources: utility-collected ratepayer funds, and the Renewable Energy Resources Fund. The utility-collected ratepayer funds are not state-held funds and are subject to statutory rate-impact limits. 20 ILCS 3855/1-75(c)(1)(E). The Renewable Energy Resources Fund will not be replenished under Illinois law, (ILCS 3855/1-56(b-5), and without the federal SFA subgrant, the Renewable Energy Resources Fund only has sufficient funds to support ILSFA budget through May 31, 2027.

## Conclusion

37. EPA's decision to terminate the entire Solar for All program has caused and will continue to cause irreparable harm to Illinois and its residents.

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

I declare under penalty of perjury under the laws the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of November, 2025, at Chicago, Illinois.

/s/ _____
Brian P. Granahan
Director
Illinois Power Agency
180 N. Wabash Ave., Suite 500
Chicago, Illinois 60601

DECLARATION OF BRIAN GRANAHAN
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744