1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9
10
11

STATE OF ARIZONA, et al.,

NO. 2:25-cv-02015-TMC

Plaintiffs,

12

v.

13

14
15
16

U.S. ENVIRONMENTAL PROTECTION
AGENCY; and LEE ZELDIN, in his
official capacity as Administrator of the
U.S. Environmental Protection Agency,

Defendants.

DECLARATION OF ELIZABETH
MAHONY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION

17

18      I, Elizabeth Mahony, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that

19  the following is true and correct:

20          1.      I am a resident of the Commonwealth of Massachusetts. I am familiar with the

21  information in the statements set forth below either through personal knowledge,

22  consultation with Massachusetts Department of Energy Resources staff, or from my review

23  of relevant documents and information. If called as a witness, I could and would testify

24  competently to the matters set forth below.

25          2.      I am the Commissioner at the Massachusetts Department of Energy Resources

26  ("DOER"). I have held that position since February 2023.

DECLARATION OF ELIZABETH
MAHONY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

1

1          3.      I am a graduate of Marist University and Suffolk University School of Law. My

2     professional focus has been on the energy field since 2011, beginning with my role as the

3     Counsel for the Senate chair of the Joint Committee on Telecommunications, Utilities, and

4     Energy, where I led staff in developing major energy legislation.[1] Immediately following

5     that experience, I joined DOER as legal counsel, eventually serving as Acting General

6     Counsel, with a special focus on the development of solar incentive regulations, policy

7     report drafting, and management of the joint procurement of clean energy resources with

8     the Massachusetts Electric Distribution Companies ("EDCs") pursuant to Green

9     Communities Act, St. 2008, c. 169, § 83A (Section 83A), as amended by the Competitive

10    Electricity Act.[2] During this time, I coordinated for DOER the drafting of three

11    solicitations for clean energy under Section 83A, including a multi-state effort among three

12    states and six electric companies, resulting in multiple contracts for onshore wind and solar

13    energy generation. I also supported the policy teams in closing out the Solar Renewable

14    Energy Credit incentive program and in developing the regulations for the Solar Renewable

15    Energy Credit II incentive program, which ultimately supported the creation of 2.2

16    gigawatts of solar capacity in Massachusetts (combined).   At the Massachusetts Office of

17    the Attorney General, I served in the Energy and Telecommunications Division, since

18    renamed the Energy and Ratepayer Advocacy Division, focusing primarily on

19    adjudications and investigations at the Department of Public Utilities ("DPU") regarding

20    utility clean energy procurements, solar program development, and clean energy rate

21    design, as well as consumer protection advocacy and legislative engagement. My advocacy

22    before the DPU included the adjudication of the requests for proposals, and resulting long-

23    term contracts, for onshore wind, solar energy, offshore wind, and hydroelectric power

24

25    [1] An Act relative to competitively priced electricity in the Commonwealth, c. 209 of the Acts of 2012; and An Act
      relative to the emergency service response of public utility companies, c. 216 of the Acts of 2012.
26    [2] Section 36, of c. 209 of the Acts of 2012.

1  generation. In this role I was the lead on matters related to solar energy and other types of

2  distributed energy generation.

3      4.    In my capacity as Commissioner of DOER, I am responsible for overseeing and

4  directing all work at the department, including the Solar for All ("SFA") program.

5      5.    I submit this declaration to provide details on the ways in which the

6  Environmental Protection Agency's termination of the SFA Program has harmed

7  Massachusetts.

8  **The Solar for All Program**

9      6.    In 2022, President Biden signed the Inflation Reduction Act. Inflation

10  Reduction Act of 2022, Public Law No. 117-169 (2022). Among other things, the Inflation

11  Reduction Act amended the Clean Air Act to authorize and appropriate to EPA $7 billion,

12  to remain available until September 30, 2024, to make competitive grants to enable low-

13  income and disadvantaged communities to deploy or benefit from zero-emission

14  technologies. Public Law 117-169, Sec. 60103, 136 Stat. 2065-66 (codified at 42 U.S.C. §

15  7434). This $7 billion appropriation was part of Congress's Greenhouse Gas Reduction

16  Fund, a $27 billion investment to combat the climate crisis by supporting greenhouse gas-

17  and air pollution-reducing projects in communities across the country.

