UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF ARIZONA, et al.,

                    Plaintiffs,

    v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; and LEE ZELDIN, in his
official capacity as Administrator of the
U.S. Environmental Protection Agency,

                    Defendants.

NO. 2:25-cv-02015-TMC

DECLARATION OF
CHRISTOPHER KEARNS IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

I, Christopher Kearns, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a resident of the State of Rhode Island. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with the Rhode Island Office of Energy Resources (RI OER) staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am the Acting Energy Commissioner at the RI OER.

3.      I have worked for the RI OER in my current role and other roles for over 13 years and graduated from the University of Rhode Island.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

1

4.    In my capacity as Acting Energy Commissioner of the RI OER, I am responsible for oversight of state and federal funding, including the Solar for All program funds that were awarded by the U.S. Environmental Protection Agency (EPA) on July 12, 2024, and the funds were legally obligated into the RI OER U.S. Treasury account on July 16, 2024.

5.    I submit this declaration to provide details on the ways in which the Environmental Protection Agency's termination of the Solar for All (SFA) Program has harmed Rhode Island.

**The Solar for All Program**

6.    In 2022, President Biden signed the Inflation Reduction Act into law. Inflation Reduction Act of 2022, Public Law No. 117-169 (2022). Among other things, the Inflation Reduction Act amended the Clean Air Act to authorize and appropriate to EPA $7 billion, to remain available until September 30, 2024, to make competitive grants to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies.  Public Law 117-169, Sec. 60103, 136 Stat. 2065-66 (codified at 42 U.S.C. § 7434). This $7 billion appropriation was part of Congress's Greenhouse Gas Reduction Fund, a $27 billion investment to combat the climate crisis by supporting greenhouse gas- and air pollution-reducing projects in communities across the country.

7.    In accordance with Congress's directive, EPA designed and launched the Solar for All Program. SFA was intended to encourage the deployment of residential distributed solar energy to lower energy bills for millions of Americans and catalyze transformation in markets serving low-income and disadvantaged communities. SFA grantees would provide subsidies and other financial assistance to residential rooftop and residential-serving community solar projects in and benefit low-income and disadvantaged communities, in addition to project-deployment technical assistance such as workforce development, community outreach, and other support to help overcome barriers to solar deployment.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

2

8.      On June 28, 2023, EPA published its Notice of Funding Opportunity (NOFO), EPA-R-HQ-SFA-23-01, outlining application requirements for the SFA program. The NOFO indicated that, pursuant to the Inflation Reduction Act and the Clean Air Act, EPA would award up to 60 grants to States, territories, Tribal governments, municipalities, and eligible nonprofits to expand the number of low-income and disadvantaged communities that have access to affordable, resilient, and clean solar energy programs.

**Rhode Island Office of Energy Resources Applied for and Received SFA Funding**

9.      On October 11, 2023, RI OER submitted an application under the NOFO.

10.     In developing its application, RI OER consulted with a number of stakeholders, including Rhode Island Commerce's Renewable Energy Fund, Rhode Island Infrastructure Bank, Rhode Island Department of Environmental Management, Rhode Island Housing, Rhode Island Department of Labor and Training, the RI American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), Rhode Island Department of Health and Human Services, the Rhode Island Center for Justice, RI OER's consultants and legal counsel, key staff involved with the Affordable Solar Access Pathways Program at PosiGen, the Clean Energy States Alliance, the National Association of State Energy Officials, the Department of Energy's Solar Energy Innovation Network (SEIN), SFA applicants in other states, and the general public.

Engagement with external entities began after the NOFO was released in June 2023. RI OER began drafting an application in July 2023, completed it over 3 months, and submitted it to the EPA on October 11, 2023. Completing this task required committing time beyond business hours due to the lack of internal staffing capacity and the significant time and research required to complete the application, coupled with full-time responsibilities of day-to-day program management and operations. Key staff involved in drafting the application met regularly to design financial and technical assistance offerings.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

3

In addition to the time spent coordinating with external parties and coalition partners, several key milestones were achieved through communications with the EPA in April of 2024. Significant additional time was lost spent achieving those milestones, as outlined here:

- On April 19, 2024, the EPA notified RI OER's Chief Financial Officer (CFO) via email of the Rhode Island coalition's selection for the EPA SFA program.

