**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF
WASHINGTON AT TACOMA**

STATE OF ARIZONA, et al.,

Plaintiffs,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; and LEE ZELDIN, in his
official capacity as Administrator of the
U.S. Environmental Protection Agency,

Defendants.

NO. 2:25-cv-02015-TMC

DECLARATION OF
CHRISTOPHER MEISTER IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

I, Christopher Meister, declare under the penalty of perjury pursuant to 28 U.S.C. §
1746 that the following is true and correct:

1.      I submit this declaration to provide details on the ways in which the Illinois
Finance Authority's ("IFA") Solar for All ("SFA") grant that IFA received from and that was
recently terminated by the Environmental Protection Agency's ("EPA") has harmed Illinois.

2.      I am the Executive Director of the Illinois Finance Authority ("IFA"), a body
politic and corporate created under the laws of the State of Illinois by the Illinois Finance
Authority Act. 20 ILCS 3501/801 e*t seq.* I have held this position since 2009. I previously held

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

the position of General Counsel at IFA from 2007 to 2009. From 2016-2022, I also served on the EPA's Environmental Financial Advisory Board ("EFAB") and supported EPA's efforts to provide low-cost investments in environmental and public health protection.

3.      Prior to working for IFA, I was a Director of Legislative Affairs for the Illinois Department of Commerce and Economic Opportunity ("DCEO") from 2003 to 2007.

4.      I hold a Bachelor's Degree from DePaul University (1987) and a Juris Doctor from the University of Illinois College of Law (1994).

5.      In my capacity as Executive Director of the IFA, I am the chief administrative officer of and responsible for directing the administrative affairs and general management of IFA. These responsibilities include ensuring the effective and compliant administration of our financial assistance programs, which includes the SFA program. I am designated as the Project Manager for the SFA program, and, pursuant to a delegation of authority by the members of the IFA, I have broad decision-making authority for all matters relating to the administration of the SFA program. This authority includes, among other things, managing SFA program staff and vendors, approving SFA program design, leading the coordination of SFA activities between governmental entities, supporting preparation of our application and SFA Work Plan, communicating with our EPA SFA Project Officer, and reviewing and executing documents and agreements related to the SFA program.

6.      I am a resident of the State of Illinois. I am familiar with the information in the statements set forth below either through my official capacity with IFA or personal knowledge, consultation with IFA staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

2

## Illinois Finance Authority

7.      IFA was established in 2004 pursuant to Illinois Public Act 93-205 and has the powers and duties set forth in the Illinois Finance Authority Act, 20 ILCS 3501/801, *et seq.*

8.      In 2021, pursuant to the Climate and Equitable Jobs Act (Illinois Public Act 102-0662), IFA was designated as the "Climate Bank" for the State of Illinois and was charged with "providing financial assistance, programs, and products to finance and otherwise develop and facilitate opportunities to develop clean energy and provide clean water, drinking water, and wastewater treatment in the State." 20 ILCS 3501/801-5(t).

9.      IFA was further authorized by State law to utilize funding sources, including any federal funds, that can be used for clean energy purposes. 20 ILCS 3501/850-10(c)(2)(B).

## The Solar for All Program

10.      In 2022, then-President Biden signed the Inflation Reduction Act. Inflation Reduction Act of 2022, Public Law No. 117-169 (2022). Among other things, the Inflation Reduction Act amended the Clean Air Act to authorize and appropriate to EPA $7 billion, to remain available until September 30, 2024, to make competitive grants to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies. Public Law 117-169, Sec. 60103, 136 Stat. 2065-66 (codified at 42 U.S.C. § 7434). This $7 billion appropriation was part of Congress's Greenhouse Gas Reduction Fund, a $27 billion investment to combat the climate crisis by supporting greenhouse gas and air pollution-reducing projects in communities across the country.

11.      In accordance with Congress's directive, EPA designed and launched the Solar for All Program. SFA was intended to encourage the deployment of residential distributed

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

solar energy to lower energy bills for millions of Americans and catalyze transformation in markets serving low-income and disadvantaged communities. SFA grantees would provide subsidies and other financial assistance to residential rooftop and residential-serving community solar projects in and benefiting low-income and disadvantaged communities. Grantees also provided project-deployment technical assistance such as workforce development, community outreach, and other support to help overcome barriers to solar deployment.

