1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

10

STATE OF ARIZONA, et al.,                          NO. 2:25-cv-02015-TMC

11

|                              Plaintiffs,          DECLARATION OF SAMUEL H.

12                                                  RIKKERS IN SUPPORT OF
                                                    MOTION FOR PRELIMINARY

13       v.                                         INJUNCTION

14    U.S. ENVIRONMENTAL PROTECTION
      AGENCY; and LEE ZELDIN, in his

15    official capacity as Administrator of the
      U.S. Environmental Protection Agency,

16
                              Defendants.

17

18          I, SAMUEL H. RIKKERS, declare under the penalty of perjury pursuant to 28 U.S.C. §

19    1746 that the following is true and correct:

20          1.      I am a resident of the State of Wisconsin. I am familiar with the information in

21    the statements set forth below either through personal knowledge, consultation with Wisconsin

22    Economic Development Corporation (WEDC) staff, or from my review of relevant documents

23    and information. If called as a witness, I could and would testify competently to the matters set

24    forth below.

25          2.      I am the Deputy Secretary and Chief Operating Officer at the WEDC.

26

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

3.      Prior to joining WEDC in November 2019, I served as strategic economic initiatives director at the Wisconsin Department of Administration. I served in the White House from 2013 to 2014 as director on the energy and environment team in the Presidential Personnel Office, then was administrator of the U.S. Department of Agriculture's Rural Business – Cooperative Service. Before returning to Wisconsin in 2017, I launched and led the Rural Opportunity Initiative of the Georgetown University McDonough School of Business. In Wisconsin, I served as executive director of Tiny Earth, a global initiative based at the University of Wisconsin-Madison. I hold a juris doctor degree from the University of Wisconsin Law School, a master's degree in international affairs from Columbia University, and a bachelor's degree in political science and philosophy from Macalester College. I also served as a Peace Corps volunteer in Zambia.

4.      In my capacity as Deputy Secretary and Chief Operating Officer at the Wisconsin Economic Development Corporation I am responsible for leading WEDC's Solar for All effort from the time of application, stakeholder engagement, award, and management of our implementation team post award.

5.      I submit this declaration to provide details on the ways in which the Environmental Protection Agency's termination of the Solar for All (SFA) Program has harmed Wisconsin.

**The Solar for All Program**

6.      In 2022, President Biden signed the Inflation Reduction Act. Inflation Reduction Act of 2022, Public Law No. 117-169 (2022). Among other things, the Inflation Reduction Act amended the Clean Air Act to authorize and appropriate to EPA $7 billion, to remain available until September 30, 2024, to make competitive grants to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies. Public Law 117-169, Sec. 60103, 136 Stat. 2065-66 (codified at 42 U.S.C. § 7434). This $7 billion appropriation was part of Congress's Greenhouse Gas Reduction Fund, a $27 billion investment to combat the climate

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

crisis by supporting greenhouse gas- and air pollution-reducing projects in communities across the country.

7.      In accordance with Congress's directive, EPA designed and launched the Solar for All Program. SFA was intended to encourage the deployment of residential distributed solar energy to lower energy bills for millions of Americans and catalyze transformation in markets serving low-income and disadvantaged communities. SFA grantees would provide subsidies and other financial assistance to residential rooftop and residential-serving community solar projects in and benefit low-income and disadvantaged communities, in addition to project-deployment technical assistance such as workforce development, community outreach, and other support to help overcome barriers to solar deployment.

8.      On June 28, 2023, EPA published its Notice of Funding Opportunity (NOFO), EPA-R-HQ-SFA-23-01, outlining application requirements for the SFA program. The NOFO indicated that, pursuant to the Inflation Reduction Act and the Clean Air Act, EPA would award up to 60 grants to States, territories, Tribal governments, municipalities, and eligible nonprofits to expand the number of low-income and disadvantaged communities that have access to affordable, resilient, and clean solar energy programs.

**WEDC Applied for and Received SFA Funding**

9.      On October 12, 2023, WEDC submitted an application under the NOFO.

10.     In developing its application, WEDC consulted with a number of stakeholders, including the Wisconsin Public Service Commission, the Wisconsin Office of Sustainability and Clean Energy, as well as representatives from various energy and workforce development organizations, and other community leaders throughout the state.

