The Honorable Tiffany M. Cartwright

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

STATE OF ARIZONA, et al.

      *Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; and LEE
ZELDIN, in his official capacity as
Administrator of the U.S. Environmental
Protection Agency,

      *Defendants*.

Civil Action No. 2:25-cv-02015

Noting Date: December 17, 2025

## DEFENDANTS' MOTION TO TRANSFER VENUE

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

i

1

## TABLE OF CONTENTS

2 INTRODUCTION.................................................................................................................1

3 BACKGROUND................................................................................................................2

4 ARGUMENT.......................................................................................................................7

5    I.   The "First-To-File" Rule Supports the Transfer of this Case to the D.D.C......................7

6    II.  Alternatively, this Case Should Be Transferred under 28 U.S.C. § 1404(a) in the Interests

7        of Justice and for the Convenience of the Parties and the Witnesses. ..............................9

8       A.   The Public Interest Is Served by Transferring this Case to the D.D.C..................11

9       B.   The Private Interests of the Parties Support Transfer to the D.D.C. ......................14

10 CONCLUSION.................................................................................................................16

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

<u>Cases</u>

4

*A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. Of California,*
5
    503 F.2d 384 (9th Cir. 1974)..................................................................................12

6

*Alltrade, Inc. v. Uniweld Prods.,* Inc.,
7
    946 F.2d 622 (9th Cir. 1991)....................................................................................8

8

*Am. Guar. & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.,*
    No. 06-cv-1254, 2006 WL 3499342 (W.D. Wash. 2006)........................................7
9

*Amazon.com v. Cendant Corp.,*
10
    404 F. Supp. 2d 1256 (W.D. Wash. 2005)......................................................10, 12

11

*Apple Inc. v. Psystar Corp.,*
12
    658 F.3d 1150 (9th Cir. 2011) ..................................................................................7

13

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States,* No. C,
    13-03532 WHA, 2013 WL 6057824 (N.D. Cal. Nov. 15, 2013) ...........................14

14

*Continental Grain Co. v. Barge FBL-585,*
15
    364 U.S. 19 (1960)..................................................................................................12

16

*Davis v. United Servs. Auto. Ass'n,*
17
    No. C23-1838JLR, 2023 WL 8807372 (W.D. Wash. Dec. 20, 2023)....................10

18

*Dep't of Educ. v. California,*
    604 U.S. 650 (2025)................................................................................................10
19

*Ecological Rts. Found. v. U.S. Env't Prot. Agency,*
20
    No. 19-CV-04242-RS, 2019 WL 5295124 (N.D. Cal. Oct. 18, 2019).......12, 13, 16

21

*Evans v. Salazar,*
22
    No. C08-0372-JCC, 2010 WL 11565108 (W.D. Wash. July 7, 2010)...................15

23

*Ferens v. John Deere Co.,*
24
    494 U.S. 516 (1990)................................................................................................12

25

*Fisher v. Duff, et al.,* No. C15-5,
    944-BHS, 2016 WL 3280429 (W.D. Wash. June 15, 2016)....................................8
26

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

iii

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985)..................................................................................................15

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993)......................................................................................8

*Hoffman v. Blaski*,
    363 U.S. 335 (1960)..................................................................................................10

*In re Consol. Litig. Over Fire Aboard the APL PERU*,
    No. C09-169, 2010 WL 11688359 (W.D. Wash. Aug. 2, 2010).....................................11, 13

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000).................................................................................10, 11

*Music Grp. Servs. US, Inc. v. InMusic Brands, Inc.*,
    No. 13-cv-182, 2013 WL 1499564 (W.D. Wash. Apr. 11, 2013)...................................7, 8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
    145 S. Ct. 2658 (2025)..............................................................................................10

*Norwood v. Kirkpatrick*,
    349 U.S. 29 (1955)....................................................................................................10

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982)..........................................................................................7

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)....................................................................................................11

*Travelers Prop. Cas. Co. of Am. v. Expeditors Int'l of Wash., Inc.*,
    626 F. Supp. 3d 1193 (W.D. Wash. 2022)....................................................................9, 12

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)..................................................................................................13

Statutes

28 U.S.C. § 1391 ..........................................................................................................10

28 U.S.C. § 1404 ............................................................................................1, 7, 9, 10

42 U.S.C. § 7434 ....................................................................................................3, 4, 5

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

iv

One Big Beautiful Bill Act,
  Pub. L. No. 119-21, § 60002, 139 Stat. 72 (2025)....................................................4

