1

2                                        The Honorable Tiffany M. Cartwright

3

4

5

6

7

8

9                 **IN THE UNITED STATES DISTRICT COURT**
                  **FOR THE WESTERN DISTRICT OF WASHINGTON**
10

11   STATE OF ARIZONA, et al.,

12              *Plaintiffs*,                 Civil Action No. 2:25-cv-02015-TMC

13         v.

14   UNITED STATES ENVIRONMENTAL            **DEFENDANTS' OPPOSITION TO**
     PROTECTION AGENCY, et al.,             **PLAINTIFFS' MOTION FOR**
15                                          **PRELIMINARY INJUNCTION**
                *Defendants*.
16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO                    **U.S. Department of Justice**
PLAINTIFFS' MOTION FOR                       Civil Division, Commercial Litigation Branch
PRELIMINARY INJUNCTION                       1100 L Street NW
No. 2:25-cv-02015                            Washington, DC 20005
                                             (202) 598-7521

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................................. 5

    I.    Months-Old Grant Terminations Present No Risk of Imminent
        Irreparable Injury ............................................................................................... 5

    II.   Plaintiffs are Not Likely to Succeed on the Merits ........................................... 11

        A.   This Court Lacks Jurisdiction to Review Termination of Plaintiffs' Grants ........... 11

        B.   Plaintiffs' Effort to Reinstate the Solar for All Only Exposes Their
             Lack of Standing ................................................................................................ 18

        C.   Plaintiffs' Substantive Claims Lack Merit ........................................................... 19

             1.   The grant terminations do not violate the APA .............................................. 19

             2.   Termination of SFA grants is consistent with OBBBA ................................. 22

             3.   Plaintiffs' constitutional claims fail under Dalton ....................................... 24

    III.  The Equities Weigh Against Emergency Relief ............................................... 26

CONCLUSION ............................................................................................................. 27

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

i

# TABLE OF AUTHORITIES

**Cases**

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) ............................................................................ 16

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*,
No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) .................................. 15

*BBC Brown Boveri, Inc. v. Rainier Nat. Bank*,
899 F.2d 1224, 1990 WL 40269 (9th Cir. Apr. 4, 1990) ..................................... 22

*Boaz Hous. Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ......................................................................... 12

*Brookens v. Am. Fed'n of Gov't Emps.*,
315 F. Supp. 3d 561 (D.D.C. 2018) ...................................................................... 7

*California v. Texas*,
593 U.S. 659 (2021) ............................................................................................ 18

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ................................................................................ 5

*Chavez v. United States*,
660 F. Supp. 3d 964 (S.D. Cal. 2023) ................................................................. 13

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ............................................................................................ 20

*City and County of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ............................................................................ 25

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................ 7

*Climate United Fund v. Citibank, N.A.*,
154 F.4th 809 (D.C. Cir. 2025) .................................................................... passim

*Coggeshall Dev. Corp. v. Diamond*,
884 F.2d 1 (1st Cir. 1989) ................................................................................... 19

*Columbia Gulf Transmission LLC v. FERC*,
106 F.4th 1220 (D.C. Cir. 2024) ........................................................................ 21

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

ii

*Corp. for Pub. Broad. v. Fed. Emergency Mgmt. Agency*,
   792 F. Supp. 3d 67 (D.D.C. 2025)......................................................................7

*Dalton v. Specter*,
   511 U.S. 462 (1994)...................................................................................24

*Deckert v. Indep. Shares Corp.*,
   311 U.S. 282 (1940)...................................................................................10

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025)............................................................................passim

*Dep't of the Army v. Blue Fox, Inc.*,
   525 U.S. 255 (1999)..............................................................................11, 12

*Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo*,
   18 F.4th 38 (1st Cir. 2021)...........................................................................26

*Dunn & Black v. United States*,
   492 F.3d 1084 (9th Cir. 2007).......................................................................12

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021).........................................................................10

*East Palo Alto v. U.S. Dep't of Health & Human Servs.*,
   155 F.4th 1099 (9th Cir. 2025).......................................................................16

*Ecology Ctr. v. Castaneda*,
   574 F.3d 652 (9th Cir. 2009).........................................................................19

*Ex Parte McCardle*,
   74 U.S 506 (1868).....................................................................................25

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)..............................................................................20, 21

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)...................................................................................20

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015)......................................................................5, 10

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

iii

*Glob. Health Council v. Trump,*
  153 F.4th 1 (D.C. Cir. 2025) .................................................................24

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.,*
  739 F.2d 466 (9th Cir. 1984) ............................................................9, 24

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002) ...........................................................................13

*Harger v. Dep't of Lab.,*
  569 F.3d 898 (9th Cir. 2009) ..........................................................11, 12

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ..........................................................7, 10

*HIAS, Inc. v. Trump,*
  985 F.3d 309 (4th Cir. 2021) ...............................................................11

*Hometown Connections v. Noem,*
  No. 25-cv-885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) .................................15

*In re Aiken County,*
  725 F.3d 255 (D.C. Cir. 2013) ..............................................................26

*Labs, Inc. v. LinkedIn Corp.,*
  31 F.4th 1180 (9th Cir. 2022) ................................................................9

*Larson v. Domestic & Foreign Com. Corp.,*
  337 U.S. 682 (1949) ...........................................................................24

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
  591 U.S. 657 (2020) ...........................................................................23

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...........................................................................18

*Lydo Enters., Inc. v. City of Las Vegas,*
  745 F.2d 1211 (9th Cir. 1984) ...............................................................10

*Maryland v. King,*
  567 U.S. 1301 (2012) ..........................................................................26

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.,*
  No. 25-cv-30041, 2025 WL 1225481 (D. Mass. Apr. 14, 2025)............................15

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

iv

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012).................................................................................17

*McGuire v. United States,*
  550 F.3d 903 (9th Cir. 2008)......................................................................12

*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C.Cir.1982)................................................................13, 16

*Munaf v. Geren,*
  553 U.S. 674 (2008).....................................................................................5

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
  145 S. Ct. 2658 (2025)........................................................................passim

*Nken v. Holder,*
  556 U.S. 418 (2009)...................................................................................26

*Off. of Pers. Mgmt. v. Richmond,*
  496 U.S. 414 (1990)...................................................................................24

*Or. Council for Humans. v. U.S. DOGE Serv.,*
  794 F. Supp. 3d 840 (D. Or. 2025)............................................................11

*Red Shield Admin., Inc. v. Kreidler,*
  No. C21-5551, 2021 WL 3630506 (W.D. Wash. Aug. 17, 2021)................10

*RFE/RL, Inc. v. Lake,*
  772 F. Supp. 3d 79 (D.D.C. 2025)..............................................................11

*Rotkiske v. Klemm,*
  589 U.S. 8 (2019).......................................................................................23

*Sacora v. Thomas,*
  628 F.3d 1059 (9th Cir. 2010)....................................................................19

*Star Alaska v. United States,*
  14 F.3d 36 (9th Cir. 1994)..........................................................................13