18      7.    In accordance with Congress's directive, EPA designed and launched the Solar

19  for All Program. SFA was intended to encourage the deployment of residential distributed

20  solar energy to lower energy bills for millions of Americans and catalyze transformation in

21  markets serving low-income and disadvantaged communities. SFA grantees would provide

22  subsidies and other financial assistance to residential rooftop and residential-serving

23  community solar projects in and benefit low-income and disadvantaged communities, in

24  addition to project-deployment technical assistance such as workforce development,

25  community outreach, and other support to help overcome barriers to solar deployment.

26

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

8.      On June 28, 2023, EPA published its Notice of Funding Opportunity (NOFO), EPA-R-HQ-SFA-23-01, outlining application requirements for the SFA program. The NOFO indicated that, pursuant to the Inflation Reduction Act and the Clean Air Act, EPA would award up to 60 grants to States, territories, Tribal governments, municipalities, and eligible nonprofits to expand the number of low-income and disadvantaged communities that have access to affordable, resilient, and clean solar energy programs.

**Massachusetts Applied for and Received SFA Funding**

9.      On October 11, 2023, DOER submitted an application under the NOFO.

10.     In developing its application, DOER consulted with a number of stakeholders, including municipalities, community-based organizations, lenders, utilities, housing authorities, installers and developers, industry groups, regional planning agencies, and organized labor representatives. As a result of initial stakeholder and program scoping conversations, DOER identified the Massachusetts Clean Energy Center, the Massachusetts Housing Finance Agency ("MassHousing"), and Boston Housing Authority (Collectively, "Coalition Members") as key partners with unique expertise, relationships, and administrative capabilities to effectively serve specific target communities under the program. As a result, DOER executed memoranda of agreement with Coalition Members to form the Massachusetts Solar for All Coalition. DOER and Coalition Members developed an application straw proposal[3] and solicited broad public feedback and convened working groups to provide feedback and refine the application. As a result of extensive stakeholder engagement efforts, DOER received over 80 letters of support for its application from a wide array of stakeholders spanning industry, community organizations, municipalities, and organized labor. A true and correct copy of all letters of support received by DOER for its SFA application are attached hereto as **Exhibit 1**.

---

[3] EPA Solar for All Opportunity Massachusetts Application Concept Proposal, https://www.mass.gov/doc/massachusetts-solar-for-all-application-straw-proposal/download

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

4

11.     DOER was awarded $156,120,000 of SFA funding on April 22, 2024.  On July 11, 2024, EPA transmitted an Assistance Agreement to DOER. A true and correct copy of DOER's Assistance Agreement is attached hereto as **Exhibit 2**.

12.     EPA obligated the entire $156,120,000 balance of DOER's SFA award July 8, 2024, the date of the Assistance Agreement. DOER's $156,120,000 award appeared shortly thereafter in DOER's Automated Standard Application Payments (ASAP) accounts.

**Massachusetts Plans and Designs its SFA Offerings**

13.     Between the date of its award and December 2024, DOER negotiated its work plan and budget with EPA. On October 25, 2024, DOER submitted its final Work Plan to EPA. The Work Plan outlined DOER's plan for planning, designing, and implementing an SFA Program within Massachusetts.  A true and correct copy of DOER's Work Plan is attached hereto as **Exhibit 3**. During this time, DOER was limited to using no more than 2% of its SFA award for certain costs related to developing the Work Plan.