- Two days later, on April 21 at 8:04pm, the EPA sent a follow-up email to RI OER's CFO identifying "a clerical error in calculating the award amounts." The EPA indicated in this email that they were "working to provide all applicants updated funding amounts later this evening." Later that evening at 11:50 pm, the EPA notified RI OER that Rhode Island's application was selected to be awarded $49.3 million of the requested $79 million, or 62.5% of the total amount that RI OER had requested. When RI OER received the grant award, $400,000 had automatically been included as an in-kind technical-assistance offering from the National Renewable Energy Laboratory, therefore reducing the overall cash amount in our award agreement to $48.9M. Rhode Island was not the only State to receive less money than it had requested; the EPA announced a 62.5% reduction in the grant amount awarded to all 60 SFA applicants.

- On June 14, 2024, at 4:57 pm, the EPA distributed guidance detailing best practices for reducing the overall grant amount by the 62.5% scale-back. As a result of this guidance, RI OER and program partners needed to spend additional time strategizing the best approach to scaling back the budget in a way that would still maximize the number of households served given the different appetites for residential-serving solar, associated storage, and enabling upgrades. Given that program design was significantly underway in June 2024, and given that this change came 8 months after the application was submitted, a substantial amount of staff time was dedicated to amending the project budget in such a way that would still maximize the number of households served. Simply reducing each budget category by 62.5% across the board would not have

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

maximized households served per SFA dollar spent. Many meetings were held internally and with our program partners to amend the budget down to $48.9 million. Ultimately, RI OER drafted two memorandums to the EPA requesting changes to programs included in the State's SFA plan. On August 8, 2024, RI OER sent the justification memos to the EPA requesting modifications to its programs, including removal of one in its entirety. The changes were approved on August 28, 2024, and August 30, 2024.

11.     RI OER was formally awarded $49,330,000 of SFA funding on July 9, 2024. On July 12, 2024, EPA transmitted an Assistance Agreement to RI OER. A true and correct copy of RI OER's Assistance Agreement is attached hereto as **Exhibit 1**.

12.     EPA obligated the entire balance of RI OER's SFA award on July 9, 2024, the date of the Assistance Agreement. Rhode Island's $48,930,000 award appeared shortly thereafter in RI OER's Automated Standard Application Payments (ASAP) accounts.

**Rhode Island Office of Energy Resources Plans and Designs its SFA Offerings**

13.     Between the date of its award and December 2024, RI OER negotiated its work plan and budget with EPA. On December 4, 2024, RI OER submitted its final Work Plan to EPA. The Work Plan outlined RI OER's plan for planning, designing, and implementing an SFA Program within Rhode Island. A true and correct copy of RI OER's Work Plan is attached hereto as **Exhibit 2**. During this time, RI OER was limited to using no more than 2% of its SFA award for certain costs related to developing the Work Plan.

14.     RI OER's Work Plan proposed the launch and expansion of six financial-assistance programs and twelve project-deployment technical-assistance initiatives designed to equitably address barriers to solar adoption in Rhode Island's low-income and disadvantaged communities. All financial-assistance programs were tailored to defray specific and longstanding financial barriers to solar adoption while addressing the needs of low-income renters and homeowners. Financial-assistance programs proposed specifically to deliver

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

reliable solar power directly to Rhode Island's most historically underserved communities through low-income and disadvantaged communities (DAC) specific eligibility requirements. The following programs are numbered in the summary table below.

| Table 1: Rhode Island Financial Assistance Programs | |
|---|---|
| Program 2 | Low-Income Residential Solar Direct Ownership Adder |
| Program 3 | Low-Income & DAC Roof and Electrical System Adder |
| Program 4 | Low-Income/DAC Residential Energy Storage Adder |
| Program 5 | Affordable Housing Solar Supplemental Program (AHSSP) |
| Program 6 | Community Remote Net Metering (CRNM) |
| Program 7 | Financing Community Solar on Preferred Sites |