12.     On June 28, 2023, EPA published its Notice of Funding Opportunity ("NOFO"), EPA-R-HQ-SFA-23-01,[1] outlining application requirements for the SFA program. The NOFO indicated that, pursuant to the Inflation Reduction Act and the Clean Air Act, EPA would award up to 60 grants to States, territories, Tribal governments, municipalities, and eligible nonprofits to expand the number of low-income and disadvantaged communities that have access to affordable, resilient, and clean solar energy programs.

13.     Per the NOFO, to qualify as serving a low-income and disadvantaged community, an awardee must fall into at least one of the following categories: (a) communities identified as disadvantaged by the Climate and Economic Screening Justice Tool for mapping; (b) a limited number of additional communities identified as disadvantaged by EPA's Environmental Justice Screening and Mapping tool; (c) geographically dispersed low-income households; and (d) properties providing affordable housing.

**The Illinois Finance Authority Applied for and Received SFA Funding**

14.     On October 11, 2023, IFA submitted an application for SFA funding under the EPA's NOFO.

---

[1] https://www.grants.gov/search-results-detail/348957

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**15.** In developing its application, IFA consulted with a number of stakeholders, including the Illinois Power Agency ("IPA"), DCEO, the Illinois Housing Development Authority, the Illinois Commerce Commission, units of government throughout the state, the Clean Energy Jobs and Justice Fund, and other Illinois stakeholders. IFA's application and program design were further informed by conversations with more than 150 organizations through 12 public workshops, listening sessions, and stakeholder meetings. IFA's application included letters of support from a range of organizations that, along with IFA, invested significant time in developing this program. We conservatively estimate at least 900 hours were spent preparing for and hosting workshops and related meetings, developing and drafting the SFA proposal, and reviewing award terms.

**16.** IFA was awarded $156,120,000 million of SFA funding on July 8, 2024. On July 11, 2024, EPA transmitted a Grant Agreement to IFA. A true and correct copy of IFA's initial Grant Agreement is attached hereto as **Exhibit 1.** IFA received an Assistance Amendment Agreement from the EPA on December 9, 2024, attached as **Exhibit 2**.

**17.** EPA obligated the entire $156,120,000 million balance of IFA's SFA award on July 8, 2024, within the 21-day period allotted by the Agreement for IFA to draw down the award amount. IFA's award appeared shortly after the Assistance Amendment Agreement in IFA's Automated Standard Application for Payments ("ASAP") account, with the ASAP account showing a balance of $155,720,000.00 effective December 12, 2024.[2]

---

[2] IFA's ASAP account indicates that the full amount was funded effective 12/12/2024. The full amount is $400k less than the award amount because the full award amount includes $400k of in-kind support from USEPA.

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**The Illinois Finance Authority Plans and Designs its SFA Offerings**

18.     Illinois' SFA Work Plan, which IFA negotiated with EPA, outlined IFA's plan and budget for planning, designing, and implementing the State's SFA program for the project period of September 1, 2024 to April 31, 2029. A true and correct copy of IFA's final Work Plan is attached hereto as **Exhibit 3.** IFA first submitted its SFA Work Plan to EPA on August 29, 2024. IFA and EPA worked together over the next five months to finalize the Work Plan. This process entailed a substantial investment of time and effort. For example, EPA provided comments on the Work Plan on September 13, 2024, and IFA provided responsive edits to EPA on September 30, 2024. EPA provided additional comments on October 9, 2024, and IFA provided EPA another draft of the Work Plan on October 11, 2024. Additional revisions were made on October 31, 2024, and on December 12, 2024, EPA approved IFA's initial Work Plan. IFA submitted additional revisions to EPA on December 23, 2024, and on January 8, 2025.  EPA approved IFA's final Work Plan on January 28, 2025, and informed IFA that it had exited the planning period.