11.     WEDC was awarded $62,450,000.00 of SFA funding on April 19, 2024, including $400,000 of in-kind services from EPA. On July 15, 2024, EPA transmitted an Assistance Agreement to WEDC. A true and correct copy of WEDC initial Assistance Agreement is attached hereto as Exhibit 1.

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

12.    EPA obligated the entire balance of WEDC's SFA award on July 8, 2024, the date of the Assistance Agreement. Wisconsin's $62,050,000 award appeared in WEDC's Automated Standard Application Payments (ASAP) accounts on December 16, 2024 (the remaining $400,000.00 of the SFA grant was to be delivered as in-kind technical assistance provided by NREL.

**WEDCPlans and Designs its SFA Offerings**

13.    Between the date of its award and December 2024, WEDC negotiated its work plan and budget with EPA. On November 21, 2024, WEDC submitted its final Work Plan to EPA. The Work Plan outlined WEDC's plan for planning, designing, and implementing an SFA Program within Wisconsin.  A true and correct copy of WEDC's Work Plan is attached hereto as Exhibit 2. During this time, WEDC was limited to using no more than 2% of its SFA award for certain costs related to developing the Work Plan.

14.    WEDC's Work Plan proposed three key solar deployment pathways: rooftop solar for single-family homes, rooftop solar for multifamily residential buildings, and community solar. A program goal was to ensure minimal or no upfront costs for participants. WEDC planned to contract with third-parties to implement the program.

a.    Rooftop Residential – Single-Family Homes. WSFA was to provide grants to income-qualified single-family housing developers to cover the full cost of solar PV systems for eligible homeowners. The program sought to maximize the use of available tax credits and other incentives, including the Focus on Energy® Solar program incentive. Subawards would be issued to developers to fund solar installations on solar-ready affordable housing, whether new construction or rehabilitation projects. WEDC was to partner with a developer ("SFA Developer") to install rooftop solar on qualifying single-family homes. The SFA Developer would

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

have been responsible for verifying income eligibility, ensuring homes are solar-ready, coordinating installations with contractors, and supporting workforce development efforts.

b. <u>Rooftop Residential – Multifamily Homes</u>. WSFA was to provide grants to eligible housing developers and owners of qualifying multifamily properties to install solar PV systems on newly constructed or rehabilitated affordable multifamily housing. These systems were required to serve multiple eligible tenants and provide at least 20% electricity cost savings to residents through direct utility bill reductions, rent discounts, or similar mechanisms. To ensure residents benefited directly from the installed systems, WSFA would have required property owners to preserve affordability and limit rent increases. Best practices from agencies such as the U.S. Department of Housing and Urban Development (HUD) would have been incorporated. For instance, in subsidized housing where utility costs impact rent caps, WSFA would have included safeguards to prevent rent hikes from negating the benefits of energy savings.

c. <u>Community Solar</u>:

   i. *Utilities and developers*.  WSFA would have worked closely with participating utility companies and other developers to deploy grants and a subscription program for eligible residents who cannot access single-family residential or multifamily solar. WSFA included a streamlined community solar enrollment process that utilized data from public assistance programs like the Low-Income Heating and Energy Assistance Program (LIHEAP) and the Wisconsin

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Weatherization Assistance Program (WAP) to determine automatic eligibility for subsidized rates. Participation in WSFA community solar would result in at least a 20% reduction in electric costs for participating customers.

ii.    *Community Solar – Cooperative Solar*: Wisconsin is home to a new cooperative structure that allows residents to invest in energy and access the financial benefits of the development. Unlike traditional subscription-based community solar, the Cooperative Shares Model allows member investors to own community solar project shares. Instead of receiving monthly bill credits for kWh of solar power used, members receive dividends from their shares. Dividend payments were to be equivalent to at least 20% electricity bill expenses for the member's household. This strategy bypasses the need for utility companies to adopt a special billing procedure. It would have allowed customers to participate regardless of their utility provider or proximity to community solar development.