<u>Rules</u>

Fed. R. Civ. P. 42(a).....................................................................................................12

<u>Regulations</u>

2 C.F.R. Part 200..........................................................................................................4

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

v

1

## INTRODUCTION

2   Defendants EPA and its Administrator move to transfer this case to the U.S. District

3   Court for the District of Columbia, where it can be consolidated with the earlier filed suit *Harris*

4   *County v. U.S. Environmental Protection Agency*, No. 1:25-cv-03646 (D.D.C.).  The two actions

5   are nearly identical.  In both cases, the plaintiffs challenge EPA's decision to terminate their

6   federal grants under a program known as Solar for All ("SFA").  Both lawsuits assert the same

7   claims under the Administrative Procedure Act ("APA"), the U.S. Constitution, and *ultra vires*

8   doctrines.  And the plaintiffs in each suit seek the same declaratory and injunctive relief—asking

9   each court to reinstate their SFA grants (all of which are materially similar) and restart the same

10   SFA program.  The lawsuits raise nearly identical factual and legal issues, including the same

11   legal question of whether the Tucker Act bars jurisdiction in the district court.  Under these

12   circumstances, litigating both cases in a common forum makes sense.

13   Defendants therefore ask the Court to exercise its discretion to transfer this case under the

14   "first-to-file" rule or 28 U.S.C. § 1404(a).  The first-to-file rule supports transfer because the

15   plaintiff in *Harris County* filed first, the parties are similar, and the issues are identical.  The

16   requirements for transfer under 28 U.S.C. § 1404(a) are also met, as both public and private

17   interests will be served through the transfer and the consolidation of nearly identical cases in the

18   U.S. District Court for the District of Columbia.  Allowing nearly identical cases to proceed

19   concurrently in the same federal district will save time and judicial resources and will result in a

20   single judgment, avoiding the confusion of potentially contradictory orders and outcomes for the

21   parties, especially where the plaintiffs in both cases are seeking broad injunctive relief that, if

22   granted, could affect every SFA grantee and all SFA grant funds.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

1

Private interests are also served through transfer.  The lawsuit has no special nexus to this venue.  Both this lawsuit and *Harris County* raise primarily legal issues, stemming from the EPA's decision to terminate each SFA Grant.  The District of Columbia is also home to one of the Plaintiffs, and a more convenient location for most other Plaintiffs.  The EPA is also headquartered in the District of Columbia, and its Department of Justice counsel are located there.  And with both this case and *Harris County* in the earliest stages of litigation, now is the time to transfer, so that all parties can reach agreement on a case schedule and proceed efficiently to judgment.  Thus, to avoid contradictory orders and duplicated efforts, and to proceed efficiently in one forum, the case should be transferred to the U.S. District Court for the District of Columbia where it can be consolidated with *Harris County*.

## BACKGROUND

Plaintiffs are recipients of grants awarded by EPA in August 2024 under the Solar for All program.  ECF No. 1 ("Compl.") ¶ 3.  They represent 22 States and the District of Columbia.  *Id.* ¶¶ 14–36.  On October 16, 2025, they filed suit against Defendants EPA and its Administrator to challenge EPA's purported "abrupt termination" of the SFA grant program.  *Id.* ¶ 2.  They allege that EPA violated the APA (Counts I and II), *id.* ¶¶ 131–55; that EPA violated the Appropriations Clause and Separation of Powers Doctrine under the U.S. Constitution (Count III), *id.* ¶¶ 156–69; and that EPA's actions were *ultra vires*, in excess of its statutory and constitutional authority (Count IV), *id.* ¶¶ 170–76.  For relief, Plaintiffs ask the Court to declare EPA's actions unlawful, vacate and set aside EPA's actions, order EPA to reinstate the grant program, and enjoin EPA from reobligating or otherwise expending the grant funds.  *Id.* at 33–34.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

2

Plaintiffs' complaint follows a substantively identical lawsuit filed by Harris County on October 13, 2025 in the U.S. District for the District of Columbia. *See* Complaint, *Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 1 ("Harris Compl."), attached as Exhibit A. Harris County sued EPA, its Administrator, and an EPA award official, challenging EPA's purported "decision to eliminate" the SFA grant program, just as this lawsuit does. *Id.* ¶ 11. In its complaint, Harris County asserts the same APA, constitutional, and *ultra vires* claims as Plaintiffs do here. *Compare* Compl. ¶¶ 131–76 *with* Harris Compl. ¶¶ 91–109. Harris County also seeks nearly identical relief. Like Plaintiffs, Harris County asks the court to declare EPA's actions unlawful, vacate and set aside EPA's actions, and enjoin EPA from implementing its decision and from reobligating or otherwise expending the grant funds. *See* Harris Compl. at 30–31.[1]