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998).....................................................................................18

*Sustainability Inst. v. Trump,*
  No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025)...........................15

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

*Thakur v. Trump,*
  148 F.4th 1096 (9th Cir. 2025) ......................................................... 16

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.,*
  585 F. App'x 390 (9th Cir. 2014) ........................................................ 9

*Tucson Airport Authority v. General Dynamics Corp.,*
  136 F.3d 641 (9th Cir. 1998) ................................................. 15, 16, 17

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State,*
  770 F. Supp. 3d 155 (D.D.C. 2025) ................................................... 15

*United Aeronautical Corp. v. U.S. Air Force,*
  80 F.4th 1017 (9th Cir. 2023) ........................................................... 12

*Vera Inst. of Just. v. U.S. Dep't of Just.,*
  No. 25-cv-1643, 2025 WL 1865160 (D.D.C. July 7, 2025) ................ 15

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .................................................................................. 5

*Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health,*
  654 F.3d 919 (9th Cir. 2011) ............................................................. 25

**Statutes**

5 U.S.C. § 551 ......................................................................................... 17

5 U.S.C. § 706 ......................................................................................... 19

28 U.S.C. § 1491 ............................................................................... 12, 14

31 U.S.C. § 1532 .................................................................................... 6, 8

42 U.S.C. § 4370f ................................................................................... 6, 8

42 U.S.C. § 7434 .................................................................................... 2, 3

Greenhouse Gas Reduction Fund,
  Pub. L. No. 117-169, § 60103, 136 Stat. 1818 (2022) ........................ 2

One Big Beautiful Bill Act,
  Pub. L. No. 119-21, § 60002, 139 Stat. 72 (2025) ........................... 1, 3

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

vi

**Rules**

Fed. R. Civ. P. 65(c)..................................................................................27

**Regulations**

2 C.F.R. § 200.1...............................................................................3, 4, 7

2 C.F.R. § 200.340..................................................................................23

2 C.F.R. § 200.344............................................................................3, 4, 10

2 C.F.R. § 200.513..................................................................................21

**Other Authorities**

Funding of Replacement Conts.,
  60 Comp. Gen. 591 (1981)....................................................................8

Navajo Nation Oil & Gas Co.,
  B-270723, 1996 WL 174689 (Comp. Gen. Apr. 15, 1996)....................................8

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

vii

**INTRODUCTION**

The Court should deny Plaintiffs' Motion for Preliminary Injunction, Dkt. # 64 ("Motion") because Plaintiffs fail to allege any imminent or irreparable harm justifying such extraordinary relief. The events underlying Plaintiffs' claims happened *months ago*. On July 4, 2025, the One Big Beautiful Bill Act, Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025) ("OBBBA"), both repealed the statute that authorized the Solar for All ("SFA") grant program and rescinded all unobligated administrative funding for EPA to oversee the program. At that point, the "program" Plaintiffs seek to restore, Compl. 33–34, Dkt. # 1, ceased to exist by act of Congress. All that remained were grants EPA had awarded earlier, and those grants were terminated a month later, on August 7, 2025—now almost four months ago. Shortly thereafter, EPA deobligated most of the SFA funds, which have since been held in an account where they will remain available through September 2031. Plaintiffs then waited more than three months to file this Motion, during which time EPA denied Plaintiffs' administrative appeals. Because of Plaintiffs' delay, their closeout deadlines will pass before briefing on the Motion is complete. Prospective emergency relief will not change any of this, and therefore no basis exists to grant it.

Although the Court need not reach the merits in this expedited posture, Plaintiffs' claims fail on the merits too. Given Congress's repeal of the SFA program, all that is left is a dispute over the termination of Plaintiffs' grants, which the Court lacks jurisdiction to hear. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2660 (2025) ("*NIH*"); *Dep't of Educ. v. California*, 604 U.S. 650, 650–51 (2025); *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 816–17, 819–23 (D.C. Cir. 2025), *petition for reh'g en banc filed*, No. 25-5122 (D.C. Cir. 2025).

Attempting to avoid this jurisdictional bar, Plaintiffs purport to challenge the end of the program, rather than grant termination. But Plaintiffs cannot demonstrate any injury independent

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

1

from the loss of their grants and thus lack standing to seek any broader programmatic relief. At any rate, there is no program to preserve going forward, because Congress repealed it.

Finally, the Motion fails because EPA's terminations of the SFA grants were reasonable following OBBBA's repeal of the statute authorizing the SFA program and rescission of funds to administer it. Plaintiffs' statutory claims fail because nothing in OBBBA required EPA to continue the grants. Plaintiffs' constitutional claims mirror the statutory claims and fail for the same reasons.

## **BACKGROUND**

The Inflation Reduction Act of 2022 ("IRA") authorized the Greenhouse Gas Reduction Fund ("GGRF"). *See* Pub. L. No. 117-169, § 60103, 136 Stat. 1818, 2065–66 (codified as § 134 of the Clean Air Act (42 U.S.C. § 7434)) ("Section 134"). The GGRF appropriated $27 billion to the EPA Administrator to make grants aimed at reducing or avoiding greenhouse gas emissions and other forms of air pollution. *Id.* § 7434(a)–(c). Congress required EPA to obligate the grant funds no later than September 30, 2024. *Id.*

Congress specifically appropriated $7 billion to EPA "to make grants" to eligible recipients "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies . . . ." *Id.* § 7434(a)(1). EPA called this subsection (a)(1) grant program Solar for All ("SFA"). Mot. 3. Congress also appropriated $30 million to EPA for "the administrative costs necessary to carry out [GGRF] activities," including the SFA program and the remaining $20 billion in grant programs authorized by the provision. 42 U.S.C. § 7434(a)(4).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

2

In April 2024, EPA announced its selection of 60 SFA grants recipients, including Plaintiffs. Mot. 3. EPA entered into agreements with grantees by August 2024,[1] obligating the entire $7 billion by the September 30th deadline, Mot. 3–4, and EPA amended those agreements in December 2024 without requiring additional consideration, *e.g.*, Carillo Decl., Ex. 2 at 1, Dkt. # 67-1. EPA awarded each grant under materially identical terms, and all grantees received their awards in Automatic Standard Application for Payment ("ASAP") accounts. Compl. ¶ 5.

Less than one year later, on July 4, 2025, Congress enacted OBBBA. Section 60002 of OBBBA "repealed" Section 134 and "rescinded" all "unobligated balances of amounts made available to carry out that section," which included the remainder of the $30 million appropriated to EPA to administer the GGRF grant programs. Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154.

On August 7, 2025, EPA terminated all SFA grants. Mot. 7. EPA sent each SFA grantee, including Plaintiffs, a memorandum terminating its grant. Treml Decl. ¶ 5. These memoranda explained that termination was based on OBBBA, which "repeals the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134." *E.g.*, Nguyen Decl., Ex. 4 at 1, Dkt. # 88-1.