14.     DOER's Work Plan proposed financial assistance and technical assistance programming to serve the small residential (1–4 units), affordable multifamily, and community shared solar sectors. Specific programs proposed included a zero-interest loan for small residential direct ownership ("SR – Loan"), a solar lease initiative for small residential third-party ownership ("SR – Lease"), grants and bridge loans for public and private affordable housing projects ("AMF – Private" and "AMF – Public" programs), and grants to Low Income Community Shared Solar ("LICSS") projects, with additional funding reserved for Community-Owned Community Shared Solar ("COCSS") and Municipal Light Plant Community Shared Solar ("MLPCSS"). Proposed technical assistance programming included decision support for individual homeowners as well as support for project design, financial modeling, and implementation for affordable multifamily property owners and developers of alternative/community-owned community shared solar. The Work Plan also proposed several supporting initiatives to complement the

1   core financial and technical assistance offerings, including education and outreach funding

2   for municipalities and community-based organizations, funding to support improvements in

3   municipal permitting, workforce development programming, funding to support

4   streamlining community shared solar customer participation, and additional technical

5   assistance such as quality assurance and system inspection.

6       15.    EPA approved DOER's work plan on December 11, 2024, and the funding

7   restriction was lifted.

8       16.    Pursuant to its approved Work Plan, DOER had the option to take a full

9   Program Planning period to design and ready for implementation its SFA program.

10  Ultimately, DOER did not utilize the full Program Planning period. Following the

11  submission of its Work Plan on October 25, 2024, DOER and Coalition Members engaged

12  in stakeholder conversations to further refine program design. Once these program design

13  decisions were made, DOER submitted a revised Work Plan on January 15, 2025, to

14  receive approval from EPA to move forward with implementation and begin delivering

15  program impacts as quickly as possible. DOER was notified on January 16, 2025, that the

16  revised Work Plan met the Planning Period Term and Condition and that the specific

17  condition on revisions to EPA-approved Solar for All workplan in the one-year planning

18  period ("Specific Condition III.A.2") was lifted. A true and correct copy of DOER's

19  Assistance Amendment reflecting this approval is attached hereto as **Exhibit 4**. The

20  Assistance Amendment allowed DOER to request drawdown for revised work without

21  prior approval from the EPA, *see* Exhibit 4 at 21, and officially exit the planning period. A

22  true and correct copy of the revised Work Plan submitted on January 15, 2025, is attached

23  hereto as **Exhibit 5**. A true and correct copy of EPA's email notifying DOER that it met

24  the Planning Period Term and Condition is attached hereto as **Exhibit 6**.

25      17.    Since receiving the Assistance Agreement from EPA, DOER did the following:

26

a.  Hired or reallocated approximately 14.5 full-time employees to implement the program, secured $8,300,000 in complementary state funding to support program administration costs, established financial tracking and reporting mechanisms, developed quality assurance procedures to support reporting requirements, and scoped and drafted a request for proposals ("RFP") for a Davis-Bacon reporting software solution;

b.  Developed and maintained Massachusetts SFA websites for public consumption; issued a press release attached hereto as **Exhibit 7**; created and distributed a Massachusetts SFA newsletter; developed a community and stakeholder engagement strategy; attended conferences and industry events; and began implementing the aforementioned community and stakeholder engagement strategy, including holding over 20 calls to solicit feedback and create program buy-in from stakeholders and providing multiple opportunities for written feedback including a general survey on program design and two Requests for Information ("RFIs") on specific program concepts and documentation.

18.     DOER worked throughout 2025 to further develop the programs outlined in DOER's application. For example, after DOER negotiated subaward agreements obligating $96,625,388 to Massachusetts Clean Energy Center and Boston Housing Authority, those Coalition Members did the following:

a.  The Massachusetts Clean Energy Center engaged in program design and developed materials for the SR-Loan and SR-Lease programs. This included conducting market research and data analysis to refine incentive levels, issuing and reviewing responses to a RFI on the lease offering and developing program manuals, application requirements, and RFPs for funding opportunities;

b.  Boston Housing Authority engaged in program design and developed materials for the AMF-Public program. This included scoping and drafting an RFP for technical assistance contract work, assessing its own solar potential projects, continuing outreach

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   to other housing authorities, and conducting financial modeling to set preliminary

2   incentive levels for financial assistance programs.