***Renewable Energy Fund (REF) "Adder" Expansions (Programs 2, 3, and 4)***: Programs 2, 3, and 4 are "adder" programs, which is an additional incentive for low-income and disadvantaged community (LIDAC) residents on top of the base incentives that exist for residential solar in Rhode Island. REF Adder programs deliver upfront grants, which are requested by the installer via application and directly subtracted from a LIDAC homeowner's total project cost for residential-serving rooftop solar direct ownership, enabling upgrades, and associated solar paired with storage. Programs 2 and 4 double existing adders for LIDAC residents, while Program 3 is an entirely new adder supporting rooftop and electrical, or "enabling upgrades", by mitigating longstanding barriers to solar adoption in Rhode Island's oldest homes. These adders can all be paired or 'stacked' with each other and applied directly to total project costs, reducing the burden of upfront investment. Upfront grants that directly reduce total project costs mitigate longstanding LIDAC-ownership barriers, enabling households to own their own systems and build wealth in communities that have historically been underserved by Rhode Island's ratepayer-funded grant programs.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

***Affordable Housing Solar Supplemental Program (Program 5)*:** AHSSP is a milestone-based grant program for multifamily housing that builds upon the existing "Zero Energy for the Ocean State" program which is designed to deliver meaningful solar benefits to create energy efficient LIDAC multifamily housing. Projects can include new construction and deep retrofitted housing.

***Community Remote Net Metering (Program 6)*:** CRNM, Rhode Island's existing community solar program established statutorily in 2017, will restructure the existing Renewable Energy Fund's Community Renewables Program to relaunch a milestone-based grant program incentivizing the ~20MW statutory expansion of Rhode Island's community solar program to a total of 50MW, reducing ratepayer costs for the implementation of CRNM. Meaningful benefits will be delivered to over 2,658 additional customers through low-commitment subscription models.

***Community Solar on Preferred Sites (Program 7)*:** The Rhode Island Infrastructure Bank (RIIB) will launch a milestone-based grant program which will further enable funding options for community solar on public "preferred sites" while emphasizing the importance of energy resilience for DAC-serving critical facilities.

Following the submission of the SFA application, there was an extended period before final approval from the federal government. During this time, RI OER continued to engage with program partners on program design. The official notice of award was not issued until July 9, 2024, with the mailed award letter arriving on July 12, 2024.

The preliminary "workplan shell" was received by OER from EPA on June 7, 2024, with the first complete draft of RI OER's workplan submitted on August 30. This initiated a prolonged editing process in cooperation with EPA, requiring eight total distinct workplan revisions directed to EPA between August 30 and December 4, 2024.

EPA partially approved RI OER's work plan on January 16, 2025, and fully approved removal from the program-planning period on March 12, 2025, and the funding restriction was lifted.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

15. Pursuant to its approved Work Plan, RI OER elected to take a Partial Program Planning period to design and ready for implementation its SFA program.

16. During the planning period, RI OER did the following:

- RI OER established a dedicated project-management software to track over 250 goals, milestones, and deliverables included in the SFA-approved workplan and timeline.

- In September 2024, RI OER hired an SFA Project Coordinator who spent her entire time on SFA. Her workplan and responsibilities included program management, organizing meetings, and coordinating with all SFA sub-awardees. She established a regular cadence of internal SFA meetings to ensure progress on the goals included in the approved workplan and timeline, and she participated in other external meetings and working groups to develop best practices and share knowledge from other SFA program awardees.

- On July 24, 2024, RI OER signed a partnership agreement with the U.S. Department of Energy and the National Renewable Energy Laboratories (NREL) as a pilot state for the Energy Connector tool, which allows Low Income Home Energy Assistance Program (LIHEAP) customers to be connected directly with community solar. The use of this tool is critical to meet state statutory objectives for community solar expansion and low-income customer inclusion. Rhode Island's involvement with the Connector will significantly strengthen the case for LIDAC inclusion and engagement with community solar during the regulatory proceedings to expand community solar beyond Rhode Island's 30MW pilot program and will play an important role in the design of LIDAC inclusion in Program 6. The Connector is designed to help remove barriers to participation in community

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

8

solar, and ensure consumer protections, education, and meaningful bill savings. Since signing the partnership agreement in July 2024, RI OER has attended regular meetings with NREL and fellow pilot states.