19.     IFA's Work Plan proposed to deploy and enhance comprehensive programs to help the State bring the benefits of solar energy to low-income and disadvantaged communities across Illinois. Specifically, IFA's Work Plan proposed to expand the existing Illinois Solar for All ("ILSFA") program and Adjustable Block Program/Illinois Shines ("Illinois Shines") with financial assistance (including grants and loans) to enable roof upgrades, incorporate energy storage, expand the oversubscribed low-income community solar subprogram, expand residential solar access, support energy sovereignty and community-driven projects, and provide critical capital to diverse solar vendors to grow their business and capabilities to bring

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

solar projects to low income communities. In addition, a technical assistance portion of Illinois's Work Plan aimed to improve and extend direct community engagement efforts to expand residential solar adoption and build on Illinois' soon-to-be-implemented clean energy workforce development program.

20.    Pursuant to its approved Work Plan, IFA worked expeditiously to implement the SFA program. IFA made adjustments to the Work Plan in consultation with EPA staff, and it was approved to exit the Planning Period on January 28, 2025. On January 30, 2025, IFA's implementation of its Work Plan was disrupted because of Office of Management and Budget's ("OMB") guidance directing federal agencies to freeze grants, loans, and other sources of funding pending OMB's review of all programs.[3] IFA's access to SFA obligated funding through ASAP was suspended on January 30, 2025. IFA's SFA funding remained inaccessible until February 20, 2025, when a judge issued a Temporary Restraining Order in a case contesting the OMB funding freeze (*New York v. Trump*, 1:25-cv-00039-JJM-PAS (D.R.I., filed Jan. 28, 2025). EPA staff was not responsive to IFA's questions about program implementation between January 30, and February 20, 2025, and the EPA Project Officer assigned to IFA indicated that staff was unable to respond to SFA inquiries. EPA staff re-engaged with IFA on February 20, 2025.

21.    During the first program year, on January 28, 2025, IFA withdrew $11 million from the IFA SFA ASAP obligated-funds account to fund the initial allocation to the IPA to expand the ILSFA Community Solar Program ("ILSFA Community Solar Program") that aligned with federal requirements and the Work Plan. The initial draw of $11 million was for

---

[3] https://www.documentcloud.org/documents/25507011-omb-memo-on-temporary-pause-of-financial-assistance-programs/

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

an immediate cash need to commit to the 2024-2025 program year of IPA's ILSFA Community Solar Program. When IFA received EPA's notice of termination on August 7, 2025, it was preparing to allocate another $11 million to IPA for the 2026 program year and $11 million in each of the following three program years, allocating a total of $55 million to IPA over the set five years for its ILSFA Community Solar Program expansion, consistent with IFA's Work Plan. IFA's Work Plan also provided funding to expand IPA's Residential Solar Program, with an additional $30 million set to be allocated to IPA for the three program years between 2027-2029.

22. IFA also issued NOFOs for two programs.

a. IFA issued a NOFO for the Illinois Solar for All Expansion: Residential Solar Outreach Grants on April 18, 2025, which closed on May 19, 2025. The NOFO allocated up to $2,600,000 to selected grantees in 2025. After a competitive review process, in mid-July 2025 IFA notified four local governments and nonprofits that they received grant awards through which they would receive SFA funding via the Residential Solar Outreach Grant program to connect with applicable communities to sign up for existing community solar projects. Two of the four grantees returned signed agreements to IFA as of August 7, 2025. The other two grantees did not have the opportunity or notice to return signed grant agreements to IFA prior to August 7, 2025, although the grantees had indicated their intention to accept the grant. IFA planned to post the NOFO for a second round of applications in August 2025. It also

DECLARATION OF CHRISTOPHER MEISTER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION No. 2:25-cv-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

intended to re-open the Residential Solar Outreach Grant application each spring through 2029, with $3,000,000 allocated to each subsequent year.