iii.    *Contractual Services*:

1.    Contractual Implementer(s): The Implementer was going to be a dedicated team of professionals who would have provided technical assistance to WEDC and to WSFA subawardees. This experienced company would have facilitated marketing and community outreach, beneficiary engagement, technical assistance, reporting, contractor management, community engagement and education, and workforce development activities, ensuring effective and efficient delivery of financial assistance in alignment with WSFA goals. Responsibilities included coordinating and executing community engagement

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

initiatives, providing technical assistance for project deployments across Wisconsin, and monitoring and reporting on financial assistance distribution. Throughout the WSFA's duration, the Implementer would have provided periodic reporting to stakeholders, ensuring transparency and accountability.

2. Community Engagement, Education, and Workforce Development Financial Assistance: Funding would have provided direct financial assistance for initiatives that advance community engagement, education, and workforce development related to solar energy deployment across Wisconsin. The WSFA Implementer would have collaborated with nonprofit organizations, technical colleges, and other eligible entities to design and implement programs that build local capacity, raise public awareness, and ensure workforce readiness for solar installation and maintenance. Funding would have supported activities that promoted equitable access to training and employment opportunities within the solar industry.

15.    EPA approved WEDC's work plan on December 11, 2024, and the funding restriction was lifted. EPA incorporated the work plan into the Agreement with WEDC. A true and correct copy of WEDC's revised Assistance Agreement is attached hereto as Exhibit 3.

16.    Pursuant to its approved Work Plan, WEDC elected to take a full Program Planning period to design and ready for implementation its SFA program.

17.    During this year, WEDC did the following:
a. Application Development and Submission. WEDC led the drafting and submission of a comprehensive application to the U.S. Environmental Protection Agency (EPA) Solar for All program, securing $62.4 million

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

in funding for Wisconsin. WEDC held over 20 stakeholder meetings between February 2024 and February 2025.

b. Green Ribbon Commission Coordination. WEDC supported the Green Ribbon Commission, an initiative created by Governor Tony Evers, in guiding the design of Wisconsin's Green Innovation Fund. WEDC advanced a model that leverages public and private investment in clean energy and efficiency projects, aligned with federal funding opportunities while promoting climate action, job creation, and statewide economic development.

c. SFA Coalition Building and Management. WEDC established and managed a coalition of partners including nonprofits, utilities, housing developers, and Tribal entities to build shared capacity to support program implementation.

d. Interagency Collaboration. WEDC coordinated with the Public Service Commission (PSC), Focus on Energy, Department of Natural Resources (DNR), Department of Administration (DOA), and the University of Wisconsin (UW) to ensure alignment of resources and avoid duplication of efforts.

e. Stakeholder Communications. WEDC provided regular updates through email and webinars and responded to inquiries from potential beneficiaries, solar installers, advocates, and other interested parties regarding program availability, eligibility, and timelines.

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

f. <u>Green Bank Development</u>. WEDC issued a Request for Proposals (RFP) and contracted consultants to design solar financing products to be deployed through the green bank. WEDC completed the financial modeling, market development strategy, and compliance planning.

g. <u>Workplan and Budget Update (Planning Period)</u>. WEDC updated the workplan and budget within 90 calendar days of the EPA award notice.

h. <u>EPA Training and Webinars</u>. WEDC participated in EPA-led training sessions on grant management, compliance, household savings verification, and other program execution topics.

i. <u>Personnel Recruitment</u>. WEDC developed job descriptions, conducted interviews, and hired key staff in line with the workplan and budget.

j. <u>Stakeholder Engagement Consultant Procurement</u>. WEDC issued an RFP, selected qualified firms, and managed contracts to support stakeholder engagement and community coordination.

k. <u>Stakeholder Engagement Activities</u>. WEDC convened three working groups under the Solar for All Stakeholder Advisory Group: Workforce Development; Community Engagement and Education; and Native Nations. WEDC engaged lenders and housing developers through coordination meetings.

l. <u>Community Site Visits</u>. WEDC conducted visits to Tribal Nations and Habitat for Humanity projects to assess barriers, opportunities, and market characteristics for solar deployment.