The background relevant to each suit is also the same. In 2022, Congress amended Section 134 of the Clean Air Act to appropriate $27 billion to EPA to establish a program called the "Greenhouse Gas Reduction Fund" ("GGRF"), formerly codified at 42 U.S.C. § 7434 (2024). Congress authorized $7 billion of the total appropriation to EPA to make grants to eligible recipients "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies … and to carry out other greenhouse gas emission reduction activities."

---

[1] Harris County also designated its suit as related to an earlier-consolidated matter, *Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698 (D.D.C.), in which grantees and subgrantees with awards under two other EPA programs, known as the National Clean Investment Fund ("NCIF") and Clean Communities Investment Accelerator ("CCIA"), filed suit against EPA to enjoin the agency from terminating their grant awards. Defendants challenged this relatedness designation, as the factual and legal issues in *Climate United* vary from those asserted in *Harris County* and this case. *See Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 16 ("Defs. Obj. to Not. of Rel. Cases"). The court in *Harris County* has not ruled on this issue.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

3

42 U.S.C. § 7434(a)(1).  Congress required EPA to obligate these funds no later than September 30, 2024.  *Id.*  EPA called the grant program Solar for All ("SFA").  Compl. ¶ 2.[2]

On April 22, 2024, EPA announced its selection of 60 eligible recipients of SFA grants, including Plaintiffs and Harris County.  Compl. ¶ 4; *see also* Harris Compl. ¶¶ 37–39.  EPA executed grant agreements with each grantee by August 2024, obligating the entire $7 billion by the September 30th deadline, and EPA amended those agreements in December 2024.  Compl. ¶ 54; *see also* Harris Compl. ¶ 39.  EPA awarded each grant ("SFA Grant") under materially identical terms.  For example, in each SFA Grant, EPA agreed "to cost-share 100.00% of all approved budget period costs" up to the amount awarded to the recipient.  *See, e.g., Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 12-5 ("Harris County SFA Grant") at 1.  In exchange, each grantee agreed to, *inter alia*: (i) "comply with the current EPA General Terms and Conditions," *id.* at 4; (ii) "comply with the statutory requirements of Section 134 of the Clean Air Act," *id.* at 34; (iii) implement "its EPA-approved Solar for All Workplan," *id.* at 22; and (iv) adhere to numerous applicable regulations within 2 C.F.R. Part 200, *see, e.g., id.* at 22–23.  All grantees received their awards in their Automatic Standard Application for Payment ("ASAP") accounts.  Compl. ¶ 5; Harris Compl. ¶ 42.

On July 4, 2025, Congress enacted the One Big Beautiful Bill Act, Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025) ("the OBBBA").  Section 60002 of the OBBBA "repealed" Section 134 of the Clean Air Act and "rescinded" all "unobligated balances of amounts made

---

[2] The other two programs, NCIF and CCIA, received a combined appropriation of $26.97 billion, *see* 42 U.S.C. § 7434(a)(2)–(3).  Congress also authorized $30 million for EPA's administrative costs.  *Id.* § 7434(a)(4).

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

4

1    available to carry out that section," which included the remainder of the $30 million appropriated

2    to EPA to administer the GGRF grant programs. *Id.*

3        On August 7, 2025, EPA terminated all SFA Grants. Each SFA grantee, including

4    Plaintiffs and Harris County, "received a nearly identical Termination Memorandum from EPA

5    Award Official Devon Brown." Compl. ¶ 92; *see also* Harris Compl. ¶ 69 ("[EPA] sent every

6    SFA grantee—including Harris County—a purported 'Termination' notice stating that EPA had

7    decided to terminate Solar for All altogether."). In these memoranda, EPA explained that the

8    "OBBBA repeals the underlying authority for the Solar for All program at Section 134 of the

9    Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134." *See,*

10   *e.g.,* ECF No. 1-1 ("Wash. State Term. Memo."); *see also Harris County*, No. 1:25-cv-03646

11   (D.D.C.), ECF No. 12-6 ("Harris County Term. Memo."). Accordingly, EPA made the decision

12   to terminate the SFA program and each SFA Grant. Wash. State Term. Memo. at 1.