The termination memoranda also described the closeout process that would apply to the grants. Closeout is the "process" for determining that "all applicable administrative actions and all required work of the Federal award have been completed." 2 C.F.R. § 200.1 (defining "closeout"). The termination memoranda "encouraged" grantees "to carefully review and discharge" all closeout responsibilities. *E.g.*, Nguyen Decl., Ex. 4 at 2, Dkt. # 88-1. Among other things, the memoranda noted closeout reports were due to EPA within 120 days of

---

[1] The awards were issued to Plaintiffs' respective government instrumentalities. Treml. ¶ 4.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

3

termination—by December 5, 2025.  *See id.*; 2 C.F.R. § 200.344(b).  Grant subrecipients, in turn, owed their closeout reports to the grantees within 90 days of termination, by November 5, 2025.  *Id.* § 200.344(b).  Similarly, grantees and subrecipients were required to "liquidate"—*i.e.*, pay— "all financial obligations incurred under" the relevant award or subaward within 120 days and 90 days, respectively.  *Id.* §§ 200.1 (defining "unliquidated financial obligation"), 200.344(c).

The termination memoranda additionally "recognize[d] that program participants may have begun to rely on" program funds and may have "made preliminary budgets, projections, outlays, and staffing decisions."  *E.g.*, Nguyen Decl., Ex. 4 at 1, Dkt. # 88-1.  EPA therefore provided assurance that such expenses would "be remedied and remediable by the close out processes."  *Id.*  Shortly after termination, EPA deobligated the majority of account balances in grantees' ASAP accounts, while leaving funding obligated to cover Plaintiffs' allowable pretermination and closeout costs.  Treml Decl. ¶¶ 8–9.  All grant funds are held in a Treasury account, where they will remain available until September 30, 2031, to satisfy any remaining obligations for allowable costs under the SFA grant agreements.  *Id.* ¶ 10.

Each Plaintiff submitted a dispute to EPA challenging the termination of its grant, which EPA denied as moot at the end of October 2025.  Mot. 10.  Plaintiffs filed their Complaint on October 16, 2025.  Plaintiffs then waited until November 14, 2025, to file the Motion.  Defendants moved to transfer this lawsuit to the District of Columbia, to be consolidated with a substantively identical lawsuit filed by Harris County.  Dkt. # 97.  Plaintiffs, joined by Nevada, also filed a parallel lawsuit in the Court of Federal Claims seeking damages from grant termination.  *Md. Clean Energy Ctr. v. United States*, No. 25-cv-01738 (Fed. Cl. complaint filed Oct. 15, 2025).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

4

**LEGAL STANDARD**

A preliminary injunction "is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted). To obtain a preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**ARGUMENT**

**I.    Months-Old Grant Terminations Present No Risk of Imminent Irreparable Injury.**

Plaintiffs bear the burden of making a "clear showing" that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). To meet this standard, Plaintiffs "must *demonstrate*," not "merely allege," a threatened irreparable injury that is both immediate and concrete. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). Raising a "speculative" chain of possibilities, *id.* at 675, or identifying a mere "possibility" of harm, *Winter*, 555 U.S. at 22, is insufficient. Moreover, the threatened harm must be linked to the claims in the litigation, such that the claims can redress the harm. *See Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) (a "mismatch" between plaintiff's claims and the "dangers she hopes to remedy" is fatal to a request for preliminary relief). The Motion fails every aspect of this standard.

*First*, Plaintiffs' requested relief is not linked to the source of their purported harm: lost funding due to grant termination. Plaintiffs' lawsuit ultimately asks to vacate a so-called "Program Termination Directive" and restore the SFA program. *See* Mot. 2; Compl. 33–34. Plaintiffs then frame their request for preliminary relief as necessary to ensure their requested permanent injunction remains "meaningful." Mot. 2. Plaintiffs' goal of vacating the alleged

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

5

"termination directive" and restoring the program fails for several reasons, including that Congress repealed the program's authorization. *See infra* Parts II.B, II.C.2. Even if Plaintiffs could secure their requested permanent relief, that relief would have no effect on Plaintiffs. Restoring the SFA program will not impact Plaintiffs because the program did not grant them rights or interests, which instead stem entirely from their grant agreements. Similarly, vacating the alleged "termination directive" will not affect Plaintiffs' grant terminations. The Supreme Court recently made this clear in *NIH*, when it declined to stay an order vacating NIH forward-looking grant guidance, while simultaneously staying vacatur of grant terminations. 145 S. Ct. at 2660; *see also id.* at 2661 (Barrett, J., concurring) ("Vacating the guidance does not reinstate terminated grants.").[2] The same reasoning applies here. Vacating the alleged "termination directive" will not reinstate Plaintiffs' grants. Because this lawsuit cannot undo grant termination, there is no basis to award preliminary relief to serve Plaintiffs' fruitless claims.

*Second*, Plaintiffs have not concretely demonstrated any threatened imminent harm. The material events at issue in this litigation happened months ago: Congress enacted OBBBA five months ago, Mot. 6; EPA terminated Plaintiffs' SFA grants almost four months ago, Mot. 7; and EPA deobligated and removed Plaintiffs' access to 93 percent of the grant funds shortly thereafter, Treml Decl. ¶ 8. The deobligated funds have since been maintained in a Treasury account, where they will remain available until September 2031. *Id.* ¶ 10; *see also* 42 U.S.C. § 4370f. The other seven percent of the grant funds remain in Plaintiffs' ASAP accounts. *See*

---

[2] There is no forward-looking guidance here. EPA will not issue new SFA grants because OBBBA repealed grant-making authority, *see* 31 U.S.C. § 1532, and even under the now-repealed Section 134, "the last day that Defendants could make new obligations for SFA" was over a year ago, Mot. 22.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

6

Treml. Decl. ¶ 9; Mot. 8.  Plaintiffs have not shown any need for an injunction to maintain the status quo with respect to the funds.

Likewise, Plaintiffs ask the Court to enjoin EPA from taking administrative steps that have already occurred.  EPA denied Plaintiffs' requests to undo the grant terminations as moot at the end of October 2025, and the closeout deadline for Plaintiffs to liquidate obligations under those grants was December 5, 2025.  Whatever harm Plaintiffs suffered by EPA's adherence to the administrative and closeout process already occurred and cannot justify the forward-looking emergency relief that Plaintiffs seek.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."); *Corp. for Pub. Broad. v. Fed. Emergency Mgmt. Agency*, 792 F. Supp. 3d 67, 81 (D.D.C. 2025) ("'[P]ast harm' . . . does not justify forward-looking relief.") (quoting *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 567 (D.D.C. 2018)).