3   c.   DOER engaged in program design and developed materials for the LICSS grant

4        program. This included soliciting and reviewing stakeholder comments on program

5        design questions, engaging in calls with stakeholders and peers in other states to receive

6        feedback on program design, scoping and drafting a grant Program Opportunity Notice

7        and associated application materials, and engaging the National Renewable Energy

8        Laboratory's in-kind technical assistance program to assist with developing standard

9        financial assumptions.

10  d.   The Massachusetts Clean Energy Center engaged in program design and developed

11       materials for both the MLPCSS and COCSS community solar programs. This included

12       scoping and drafting an RFP for technical assistance for COCSS participants,

13       conducting stakeholder outreach, and developing program manuals, application

14       requirements, and RFPs for funding opportunities.

15  e.   The Massachusetts Clean Energy Center Workforce Development staff planned and

16       recruited for a Massachusetts Solar for All Workforce Development Stakeholder

17       Convening. This virtual meeting shared updates about Massachusetts SFA, the

18       workforce development aspects, and solicited feedback from various organizations,

19       businesses, labor unions, and individuals that have an interest in these opportunities. In

20       addition, the Massachusetts Clean Energy Center has had ongoing discussions with

21       existing workforce grantees through regular, recurring meetings including union

22       training centers, existing solar training grantees, and business support organizations to

23       keep them informed about Massachusetts SFA and discuss program plans during

24       development. Without SFA funding, these efforts will not come to fruition as the 2,800

25       jobs SFA was expected to create in Massachusetts will not materialize.

26

19.     DOER worked actively on designing and preparing to launch its SFA programming throughout 2025 and anticipated it would issue its first grant opportunity under Massachusetts' SFA programming in September 2025. Launching Massachusetts' SFA programs would be the culmination of two years of work by DOER staff, Coalition staff, and stakeholders, marking a major achievement for Massachusetts and solar development.

**EPA Eliminates the Solar For All and Terminates Massachusetts' SFA Grant**

20.     On August 7, 2025, I became aware that EPA had decided to terminate the SFA program. EPA first announced the decision through an X post from EPA Administrator Zeldin. The post is reproduced below.[4]



21.     Later that same day, DOER received a letter from EPA terminating Massachusetts' SFA grant. A true and correct copy of the letter is attached hereto as **Exhibit 8**.

---

[4] Lee Zeldin (@epaleezeldin), X (Aug. 7, 2025, 11:07 AM), https://x.com/epaleezeldin/status/1953518426602803684

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

22.     On August 8, 2025, DOER received an additional Assistance Amendment modifying DOER's award to reflect the August 7th termination letter. A true and correct copy of the modified award is attached hereto as **Exhibit 9**.

23.     The letter stated that the One Big Beautiful Bill Act ("OBBBA") had repealed the underlying authority for the SFA program and rescinded unobligated amounts to carry out the program. EPA stated that it believed OBBBA had "effectively and completely terminated the statutory authority and all appropriations related to Solar for All" and "no longer possesses either the substantive legal authority or the financial appropriations" needed to continue the SFA program.

24.     Prior to the termination notice, DOER's ASAP account contained the obligated $154,820,760.74 of DOER's SFA award. On August 8th, however, I learned that EPA had suspended DOER's ASAP account for the SFA program.

25.     Sometime prior to August 20, 2025, EPA changed DOER's ASAP account status again.  This time, EPA changed the account status indicator to "Liquidated," changed the performance period end dates from August 31, 2029, and December 31, 2029, to August 15, 2025, and December 8, 2025 (respectively) and reduced the Available Balance from $154,820,760.74 to $10,470,188.32.

26.     To date, EPA has not provided DOER with any explanation regarding the changes made to DOER's ASAP account.

27.     On August 28, 2025, pursuant to the Assistance Amendment, DOER submitted a Notice of Disagreement to EPA's Award Official, Devon Brown. A true and correct copy of the Notice of Disagreement is attached hereto as **Exhibit 10**.

28.     On September 5, 2025, pursuant to the Termination Letter, DOER submitted a Dispute of Termination to EPA's Dispute Decision Official, Michael Molina. A true and correct copy of the Dispute of Termination is attached hereto as **Exhibit 11**.