- RI OER submitted a technical-assistance application to the National Community Solar Partnership for developing consumer protections and disclosure forms for community solar customers. Consumer protection was an important component of RI OER's SFA workplan as well as RI OER's long-term strategy for expanding community solar across the State.

- RI OER applied for and received technical assistance from the Solar Energy Innovation Network (SEIN) for Innovation at Solar Community Assistance for Local Equity (SCALE) through the DOE. SEIN is a collaborative research program that supports multistakeholder teams to research, develop, and share solutions to real-world challenges associated with solar-energy adoption. On April 14, 2025, RI OER received an email from NREL stating that the SEIN program was on pause.

- On June 14, 2024, OER submitted an application to the Just and Clean Energy Future State Implementation Accelerator. On July 31, 2024, OER was notified that it had been accepted. The Accelerator was a technical-assistance program through Communities First Fund designed to assist three to five states in effectively utilizing federal funding from IRA programs, including SFA. This initiative aimed to help states design implementation strategies that prioritize burdened communities, ensuring that federal dollars were used to create long-term, transformative benefits. The Accelerator was dissolved with the change in administration.

- In September 2024, RI OER issued a request for proposals for an English-to-Spanish language-translation and interpretation vendor to translate

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

government reports, documents, and selected website content, and provide interpretation services and subtitle services for selected videos. OER terminated the procurement process in August 2025 following the SFA termination notice. RI OER does not have any other alternative funding sources that could be used to supplement this scope of work.

RI OER also developed and began implementing numerous strategies for community engagement with constituents and with the industry regarding SFA:

- RI OER has regular meetings with the solar industry. All known solar companies, developers, and financing companies working in Rhode Island are invited. Meetings where SFA was a topic of discussion were held April 29, 2024 and September 10, 2024.

- RI OER conducted a survey for residential solar installers regarding SFA program design components specific to development of Programs 2, 3, and 4 listed in Table 1 above. The survey, which also solicited feedback on the RI OER SFA website, was open July 1, 2025, until August 4, 2025.

- RI OER developed a robust community-engagement plan in line with the objectives outlined in the Equitable Access and Meaningful Involvement Plan (EAMIP) section of the SFA application. Each SFA applicant was required to outline its plans for a constituent-education and outreach strategy intended to maximize solar deployment by allowing Rhode Island residents to make informed decisions about solar adoption. Rhode Island's EAMIP included firm commitments to a marketing plan, engagement with community-based organizations, multilingual education and outreach workshops, solar tours, tribal engagement, and a plan for low-income participatory governance in regulatory proceedings as it relates to community solar-program expansion.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

- RI OER staff met biweekly to convert the EAMIP into a timeline of tasks to be completed over the lifetime of the grant program and began engaging with community-based organizations about SFA.

17.    RI OER also used the Program Planning Period to further develop the seven programs outlined in its application. For example, RI OER did the following after exiting the program-planning Period on March 12, 2025:

a. For the Affordable Housing Solar Supplemental Program (AHSSP) (Program 5 in Table 1 above), RI OER was working with the National Renewable Energy Laboratory on technical assistance through SFA. Multifamily housing projects often need more support because the process of integrating clean energy into new or retrofitted multifamily housing is complex. In order to design additional incentives to address this issue, more specific background on the problems facing the integration of multifamily housing and clean energy in Rhode Island was needed. Beginning in March 2025, RI OER worked with Rhode Island Housing to help identify recommendations that would require technical assistance from NREL as part of the SFA technical-assistance opportunity. RI OER held three meetings with Rhode Island Housing to discuss the drafting of a subaward agreement, the design of Program 5, and the NREL technical-assistance scope of work. A meeting was scheduled for April 15, 2025, for RI OER and NREL to discuss OER's technical assistance needs. One of the topics RI OER identified for NREL support was working with Rhode Island Housing to further refine and identify multifamily technical-assistance recommendations based on guidance for tenant benefits from the U.S. Department of Housing and Urban Development. The initial meeting between RI OER and Rhode