b. In April 2025, IFA issued a NOFO for applicants to the Solar APP+ Adoption and Implementation Grant, which allocated up to $300,000 to the grant program in 2025. The initial application period closed May 11, 2025. IFA opened a second NOFO application on June 30, 2025, which would accept applications on a rolling basis through the end of the year. IFA awarded a grant to one applicant in June 2025, but given the EPA's abrupt termination of SFA, the grantee was unable to sign the agreement and return it to IFA by August 7, 2025, although the grantee had indicated their intention to accept the grant. IFA also intended to re-open the Solar APP+ Adoption and Implementation Grant application each spring through 2029, with an additional $300,000 allocated to each subsequent year.

c. Throughout the 13 months since EPA obligated the SFA award to IFA, IFA has worked diligently to implement its Work Plan despite EPA's efforts to disrupt the SFA program since January 2025. IFA planned to have 10 programs outlined in the Work Plan operational by the end of 2025. Given the complexity and size of the SFA program, IFA hired and trained consultants and staff to support these programs. IFA's SFA team members attended weekly training and information-sharing meetings

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

9

with other SFA recipients and stakeholders, and IFA invested significant time building out its grant administration infrastructure, drafting NOFOs, scoring and reviewing applications, conducting grant applicant risk assessments, drafting grant agreements and related documents, preparing reports to submit to the EPA, communicating with the EPA Project Officer, tracking time and costs related to SFA implementation, reviewing invoices and work product of our consultants, coordinating and attending meetings with SFA program partners, and preparing updates and materials for presentation at IFA's monthly public board meetings. IFA also engaged in stakeholder outreach to promote the programs. EPA's disruptions to the program during 2025 have limited IFA's ability to plan for permanent staffing, but IFA recently recruited and hired a full-time grant manager despite EPA's efforts to disrupt the Greenhouse Gas Reduction Fund programs.

d.  In December 2024, IFA held an SFA kickoff stakeholder engagement webinar, along with five working group discussions. Working groups took place during the first three weeks of December, with topics covering lending program structures, coordination with IPA and ILSFA, municipal programing, and a potential SFA intake portal. IFA also used limited agency resources to develop a website highlighting IFA's new Climate Bank initiatives, including the SFA program. The new website,

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

10

which includes a disclaimer about the status of the SFA program on certain pages, may be viewed at https://illinoisclimatebank.com/.

e. IFA and IPA worked closely to apply for the SFA award and have endeavored to deploy these funds to support the expansion of clean and affordable energy throughout Illinois. IPA's existing solar programs were closely aligned to the purposes and requirements of the SFA program. The demand for IPA's programs exceeded the resources available, and it was anticipated that the SFA program would allow for a rapid expansion of solar deployment in Illinois. IPA advised IFA on designing the SFA program to integrate it as seamlessly as possible with IPA's existing programs. IPA also provided technical expertise to IFA staff, SFA stakeholders, and the general public on the process of developing, installing, and connecting different kinds of solar projects. In short, this partnership envisioned IFA contributing financial resources and expertise in public finance and IPA contributing technical expertise on solar projects and accessing state and federal funding through its incentive programs.

23.    IFA has obligated and drawn down from its ASAP account about $11.7 million of the $156,120,000 obligated to IFA by EPA.

**EPA Attempts to Eliminate the Solar for All Program and Terminate the Illinois Finance Authority's SFA Grant**

24.    On August 7 at 5:00 PM CST, IFA received a letter via e-mail from EPA purporting to terminate IFA's SFA grant. A true and correct copy of the letter is attached

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

hereto as **Exhibit 4**, and a true and correct copy of the email from the EPA transmitting the letter is attached hereto as **Exhibit 5**.

25.     The letter stated that the One Big Beautiful Bill Act ("OBBBA") had repealed the underlying authority for the SFA program and rescinded unobligated amounts to carry out the program. EPA stated that it "has been weighing options for the future of the Solar for All program" because it believed OBBBA had "effectively and completely terminated the statutory authority and all appropriations related to Solar for All" and that it "no longer possesses either the substantive legal authority or the financial appropriations" needed to continue the SFA program.

26.     The letter came as a surprise to IFA, which had as recently as August 1, 2025, received communication from EPA that, following the passage of OBBBA, it would continue to administer obligated SFA grants. A true and correct copy of that communication from the EPA to IFA is attached hereto as **Exhibit 6**.