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

m. <u>Program Design and Modeling</u>. WEDC developed detailed estimates for electricity and energy cost savings, number of households served, greenhouse gas (GHG) reductions, and equity outcomes. WEDC built financial models to guide strategy, financing mechanisms, tool selection, and metrics.

n. <u>Technical Coordination with NREL</u>. WEDC collaborated with the National Renewable Energy Laboratory (NREL) for technical assistance on stakeholder engagement, best practices, and workforce analysis.

o. <u>Program Guidelines Development</u>. WEDC drafted internal and public-facing program guidelines outlining eligibility criteria and objectives and secured WEDC Board approval to ensure transparency and equitable participation. WEDC built systems and processes for implementation.

p. <u>Quality Management Plan (QMP)</u>. WEDC developed a plan to maintain consistent standards and quality across all activities.

q. <u>Quality Assurance Project Plans (QAPP)</u>. WEDC began developing a protocol for environmental data collection and compliance with EPA standards.

18. WEDC also used the Program Planning period to further develop the three programs outlined in its application. For example, WEDC did the following:

a. <u>Workplan Update (Implementation Period)</u>. WEDC finalized and submitted the implementation workplan to the EPA, incorporating strategies, metrics, milestones, and timelines for program execution. On July 8, 2025, WEDC submitted a revised Work Plan that changed the

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

format of the financial assistance through the three pathways (single-family, multi-family, and community solar) from loans to grants and modified some of the expected SFA program outcomes.

  b. <u>Program Implementer Procurement</u>. WEDC issued an RFP seeking proposals from third-party implementers to provide technical assistance and subject matter expertise to grant recipients and workforce development partners. The implementer was to support program success but not directly administer financial assistance.

  c. <u>Reporting and Compliance</u>. WEDC submitted semi-annual reports to the EPA detailing progress, outcomes, and compliance activities.

  d. <u>Clean Energy States Alliance (CESA) Office Hours</u>. WEDC participated in weekly peer learning sessions with other Solar for All awardees, sharing technical insights and exchanging best practices.

19. WEDC has been actively working on designing and preparing to launch its SFA programming throughout 2025 and anticipated it would launch WEDC's SFA programming in early 2026.

**EPA Eliminates the Solar For All and Terminates WEDC's SFA Grant**

20. On August 7, 2025, I became aware that EPA had decided to terminated the SFA program. EPA first announced the decision through an X post from EPA Administrator Zeldin. The post is reproduced below.[1]

---

[1] Lee Zeldin (@epaleezeldin), X (Aug. 7, 2025, 11:07 AM), https://x.com/epaleezeldin/status/1953518426602803684

1

2



**Lee Zeldin** ✔ ⓘ
@epaleezeldin                                        •••

3

4

The One Big Beautiful Bill eliminated the Greenhouse Gas Reduction
Fund, which included a $7 billion pot called "Solar for All".

5

6

In some cases, your tax dollars were diluted through up to FOUR pass-
through entities, each taking their own cut off the top!

7

8

9

The bottom line is this: EPA no longer has the statutory authority to
administer the program or the appropriated funds to keep this
boondoggle alive.

10

11

Today, the Trump EPA is announcing that we are ending Solar for All for
good, saving US taxpayers ANOTHER $7 BILLION!

12

13

14

21.    Later that same day, WEDC received a letter from EPA terminating WEDC's
SFA grant. A true and correct copy of the letter is attached hereto as Exhibit 4.

15

16

17

18

19

20

22.    The letter stated that the One Big Beautiful Bill Act (OBBBA) had repealed the
underlying authority for the SFA program and rescinded unobligated amounts to carry out the
program. EPA stated that it believed OBBBA had "effectively and completely terminated the
statutory authority and all appropriations related to Solar for All" and "no longer possesses either
the substantive legal authority or the financial appropriations" needed to continue the SFA
program.

21

22

23

23.    Prior to the termination notice, WEDC's ASAP account contained the
$61,755,094.37 of WEDC's SFA award. On August 15, 2025, however, I learned that EPA had
suspended WEDC's ASAP account for the SFA program.