13       Shortly after termination, EPA deobligated the majority of account balances in grantees'

14   ASAP accounts, including the accounts of Plaintiffs and Harris County, while leaving some

15   funds available to satisfy pre-termination and closeout costs. Compl. ¶¶ 107, 112; Harris Compl.

16   ¶¶ 79-80. Plaintiffs and Harris County submitted disputes to EPA challenging the terminations of

17   their grants. Compl. ¶ 114; Harris Compl. ¶ 82. Both describe their administrative appeals as

18   "futile." Compl. ¶ 118; Harris Compl. ¶ 85.

19       On October 24, 2025, Harris County moved for emergency preliminary relief, asking the

20   court to enjoin EPA from implementing its decision to "eliminate" the SFA "program" and from

21   deobligating or otherwise expending SFA grant funds. *Harris County*, No. 1:25-cv-03646,

22   (D.D.C.), ECF No. 12 ("Harris PI Mot."). Defendants sought an extension to respond to the

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

5

1  motion, *id.* ECF No. 13, and Harris County then moved for a temporary restraining order, *id.*

2  ECF No. 14 ("Harris TRO Mot."). The court granted Defendants' request for more time to

3  respond. Defendants filed their opposition to Harris County's motions on November 10, 2025.

4  *Id.* ECF No. 20 ("Opp."). In support of their opposition, Defendants attached an EPA declaration

5  stating that all SFA grant funds would remain in the same Treasury account through September

6  30, 2031. *See id.* ECF No. 21-1 ("Treml Decl."). Following this filing, Defendants also agreed

7  to stay the administrative process, including the closeout of Harris County's SFA Grant. Harris

8  County then withdrew its PI and TRO motions. *Id.* ECF No. 21.

9  

10  On the same day that Harris County withdrew its PI motion, Plaintiffs filed their own

11  motion for a preliminary injunction, *see* ECF No. 64 ("PI Mot."), seeking similar relief,

12  including a stay of the administrative and closeout procedures under their SFA Grants.

13  Defendants' deadline to respond is December 5, 2025.[3]

14  

15  In addition to filing district court complaints, Plaintiffs here and Harris County

16  simultaneously filed nearly identical petitions for review in the D.C. Circuit, seeking direct

17  review in the Court of Appeals to the extent the Clean Air Act requires it. *See* Petitions, *Rhode*

18  *Island AFL-CIO v. Env't Prot. Agency.*, Nos. 25-1216, 25-1217, 25-1218 (D.C. Cir., filed Oct. 20,

19  2025). The D.C. Circuit consolidated the petitions. *Id.*, Order (entered Oct. 22, 2025). And the

20  

21  

22  _____

[3] Two other SFA-related cases are pending in other courts. Plaintiffs in this case (and Nevada)

23  also filed suit against the government in the Court of Federal Claims under the Tucker Act

seeking breach-of-contract damages. *See Md. Clean Energy Ctr. v. United States,* 1:25-cv-1738

24  (Fed. Cl. complaint filed Oct. 15, 2025). And a collection of SFA sub-grantees and non-grantees

sued in the District of Rhode Island, *Rhode Island AFL-CIO v. Env't Prot. Agency*, No. 1:25-cv-

25  510 (D.R.I. complaint filed Oct. 6, 2025). Defendants may move to transfer *Rhode Island AFL-*

*CIO* matter to the D.D.C. Although the Rhode Island lawsuit raises additional issues of standing,

26  it also concerns many of the same issues and claims asserted here and in *Harris County*.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

6

1  plaintiffs then jointly moved the Court of Appeals to hold the petitions in abeyance while the

2  district court lawsuits proceed.  *Id.*, Mot. (filed Nov. 14, 2025).

3                                              **ARGUMENT**

4          This action should be transferred to the U.S. District Court for the District of Columbia

5  (the "D.D.C."), where it can be consolidated with *Harris County*, because: (1) *Harris County*

6

7  was the earlier filed action, and the parties and issues in both cases are substantially similar; and

8  (2) transfer is in the interests of justice and for the convenience of the parties under 28 U.S.C. §

9  1404(a).

10  **I.     The "First-To-File" Rule Supports the Transfer of this Case to the D.D.C.**

11          The "first-to-file" rule is a "doctrine of federal comity [that] permits a district court to

12  decline jurisdiction over an action when a complaint involving the same parties and issues has

13  already been filed in another district." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir.