Plaintiffs employ invention and innuendo to circumvent the requirements of imminent and irreparable harm.  These tactics fail to meet their burden.  *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("cursory and conclusory" assertions that are not "grounded in any evidence or showing" do not suffice to show irreparable harm).  Plaintiffs' assertion that upcoming liquidation deadlines require them "to break agreements and terminate employment contracts," Mot. 24, is incorrect.  Liquidating obligations simply means to pay them, *see* 2 C.F.R. § 200.1 (defining "unliquidated financial obligation")—it does not require Plaintiffs to terminate agreements.  Similarly, Plaintiffs' representations that the deobligated SFA grant funds "disappeared from [their] accounts without explanation" and that Defendants "have

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

7

failed to assure Plaintiffs" that EPA will not reprogram them, Mot. 22, are, at best, mistaken.
The termination memoranda sent to Plaintiffs months ago explained that the grants were
terminated and that grantees could continue to request payment from their ASAP accounts for
allowable pretermination and closeout costs, *e.g.*, Nguyen Decl., Ex. 4 at 1–2, Dkt. # 88-1, thus
explaining why funds were both removed from and retained in ASAP accounts.  As Plaintiffs
acknowledge, Mot. 22, EPA since explained in another litigation that the funds were deobligated
upon termination and all remaining SFA funds are in the same Treasury account, where they will
remain available until September 30, 2031, per 42 U.S.C. § 4370f, to satisfy any remaining
obligations for allowable costs under the SFA agreements, Ex. A at 7.  EPA provided this same
explanation to Plaintiffs before they filed their Motion, *see* Ex. A at 1, and is again providing it
here, Treml Decl. ¶¶ 8–10.  Plaintiffs therefore have no basis for speculation about EPA
reprogramming or repurposing the funds.  The news articles and inapposite case law cited by
Plaintiffs do not change that, as they have nothing to do with SFA funds or funds deobligated due
to grant terminations.  *See* Mot. 9, 23.  And Plaintiffs' belief that EPA prematurely deobligated
the funds and is holding them in the wrong type of account, *see* Mot. 22, is incorrect.[3]

  *Third*, any harm purportedly resulting from grant termination—for example, not
completing projects, terminating sub-awards, and suspending or firing employees, *see* Mot. 24—

---

[3] OBBBA's repeal of the statute authorizing SFA grants bars replacement grants.  *See* 31 U.S.C. §
1532.  As the Comptroller General has explained, "[a]bsent the replacement contract doctrine, an
agency which terminates a contract would be required to deobligate the prior year funds which
support the terminated contract."  Navajo Nation Oil & Gas Co., B-270723, 1996 WL 174689, at
*3 (Comp. Gen. Apr. 15, 1996); *see also* Funding of Replacement Conts., 60 Comp. Gen. 591,
596 (1981) (when a contract is terminated for the government's convenience, "[t]he original
funding obligation is extinguished upon termination" and "must be deobligated to the extent it
exceeds termination costs").

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

8

is not irreparable because it is economic. *See Climate United*, 154 F.4th at 829 (finding similar allegations of economic harm stemming from EPA's termination of grants from the other GGRF programs was not irreparable); *see also, e.g., hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("[M]onetary injury is not normally considered irreparable.") (citation omitted); *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) ("Mere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."). Plaintiffs can close out their SFA grants while also seeking damages in their litigation before the Court of Federal Claims.[4]

Recognizing economic harm does not suffice, Plaintiffs masquerade economic consequences as damage to Plaintiffs' reputations with their partners and stakeholders. But Plaintiffs offer no evidence of anyone deriding Plaintiffs in the three months since their grants were terminated. *See* Mot. 24. To the contrary, Plaintiffs submit only perfunctory suppositions that reputational harm is *possible*, *see* Wang Decl. ¶ 42, Dkt. # 78; Mahony Decl. ¶ 37, Dkt. # 73, and public comments blaming the federal government, and not Plaintiffs, for uncertainty surrounding federal programs, *see* Carrillo Decl. ¶¶ 30–32, Dkt. # 67; *id.* Ex. 7 at 489, 519–22, 527–28, 530, Dkt. # 67-1; *id.* Ex. 8 at 554–55. Plaintiffs' speculation that EPA's termination will somehow redound on *Plaintiffs'* reputations thus is undermined by Plaintiffs' own evidence and does not support injunctive relief. *See Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) ("[A] finding of reputational harm may not be based on

---

[4] Plaintiffs control their compliance with closeout requirements and thus can avoid any self-inflicted risk of non-compliance. *See* Mot. 24.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

9

'pronouncements [that] are grounded in platitudes rather than evidence.'") (quoting *Herb Reed Enters.*, 736 F.3d at 1250).

*Finally*, Plaintiffs' months-long delay in filing the Motion underscores the lack of any irreparable harm. *See Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). OBBBA was enacted, the grants were terminated, and the lion's share of funds were deobligated months ago. And Plaintiffs have long known the 120-day closeout deadline was coming. EPA specifically identified the deadline four months ago and "encouraged [Plaintiffs] to carefully review and discharge [their] closeout responsibilities." *E.g.*, Nguyen Decl., Ex. 4 at 2, Dkt. # 88-1. EPA again notified Plaintiffs of the deadline on October 1, more than a month before Plaintiffs filed this Motion. *See, e.g.*, *id.* Ex. 7 at 1. The 90-day deadline for subrecipient reports and liquidation passed before Plaintiffs filed the Motion. *See* 2 C.F.R. § 200.344(b)–(c). And Plaintiffs' 120-day closeout deadline will pass on December 5, 2025— before briefing on the Motion has concluded. Plaintiffs' delay both moots their Motion and belies any manufactured emergency based on the closeout deadline. *See Red Shield Admin., Inc. v. Kreidler*, No. C21-5551, 2021 WL 3630506, at *6 (W.D. Wash. Aug. 17, 2021) (three-month delay caused "self-inflicted quandary" and "weigh[ed] against a finding of irreparable harm"); *see also Garcia*, 786 F.3d at 746 (three-month delay "undercut" irreparable harm).[5]

_____

[5] The availability of a forum in which to seek a damages remedy, Plaintiffs' months-long delay in filing, and Plaintiffs' lack of dependence on SFA funds for survival make the cases cited by Plaintiffs inapposite. *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (insolvent defendant lacked adequate funds to pay a damages remedy); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677–78 (9th Cir. 2021) (no "vehicle for recovery" of damages and plaintiffs filed for preliminary relief the day the challenged government actions were issued); *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021) (local affiliates likely to close); *Or. Council for*

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

10

1

II.    **Plaintiffs are Not Likely to Succeed on the Merits.**

2

Plaintiffs cannot demonstrate any likelihood of success on the merits. *First*, the Court

3

lacks jurisdiction to remedy grant termination, because such claims are contractual and belong in

4

the Court of Federal Claims under the Tucker Act. *Second*, Plaintiffs cannot avoid the

5

jurisdictional bar by challenging EPA's termination of the SFA program in general, because

6

Plaintiffs lack standing to raise claims about the repealed program, apart from their challenge to

7

their individual grant termination. *Third*, EPA's decision to terminate SFA grants after OBBBA's

8

enactment was lawful and reasonable; EPA did not violate any provision of OBBBA; and

9

Plaintiffs' purported constitutional claims are just claims that OBBBA bars termination and

10

therefore fail for the same reasons.