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

29.     On October 1, 2025, DOER received an email containing instructions on how DOER was to close out their SFA grant. This email did not acknowledge DOER's pending administrative dispute. A true and correct copy of this email is attached hereto as **Exhibit 12**.

30.     On October 28, 2025, DOER received a letter from EPA stating that it had determined that DOER's administrative dispute was moot. A true and correct copy of this letter is attached hereto as **Exhibit 13.**

31.     On November 7, DOER responded to the EPA's October 28th letter, objecting both to the determination that the administrative dispute was moot and to the direction that DOER begin closing out their grants. A true and correct copy of DOER's letter is attached hereto as **Exhibit 14**.

**Termination of the Solar for All Program Has and Will Harm Massachusetts and its Residents**

32.     The loss of the Solar for All Program will harm Massachusetts and its residents.

33.     Between the various programs DOER intended to offer using the funding EPA awarded pursuant to the SFA program, DOER was expecting to serve 29,000 low-income households, reducing electrical bills by $372,000,000 over the lifetime of supported systems. With the loss of the previously obligated funds, DOER will no longer be able to offer zero-interest solar loans, accelerated solar leases, and grants for enabling upgrades to low-income homeowners; grants and bridge loans that would enable solar on affordable multifamily properties; and grants to enable community solar projects delivering savings and serving low-income households and incorporating meaningful benefits such as community ownership and workforce development initiatives. Additionally, DOER will no longer be able to offer the anticipated opportunity of reduced energy costs to state-

DECLARATION OF ELIZABETH MAHNOY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION No. 2:25-cv-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

subsidized public housing properties. These unrealized energy savings create a burden on state agencies and Massachusetts taxpayers.

34.     In addition, DOER's Massachusetts Solar for All expected to create at least 2,800 new jobs in Massachusetts' solar industry.

35.     The premature and abrupt end of the SFA Program also harms DOER and its Coalition members as employers. DOER, MassCEC, and the Boston Housing Authority have each hired full-time employees who are primarily dedicated to SFA-related projects and initiatives. Absent further clarity on continued funding, DOER permanently reassigned its three full-time equivalent staff positions to other open positions within the agency on October 6, 2025. The positions in the other agencies may be put at risk without SFA funding.

36.     Massachusetts' Global Warming Solutions Act requires Massachusetts to be Net-Zero by 2050. To achieve this, the Massachusetts Clean Energy and Climate Plan for 2050 identifies Massachusetts will need 27–34 GW of solar energy by 2050. Massachusetts' SFA program would have deployed 125 MW of solar capacity across Massachusetts. The loss of SFA funding negatively harms Massachusetts residents as it impacts our ability to deploy key solar capacity and adds costs onto Massachusetts ratepayers, who will need to pay for the replacement capacity. Additionally, the turbulence created by the loss of SFA funding and its impact on solar developers and financiers may create long term challenges to further deploying clean energy.

37.     The premature and abrupt loss of SFA funds also creates harm to DOER and Coalition Members' reputations and relationships that have been developed through extensive public and stakeholder outreach efforts. DOER's SFA websites have been viewed almost 1,400 times, and the Massachusetts' SFA newsletter has provided program updates to over 1,900 subscribers. Many low-income residents of Massachusetts have been made aware of the upcoming programs and are eager to participate. Additionally, across all

the core financial assistance initiatives, DOER and Coalition Members have engaged with project developers, industry groups, property owners, and other potential program participants to generate interest and buy-in for the program. In turn, these parties have invested resources into reviewing their pipelines and planning for projects to participate in SFA based on Coalition Members' representations of the opportunities the program would provide. Losing this funding and not being able to move forward with the programming that members of the public and key stakeholders have been counting on becoming available would therefore harm DOER and Coalition Members' reputations and relationships with these groups.