DECLARATION OF CHRISTOPHER KEARNS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION No. 2:25-cv-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

Island Housing to discuss SFA program needs took place April 9, 2025. NREL sent RI OER a scope of work on May 27, 2025. A follow-up meeting with RI OER, Rhode Island Housing, and NREL took place on July 10, 2025, to address gaps in the draft scope of work. Shortly after that meeting, Rhode Island Housing submitted a revised list of technical assistance needs to RI OER and NREL. On July 22, 2025, NREL provided a summary table which needed revision and more input. Rhode Island Housing revised the list with priority needs, and a meeting was scheduled with all three agencies for August 22, 2025. This meeting was cancelled after the termination letter was received. Without this foundational technical assistance from NREL available through EPA's in-kind technical assistance, Program 5 cannot be effectively implemented.

b. As part of the NREL technical assistance, NREL and RI OER also discussed technical assistance needs that were included in a scope of work document NREL sent to RI OER on May 27, 2025. The topic areas in the document included (1) Program Management; (2) Program Design, Savings, and Incentives Modeling; (3) Non-financial Benefits Analysis; and (4) Ad Hoc Technical Assistance Support. Each topic included several subtasks. All of this work has been paused.

c. RI OER worked with the Renewable Energy Fund (REF) on developing and publishing an income-verification request for proposals (RFP) for a vendor to determine applicant eligibility for SFA Programs 2, 3, and 4. The RFP was drafted in late May and issued on June 18, 2025, after review, approval, and publication from the REF. The REF did not receive any responses by the July 8, 2025, deadline. The RFP was modified, and

DECLARATION OF CHRISTOPHER KEARNS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION No. 2:25-cv-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

new dates for reissuing were being selected when the termination letter for SFA was received and all work stopped.

d. RI OER and the REF issued a survey to small-scale installers to get feedback on program-design elements for single-family programs. The survey also included a request for feedback on the content of the RI OER's SFA website and identify what additional information may be needed. After receiving feedback, RI OER and REF planned to design an application portal for project intake. All efforts related to the portal are now paused due to the termination.

e. RI OER published net-metering residential solar consumer protection forms which became effective May 1, 2025, for residential solar installers. RI OER met with the Department of Business Regulation regularly to finalize these forms and establish the rules and regulations for the new solar retailer registration process. Additional plans for using disclosure forms for SFA project data collection are on pause.

g. RI OER worked with REF staff to make edits to the community solar marketplace website, which was intended to be the primary website for documenting changes and updates to stakeholders regarding community solar.  Plans for substantial changes to the marketplace website are now on pause.

h. RI OER met with the Rhode Island Infrastructure Bank twice to begin the subaward process, start preliminary conversations about the design of the Renewable Ready program, and discuss design of Program 6 in Table 1 above. Regular biweekly meetings were established; however, all meetings are now canceled.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

18.    RI OER had been actively working on designing and preparing to launch its SFA programming throughout 2025 and anticipated it would launch Rhode Island's SFA programming in early 2026.

**EPA Eliminates the Solar for All and Terminates RI OER's SFA Grant**

19.    On August 7, 2025, I became aware that EPA had decided to terminate the SFA program. EPA first announced the decision through an X post from EPA Administrator Zeldin. The post is reproduced below.[1]



Lee Zeldin @ 🟢
@epaleezeldin

The One Big Beautiful Bill eliminated the Greenhouse Gas Reduction Fund, which included a $7 billion pot called "Solar for All".

In some cases, your tax dollars were diluted through up to FOUR pass-through entities, each taking their own cut off the top!

The bottom line is this: EPA no longer has the statutory authority to administer the program or the appropriated funds to keep this boondoggle alive.