27.     Prior to the termination notice, IFA's ASAP account contained $143,953,650 of IFA's obligated SFA award. On August 7, 2025, however, IFA's ASAP account for the SFA program had been suspended as of 4:30pm CST. On August 8, 2025, the amount of funds in IFA's ASAP account was reduced by $133,946,579.89 to $10,007,069.62. Since August 8, 2025, IFA's ASAP account has changed to a "liquidated" status, and the reduced amount of funds appear available to draw down. However, the "available balance" on the account has been substantially reduced from $143,953,650 to $10,007,069.62, and the performance period end dates have changed from April 30, 2029 and August 30, 2029 to August 15, 2025 and December 8, 2025.

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

28.    As of the date of this Declaration, EPA has not provided IFA with any explanation as to (1) why IFA's SFA ASAP account has been placed into a "liquidated" status, (2) why the available balance has been substantially reduced and how the new balance amount was determined, (3) why the performance period end dates have been modified, or (4) the status of the $133,946,579.89 in obligated funds that are no longer reflected in IFA's SFA ASAP account.

29.    IFA is also unsure whether it can distribute funds drawn down from and available in its ASAP account because of the following language in the EPA's Assistance Amendment, received the morning of August 8, 2025: "The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award of amendment mailing date." **Exhibit 7**.

30.    On August 28, 2025, pursuant to the Assistance Amendment, IFA submitted a Notice of Disagreement to EPA's Award Official, Phillip Schindel. A true and correct copy of the Notice of Disagreement is attached hereto as **Exhibit 8**.

31.    On September 5, 2025, pursuant to the Termination Letter, IFA submitted a Dispute of Termination to EPA's Dispute Decision Official, Michael Molina. A true and correct copy of the Dispute of Termination is attached hereto as **Exhibit 9**. On September 11, 2025, IFA received an acknowledgment from EPA of its Dispute of Termination Letter, a true and correct copy of which is attached hereto as **Exhibit 10**.

DECLARATION OF CHRISTOPHER MEISTER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION No. 2:25-cv-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

32.    On October 1, 2025, IFA received an email containing instructions on how IFA was to closeout its SFA grant. This email did not acknowledge IFA's pending administrative dispute. A true and correct copy of this email is attached hereto as **Exhibit 11**.

33.    On October 28, 2025, IFA received a letter from EPA stating that, due to the initiation of legal proceedings regarding the validity of EPA's termination of IFA's SFA grant, it had determined that IFA's administrative dispute was moot. A true and correct copy of this letter is attached hereto as **Exhibit 12**.

34.    On November 5, 2025, IFA responded to this letter, objecting both to the determination that the administrative dispute was moot and to the direction that IFA begin closing out its grants. A true and correct copy of IFA's letter is attached hereto as **Exhibit 13**.

### Termination of the SFA Program Has and Will Harm Illinois and its Residents

35.    The loss of the SFA Program will harm Illinois and its residents.

36.    IFA anticipated using SFA funding through its various programs to serve at least 18,000 low-income households, helping some residents realize at least 50% savings on the energy portion of their electric bills. SFA funding was estimated to benefit approximately 50 municipalities throughout the State of Illinois. With the loss of the previously obligated funds, IFA will no longer be able to offer forgivable loans for upgrades for roof replacement and/or electrical work, forgivable loans to install solar and energy storage, low-interest working capital loans to disadvantaged small solar vendors, a standard lease-to-own product to make smaller solar vendors more competitive, low-interest loans to community-driven community solar projects, grants to expand outreach and education about the Illinois Solar for All Residential program, or grants to improve the residential solar permitting process.

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Additionally, IFA will not be able to expand the existing Illinois Solar for All Residential Solar subprogram, which offers no-cost solar installations for low-income households, or the Community Solar subprogram, which allows income-eligible homeowners and renters to benefit from solar energy savings without installing solar panels on their property.

37.    In addition, SFA funding was expected to create new green jobs in Illinois' solar industry, the loss of which will compound harm already caused to the solar industry by the Trump Administration's early end of federal tax credits for distributed solar (which alone is estimated to cost Illinois 21,000 jobs within five years).[4]

38.    Without this funding, IFA may lose access to vendors with expertise on solar energy infrastructure projects, which may limit the availability of products and services that IFA can provide with its remaining resources.