24

25

24.    Sometime prior to August 15, 2025, EPA changed WEDC's ASAP account status
again.   This time, EPA changed the account status indicator to "Liquidated," changed the

26

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

performance period end dates from April 30, 2029 and August 30, 2029 to August 15, 2025 and December 8, 2025 and reduced the Available Balance from $61,755,094.37 to $4,568,827.21.

25.     To date, EPA has not provided WEDC with any explanation regarding the changes made to WEDC's ASAP account.

26.     On August 27, 2025, pursuant to the Termination Letter, WEDC submitted a Dispute of Termination to EPA's Dispute Decision Official, Michael Molina. A true and correct copy of the Dispute of Termination is attached hereto as Exhibit 5.

27.     On October 1, 2025, WEDC received an email containing instructions on how WEDC was to closeout their SFA grant. This email did not acknowledge WEDC's pending administrative dispute. A true and correct copy of this email is attached hereto as Exhibit 6.

28.     On October 27, WEDC received a letter from EPA stating that it had determined that WEDC's administrative dispute was moot. A true and correct copy of this letter is attached hereto as Exhibit 7.

29.     On November 10, 2025, WEDC responded to this letter, objecting both to the determination that the administrative dispute was moot and to the direction that WEDC begin closing out their grants. A true and correct copy of WEDC's letter is attached hereto as Exhibit 8.

**Termination of the Solar for All Program Has and Will Harm Wisconsin and its Residents**

30.     The loss of the Solar for All Program will harm Wisconsin and its residents.

31.     Between the various programs WEDC intended to offer using the funding EPA awarded pursuant to the SFA program, WEDC was expecting to serve 7,463 low-income households, reducing electrical bills by 20%. WEDC's plan provided for an estimated $4,158,497 household annual electricity cost savings and $103,962,442 in lifetime annual electricity cost savings. The initiative also would have supported a sustainable solar market beyond the initial five years, ensuring continued access and benefits.

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

32.     WSFA was expected to result in significant aggregate electricity cost savings for Wisconsinites and reduce strain on the existing electric infrastructure. WEDC's proposed metrics would have achieved: 24.7 MW of new solar generation capacity installed in Wisconsin; an annual avoidance of 39,020 tons of $CO_2$; a reduction in other greenhouse gases; production of 1,660,999 kWh/year of annual electricity produced and a lifetime production of electricity 656,545 MWh.

33.     With the loss of the previously obligated funds, WEDC will no longer be able to offer no-cost installations for low-income residential and multi-family households and cooperatives, depriving thousands of Wisconsinites from significant reductions in energy costs. WEDC will be unable to work with utility companies and developers provide community solar enrollment process offering subsidized rates for eligible customers. Wisconsin will not receive the cost saving benefits of solar infrastructure and the development of green jobs

34.     In addition, Wisconsin SFA would have fostered career development, particularly in solar installation, by partnering with the Focus on Energy program and other workforce development organizations, expected to create at least 40 new green jobs in Wisconsin's solar industry. This compounds the harm already caused to the solar industry by the Trump Administration's early end of federal tax credits for distributed solar.

35.     The premature end of the SFA Program also harms WEDC as an employer. WEDC SFA workplan included funding for 2.7 full-time employees, including salary and benefits. Now that the SFA Program has been terminated, WEDC does not have the funds currently available to support these roles with state or other dollars, which may result in layoffs.

36.     Further, the loss of this funding makes it difficult to fulfill the objectives of Wisconsin's Clean Energy Plan. In August 2019, with the issuance of Executive Order #38, Governor Tony Evers directed the Wisconsin Office of Sustainability and Clean Energy to create

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

a comprehensive Clean Energy Plan. The Clean Energy Plan, building on a variety of past work and considering the thoughts, plans, and suggestions of people and entities throughout Wisconsin, including utilities, private industry, frontline communities, Tribal Nations, government, academia, environmental not-for-profits, and many more, was delivered in April 2022. The Clean Energy Plan laid out the following objectives:

- Putting Wisconsin on a path for all electricity consumed within the state to be 100 percent carbon-free by 2050