14  2011) (cleaned up).  The "rule is not a rigid or inflexible rule to be mechanically applied, but

15  rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*

16  *Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).  Thus, strict identity of the parties

17  and identical issues in the cases are not required.  *Music Grp. Servs. US, Inc. v. InMusic Brands,*

18  *Inc.*, No. 13-cv-182, 2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013).  Instead, the two

19  cases must be "substantially similar."  *Id.*  Moreover, "the form of relief sought does not

20  determine the 'similitude' of the issues." *Am. Guar. & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*,

21  No. 06-cv-1254, 2006 WL 3499342, at *2 (W.D. Wash. 2006) (citing cases).  At bottom, the first-

22

23  to-file rule applies if two matters exhibit the appropriate chronology, similar parties, and

24

25

26

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

7

1    similarity of issues. *Alltrade, Inc. v. Uniweld Prods.*, Inc., 946 F.2d 622, 625–27 (9th Cir. 1991).

2    All three are present here.

3        *First*, the chronology of the cases supports transfer because *Harris County* was filed three

4    days before this case. *See* Compl. (filed Oct. 16, 2025); Harris Compl. (filed Oct. 13, 2025).

5    Importantly, "the policy rationales behind the first-to-file rule—economy, consistency, and

6    comity—are 'just as valid when applied to the situation where one suit precedes the other by a

7    day as they are in a case where a year intervenes between the suits.'" *Fisher v. Duff, et al.*, No.

8    C15-5944-BHS, 2016 WL 3280429, at *2 (W.D. Wash. June 15, 2016) (quoting *Genentech, Inc.*

9    *v. Eli Lilly & Co.*, 998 F.2d 931, 939 (Fed. Cir. 1993)). Thus, even though Harris County filed

10   only a few days earlier, that matters not for purposes of the first-to-file rule. If anything, because

11   both cases are in the early stages of litigation, the transfer of this case to the D.D.C. will make its

12   consolidation with *Harris County* all-the-more seamless.

13       *Second*, there is substantial similarity between the parties. In both actions, the plaintiffs

14   are recipients of SFA Grants, which were awarded and amended by EPA at the same time under

15   the same SFA grant program. Although the amounts awarded varied, the terms of each grant are

16   materially identical. Also, in both actions, the plaintiffs sue the same defendants, EPA and its

17   Administrator. Although Harris County also sues an EPA award official, in his official capacity,

18   Harris County's decision to name one more EPA official adds nothing to its claims, which

19   challenge EPA's decision to terminate SFA Grants, just as Plaintiffs claims do. That defendants

20   are effectively identical supports transfer. *See InMusic Brands*, 2013 WL 1499564, at *2 ("The

21   requirement of similar parties is satisfied if the parties are substantially similar … [as opposed

22   to] identical.").

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

8

*Third*, the issues in the two cases are identical. In both cases, the plaintiffs challenge EPA's decision to terminate the SFA Grants, framed as ending the SFA grant program. *See, e.g.*, Compl. ¶ 2 ("Plaintiffs … bring this action to challenge EPA's abrupt termination of this [SFA] program"); Harris Compl. ¶ 2 ("Harris County brings this action to challenge the Trump Administration's lawless efforts to end this important [SFA] program."). In both cases, the plaintiffs allege that EPA's decision and its rationale for that decision—Congress's repeal of Section 134 of the Clean Air Act and its rescission of unobligated funds—violated the APA and the U.S. Constitution. *See* Compl. ¶¶ 131-176; Harris Compl. ¶¶ 91-109. And, in both cases, the plaintiffs seek the same relief—an injunction prohibiting EPA from implementing its decision to terminate the SFA Grants and to reinstatement of the SFA grant program. *See* Compl. at 33–34; Harris Compl. at 30–31. Defendants therefore intend to defend the cases similarly—starting with an objection to the district courts' jurisdiction over grant termination claims and defending EPA's interpretation of the OBBBA and its decision to terminate the SFA Grants. Under these circumstances, the Court should invoke the first-to-file rule and transfer the case to the D.D.C., where it can be consolidated with *Harris County*.

## II.    Alternatively, this Case Should Be Transferred under 28 U.S.C. § 1404(a) in the Interests of Justice and for the Convenience of the Parties and the Witnesses.