11

A.  **This Court Lacks Jurisdiction to Review Termination of Plaintiffs' Grants.**

12

The only cognizable harm to Plaintiffs is EPA's termination of their SFA grants.  But the

13

Court lacks jurisdiction to review those terminations.  As recent Supreme Court decisions make

14

abundantly clear, *see NIH*, 145 S. Ct. at 2660 and *California*, 604 U.S. at 651, challenges to grant

15

terminations are contract claims that must be pursued in the Court of Federal Claims.

16

Sovereign immunity "'shields the Federal Government and its agencies from suit'" unless

17

Congress has expressly waived such immunity and consented to be sued. *Harger v. Dep't of

18

Lab.*, 569 F.3d 898, 903 (9th Cir. 2009) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S.

19

255, 260 (1999)).  "Such waiver cannot be implied, but must be unequivocally expressed."

20

21

22

23

*Humans. v. U.S. DOGE Serv.*, 794 F. Supp. 3d 840, 857, 891 (D. Or. 2025) (loss of "stable
humanities funding created by Congress 50 years ago" would cause "catastrophic" harm to
plaintiffs "heavily or entirely" dependent on funding) (quotations omitted); *RFE/RL, Inc. v. Lake*,
772 F. Supp. 3d 79, 85 (D.D.C. 2025) (halting use of funds would "result in the complete
shuttering of the plaintiff's business").

24

25

26

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

11

*McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008) (citation omitted). "The Supreme Court has called this a 'high standard.'" *Harger*, 569 F.3d at 903–04 (quoting *Blue Fox*, 525 U.S. at 261). Unless a plaintiff "satisfies the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed." *McGuire*, 550 F.3d at 910 (quoting *Dunn & Black v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007)).

Plaintiffs do not identify an unequivocal and express waiver of sovereign immunity for their claims. Nor could they. The APA provides a limited waiver of sovereign immunity only for claims against the United States "seek[ing] relief other than money damages," *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (quoting 5 U.S.C. § 702), and that waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *California*, 604 U.S. at 651 (same). "Where a statute vests exclusive jurisdiction over a category of claims in a specialized court (*e.g.*, the Court of Federal Claims), it 'impliedly forbids' an APA action brought in federal district court." *United Aeronautical*, 80 F.4th at 1022.

The Tucker Act "impliedly forbids" the relief sought here. Under the Tucker Act, the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). This prohibition extends to claims founded on grants that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

12

Importantly, "[t]his jurisdictional inquiry cannot turn on a plaintiff's preferred characterization of its claim, lest we upset the carefully modulated waiver of sovereign immunity and grant of remedies for breach of contract embodied in the Tucker Act." *Climate United*, 154 F.4th at 820 (quotation omitted). In other words, "courts do not allow a plaintiff's artful pleading to dictate whether a claim is . . . contractual in nature" for the purpose of determining if the Tucker Act applies. *Chavez v. United States*, 660 F. Supp. 3d 964, 972 (S.D. Cal. 2023) (quotations omitted). For example, "if an action arises primarily from a contractual undertaking, jurisdiction lies in the Claims Court regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract." *Id.* (quotations omitted). Thus, regardless of how Plaintiffs' claims are styled—*i.e.,* as challenges "under the APA and Constitution," *see* Mot. 11—this court lacks jurisdiction if the claim is "at its essence" contractual, which is the case here. *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994) (quoting *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967–68 (D.C.Cir.1982)).

The Supreme Court recently emphasized the preclusive scope of the Tucker Act in litigation challenging grant terminations. *See NIH*, 145 S. Ct. at 2660; *California*, 604 U.S. at 650. In *California*, certain states obtained a temporary restraining order "enjoining the Government from terminating various education-related grants" and requiring the Government to pay grant obligations. 604 U.S. at 650. The Supreme Court stayed the district court order, holding that "the Government is likely to succeed in showing the District Court lacked jurisdiction" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

13

1  (2002)).  "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits

2  based on 'any express or implied contract with the United States.'"  *Id.* (quoting 28 U.S.C. §

3  1491(a)(1)).

4          Removing any doubt, the Supreme Court reiterated this conclusion in *NIH*.  There, the

5  district court purported to "vacat[e] the Government's termination of various research-related

6  grants."  145 S. Ct. at 2660.  Relying on its reasoning in *California*, the Supreme Court stayed

7  the judgment vacating grant terminations.  The Court explained that the APA "does not provide

8  [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief

9  designed to enforce any obligation to pay money pursuant to those grants."  *Id.* (quotations

10 omitted); *see also id.* at 2662 (Barrett, J., concurring) ("[M]y preliminary judgment is that the

11 plaintiffs' challenges to the grant terminations belong in the CFC.").  The only judgment the

12 Supreme Court did not stay was the district court's decision vacating NIH's "[g]oing forward"

13 policy guidance—a decision which did not (and could not) reinstate the terminated grants.  *Id.* at

14 2661 (Barrett, J., concurring).

15         Following *California* and *NIH*, the D.C. Circuit concluded that APA and regulatory

16 claims brought by other GGRF grantees challenging terminations of their grants fell under the

17 exclusive jurisdiction of the Tucker Act.  *Climate United*, 154 F.4th at 818.  In doing so, the court

18 considered whether the plaintiffs' claims were "in essence" contractual under the two-pronged

19 analysis of *Megapulse*.  First, the D.C. Circuit held that "the source of the grantees' right to the

20 relief they seek is their agreements."  *Id.* at 821 (citing *California*, 145 S. Ct. at 968.  Second, the

21 D.C. Circuit concluded that "the remedy the grantees seek is contractual in nature": "[t]he

22 grantees requested an injunction barring EPA from terminating the grants."  *Id.* at 822.  The D.C.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

14

1    Circuit thus held that plaintiffs' regulatory and APA claims are "essentially contractual," and

2    plaintiffs' "artful pleading" could not make them otherwise.  *Id.* at 823–24.[6]

3         The Tucker Act's jurisdictional bar is also well-settled in the Ninth Circuit.  In *Tucson*

4    *Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 643 (9th Cir. 1998), a third-party

5    plaintiff "sought declaratory and injunctive relief" under the APA, alleging the government's

6    failure "to assume its defense—as required by the Modification Center Contract" violated a

7    federal statute and the U.S. Constitution.  *Id.* at 643–45.  First, the Ninth Circuit concluded that

8    the Tucker Act barred plaintiff's statutory claim, because that claim did not "exist independent of

9    the Modification Center Contract," *id.* at 647, and the relief sought was "at bottom, specific

10   performance of [that contract]," *id.* at 645.  Next, the Ninth Circuit concluded that the Tucker Act

11   barred the plaintiff's constitutional claims, as the claims were "premised on the notion that the