38.     Additionally, DOER has spent significant resources to ensure that it can effectively leverage its primary state funded solar program, the Solar Massachusetts Renewable Target (SMART) program, in conjunction with the SFA program. On June 20, 2025, DOER released emergency regulations, which were effective immediately, for an updated version of the SMART program that, among other changes, expanded the definition of low-income customers and established rigorous customer savings thresholds for low-income and community shared solar projects to ensure consistent eligibility criteria between SMART and SFA. This expansion allows for more Massachusetts residents to qualify under the SMART program as a low-income customer therefore resulting in a higher incentive rate for low-income and community shared solar projects, as well as increasing the amount of savings projects must pass on to customers. The SMART program is funded by Massachusetts ratepayers and utilizes an economic analysis to determine the level of incentives projects require to meet an identified rate of return. The minimum savings requirements for low-income customers and community shared solar projects established in the SMART regulation were set based on the understanding that SFA funding would be included in the revenue stack for these specific project types, making meeting the rigorous savings thresholds feasible. This policy change to align eligibility

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

criteria with SFA will result in an incremental cost to Massachusetts ratepayers, as additional funding from SMART would be required to replace the previously presumed SFA funding calculated to establish the identified rate of return for the growing residential projects eligible for low-income incentive rates, that in turn must meet the minimum savings requirements for low-income customers.

39.    Moreover, DOER acted in reasonable reliance on its fully-obligated SFA funding continuing to be available. DOER expended more than one thousand employee hours directly attributed to SFA obligated funds. Additionally, DOER has devoted significant staff time to completing the pre-launch work listed above after the funding obligation. This includes the time of the Federal Funding Team (Deputy Commissioner, Federal Fiscal Coordinator, Federal Program Coordinator, and Federal Counsel), the External Engagement Manager, the Director and Deputy Director of Renewable and Alternative Energy, and the Senior Leadership Team (Chief Financial Officer, General Counsel, Chief of Staff, and Commissioner). These staff members supported the work of the SFA staff to ensure a successful program launch but did not seek reimbursement for specific hours from the SFA account. In so doing, DOER had to forgo other funding opportunities and program structures. There is no way to recover this lost time or effort.

40.    DOER cannot launch and operate its own Solar for All program without the administrative support and funding provided by EPA's Solar for All program. DOER and its Coalition members do not have organizational budgets sufficient to replace the obligated SFA funding and would need to forgo other essential funding opportunities and programs in order to advance its SFA offerings.

41.    The SFA program also allowed DOER to work closely with EPA in developing and implementing its work plan.  EPA provided crucial programmatic support to DOER, including recurring monthly meetings between the agencies beginning in March 2025. That

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

ongoing collaboration and programmatic support had value to DOER and the loss of that collaboration and programmatic support cannot be remedied through funding alone.

42.     Finally, if required to do so, processing the closeout of SFA will extend the harms identified previously. In that scenario, DOER would have to commit significant staff time from the Federal Funding Team (Deputy Commissioner, Federal Fiscal Coordinator, Federal Program Coordinator, and Federal Counsel), the External Engagement Manager, the Director and Deputy Director of Renewable and Alternative Energy, and the Senior Leadership Team (Chief Financial Officer, General Counsel, Chief of Staff, and Commissioner) to develop closeout documentation and processes. The costs associated with this staff time would not be recoverable and would limit the ability of staff to work on other, competing, priorities.

**Conclusion**

43.     EPA's decision to terminate the entire Solar for All program has caused and will continue to cause irreparable harm to Massachusetts and its residents.

DECLARATION OF ELIZABETH
MAHNOY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

2

3

4          I declare under penalty of perjury under the laws the United States of America that the

5     foregoing is true and correct to the best of my knowledge.

6     Executed on this 10th day of November, 2025, at Boston, Massachusetts.

7

8

9                                          _____
                                           Elizabeth Mahony
                                           Commissioner
10                                         Massachusetts    Department    of    Energy
                                           Resources
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF ELIZABETH                    16              ATTORNEY GENERAL OF WASHINGTON
MAHNOY IN SUPPORT OF MOTION                                    Environmental Protection Division
FOR PRELIMINARY INJUNCTION                                       800 Fifth Avenue STE 2000
No. 2:25-cv-02015-TMC                                               Seattle, WA 98104
                                                                     (206) 464-7744