Today, the Trump EPA is announcing that we are ending Solar for All for good, saving US taxpayers ANOTHER $7 BILLION!

20.    Later that same day, RI OER received a letter from EPA terminating RI OER's SFA grant. A true and correct copy of the letter is attached hereto as **Exhibit 3**.

21.    The letter stated that the One Big Beautiful Bill Act (OBBBA) had repealed the underlying authority for the SFA program and rescinded unobligated amounts to carry out the program. EPA stated that it believed OBBBA had "effectively and completely terminated the statutory authority and all appropriations related to Solar for All" and "no longer possesses

---

[1] Lee Zeldin (@epaleezeldin), X (Aug. 7, 2025, 11:07 AM), https://x.com/epaleezeldin/status/1953518426602803684

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

either the substantive legal authority or the financial appropriations" needed to continue the SFA program.

22. Prior to the termination notice, RI OER's ASAP account contained the fully obligated balance of $48,848,730.16 of RI OER's SFA award. On August 8, however, I learned that EPA had suspended RI OER's ASAP account for the SFA program.

23. On August 11, 2025, RI OER's ASAP account reopened with a reduced grant amount of $3,500,680.95. On August 18, RI OER ran an account statement, and no values were found when searching for the account ID.

24. Sometime prior to August 21, 2025, EPA changed RI OER's ASAP account status again. This time, EPA changed the account status indicator to "Liquidated," changed the performance period end dates from 5/1/2024 and 4/30/2029 to 5/1/2024 and 08/15/2025, and reduced the Available Balance from $48,930,000 to $3,411,862.45.

25. To date, EPA has not provided RI OER with any explanation regarding the changes made to RI OER's ASAP account.

26. On August 28, 2025, pursuant to the Assistance Amendment, RI OER submitted a Notice of Disagreement to the EPA's Award Official, Devon Brown. A true and correct copy of the Notice of Disagreement is attached hereto as **Exhibit 4**.

27. On September 5, 2025, pursuant to the Termination Letter, RI OER submitted a Dispute of Termination to the EPA's Dispute Decision Official, Michael Molina. A true and correct copy of the Dispute of Termination is attached hereto as **Exhibit 5**.

28. On October 1, 2025, RI OER received an email containing instructions on how the State of Rhode Island was to closeout their SFA grant. This email did not acknowledge the State of Rhode Island's pending administrative dispute. A true and correct copy of this email is attached hereto as **Exhibit 6**.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

15

29.     On October 27, 2025, RI OER received a letter from EPA dated October 23, 2025 stating that it had determined that the State of Rhode Island's administrative dispute was moot. A true and correct copy of this letter is attached hereto as **Exhibit 7**.

30.     On November 6, 2025, RI OER responded to this letter, objecting both to the determination that the administrative dispute was moot and to the direction that RI OER begin closing out their grants. A true and correct copy of RI OER's letter is attached hereto as **Exhibit 8**.

## Termination of the Solar for All Program Has and Will Harm Rhode Island and its Residents

31.     The loss of the Solar for All Program will harm Rhode Island and its residents.

32.     Between the various programs RI OER intended to offer using the funding EPA awarded pursuant to the SFA program, RI OER was expecting to serve approximately 5,225 low-income households, reducing electrical bills by $48,477,353. With the loss of the previously obligated funds, RI OER will no longer be able to offer the following:

> a.     Rhode Island will no longer be able to offer any solar grants specific to low-income residents. It is necessary for a low-income subsidy to be substantial enough to enable low-income individuals to effectively adopt solar via REF's program offerings for solar and storage. Since many low-income individuals cannot secure financing for solar, this leaves them unable to access these grant opportunities altogether.