39.    IFA will also suffer reputational harm in its relationships and dealings with other Illinois State agencies and vendors with whom it had begun discussing the benefits of the funded programs. Abrupt loss of funding will increase distrust of policymakers and the solar industry in the State's ability to support solar projects for low-income residents and communities. IFA has devoted significant time over the past year to developing internal systems and expertise, financial assistance products, and relationships to support the SFA program and other clean energy programs that are now threatened.

40.    More generally, loss of SFA funding and the loss of federal support for solar energy generally will harm Illinois and its residents. The SFA funding would have supported the growth of low-cost clean energy at a time when energy costs are soaring.

[4] https://ler.illinois.edu/2025/08/11/fewer-jobs-and-higher-energy-bills-what-the-one-big-beautiful-bill-act-means-for-illinois/

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**41.** The loss of SFA funding will impair Illinois' ability to meet the renewable energy goals set forth in Illinois' Climate and Equitable Jobs Act ("CEJA"). CEJA established a goal of transitioning Illinois to 40% clean energy by 2030, 50% clean energy by 2040, and 100% clean energy by 2045. Replacing energy sources that emit harmful pollutants with renewable solar energy will improve the health of Illinois residents while reducing energy costs. EPA's actions to decimate the solar industry including by terminating the SFA program and promoting reliance on non-renewable energy sources will challenge the clean energy transition and create long-lasting harms to public health. The SFA program was critical to achieving this transition because it provided a source of funding for solar projects and clean energy infrastructure projects related to creating durable, reliable, and equitable clean energy infrastructure. For example, the SFA programs in IFA's Work Plan included financial support for enabling upgrades (e.g., making improvements to roofs to make them suitable for solar panels) and battery storage projects that would have allowed more low-income communities to be able to take advantage of clean energy. Without the infrastructure and community outreach programs supported by SFA, fewer low-income communities will have access to low-cost clean energy.

**42.** Going forward, the loss of funding will delay timelines for solar-related construction projects, including for grantees that made initial investments in their projects in expectation of receiving SFA funds, whether from IFA or other recipients. Project developers and homeowners that expected to utilize low-cost SFA financing to support their solar projects have already made significant investments in pre-construction activities, and the abrupt loss of SFA financing will require a pause in efforts while they seek alternative, and likely higher cost,

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

financing. This will make it difficult for many projects to meet new commence construction timelines necessary to receive clean energy investment and production credits, potentially placing these projects in jeopardy.

43.    Moreover, IFA acted in reasonable reliance on its fully-obligated SFA funding continuing to be available. IFA and its consultant and State agency partners expended more than 900 hours on application development and early SFA programming. Implementation efforts following the SFA award may have been reimbursed (in part) by SFA funds. IFA could have devoted staff hours to developing other programs and products, and now there is no way to recover this lost time or effort. Applicants to IFA's SFA grant opportunities have also made considerable investments in time and resources in expectation of receiving SFA funds.

44.    IFA cannot maintain its own version of the SFA program at previous levels without the technical assistance and funding provided by EPA's SFA program. IFA generates its own revenue and does not receive any state appropriations, meaning IFA does not have the ability to fund the proposed SFA programs without federal assistance. The ILSFA program, which is managed by IPA and funded by the State, will continue, but the loss of federal SFA funds will severely limit the program's ability to reach more low-income communities.

45.    The SFA program also allowed IFA to work closely with EPA in developing its work plan and access EPA-provided technical assistance. That ongoing collaboration and programmatic support had value to IFA and the loss of that collaboration and programmatic support cannot be remedied through funding alone.

**Conclusion**

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

46.     EPA's decision to attempt to terminate the entire Solar for All program has caused and will continue to cause irreparable harm to Illinois and its residents.

I declare under penalty of perjury under the laws the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of November, 2025, at Chicago, Illinois.

_____
Christopher Meister
Executive Director
Illinois Finance Authority

DECLARATION OF CHRISTOPHER
MEISTER IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

18

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744