- Ensuring that the State of Wisconsin is fulfilling the carbon reduction goals of the 2015 Paris Agreement

- Reducing the disproportionate impacts of energy generation and use on low-income communities and communities of color

- Maximizing the creation of, and equitable opportunities for, clean energy jobs, economic development and stimulus, and retention of energy investment dollars in Wisconsin

- Improving reliability and affordability of the energy system,

- Strengthening the clean energy workforce through training and education, while retraining workers affected by the transition from fossil fuel to clean energy sources

- Protecting human and environmental health by reducing ecosystem pollution from fossil fuels

37.     The Clean Energy Plan and the Governor's Task Force on Climate Change recommended, via Executive Order #195 directed the Wisconsin Department of Administration and the Wisconsin Economic Development Corporation to evaluate models for a green bank to finance the development of renewable energy and energy efficiency project across the state. The Green Ribbon Commission consists of 19 commissioners representing a wide breadth of expertise across the state. These 19 commissioners had over 26 hours of meetings from July 10, 2023 through April 7, 2025. SFA dollars were the seed and flagship funding source for Wisconsin's Green Bank, to bring to fruition the objectives of the Clean Energy Plan. Without

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

this money, these objectives cannot be achieved. The loss of SFA funds results in significant reputational costs. Since early 2023, WEDC has been publicly and diligently pursuing funding sources for clean energy in order to fulfill the objectives of the Clean Energy Plan. This has included the generous use of other's time through the Green Ribbon Commission, stakeholder groups (see attached list), and one-on-one conversations with stakeholders across the state.

38.    Moreover, WEDC acted in reasonable reliance on its fully-obligated SFA funding continuing to be available. WEDC expended more than 4000 hours applying for, designing and implementing Solar for All. I have spent approximately 693 hours (roughly 20% of my time) during the application phase and again once WEDC was awarded the grant. WEDC's Senior Director for Policy and Program Development worked full-time on preparing the application for two and a half months – approximately 433 hours. WEDC's Vice President of Productivity & Sustainability spent approximately 1,613 hours (70% of time) working on SFA between May 1, 2024, and August 7, 2025. Of that, about 504 hours (roughly 30%) were dedicated to meetings with various stakeholders. WEDC's Director of Productivity & Sustainability worked full-time on SFA, contributing about 650 hours between January 13, 2025, and May 19, 2025. Of that, roughly 150 hours—about 24% of her time—were dedicated to meetings with various stakeholders. WEDC's Federal Grants Compliance Manager spent 914 hours on SFA since May 2024.

39.    In addition to the employee time explicitly allocated for SFA listed above, WEDC legal and finance staff have spent a significant amount of time reviewing rules and regulations, attending office hours, setting up compliance plans/regimes and tracking SFA dollars. In so doing, WEDC had to forgo other funding opportunities, programs, and initiatives. This is time that would have otherwise been spent on other projects and services to internal clients and to constituents throughout the state of Wisconsin. There is no way to recover this lost time or effort.

40.    WEDC cannot launch its own Solar for All program without the administrative support and funding provided by EPA's Solar for All program due to lack of budgetary resources.

DECLARATION OF SAMUEL H.
RIKKERS IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

41.     The SFA program also allowed WEDC to work closely with EPA in developing and implementing its work plan.  EPA provided crucial programmatic support to WEDC, in developing its work plan. The SFA program also allowed WEDC to work closely with NREL, who has special expertise in Tribal energy concerns and were going to assist WEDC with a number of program design elements and specialized scientific calculations. That ongoing collaboration and programmatic support had value to WEDC and the loss of that collaboration and programmatic support cannot be remedied through funding alone.

**Conclusion**

42.     EPA's decision to terminate the entire Solar for All program has caused and will continue to cause irreparable harm to Wisconsin and its residents.

I declare under penalty of perjury under the laws the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 10th day of November 2025, at Madison, Wisconsin.


_____
Samuel H. Rikkers
Deputy Secretary & Chief Operating Officer
Wisconsin Economic Development Corporation

DECLARATION OF SAMUEL H. RIKKERS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION No. 2:25-cv-02015-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744