In the alternative, this case should be transferred under 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer therefore has two requirements: "(1) that the transferee district is one where the case 'might have been brought' or where all parties consent to transfer; and (2) that transfer is for the convenience of the parties and witnesses and in the interest of justice." *Travelers Prop.*

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

9

*Cas. Co. of Am. v. Expeditors Int'l of Wash., Inc.*, 626 F. Supp. 3d 1193, 1199 (W.D. Wash. 2022) (quoting 28 U.S.C. § 1404(a)). "In passing § 1404(a), Congress 'intended to permit courts to grant transfers upon a lesser showing of inconvenience' than was needed for dismissal under the doctrine of *forum non conveniens*." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005) (quoting *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955)). District courts therefore have broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation and quotation marks omitted). The Court should exercise its discretion to transfer here, as both requirements are met.

As for the first requirement, Plaintiffs here "might have . . . brought" their suit in the District of Columbia, just as Harris County did. 28 U.S.C. § 1404(a). As for venue, under 28 U.S.C. § 1391(e)(1), a civil action against an agency of the United States may be brought in a judicial district where any defendant resides. As recognized in Plaintiffs' summons, *see* ECF No. 23, EPA's headquarters is located at 1200 Pennsylvania Avenue in Washington, D.C. As for subject matter jurisdiction, courts have considered whether the destination court would have jurisdiction to hear the case. *See Davis v. United Servs. Auto. Ass'n*, No. C23-1838JLR, 2023 WL 8807372, at *1 (W.D. Wash. Dec. 20, 2023) (citing *Hoffman v. Blaski,* 363 U.S. 335, 343–44 (1960)). In this case, *no* district court has jurisdiction to adjudicate grant termination claims, which can be brought only to the Court of Federal Claims. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 604 U.S. 650 (2025). The plaintiffs in each suit assert the same arguments for why their cases can nevertheless proceed in district court. *Compare* PI Mot. at 11–12 (arguing claims fall under APA because they allege

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

10

violation of statutes and the constitution), ECF No. 64 *with* Harris PI Mot. at 17–20 (same), ECF No. 12-1. This jurisdictional issue applies identically to this Court and the target court in the District of Columbia and thus should be resolved consistently by a common court.[4]

As for the second requirement, courts consider multiple factors, including: "(1) where the relevant agreements were negotiated and executed, (2) which state is most familiar with governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with each forum, (5) the parties' contacts with each forum that are related to the cause of action, (6) the relative costs of litigating in each forum, (7) the availability of compulsory process in each forum, and (8) access to evidence in each forum." *Jones*, 211 F.3d at 498–99. These factors focus on the private interests of the parties, but a court must also weigh "those public-interest factors of systemic integrity and fairness that … come under the heading of 'the interest of justice.'" *In re Consol. Litig. Over Fire Aboard the APL PERU*, No. C09-169, 2010 WL 11688359, at *2 (W.D. Wash. Aug. 2, 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)) (cleaned up). Both public and private interest factors weigh in favor of transfer.

### A.    The Public Interest Is Served by Transferring this Case to the D.D.C.

The public interest supports transfer to the D.D.C., as transfer will allow for the consolidation of two substantially similar cases. "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results."

---

[4] As noted above, Plaintiffs filed "protective" petitions for direct review in the Court of Appeals for the D.C. Circuit out of an apparent concern that the Clean Air Act may require suit be filed there. *See Arizona v. EPA*, No. 25-1218 (D.C. Cir.). That case is currently stayed pending the resolution of the district court litigation. Transferring the suit will ensure a common court can resolve this jurisdictional question consistently across each case.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

11

1  *Amazon.com*, 404 F. Supp. 2d at 1261 (cleaned up and citation omitted).  Both this case and

2  *Harris County* involve the same asserted claims, the same defendants, the same SFA grant

3  program, and the same agency rationale for terminating the SFA Grants at issue.  *See supra* Part

4  I.  Permitting these cases to proceed simultaneously in two different fora will duplicate the time

5  and resources required of the parties and the judicial system to resolve these disputes.  As framed

6  by the Supreme Court, "to permit a situation in which two cases involving precisely the same

7  issues are simultaneously pending in different District Courts leads to the wastefulness of time,

8  energy and money that § 1404(a) was designed to prevent."  *Ferens v. John Deere Co.*, 494 U.S.

9  516, 531 (1990) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).  Transfer

10  of this case therefore "furthers judicial economy" and avoids "parallel litigation … in various

11  districts."  *Travelers*, 626 F. Supp. 3d at 1200.