12   United States has some contractual obligation to [the plaintiff] under the Modification Center

13

14

15

16   ───────────────

17   [6] Many other courts have reached the same conclusion. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (staying injunction where the grants "were awarded by federal executive agencies to specific grantees from a generalized fund"); *Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643, 2025 WL 1865160, at *10–12 (D.D.C. July 7, 2025) (dismissing APA grant termination claims); *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025) (denying TRO after concluding that the court lacked authority to "order the Government to pay money due on a contract"), *appeal dismissed voluntarily*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025); *Solutions in Hometown Connections v. Noem*, No. 25-cv-885, 2025 WL 1103253, at *8–10 (D. Md. Apr. 14, 2025) (denying plaintiffs' TRO motion challenging termination of grants, concluding plaintiffs' APA claims were "in essence contract claims"); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 25-cv-30041, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (dissolving TRO because the Supreme Court's *California* order is an "unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims"); *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) (staying a district court's preliminary injunction addressing education-related grants in light of the Supreme Court's *California* decision).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

15

Contract." *Id.* at 647. Accordingly, "[b]ecause the United States's obligation is in the first instance dependent on the contract, these claims are contractually-based." *Id.* It therefore affirmed the district court's dismissal for lack of jurisdiction. This Court should reach a similar conclusion here.[7]

Starting with "the source of the rights," *Megapulse*, 672 F.2d at 968, Plaintiffs have no claim to SFA funding except through their grants. Neither the APA, OBBBA, nor the Constitution confers any substantive right on Plaintiffs to receive government funding. Resolving whether EPA lawfully terminated Plaintiffs' grants "turns entirely on the terms of" the grants. *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004). Because Plaintiffs' asserted rights "do not exist independent of" their grants. *Tucson Airport Auth.*, 136 F.3d at 647, the "source of rights" is the grant agreements. *Id.*

As to the "relief sought," *Megapulse*, 672 F.2d at 968, the heart of Plaintiffs' challenges is their desire to obtain continued disbursement of over $2.5 billion in grants by reversing EPA's

---

[7] The Ninth Circuit's decisions in *Thakur v. Trump*, 148 F.4th 1096, 1105 (9th Cir. 2025) and *Community Legal Services in East Palo Alto v. U.S. Department of Health & Human Services*, 155 F.4th 1099, 1106 (9th Cir. 2025) ("*CLS*") are distinguishable. In both cases, the Ninth Circuit rejected the government's Tucker Act arguments. However, in doing so, the court reasoned that the plaintiffs in those cases had no contractual relationship with the government and therefore did not seek an order requiring the government to pay an obligation under any specific grant. Here, Plaintiffs indisputably had grants with the government, and the relief sought would require EPA to pay funds previously obligated under those grants. Moreover, in *CLS*, the plaintiffs challenged the government's decision to end funding for an ongoing, Congressionally-mandated program, and therefore the court viewed the plaintiffs' claims as statutory claims under the APA, rather than grant-termination claims. Here, Plaintiffs make no claim that EPA had any obligation to them under an ongoing, Congressionally-mandated program. Nor could they. GGRF was never ongoing. It provided an appropriation only through September 30, 2024 for EPA to make grants under three GGRF programs, which EPA did. And any continuing obligation EPA may have had was extinguished when Congress repealed the authorization for the GGRF programs.

---

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

16

decision to terminate them. *See* Compl. 33–34; *see also* Mot. 22. Again, Plaintiffs' only claim to funding is through their grant agreements. Requiring EPA to undo termination and continue the grants is indistinguishable from the contractual remedy of specific performance, which the Court lacks jurisdiction to award. *See Tucson Airport Auth.*, 136 F.3d at 647 (Plaintiff "seeks specific performance of the contract. The conclusion follows that these claims are contractually-based."); *see also NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants.").

Plaintiffs attempt to sidestep the Tucker Act's jurisdictional bar and the Supreme Court's recent decisions in *California* and *NIH* by describing termination as a "policy" implemented through three agency actions—the "H.R. 1 Interpretation," the "Program Termination Directive," and the "Deobligative Directive." Compl. ¶¶ 8, 10; Mot. 13. But the only agency action here was EPA's termination of grants, which does not amount to a rule, policy, or guidance, which *by definition* must be forward-looking. *See, e.g.*, 5 U.S.C. § 551(4) (defining an agency "rule" to be "an agency statement of general or particular applicability *and future effect* designed to implement, interpret, or prescribe law or policy . . . .") (emphasis added). Grant termination is a one-time act, which the Court lacks jurisdiction to review, regardless of Plaintiffs' artful pleading. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (recognizing that 5 U.S.C. § 702 "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes"). Plaintiffs' Motion fails for this reason alone.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

17

**B.  Plaintiffs' Effort to Reinstate the Solar for All Only Exposes Their Lack of Standing.**

For the reasons just explained, Plaintiffs cannot sue in this Court to challenge the termination of their grants.  Aware of *NIH*, *see* Mot. 12, Plaintiffs bend over backwards to frame their case as challenging EPA's decision to terminate the SFA program and its "directive" to deobligate most SFA grant funds, asking the Court to vacate those directives and to require EPA to "reinstate the SFA Program."  Compl. 33–34; *see also, e.g.*, *id.* ¶¶ 1, 8, 10.  Plaintiffs remarkably sidestep the very reason they filed suit (EPA terminated their grants) and the only legally cognizable injury they experienced (lost grant funds).  In doing so, Plaintiffs walk into another limitation on this Court's jurisdiction: standing.

To establish Article III standing, a plaintiff must demonstrate not only that it has suffered a "personal injury fairly traceable to the defendant's allegedly unlawful conduct" but also that the injury is "likely to be redressed by the requested relief."  *California v. Texas*, 593 U.S. 659, 668–69 (2021) (citations omitted).  "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered."  *Id.* at 671.  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiffs cannot satisfy redressability, and therefore cannot demonstrate standing, for two reasons.  *First*, an order requiring EPA to resurrect the SFA "program" is relief that this Court cannot give.  OBBBA repealed the statute authorizing the SFA program and rescinded funds to carry out the program.  Plaintiffs now ask this Court to effectively undo OBBBA and restore the

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

18

now-repealed SFA program. Neither EPA nor the Court can restore the SFA program: Congress has repealed it.

*Second*, "the judicial relief requested" cannot remedy Plaintiffs' only injury: the loss of grant funds. Even if granted, the program-related relief Plaintiffs have requested will not reinstate Plaintiffs' terminated grants. *See supra* Part I. Moreover, this Court cannot order EPA to specifically perform those grants. *See supra* Part II.A*; see also Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) ("Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations.") (citing cases). Nor does this Court have jurisdiction to order contract-related damages. *See supra* Part II.A. Because the Court cannot redress Plaintiffs' alleged injuries, Plaintiffs lack standing and cannot prevail on the merits of their claims.