> b.     RI OER will no longer be able to offer wealth-building opportunities through direct-ownership options. One of the core concepts of Rhode Island's SFA plans is building wealth in low-income and disadvantaged communities. Programs 2-4 were designed to address this core concept by providing incentives for homeowners to install solar, increase resiliency by installing energy storage, and improve the

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

roof and electrical components of the home. RI OER does not have another source of funds to support such upgrades and thereby combat electrical and structural barriers to solar adoption often faced by LIDAC communities.

c.    RI OER's ability to expand community solar programming for renters and owners of older housing stock is directly and significantly harmed. Only 5% of existing community solar customers in Rhode Island are considered low income. Eliminating SFA means that RI OER is not able to continue program design and implementation of Program 6, which would increase the percentage of low-income community solar subscribers across the state to align with recent statutory objectives set by the Rhode Island General Assembly requiring substantial inclusion of low- and moderate-income residents in the State's community solar program plans.  *See* R.I. Gen. Laws § 39-26.4-3.

d.    Program 7 would have supplemented community solar-program expansion by assisting and supporting municipalities interested in hosting, leasing, or possibly owning a community solar project. This program was designed to provide financial incentives to communities willing to host community solar projects.

e.    One of the critical ways RI OER was planning on engaging LIDACs on community solar was to work with the Rhode Island Center for Justice to engage community members in the regulatory process to support the expansion of community solar. The Center for Justice was planning on representing these communities during the regulatory process. SFA funding was going to be used specifically for community engagement on this effort and alternative funding cannot be secured.

DECLARATION OF CHRISTOPHER KEARNS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

f.  RI OER does not have another source of funding to support solar and resiliency on multifamily affordable housing that is not specifically tied to greenhouse gas emission reductions.

g.  The loss of funding directly and significantly harms any opportunity to offer enabling upgrades, including electrical, structural, and roof upgrades, which are the most common barriers to low-income solar adoption due to their upfront cost. OER does not have another source of funding to support defraying or covering these costs.

h.  The opportunity to provide a low-income carveout for energy storage is directly harmed. The loss of SFA funding not only eliminates the opportunity for resiliency improvements in DACs that suffer disproportionate resiliency problems, but it also impacts the ability of low-income customers to participate in demand response programs designed to reduce distribution system peak, which benefits all ratepayers.

i.  Over the past three years, RI OER has spent considerable time building relationships with community-based organizations, non-profits, community groups, and neighborhood associations. Uncertainty in federal funding has directly harmed these relationships. RI OER and other state agencies have built trust, deepened relationships, and received feedback on various initiatives from these groups. Losing SFA funding results in unfulfilled promises and commitments to LIDACs and the organizations that serve them, eroding trust that has been built over time.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

18

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

j.    By losing access to community engagement funding, efforts to develop a successful and scalable education and outreach strategy are directly harmed.

k.    RI OER lost the opportunity to provide a minimum of 20% bill savings to over 5,000 households through the installation of residential-serving solar. This causes direct harm to Rhode Island residents. Household savings are a core component of SFA's value proposition, and OER's approved workplan included a calculated value of $48,477,353 in bill savings for 5,225 customers over the lifetime of the solar installed through SFA. Without SFA funding, RI OER cannot sufficiently subsidize installation costs at a level that is feasible for LIDAC adoption as these communities disproportionately face the effects of higher energy burden.

l.    The loss of SFA means that more low-income and disadvantaged Rhode Islanders will lose the opportunity to participate in a community solar program that would have resulted in 20% bill savings annually.

m.    The Rhode Island Department of Labor and Training was consulted to assist with the workforce impacts of SFA. The SFA budget factored in allocating funds to a program known as "Building Futures" which would assist with the recruitment and training of up to 100 Rhode Island registered apprentices. These electrical apprentices, many of whom would be from DACs, would eventually become Rhode Island licensed electricians. By working with a registered apprenticeship program, RI OER would have been able to collect and track data related to the solar workforce, ensure a pipeline of electricians in a

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

19

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

much-needed sector, and fulfil promises to the DACs that SFA was going to serve by providing employment opportunities to their community members.

    n.    Losing SFA funding directly harms the ability to launch the Renewable Ready program designed statutorily by the Rhode Island General Assembly. In 2024, the Rhode Island General Assembly passed Renewable Ready legislation, R.I. Gen. Laws § 42-140.5-1, et seq. This law promotes renewable-energy development by incentivizing siting on preferred locations like brownfields and rooftops instead of core forests. It requires RI OER and RIIB to work together on implementing a program to provide financing for eligible sites. SFA had allocated seed funding to support the Renewable Ready program. With the loss of SFA, no other source has been identified to fund this program.