12        Although transfer of venue does not require a certainty of consolidation upon transfer, *see*

13  *Ecological Rts. Found.*, No. 19-CV-04242-RS, 2019 WL 5295124, at *2 (N.D. Cal. Oct. 18,

14  2019) (citing *A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. Of California*, 503 F.2d

15  384, 389 (9th Cir. 1974)), this case would almost certainly be consolidated with Harris County

16  upon transfer, as both cases involve common, indeed the same, questions of law and fact.  *See*

17  Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the

18  court may: …  consolidate the actions.").  For example, in both cases, the courts will need to

19  decide whether they have jurisdiction to hear APA claims challenging grant terminations and, if

20  so, whether EPA's actions to terminate the SFA Grants violate the APA or federal law or any

21  constitutional provision.  The likelihood of consolidation based on the commonality of these

22  issues weighs in favor of transfer.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

12

1    Moreover, permitting nearly identical lawsuits to be litigated separately in different

2    jurisdictions could lead to inconsistent judgments. This problem is particularly concerning here,

3    where the plaintiffs have each requested injunctive relief that would affect all SFA Grants—not

4    just the grants specific to Plaintiffs or Harris County. *See* Compl. at 34 (asking the Court to

5    "[o]rder Defendants to reinstate the SFA Program"); Harris Compl. at 30 (asking the court to

6    "[e]njoin Defendants from … shutting down Solar for All").[5] One court order could order

7    injunctive relief while the other does not, or the courts could order inconsistent forms of relief

8    making it impossible for Defendants to comply with both orders. That is why "the most

9    important [transfer] consideration" is often whether a substantially similar case is pending in the

10   target district. *See In re Consol. Litig. Over Fire Aboard the APL PERU*, 2010 WL 11688359, at

11   *2 ("In this case, the most important consideration is that there are actions in two different courts

12   addressing liability arising from the same fire."); *Ecological Rts. Found.*, 2019 WL 5295124, at

13   *2 ("By far the strongest argument in favor of transfer is the similarity to and possibility of

14   consolidation with *CREW* and *CBD* [pending in the District of Columbia]").

15       Finally, the D.D.C.'s familiarity with administrative law and its local interest in this case

16   favor transfer. Although this Court no doubt has significant experience with administrative law

17   cases, including whether cases framed as APA claims are really disguised contract claims as

18   Plaintiffs allege here, most federal agencies are headquartered in the District of Columbia and a

19   great number of lawsuits against them are filed there. For example, as of March 31, 2025, 3,080

---

[5] This scenario, of course, should not occur in light of *Trump v. CASA, Inc.,* 606 U.S. 831 (2025), in which the Supreme Court held that remedies that bar the enforcement of "a law or policy against *anyone*" fall "outside the bounds of a federal court's equitable authority under the Judiciary Act." 606 U.S. at 847.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

13

1    civil cases involving the federal government were pending in the District of Columbia, while 636

2    civil cases involving the federal government were pending in the Western District of Washington.

3    *See* U.S.Courts.Gov, Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics

4    (March 31, 2025), https://www.uscourts.gov/sites/default/files/document/fjcs_c1_0331.

5    2025.xlsx.[6]  Likewise, "[w]ith regard to local interest, the District of Columbia has a stronger

6    local interest in this action than this district because the administrative process occurred in the

7
8    District of Columbia and the federal defendants reside there." *Chesapeake Climate Action*

9    *Network v. Exp.-Imp. Bank of the United States*, No. C 13-03532 WHA, 2013 WL 6057824, at *3

10   (N.D. Cal. Nov. 15, 2013).  These factors also weigh in favor of transfer.

11          Accordingly, to avoid duplication of effort, inefficient litigation of similar cases in two

12   districts, and the potential for inconsistent orders, and to serve the local interests of the District of

13   Columbia, this case should be transferred to the D.D.C. where it can be consolidated with *Harris*

14
15   *County* and any other substantially similar case before one district court judge.