**C. Plaintiffs' Substantive Claims Lack Merit.**

Aside from jurisdictional defects, Plaintiffs' claims lack merit. OBBBA repealed Section 134, rescinded EPA's administrative funding, and granted Plaintiffs no rights or interests. While Congress did not direct EPA to terminate SFA grants, it did not mandate the grants' preservation. EPA's decision to terminate SFA grants after Congress repealed the statutory authority and rescinded administrative funding, was reasonable and did not violate either the APA, OBBBA, or the Constitution.

*1. The grant terminations do not violate the APA.*

Review under the APA's "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), "is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010) (citation omitted); *see also Ecology Ctr. v. Castaneda*, 574 F.3d 652, 656 (9th Cir. 2009) (stating

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

19

that review "under the arbitrary and capricious standard 'is narrow, and [we do] not substitute [our] judgment for that of the agency.'") (citation omitted). A court should only set aside an agency decision if "there has been a clear error of judgement" "based on a consideration of the relevant factors." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Courts must "uphold [even] a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (quotations omitted). The Court must "simply ensure[] that the agency has acted within a zone of reasonableness," and an agency decision must be upheld so long as it is "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

EPA's decision to terminate SFA grants was a contractual decision subject to review only under contract law standards; to the extent this Court were to apply APA principles, it was also "reasonable and reasonably explained." *Prometheus*, 592 U.S. at 423. EPA explained that it "no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these programs or of Solar for All. Thus, any attempt to continue the program administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible." Nguyen Decl., Ex. 4 at 1, Dkt. # 88-1.

The lack of funding to "continue implementation, oversight or monitoring" is critical. In *Climate United*, the D.C. Circuit found that EPA's termination of grants under other GGRF programs due to its "concerns about lack of oversight," among other reasons, was reasonable. 154 F.4th at 828–29. Plaintiffs may prefer that EPA maintain SFA grants without oversight, but Plaintiffs' preference does not support their APA claims or allow the Court to "substitute its own

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

20

judgment for that of the agency." *Columbia Gulf Transmission LLC v. FERC*, 106 F.4th 1220, 1230 (D.C. Cir. 2024).

Plaintiffs argue OBBBA did not eliminate EPA's authority to administer SFA and cite EPA's request for additional administrative funding. *See* Mot. 16–17. But Plaintiffs cite EPA's March 2024 budget request, *before* OBBBA repealed the SFA authorization. Moreover, even if OBBBA permitted EPA to maintain SFA grants, OBBBA did not limit EPA's discretion to terminate them. And while the original IRA authorized EPA to use other available funds to administer the GGRF programs, it did not require EPA to spend other funds, instead leaving the decision to EPA's discretion. Continuing to administer the SFA grants after OBBBA would have required EPA to shift funds away from other programs. EPA's decision not to do so is, at minimum, owed substantial deference.[8]

Finally, even if EPA's terminations of SFA grants could be reviewed as a policy decision under the APA, EPA "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one." *Fox Television Stations*, 556 U.S. at 515 (emphasis in original). Rather, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.* If the agency's decision unsettles any "serious reliance interests," the agency need only acknowledge and address those interests and explain why it is nonetheless pursuing its chosen policy. *Id.* EPA did so here, including by committing to proceed with the close-out process that is designed to mitigate any reliance harms through

---

[8] *See, e.g.*, 2 C.F.R. § 200.513(c) (explaining responsibilities for awarding agencies with respect to auditing requirements).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

21

payment of allowable pretermination and closeout costs.  Specifically, "EPA recognizes that program participants may have begun to rely on funds . . . .  Due to the early nature of such expenditures, we expect any harms to interests suffered to be remedied and remediable by the close out processes outlined in the program grants and discussed below."  Nguyen Decl., Ex. 4 at 1, Dkt. # 88-1.  Accordingly, EPA's actions did not violate the APA.

> 2.  *Termination of SFA grants is consistent with OBBBA.*

Purporting to rely on "plain language," Plaintiffs argue that the grant terminations violated OBBBA.  Mot. 13–15.  But nothing in the text of OBBBA bars EPA from terminating grants.  To overcome this, Plaintiffs rely on information beyond the statutory language, such as CBO's finding that "the repeal and rescission together only saved [$19 million]."  Mot. 6.  But CBO only estimated the immediate savings from the *rescission* of administrative funds.  Grant terminations do not fall within the same category.[9]  Moreover, Congress did not merely rescind $19 million of administrative funding and otherwise leave GGRF intact.  Congress explicitly repealed Section 134.  By repealing both the appropriation and the statutory provision authorizing the program, Congress removed GGRF from the United States' policy agenda.  And that, in turn, provided a reasonable basis for EPA to terminate the existing grants rather than shifting administrative funding away from grants and programs that remained under extant legislation.

---

[9] Plaintiffs conflate rescission with termination. Contrary to Plaintiffs' contention, *see* Mot. 15–19, EPA did not *rescind* their grant funds, it terminated the grants.  A rescission "attempts to restore parties to the positions they would have occupied had no contract been made."  *BBC Brown Boveri, Inc. v. Rainier Nat. Bank*, 899 F.2d 1224, 1990 WL 40269, at *1 (9th Cir. Apr. 4, 1990).  The grant terminations, in contrast, did not restore the parties to status quo ante: Plaintiffs are entitled to close out their grants and receive allowable pretermination and closeout costs.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

22

1  Under Plaintiffs' reading of OBBBA, SFA grants issued under the repealed Section 134

2  are untouchable. Mot. 15–17. But OBBBA's text includes no such requirement. At minimum,

3  OBBBA left EPA discretion regarding extant grants. "It is a fundamental principle of statutory

4  interpretation that absent provision[s] cannot be supplied by the courts. To do so 'is not a

5  construction of a statute, but, in effect, an enlargement of it by the court." *Rotkiske v. Klemm*,

6  589 U.S. 8, 14 (2019) (quotations and citations omitted). "This principle applies not only to

7  adding terms not found in the statute, but also to imposing limits on an agency's discretion that

8  are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home v.*

9  *Pennsylvania*, 591 U.S. 657, 677 (2020). Here, OBBBA imposes no limits on EPA's ability to

10  terminate SFA grants, and neither did Section 134. *See Climate United*, 154 F.4th at 827

11  (identifying no provision barring grant termination under the IRA). Plaintiffs' statutory claim

12  fails because it adds terms to OBBBA and imposes limits on EPA not supported by the text.

13  In sum, following OBBBA, the grants no longer served any legislative agenda, and EPA

14  had no dedicated funds to administer the program, making termination of the SFA grants a

15  reasonable outcome. EPA determined that termination of SFA grants was reasonable, and it had

16  existing authority to terminate grants. 2 C.F.R. § 200.340(a)(4) (allowing agency to terminate a

17  grant when "an award no longer effectuates the program goals or agency priorities").[10]

18  Accordingly, EPA's termination of the grants did not violate OBBBA and cannot justify the

19  requested injunctive relief.