33.    In addition, RI OER's SFA was expected to create at least 100 new green jobs in Rhode Island's solar industry. This compounds the harm already caused to the solar industry by the Trump Administration's early end of federal tax credits for distributed solar.

34.    The premature end of the SFA Program also harms RI OER as an employer. RI OER used SFA funding to hire a Renewable Energy Program Coordinator for SFA. This position was posted with the understanding it would be a minimum 5-year commitment to align with the program terms and conditions. Now that the SFA Program has been terminated, the employee holding this position would lose her job. The SFA program coordinator previously declined alternative positions to accept this role, which was to be funded by money obligated by the federal government.— Due to budget restrictions, RI OER is not able to acquire state funding to cover the difference.

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

20

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

35. Additional programming deficits caused by loss of funding include the termination of numerous technical-assistance relationships, including the Solar Energy Innovation Network (SEIN) at Solar Community Assistance for Local Equity (SCALE), the Just and Clean Energy Future State Implementation Accelerator, and in-kind technical-assistance offerings through NREL tailored towards multifamily housing program design. Without these existing relationships, RI OER would need to bring in consultant support to fill the gaps identified in the drafted scopes of work. Without SFA funding, RI OER is unable to cover the cost of any alternative solutions to backfill these initiatives and deliverables.

36. There are numerous non-tangible harms incurred by the loss of SFA funding that interfere with the State's efforts to fight climate change and promote environmental justice. Rhode Island's Act on Climate establishes a mandatory and enforceable commitment to achieve net-zero emissions by 2050. The State's Renewable Energy Standard also requires the State to achieve 100% renewable electricity by 2033. Solar is a critical part of the State's strategy to achieve these goals, particularly among low-income residents. Losing federal funding would harm efforts to meet the goals of 100% renewable electricity by 2033 and net-zero greenhouse gas emissions by 2050 by perpetuating the longstanding barriers to solar adoption faced by low-income communities. SFA would have directly resulted in building 27.49 MWs of solar sited within the state, providing a significant contribution of new renewables.

37. Moreover, RI OER acted in reasonable reliance on its fully obligated SFA funding continuing to be available. RI OER expended more than 404 employee hours on SFA programming. In so doing, RI OER had to forgo other funding opportunities, program structures, and requests for proposals. There is no way to recover this lost time or effort.

38. RI OER cannot implement, launch, or continue to operate its own Solar for All program without the administrative support and funding provided by EPA's Solar for All program. While there is strong policy alignment with RI OER's commitment to advancing

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

21

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

energy equity through low-income solar programming, state budget constraints limit the availability of a dedicated funding source for low-income carve-outs to new and existing solar and storage programs. Because RI OER cannot secure sufficient funding, the SFA Program Coordinator position within RI OER was eliminated. Other components related to community engagement and education, translation services for public meetings and programmatic materials, participatory governance for regulatory proceedings, Davis Bacon wage reporting software, inspection services for enabling upgrades, and workforce development program implementation are no longer moving forward.

39.    The SFA program also allowed RI OER to work closely with EPA in developing and implementing its work plan. EPA provided crucial programmatic support to RI OER, including regular cadences of project team meetings, workplan feedback, guidance on compliance, fraud risk management, quality assurance plans, guidance on designing household savings across single-family, multifamily, and community solar programs, progress reporting, and technical assistance relationships. That ongoing collaboration and programmatic support had value to RI OER, and the loss of that collaboration and programmatic support cannot be remedied through funding alone.

**Conclusion**

40.    EPA's decision to terminate the entire Solar for All program has caused and will continue to cause irreparable harm to Rhode Island and its residents.

I declare under penalty of perjury under the laws the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 7th day of November, 2025, at Providence, Rhode Island.

Christopher Kearns
Acting Energy Commissioner
Rhode Island Office of Energy Resources

DECLARATION OF CHRISTOPHER
KEARNS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744