16          **B.     The Private Interests of the Parties Support Transfer to the D.D.C.**

17          The private interests of the parties also weigh in favor of transfer.  To start, the District of

18   Columbia is a convenient forum for most parties, and certainly no less convenient than

19   Washington State.  Of the 23 plaintiffs, 16 plaintiffs are substantially closer to Washington, D.C.

20
21   than Washington State, including the District of Columbia, Connecticut, Maine, Maryland, New

22

23   ───────────────────
24   [6] That is not to say that federal courts in the District of Columbia are more congested.  To the
     contrary, as of June 30, 2025, there were 452 pending cases per judgeship in the District of
     Columbia, while there were 475 pending cases per judgeship in the Western District of
25   Washington.  *See* U.S.Courts.Gov, https://www.uscourts.gov/sites/default/files/document/
     fcms_na_distprofile0630.2025.pdf, at 2 (D.D.C. statistics) and 76 (W.D. Wash. statistics).  That
26   statistic also favors transfer.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

14

Jersey, New York, North Carolina, Pennsylvania, Rhode Island, Vermont, Minnesota, Illinois, Kentucky, Michigan, and Wisconsin. Six of the remaining seven plaintiffs, most located on the West Coast, recently chose to sue the government in the District of Columbia in an unrelated lawsuit filed earlier this year. *See New Mexico v. Musk*, No. 1:25-cv-00429-TSC (D.D.C.) (filed on Feb. 13, 2025 by plaintiffs New Mexico, Oregon, Hawaii, California, Arizona, and Washington, *inter alia*). That litigation remains pending in the District of Columbia, before the same judge overseeing *Harris County*. Those plaintiffs should then have no issue litigating this case in the same forum. And Defendants and the Department of Justice attorneys representing them are all located in the District of Columbia. Convenience of the forum therefore weighs in favor of transfer to the D.D.C.

As for the convenience of the witnesses and ease of access to evidence, those factors have less relevance in this case. Plaintiffs raise claims under the APA and the U.S. Constitution, challenging Defendants' decision to terminate the SFA Grants (framed as the "the Program Termination Directive"). *See* Compl. ¶¶ 131–76. Defendants' position is that these claims are, at bottom, grant termination claims that belong in the Court of Federal Claims under the Tucker Act. However, to the extent a district court decides it has jurisdiction under the APA, that statute limits review of agency action to the administrative record. *Evans v. Salazar*, No. C08-0372-JCC, 2010 WL 11565108, at *2 (W.D. Wash. July 7, 2010) (citing 5 U.S.C. § 706(2)(B)). The district court's "factfinding capacity" is thus "typically unnecessary" to review agency decision-making. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Because review in this case (in district court) is limited to the administrative record, which EPA can transmit

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

15

electronically, the location of witnesses or physical documents matters little, if at all.[7]

Lastly, Plaintiffs will not be prejudiced by a transfer to the D.D.C. because this case and *Harris County* are in the earliest phases of litigation. Plaintiffs filed suit just one month ago, *see* ECF No. 1, and Defendants' response to the complaint is due December 22, 2025. Harris County filed three days before Plaintiffs did. *See* Harris Compl. (filed October 13, 2025). And Defendants' response deadline in *Harris County* is due December 15, 2025. In other words, now is the best time for this case to be transferred, as this case can be consolidated with *Harris County*, and all parties can work together on an agreed production and briefing schedule.

In sum, both the public and private interests of the parties and the Court will be served by transferring this case to the D.D.C.—a nearly-identical suit is pending there; most Plaintiffs are located closer to the District of Columbia than Washington State; Defendants and their attorneys are located in the District of Columbia; and Plaintiffs will experience little, if any, prejudice with a transfer at this early stage of the case.

## CONCLUSION

For the foregoing reasons, Defendants ask this Court to transfer the case to the U.S. District Court for the District of Columbia.

---

[7] To the extent Plaintiffs rely on witness testimony to support their claims, the consideration of their location would be subsumed with the consideration of the convenience of the forum. And, as stated above, most Plaintiffs are located closer to the District of Columbia than Washington State. The evidentiary factor should therefore be given limited weight. *See Ecological Rts. Found.*, 2019 WL 5295124, at *4 (considering transfer motion and giving "limited weight" to the location of two possible party-witnesses, as "their preferences are already reflected by the plaintiffs' choice of forum" and "both parties acknowledge that this case will likely be resolved by dispositive motion, rendering it unlikely that [they] would ever need to appear in court").

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

16

Dated November 19, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRK T. MANHARDT
Director

KEVIN P. VANLANDINGHAM
Assistant Director

*/s/   Tiffiney F. Carney*
TIFFINEY F. CARNEY
I-HENG HSU
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521
tiffiney.carney@usdoj.gov
i-heng.hsu@usdoj.gov

*Attorneys for the Defendants*

## LOCAL RULE 7(e)(6) CERTIFICATION

I certify that this memorandum contains 5,153 words in compliance with the Local Civil Rules. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

DEFENDANTS' MOTION
TO TRANSFER VENUE
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

17