---

[10] To the extent Plaintiffs claim that SFA grants precluded EPA from terminating pursuant to 2 C.F.R. § 200.340(a)(4), Mot. 17–18 n.20, that is a contractual dispute, which belongs in the Court of Federal Claims.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

23

1

      3.  *Plaintiffs' constitutional claims fail under* Dalton.

2        Plaintiffs' alleged constitutional claims merely repeat the alleged statutory and

3   contractual violations and thus fail to state any claim.  "[C]laims simply alleging that the

4   [Executive Branch] has exceeded [its] statutory authority are not 'constitutional' claims." *Dalton*

5   *v. Specter*, 511 U.S. 462, 473 (1994).  "If all executive actions in excess of statutory authority

6   were *ipso facto* unconstitutional . . . there would have been little need [for] specifying

7   unconstitutional and ultra vires conduct as separate categories." *Id.* at 472 (discussing *Larson v.*

8

9   *Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949)).

10       Plaintiffs' Appropriations Clause argument relies on an alleged violation OBBBA and the

11  original SFA appropriation in Section 134.  Those alleged statutory violations cannot support a

12  constitutional claim. "Claims that agency officials acted in excess of their statutory authority do

13  not *ipso facto* allege violations of the 'Separation of Powers.'" *Climate United*, 154 F.4th at 826.

14  Courts should "decline to adopt a principle that would convert every statutory challenge to

15  agency action into a constitutional claim." *Id.* at 827; *see also Glob. Health Council v. Trump*,

16  153 F.4th 1, 14–15 (D.C. Cir. 2025) (finding that separation-of-power claims by grantees whose

17

18  funds were frozen could not proceed as a freestanding constitutional claim because grantees

19  "seek to enforce the statutes.").

20       In any event, EPA followed the Appropriations Clause, which provides that "No Money

21  shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S.

22  Const. art. I, § 9, cl. 7.  This requires that "the payment of money from the Treasury must be

23  authorized by a statute." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990).  EPA

24

25  complied by making SFA grants.  But EPA retained discretion to oversee and manage the specific

26

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

grants and programs.  EPA's decision, *after Congress repealed the GGRF*, to terminate SFA

grants does not implicate the Appropriations Clause.  Indeed, EPA would undermine

congressional intent by shifting funds from other, ongoing grants and programs to administer the

repealed SFA.

Nor do the grant terminations implicate the separation of powers provisions of the

Constitution, because OBBBA repealed Section 134.  "[W]hen an act of the legislature is

repealed, it must be considered, except as to transactions past and closed,[11] as if it never existed."

*Ex Parte McCardle*, 74 U.S 506, 514 (1868).  The terminations effectuating Congress' repeal of

the SFA program did not "thwart congressional will" but furthered it.  *City and County of San*

*Francisco v. Trump*, 897 F.3d 1225, 1231–32 (9th Cir. 2018), cited by Plaintiffs, is a poor

analogy.  There, the Ninth Circuit considered whether an executive order barring sanctuary

jurisdictions from receiving federal grants violated the separation of powers.  Here, in contrast,

EPA awarded SFA grants under Section 134, then terminated the grants following the statute's

repeal.  EPA is not acting against congressional will because "[a] statute that Congress snuffed

out of existence by repeal leaves no residual clear statement of authorization," and no longer

evinces congressional will.  *Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F.3d

919, 934 (9th Cir. 2011).  Congress could have included a savings clause to perpetuate SFA

grants, but chose not to.  *See id*.  Plaintiffs point to lawmakers' statements regarding the grants,

Mot. 16, but OBBBA repealed Section 134 without saying more.  Thus, there is no "policy

---

[11] Plaintiffs misconstrue the grant terminations as "claw[ing] back" "amounts lawfully obligated to Plaintiffs.  Mot. 16.  EPA agrees that the repeal of Section 134 did not erase Plaintiffs' grant agreements from existence, but EPA is terminating the grants pursuant to the terms of those grants.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

25

1    disagreement" between EPA and Congress, rendering *In re Aiken County* inapplicable.  725 F.3d

2    255, 260 (D.C. Cir. 2013).  Accordingly, Plaintiffs' constitutional claims cannot succeed.

3    **III.    The Equities Weigh Against Emergency Relief.**

4        Plaintiffs cannot establish that the balance of equities and the public interest favor

5    emergency relief.  These final two factors merge where relief is sought from the government.

6    *Nken v. Holder*, 556 U.S. 418, 435 (2009).  In arguing that the public interest weighs in their

7    favor, Plaintiffs primarily rely on the argument that they are likely to prevail and no public

8    interest supports the perpetuating unlawful agency action.  Mot. 25.  But that is just a repackaged

9    version of Plaintiffs' merits arguments, which are unlikely to succeed, and does not provide an

10    independent basis for relief.  This is especially true given Plaintiffs' nonexistent showing of

11    irreparable harm.

12

13        Meanwhile, contrary to Plaintiffs' assertions that the government will suffer no

14    cognizable harm if a preliminary injunction is granted, "[a]ny time a [government] is enjoined by

15    a court from effectuating statutes enacted by representatives of its people, it suffers a form of

16    irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)

17    (citation omitted); *see also Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers

18    Local Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (citing same language from *King*

19    in a decision granting a stay pending appeal of a preliminary injunction against a federal agency

20    rulemaking).  This is especially true here, where an injunction would contradict Congress's

21    repeal of all authority and administrative funding for the SFA program.  EPA is legally entitled to

22    make decisions and disbursements to effectuate that congressional intent, including by

23    terminating SFA grants.  Any injunction interfering with the agency's ability to advance that

24

25

26

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

26

policy cannot be repaired after the fact. *Climate United*, 154 F.4th at 830 ("injunction harms the government and the public interest by preventing the Executive Branch from properly and prudently managing billions of dollars in public funds" and the harm "from an erroneous injunction" is irreparable when the government cannot recover funds spent down during litigation).[12]

## **CONCLUSION**

For the foregoing reasons, Defendants ask this Court to deny the Motion.

Dated: December 5, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRK T. MANHARDT
Director

KEVIN P. VANLANDINGHAM
Assistant Director

*/s/    Tiffiney F. Carney*
TIFFINEY F. CARNEY
I-HENG HSU
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-521
tiffiney.carney@usdoj.gov
i-heng.hsu@usdoj.gov
*Attorneys for the Defendants*

---

[12] If the Court grants any preliminary relief that requires EPA to disburse money, Defendants respectfully requests the Court to require Plaintiffs to post bond or other security in the same amount. *See* Fed. R. Civ. P. 65(c) (requiring "security in an amount that the court consider proper to pay the costs and damages sustained by [Defendants, if] found to have been wrongfully enjoined or restrained.").

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

27

## LOCAL RULE 7(e)(6) CERTIFICATION

I certify that this memorandum contains 8,315 words in compliance with the Local Civil

Rules.  This certificate was prepared in reliance on the word-count function of the word-

processing system (Microsoft Word) used to prepare the document.


*/s/ Tiffiney F. Carney*

Tiffiney F. Carney
Trial Attorney
U.S. Department of Justice

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

28