The Honorable Tiffany M. Cartwright

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| STATE OF ARIZONA, et al., | NO. 2:25-cv-02015-TMC |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, | |
| Defendants. | |

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO
TRANSFER VENUE
No. 2:25-cv-02015-TMC

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND ............................................................................................................. 3

      A.   The States' Claims and Litigation Efforts to Date.................................................. 3

      B.   Other Solar for All Litigation ............................................................................... 4

III.  ARGUMENT ................................................................................................................. 6

      A.   The First-to-File Rule Does Not Support Transfer of This Case............................ 6

           1.   The D.C. Action is Not the First-Filed Solar for All Case .............................. 7

           2.   The Parties are Different and Differently Situated.......................................... 10

           3.   The Legal Issues are Not Identical ................................................................. 13

      B.   Defendants Have Not Carried Their Burden of Proving that the § 1404 Factors
           Outweigh the States' Decision to File in Western District of Washington ............. 14

           1.   Transfer to D.D.C. Would Prejudice the States .............................................. 15

           2.   Consideration of the Private Factors Shows D.D.C. is Not a Substantially
                More Convenient or Appropriate Forum for this Dispute................................ 16

           3.   Public Interest Factors Do Not Favor D.D.C. Primarily Because Transfer
                to D.C. Would Delay Resolution of a Pending Motion ................................... 19

IV.   CONCLUSION ............................................................................................................. 21

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

# I.    INTRODUCTION

In this case, 22 States[1] and the District of Columbia ("States") challenge EPA's decision to terminate and unwind the Solar for All program, a $7 billion competitive grant program designed to enable low-income and disadvantaged communities to deploy and benefit from distributed solar generation. Defendants' decision—first announced in an 89-word social media post—was based solely on EPA's incorrect interpretation of H.R. 1, the July 2025 reconciliation bill which repealed the statute that created the Solar for All program ("Program") and rescinded "unobligated" funds previously appropriated for the Program. Pub. L. 119-21, § 60002, 139 Stat. 72, 154 (July 4, 2025). Having decided to end the Solar for All Program "for good," Defendants acted quickly to dismantle the Program, starting by simultaneously terminating all 60 Solar for All grants. Defendants immediately clawed back nearly all of the States' Solar for All funds, before the States even had a chance to challenge Defendants' Program termination decision through administrative channels. The States filed this action, and, when Defendants did not agree to preserve the States' Solar for All funds for the duration of the litigation, sought a preliminary injunction to prevent closeout of the States' grants and Defendants from reprogramming the States' Solar for All funds pending judgment in this case. Dkt. 64.

The States are some of the entities that have been harmed by Defendants' hasty and unlawful termination of the Solar for All program. But other injured parties have challenged EPA's actions with respect to the Solar for All program, too. First, on October 6, a group of sub-grantees and other down-stream beneficiaries of the Solar for All program filed suit in the United States District Court for the District of Rhode Island. *Rhode Island AFL-CIO v. U.S. Environmental Protection Agency*, No. 1:25-cv-00510 (D.R.I.) ("the Rhode Island Action").

---

[1] For ease of reference, we refer to all Plaintiffs as the "States." Plaintiff Wisconsin Economic Development Corporation is a public body corporate and politic created by the legislature of the State of Wisconsin, but it is not a state agency.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE
No. 2:25-cv-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    Then, on October 13, Harris County, Texas sued Defendants (and another EPA official) in the

2    United States District Court for the District of Columbia. *Harris County v. U.S. Environmental*

3    *Protection Agency*, No. 1:25-cv-03646 (D.D.C.) ("the D.C. Action"). Defendants now seek to

4    transfer this case to the District of Columbia, primarily on the grounds that Harris County filed

5    "first."

6          Defendants' reliance on the so-called "first-to-file" rule is misplaced and does not

7    support transfer to D.D.C. The D.C. Action was not the "first" matter to challenge Defendants'

8    termination of the Solar for All program. The first case to question EPA's exclusive reliance

9    upon H.R. 1 in terminating the Solar for All program was the Rhode Island Action, which

10   Defendants also seek to transfer to D.D.C. under 28 U.S.C. § 1404. Defendants do not explain

11   why the *first*-to-file rule supports transfer of this case to the forum in which the *second* of three

12   Solar for All cases is pending. More importantly, the first-to-file rule is intended to govern in

13   situations (like the intellectual property disputes at issue in many of the cases upon which

14   Defendants rely) where two sister courts are simultaneously asked by overlapping or closely

15   related parties to the same dispute to apply complex facts to law. That rule does not apply here,

16   where no State is a party to the D.C. Action, Harris County is not a party to this action, and the

17   operative facts are largely undisputed.

18         To be sure, some of the legal questions presented in the three cases overlap. But district

19   courts across the country are often called upon to interpret the same provisions of law, and no

20   litigant would seriously suggest that all cases in which completely distinct sets of plaintiffs

21   have brought "similar" claims must be heard by the court in which the "first" lawsuit was filed.

22   Nor is D.D.C. a more convenient forum for the States' dispute.

23         Transferring this case will also delay resolution and prolong harm to the States.

24   Because the States have a preliminary injunction motion pending (and Harris County does not),

25   this Court is in a better position to preliminarily assess the merits of the States' claims months

26   before the D.D.C. Transferring this matter *before* resolving the preliminary injunction motion

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

would only delay resolution of that motion, prejudicing the States. And transferring this case *after* this Court has familiarized itself with the relevant facts and law and resolved the preliminary injunction motion, it would be inefficient and defies judicial economy. Simply put, Defendants have offered no compelling reason why this court should voluntarily cede its jurisdiction to the D.D.C. The Court should deny Defendants' transfer motion.

## II.    BACKGROUND

### A.    The States' Claims and Litigation Efforts to Date

This lawsuit is one of two in which the States seek relief from harms caused by Defendants' unlawful Program termination and their hasty implementation thereof.

On October 15, the Solar for All recipient entities within each of the States filed suit in the Court of Federal Claims seeking damages for EPA's breach of their Solar for All grant agreements. *Maryland Clean Energy Center v. United States*, Civ. No. 25-cv-01738 (Fed. Cl. Oct. 15, 2025).

One day later, the States filed this lawsuit. The States challenge EPA's decisions to terminate the Solar for All Program and remove States' funds from their Solar for All accounts based on its erroneous interpretation of H.R. 1. These actions are illegal, exceed statutory authority, and arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. EPA's actions are also ultra vires and violate the U.S. Constitution's Appropriations Clause and separation of powers. Compl. at 26–33. The States seek (1) a declaration that the EPA's actions were unlawful; (2) vacatur of the EPA's interpretation of H.R. 1 and its decisions to terminate the Solar for All program and claw back the grant funds; (3) an order requiring Defendants to reinstate the Solar for All program; and (4) an injunction preventing Defendants "from reobligating, using, expending, or otherwise placing beyond the

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  Court's jurisdiction any funds appropriated by Congress for the SFA Program except for

2  purposes of the SFA Program." *Id*. at 33–34.[2]

3          On November 14, the States filed a motion for preliminary injunction seeking a narrow

4  order freezing the Solar for All funds where they are to ensure that EPA does not reprogram

5  them and enjoining the administrative "closeout" of Plaintiffs' grants while litigation proceeds.

6  Dkt. 64. at 2, 26.[3] That motion will be fully briefed on December 12, and has been set for

7  hearing before this Court on January 8, 2026. Dkt. 99.

8  **B.     Other Solar for All Litigation**

9          Although the States' action is the third to challenge EPA's termination of the Solar for

10  All program, it is the furthest along.

11          <u>The Rhode Island Action</u>

12          On October 6, a group of plaintiffs sued EPA and Administrator Zeldin in Rhode Island

13  district court. *Rhode Island AFL-CIO v. EPA*, No. 1:25-cv-00510, Dkt. 1 (D.R.I Oct. 6, 2025).

14  These plaintiffs are not Solar for All grant recipients themselves. Instead, the Rhode Island

15  plaintiffs are various organizations and one individual who allege that they would have

16  benefitted directly from the Solar for All program, and were therefore harmed by Defendants'

17  illegal actions terminating the Program. The Rhode Island plaintiffs did not seek preliminary

18  relief, and Defendants have not filed a responsive pleading. Instead, on November 25, the

19  parties filed a stipulation that proposes a briefing schedule for cross-motions for summary

20  judgment to be completed by April 3, 2026. No. 1:25-cv-00510, Dkt. 26 (D.R.I. Nov. 25,

21  2025).

22

23          [2] The claims in this case and the Court of Federal Claims case are legally distinct, but reflect the process

24  of "[t]wo-track litigation" envisioned by Justice Barrett, under which "challenges to the grant terminations belong
    in the [Court of Federal Claims]," and Administrative Procedure Act challenges "belong in district court." *NIH v.*
    *American Public Health Ass'n*, 145 S. Ct. 2658, 2662 (2025) (Barrett, J., concurring).

25          [3] Generally speaking, "closeout" is an administrative process that a grant recipient undertakes when a
    grant's term has ended or funds have been exhausted. Closeout requires submission of final financial and

26  performance reports that document where and how grant funds were spent during the grant period. *See* Dkt. 64 at
    9-10.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    On December 1, 2025, Defendants filed a motion to transfer the Rhode Island Action to

2    D.D.C. No. 1:25-cv-00510, Dkt. 27 (D.R.I. Dec. 1, 2025). There, as here, Defendants argue

3    that the Rhode Island Action should be transferred under 28 U.S.C. § 1404(a) because the

4    complaint could have been filed in D.D.C. in the first instance, the D.D.C. is a "much more

5    convenient forum for Defendants," and that litigating in the D.D.C. may avoid "piecemeal

6    litigation" and "conflicting judgments." *Id*. at 7-11. However, Defendants do not argue that the

7    "first to file" rule justifies transfer of the Rhode Island Action to the D.D.C.—because they

8    cannot.

9        The D.C. Action

10       On October 13, Harris County, Texas sued EPA, Administrator Zeldin, and EPA

11   Award Official Devon Brown challenging EPA's "Elimination Decision," *i.e.*, EPA's decision

12   to end the Solar for All Program. *Harris County v. U.S. Environmental Protection Agency*, No.

13   1:25-cv-03646, Dkt. 1 (D.D.C. Oct. 13, 2025). Harris County sued in its capacity as a political

14   subdivision of Texas and leader of a statewide initiative to expand access to clean energy in

15   lower-income communities, called the "Texas Coalition." *Id*. at ¶ 25.

16       On October 24, Harris County moved for a preliminary injunction seeking to enjoin

17   EPA's implementation of its Elimination Decision. No. 1:25-cv-03646, Dkt. 12 (D.D.C. Oct.

18   24, 2025). Citing EPA's disclosures about the status of Solar for All funds, Harris County also

19   filed a Motion for a Temporary Restraining Order. No. 1:25-cv-03646, Dkt. 14 (D.D.C. Nov.

20   3, 2025). The D.C. Defendants responded to both, but the D.C. court never ruled on the

21   motions because the parties were able to agree that the "status quo would remain unchanged

22   while the Parties litigate Harris County's claims on the merits," Harris County's administrative

23   dispute would be stayed through judgment and, as a result, closeout would "not proceed."

24   No. 1:25-cv-03646, Dkt. 21 (D.D.C. Nov. 14, 2025). Harris County withdrew its preliminary

25   injunction and TRO motions on November 14. *Id*. Despite Defendants' present contention that

26   this action and the D.C. Action are "nearly identical," Dkt. 97 at 1. Defendants have refused to

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

grant the States the same assurances in this case. So unlike Harris County's prior motion, the States' preliminary injunction motion remains pending.

### III.    ARGUMENT

There is no dispute that venue is proper in the States' chosen forum—the Western District of Washington. This is a civil action against "an officer or employee of the United States or any agency thereof acting in his official capacity;" the State of Washington is a plaintiff; a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Washington; and there is no real property at issue in this case. 28 U.S.C. § 1391(b)(2), (e)(1). Nevertheless, Defendants have asked this Court to send this case to the D.D.C. The Court should reject Defendants' attempt to summarily override the States' choice in venue.

A plaintiff's choice of forum is entitled to deference. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). A plaintiff's choice of forum is entitled to even greater deference where, as here, a plaintiff has chosen its "home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Accordingly, a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. Although transfer of a case is discretionary (28 U.S.C. § 1404(a)), Defendants have failed to make the requisite "strong showing" to overcome the States' choice of forum in this case.

### A.  The First-to-File Rule Does Not Support Transfer of This Case

Defendants attempt to shoehorn their transfer motion into the so-called "first-to-file" rule. But the doctrine does not apply here, both as a matter of simple chronology and because the cases are not sufficiently similar to permit Defendants to divest the States of their chosen forum.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

The first-to-file rule is a court-created doctrine of judicial efficiency. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)). A court may invoke the rule "when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). To determine whether the first-to-file rule applies, a court must consider three factors: (1) the chronology of the suits; (2) the similarity of the parties; and (3) the similarity of the issues. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). However, "[t]he most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltrade*, 946 F. 2d at 628 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co*., 342 U.S. 180, 183-84 (1952)). Thus, even if a court were to conclude that the first-to-file criteria have been met, "[c]ircumstances and modern judicial reality" may compel a "different approach." *Church of Scientology*, 611 F.2d at 750.

Defendants cannot establish any of the three first-to-file factors in this case. *First*, the D.C. Action is not the "first" Solar for All case, and this Court—not D.D.C.—will be the first to consider the key legal questions. *Second,* the parties are not the same or substantially similar because no State is a party to the D.C. Action and the States, as sovereigns, are materially different from a political subdivision like Harris County. *Third*, there are legal questions that are distinct to the States' case. In short, the first-to file rule is merely window dressing for the Defendants' request that the Court to allow them to dictate the venue for this case.

### 1.    The D.C. Action is Not the First-Filed Solar for All Case

Through not obvious from Defendants' motion, the Rhode Island Action was the first to challenge EPA's termination of the Solar for All Program on APA, constitutional, and ultra vires grounds. Defendants do not explain why policy rationales of "economy, consistency and comity" are served by transferring the States' case to the *second* forum that is hosting a Solar

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1   for All dispute—the D.D.C.—and not to the first, as the rule requires. Dkt. 97 at 8 (citing

2   *Fisher v. Duff*, No. C15-5944-BHS, 2016 WL 3280429, at *2 (W.D. Wash. June 15, 2026)).

3   Moreover, Defendants have asserted in their motion to transfer the Rhode Island Action to

4   D.D.C. that that case is "nearly identical" to the States' action before this district. *Rhode Island*

5   *AFL-CIO,* No. 1:25-cv-00510, Dkt. 27 at 1 (D.R.I. Dec. 1, 2025).

6          Defendants' position seems to be that, where there are multiple cases involving similar

7   claims against the same defendant, the defendant can choose among any of the earlier venues

8   and demand that all cases be heard there. Defendants have identified no authority for the

9   proposition that first-to-file actually means "earlier-to-file," and this Court should reject such

10  an arbitrary invocation of the first-to-file rule. *See Alltrade*, 946 F.2d at 625, 628 (court may

11  decline to apply the first-to-file rule when there is evidence of bad faith, anticipatory suit, or

12  forum shopping). Because the D.C. Action is just one among several cases challenging the

13  EPA's termination of the Solar for All program, the first-to-file rule cannot support transfer of

14  this case to D.D.C.

15         This case should stay in the Western District of Washington for the additional reason

16  that this Court is the first one with substantive questions of law pending before it. This, too,

17  militates against a rigid application of the first-to-file rule.

18         In *Church of Scientology*, the Ninth Circuit established an exception to the first-to-file

19  rule, concluding that where a later-filed matter has proceeded far beyond the first-filed matter,

20  "the goal of judicial efficiency" is best met by "overlook[ing]" the first-to-file rule. *Church of*

21  *Scientology*, 611 F.2d at 750. More recently, the Ninth Circuit declined to grant relief from a

22  permanent injunction on first-to-file grounds because neither the first forum nor any other

23  court had "issued any pronouncement on the legality" of the copyrighted works sought to be

24  excluded from the injunction. *Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir.

25  2011).

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    Here, transfer would undermine the goal of judicial efficiency because the States'

2    litigation in this district is more advanced than the D.C. Action and this Court will be the first

3    to consider—albeit in a preliminary posture—the underlying legal issues. Indeed, this case is

4    the first and only case among the three Solar for All actions that has a substantive motion

5    pending, and this Court has already set a hearing on that motion in less than a month. Dkt. 99.

6    By contrast, in the D.C. Action, Harris County filed but withdrew similar requests for

7    preliminary relief. The parties instead stipulated to a briefing schedule for expedited motions

8    for summary judgment which does not contemplate a substantive filing until January 30, after

9    the States' preliminary injunction motion will be ripe for disposition. *Harris County,* No. 1:25-

10   cv-03646, Dkt. 22 at 2 (D.D.C. Dec. 5, 2025). Pursuant to that briefing schedule, cross-motions

11   for summary judgment in the D.C. Action will not be ripe for disposition until March 27, 2026.

12   *Harris County,* No. 1:25-cv-03646, Dkt. 23 (D.D.C. Dec. 8, 2025). Likewise, in the Rhode

13   Island Action, the parties have proposed a summary judgment briefing schedule that would

14   commence in February 2026 and conclude in April 2026. *Rhode Island AFL-CIO*, No. 1:25-cv-

15   00510 Dkt. 26 at 2 (D.R.I. Nov. 625 2025).

16   This Court will need to become familiar with the case to resolve the States' already

17   pending preliminary injunction motion, and, as a result, will be the first court to preliminarily

18   evaluate the merits of a core legal issue shared among the three cases—namely, whether EPA's

19   interpretation of H.R.1 provided an adequate legal basis to terminate and unwind the Solar for

20   All program. *See* Compl. at 20-22; *Rhode Island AFL-CIO*, No. 1:25-cv-00510, Dkt. 1 at 35-36

21   (D.R.I. Oct. 6, 2025) (alleging that EPA acted contrary to the plain language of H.R.1 Section

22   60002 when terminating the Solar for All program); *Harris County,* No. 1:25-cv-03646, Dkt. 1

23   at 26-28 (D.D.C. Oct. 13, 2025) (alleging that EPA's Elimination Decision violates Section

24   60002 of H.R.1 and is "unreasonable on its face"). The "goal of judicial efficiency" is,

25   therefore, best met by retaining the case in this forum, even if Harris County filed its complaint

26   three days before the States. *Church of Scientology*, 611 F.2d at 750.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1

2.       **The Parties are Different and Differently Situated**

2

3        Not one of the States or any party related to the States is a party to the D.C. Action.

4   This alone should defeat transfer under the first-to-file rule. Defendants nonetheless contend

5   that the States are "substantially similar" to Harris County because both the States and Harris

    County "are recipients of [Solar for All] grants." Dkt. 97 at 8.

6

7        It is true that "strict identity of the parties and identical issues in the cases are not

8   required." Dkt. 97 at 7 (citing *Music Grp. Servs. US, Inc. v. InMusic Brands, Inc.*, No. C13-

    182MJP, 2013 WL 1499564 (W.D. Wash. Apr. 11, 2013)). But Defendants' interpretation of

9   the requirement would effectively nullify the similarity requirement. Even a cursory review of

10  the first-to-file case law reveals that the parties must share more than a single characteristic

11  (participation in the same federal grant program) to be deemed "the same." *Pacesetter Systems*,

12  678 F.2d at 95. First-filing disputes generally fall into three categories: (1) where the same

13  plaintiff files multiple similar lawsuits against the same or similar parties in multiple courts; (2)

14  where a plaintiff files a case in one court, and then the defendant sues that plaintiff in another

15  court for the same dispute; and (3) where different but closely related plaintiffs (*e.g.*, corporate

16  affiliates or parties to the same contract) or plaintiffs seeking to represent overlapping putative

17  classes in a class action file in different courts. *See NWDC Resistance v. Immigr. & Customs*

18  *Enf't*, No. 3:18-CV-5860-RBL, 2019 WL 12262490, at *3–4 (W.D. Wash. May 30, 2019)

19  (collecting cases where parties were found to be "substantially similar" because they were

20  absorbed in a corporate merger or belonged to overlapping putative plaintiff classes, but

21  declining to apply the rule even though a plaintiff in the instant case was a member of a

22  plaintiff in the other case at issue).

23       Defendants cite *InMusic Brands* as support for the proposition that "strict identity" of

24  the parties is not required. Dkt. 97 at 7. But *InMusic Brands* does not say that completely

25  unrelated parties are nonetheless "similar" if they have a common characteristic or two. Rather,

26  it was an intellectual property case, involving highly technical determinations regarding the

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

validity of one company's patent and whether another company infringed that patent. *InMusic Brands*, 2013 WL 1499564, at *2. Both companies sued the other in different courts, and one later sought transfer. *Id*. Relevant here, any purported "dissimilarity" between the parties in the original and subsequent cases was negligible: the defendant in the second-filed action absorbed the plaintiff in the original action through a merger. The court sensibly concluded that they were functionally the same for first-to-file purposes. *Id*.

Those facts are nothing like this case. Here, there is no overlap between the States and sole plaintiff in the D.C. Action, Harris County, nor is there any relationship between them. Because the two cases lack the requisite similarity of parties, this case cannot be transferred to D.D.C. *See California v. Trump*, 1:25-cv-10810-DJC, Dkt. 79 (D. Mass. May 9, 2025) (denying federal government's motion to transfer the States' challenge to elections executive order to D.D.C., where a similar complaint by private parties was already pending because, in part, "the parties are not the same"). Indeed, the federal government did not even attempt to transfer a separate but related case brought by the States of Washington and Oregon, filed one day after the *California* complaint. *See generally State of Washington v. Trump*, Case No. 2:25-cv-00602-JHC (W.D. Wash.). Defendants' selective invocation of the first-to-file rule is, at best, inconsistent.

Not only are the States and Harris County distinct from each other, they are also differently situated in ways that may be material to the Court's disposition of the ultimate issues in this case. Our system "reserves to [States] a substantial portion of the Nation's primary sovereignty, together with the dignity and essential attributes inhering in that status." *Alden v. Maine*, 527 U.S. 706, 714 (1999) (citing The Federalist No. 39, 245 (C. Rossiter ed. 1961) (J. Madison)). "[E]ven as to matters within the competence of the National Government," States hold a unique, sovereign role that should not be impugned lightly. *Id.* at

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE
No. 2:25-cv-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

714.[4] By contrast, a political subdivision like Harris County cannot command the same treatment as the States. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (quoting *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 848 (9th Cir. 1985)). Rather than asserting a quasi-sovereign interest, a municipality or political subdivision may "sue to protect its own proprietary interests that might be congruent with those of its citizens." *Id.* (quotations omitted). Indeed, it is precisely because of the States' special dignity as litigants that courts have declined transfer to out-of-state courts in cases where a state has sued in its home forum. *See State of Cal. v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1063 (N.D. Cal. 2018) (denying transfer to the District of Wyoming because the chosen forum is "home to the State of California, a state sovereign"); *New York v. Pruitt*, 2018 WL 2411595 at *6, Case No. 18-cv-1030-JPO (S.D.N.Y. May 29, 2018) (denying transfer to the Southern District of Texas).

Most importantly, Defendants themselves have treated the States differently than Harris County. The reason that the States' preliminary injunction motion remains pending is because EPA refused to grant the States the same assurances that EPA gave to Harris County. *Harris County*, No. 1:25-cv-03646, Dkt. 21 ¶ 6 (D.D.C. Nov. 14, 2025). Defendants cannot have it both ways.  If the parties and issues are truly "identical," then Defendants' refusal to grant assurances to the States makes no sense. And if there are material (if modest) differences between the parties that are sufficient to support such a widely different response to the two preliminary injunction motions, surely that supports this Court retaining jurisdiction of this case.

Defendants, therefore, have failed to establish that the States and Harris County are "the same."

---

[4] The Wisconsin Economic Development Corporation is not a true sovereign entity like the plaintiff States. *See supra* n. 1. However, as a public-private entity created by the Wisconsin legislature, it too is differently situated and bears no similarity to Harris County, a political subdivision of the State of Texas.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

### 3.    The Legal Issues are Not Identical

One of the primary legal issues in both this case and the D.C. Action is whether EPA correctly concluded that it "no longer has the statutory authority to administer the [Solar for All] program or the appropriated funds keep [the Solar for All program] alive." Compl. ¶ 90. But a common legal question alone does not support transfer under the first-to-file rule. *Alltrade*, 946 F.2d at 625 (the first-to-file rule may be applied "when a complaint involving the same parties *and* issues has already been filed in another district.") (emphasis added) (cleaned up). Moreover, to reach that common issue, the reviewing court(s) must address other threshold legal questions involving jurisdiction and standing, the answers to which may differ between the two cases.

Defendants have already challenged the States' standing to bring this action. Dkt. 102 at 18. But when it comes to standing, as quasi-sovereigns, the States are "entitled to special solicitude." *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). This distinction carries with it a distinct body of law which does not apply to Harris County. *See supra* at pp.11-12.

The application of the Tucker Act, 28 U.S.C. § 1491, *see* Dkt. 102 at 11-18, presents another material distinction between this case and the D.C. Action. In the D.C. Action, Defendants argued (in an opposition to a preliminary injunction motion that has since been withdraw) that Harris County was unlikely to succeed on the merits of its claims because its "challenge to a grant termination is a contract claim that must be pursued in the Court of Federal Claims," and therefore the district court lacks jurisdiction to hear those claims. *Harris County*, No. 1:25-cv-03646, Dkt. 20 at 16 (D.D.C. Nov. 10, 2025). But here, the States (through the appropriate recipient entities) have already filed their challenge to EPA's terminations of their individual Solar for All grant agreements in the Court of Federal Claims. *Maryland Clean Energy Center v. United States*, Civ. No. 25-cv-01738 (Fed. Cl. Oct. 15, 2025). Thus, Defendants will no longer be able to gesture broadly in the direction of the Court of Federal Claims to defeat jurisdiction; the States are already there.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    This Court need not parse at this juncture the multitude of legal questions that this case

2    presents. Even if the legal issues presented in the two cases were identical, Defendants have

3    failed to establish the requisite chronology and similarity of parties to invoke the first-to-file

4    rule. *Alltrade*, 946 F.2d at 625. Defendants' motion must therefore be denied.

5    **B.    Defendants Have Not Carried Their Burden of Proving that the § 1404 Factors Outweigh the States' Decision to File in Western District of Washington**

6

7    Defendants alternatively seek transfer under 28 U.S.C. § 1404, which authorizes a

8    district court to transfer a civil matter "to any other district or division where it might have

9    been brought" if doing so is in "the convenience of parties and witnesses" and "in the interest

10   of justice." 28 U.S.C. § 1404(a). As to the threshold matter, the States do not dispute that they

11   could have brought this action in the D.D.C. But they did not do so, and that decision must be

12   given great weight. *Piper Aircraft Co.*, 454 U.S. at 236 (a plaintiff's choice of its "home

13   forum" is entitled to great deference). Moreover, the States' choice of venue should be entitled

14   to respect, given the sovereignty, power and dignity reserved for the States. *Alden*, 527 U.S.

15   at 714.

16   Courts have discretion to transfer under § 1404(a), but any transfer decision must be

17   based on a case-specific analysis of convenience and fairness. *Stewart Org., Inc. v. Ricoh

18   Corp.*, 487 U.S. 22, 29 (1988). "[T]o warrant upsetting the plaintiff's choice of forum," a

19   "defendant must make a strong showing of inconvenience." *Decker Coal Co.,* 805 F.2d at 843.

20   More specifically, it is Defendants' burden to prove that "the balance of convenience clearly

21   favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp.3d 772, 776 (N.D. Cal. 2014) (citing

22   *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). "If

23   transfer would merely shift the inconvenience from one party to another, the court will deny

24   the motion." *Hutto v. Orion Sys. Integrators LLC*, No. C25-984, 2025 WL 2782488, at *2

25   (W.D. Wash. Sept. 30, 2025) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964)).

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

In the Ninth Circuit, courts consider many "private interest" factors when deciding whether to grant a motion to change venue, including: (1) the location where the relevant agreements were negotiated or the alleged events took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) each party's contacts with the forum, and the relation of those contacts to the plaintiff's cause of action; (5) the differences in litigation costs in each forum; (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (7) the ease of access to sources of proof. *Hutto,* 2025 WL 2782488 at *2 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)). The court must also consider public interest factors such as local adjudication of local controversies and the relative congestion of the two potential fora. *Hutto,* 2025 WL 2782488 at *2 (citing *Decker Coal Co.*, 805 F.2d at 843). These factors do not weigh in favor of transfer here.

There are three primary reasons that the Court should deny transfer under § 1404(a). *First*, transfer to the D.D.C. would prejudice the States by delaying resolution of their pending preliminary injunction motion. *Second*, analysis of the "private interest" factors shows that the Western District of Washington is not a substantially inconvenient forum for Defendants because they are federal entities and this case is a legal dispute likely to be resolved via summary judgment. *Third*, public considerations like speculative improvements to judicial economy do not overcome the States' choice of forum.

### 1.    Transfer to D.D.C. Would Prejudice the States

Defendants are wrong that now is "the best time for this case to be transferred." Dkt. 97 at 16. By the time Defendants' transfer motion is ripe for decision, the parties will have fully briefed the States' preliminary injunction motion, Dkt. 64, and will be preparing for argument already set for January 8, 2026. Dkt. 99. If this Court were to transfer this case to D.D.C. before deciding the States' Motion, it is unlikely that the D.D.C. would be in a position to hear and rule upon the States' Motion by January 8, as this Court will be. Thus, the States will have

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    to wait even longer for the important relief that their preliminary injunction seeks. This is an

2    unjust and prejudicial result that weighs against transfer.

3          Furthermore, if the Court rules on the preliminary injunction motion *before* ruling on

4    the transfer motion, then the Court will have already engaged with and made conclusions

5    regarding the merits of the States' complaint. As discussed above, such a ruling would put this

6    action much further along than the D.C. Action, and could create a potential for "inconsistent

7    judgments" that a transfer to D.D.C. could not solve. *See supra* at pp. 8; *Harris County v. U.S.*

8    *Environmental Protection Agency*, No. 1:25-cv-03646, Dkt. 23 (D.D.C. Dec. 8, 2025). The

9    better course would be to deny Defendants' transfer motion and allow the case to proceed as

10   scheduled in this District.

11          **2.      Consideration of the Private Factors Shows D.D.C. is Not a Substantially
                       More Convenient or Appropriate Forum for this Dispute**

12

13          Defendants' primary convenience argument seems to be that more of the parties are

14   geographically closer to D.C. than to Tacoma. But Defendants fail to explain why counsel for

15   each of the 23 States would need to travel to D.C. (which is not the States' typical practice in

16   multistate litigation) and, if so, why travel to D.C. is significantly more convenient than to

17   Tacoma. Moreover, the States were aware of the location of this District when they decided to

18   file here. It is necessarily true that, with a coalition of 23 individual States, only one state will

19   be "at home" in the chosen forum. But this does not mean that federal agencies are the

20   presumptive tiebreaker and can override Plaintiffs' considered choice to file in a particular

21   forum and haul plaintiffs into *their* preferred forum at will. It simply cannot be that D.D.C. is

22   automatically a more convenient forum in cases brought by diverse plaintiffs against a federal

23   agency.

24          But more importantly, "[s]ection 1404(a) provides for transfer to a *more* convenient

25   forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376

26   U.S. at 645–46 (emphasis added). Even accepting Defendants' Euclidean calculations

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

regarding various States' proximity to D.C., D.D.C. may be slightly more convenient for

Defendants but it is less convenient for at least seven of the States, including two that are lead

Plaintiffs (Arizona and Washington). This is insufficient to establish that convenience clearly

favors transfer. *Lax*, 65 F. Supp.3d at 776.

The remaining private interest factors are, on balance, neutral and, as a result, do not

overcome the States' choice of this forum.

Location of relevant agreements and events. Defendants do not address this factor,

except to state broadly that "the administrative process occurred" in D.D.C. Dkt. 97 at 14. It is

unclear what aspects of the administrative process Defendants are referring to, particularly

when EPA's Program termination decision was announced via social media. Compl. ¶ 90. And

because the States do not challenge their individual Solar for All grant terminations in this case

(that is what the Court of Federal Claims action is for), where the parties negotiated or

executed those grant agreements "carries little weight." *Hutto*, 2025 WL 2782488, at *3 (citing

*Nat'l Prods., Inc. v. Wireless Accessory Sols., LLC*, No. C15-2024JLR, 2018 WL 1709494, at

*4 n.2 (W.D. Wash. Apr. 9, 2018) ("This is not a contract case and so … the location where

the relevant agreements were negotiated and executed … is not relevant here.")). This factor

does not favor transfer to D.D.C.

Familiarity with governing law. Since January 2025, litigants (including many of the

States) have filed a number of lawsuits in this District challenging agency action with respect

to federal grant programs and other federal funding. And those cases, like this one, all involve

APA and constitutional claims against the defendant agencies. *See, e.g. State of Washington v.*

*U.S. Dep't of Transportation*, Complaint, Dkt. No. 1 Case No. 2:25-cv-00848-TL (W.D. Wash.

May 7, 2025); *State of Washington v. U.S. Dep't of Educ.*, Complaint, Dkt. No. 1, Case No.

2:25-cv-01228-KKE (W.D. Wash. June 30, 2025); *State of Washington v. U.S. Dep't of*

*Homeland Security*, Complaint, Dkt. No. 1, Case No. 2:25-cv-01401-BJR (W.D. Wash. July

25, 2025); *State of Washington v. U.S. Dep't of Commerce*, Complaint, Dkt. No. 1, Case No.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    2:25-cv-01507-TL (W.D. Wash. Aug. 8, 2025). Yet, to the States' knowledge, this case is the

2    first of those in which a federal agency has sought transfer from this district on § 1404

3    grounds. Indeed, Defendants concede that (1) this case presents only questions of federal law

4    and (2) this Court has "significant experience with administrative law cases." Dkt. 97 at 13.

5    Thus, resolution of the States' claims requires no special expertise belonging solely to the

6    D.D.C. The Western District of Washington and the D.D.C. are equally suited to resolving this

7    case, and this factor does not weigh in favor of transfer.

8           <u>Plaintiffs' choice of forum/parties' contacts with the forum</u>. As discussed above, the

9    plaintiff's choice of forum is accorded "great weight*," Lou v. Belzberg*, 834 F.2d 730, 739 (9th

10   Cir. 1987), unless the "plaintiff does not reside in the [chosen]forum or operative events

11   occurred elsewhere." *Wise v. Techtronic Indus. Co., Ltd*, No. C10-471MJP, 2010 WL

12   11553269, at *1 (W.D. Wash. Nov. 3, 2010). The States' claims have a substantial connection

13   to this District through the State of Washington, a lead Plaintiff in this matter.  Defendants

14   selected the Washington Department of Commerce from among the Solar for All applicants

15   and worked with state employees for nearly one year to design and implement Washington's

16   state Solar for All program. Staff at the Washington State Department of Commerce work

17   within the District. They spent more than 5,000 employee hours developing the state Solar for

18   All program, meeting with community members and stakeholders, and negotiating and

19   entering into agreements with contractors and subcontractors to implement Washington's SFA

20   programming. *See* Compl. ¶ 59.

21          The harms caused by Defendants also have a case-specific connection to Washington

22   State. The Western District of Washington is where Washington received notice that

23   Defendants had terminated the program, and it is where Washington felt the effects of that

24

25

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC                    18         ATTORNEY GENERAL OF WASHINGTON
                                                    Environmental Protection Division
                                                    800 Fifth Avenue STE 2000
                                                    Seattle, WA 98104
                                                    206-464-7744

unlawful action. Because Washington is "at home" in this District and both parties have Solar-for-All-specific contacts with Washington, these two factors weigh against transfer to D.D.C.

Litigation costs, convenience to witnesses/availability of process, and access to evidence. This case is a dispute between a group of sovereign states and their representatives, and a federal agency, which "raise[s] primarily legal issues." Dkt. 97 at 2. Defendants therefore rightly concede that these related factors "have less relevance in this case," where there are few if any disputed facts and the claims rely heavily on EPA's administrative record. Dkt. 97 at 15. While the "location of witnesses or physical documents matters little" to the parties' litigation of the dispute, Dkt. 97 at 16, the relevance of these factors does matter to the § 1404(a) analysis. Because these factors "matter[] little," none of them weighs in favor of transfer to D.D.C. *Id.*

Thus, on balance, and most charitably to Defendants, the private interest factors do not demonstrate that D.D.C. is a "more convenient forum." *Van Dusen*, 376 U.S. at 645–46. Defendants, therefore, have fallen well short of their burden to make "a strong showing of inconvenience." *Decker Coal Co.,* 805 F.2d at 843.

### 3.    Public Interest Factors Do Not Favor D.D.C. Primarily Because Transfer to D.C. Would Delay Resolution of a Pending Motion

As with the private interest factors, the public interest factors also do not support transfer to D.D.C.  Defendants urge the court to transfer this case to the D.D.C. because, in Defendants' assessment, transfer would avoid inconsistent results, conserve judicial resources, and generally serve the "interests of justice." Dkt. 97 at 11-14. Defendants are wrong.

Judicial economy. Defendants contend that transfer to D.D.C. will "avoid duplication of effort" and "inefficient litigation of similar cases in two districts." Dkt. 97 at 14. This presumes that Defendants will be successful in their attempt to transfer the Rhode Island Action to D.D.C. And although Defendants assure this Court that consolidation is "almost certain," there are ample reasons to doubt such an optimistic assertion. Indeed, the very

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

19

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

differences that defeat Defendants' attempt to invoke the first-to-file rule may well defeat any subsequent motion to consolidate pursuant to Fed. R. Civ. P. 42. *See supra* at pp. 9-13. Granting transfer neither guarantees that judicial economy will be served nor that "inconsistent judgments" will be avoided. Dkt. 97 at 13.

Moreover, any efficiency gains that might be achieved by transfer would be offset by the loss of inter-court dialogue. It is a bedrock principle of our federal court system that the adjudication of novel and difficult issues is best served by letting questions percolate among the lower federal courts, even at the cost of short-term nonuniformity. *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018); *Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting) ("We have in many instances recognized that when frontier legal problems are presented, periods of 'percolation' in, and diverse opinions from, state and federal appellate courts may yield a better informed and more enduring final pronouncement by this Court."). These benefits are undercut if all challenges to agency action are instead funneled into D.D.C. for the mere reason that the federal government is located there.

Local interest in the controversy. At its core, this dispute is a national one. The Solar for All program was—by design—a nationwide program with recipients in 49 states, including Washington and the District of Columbia. Compl. ¶¶ 48-53. Washington is no less interested than the District of Columbia., who is also a plaintiff in this lawsuit and chose to file with the coalition in the Western District of Washington. Defendants fail to explain why the fact that "the administrative process occurred" in D.D.C., bears on the public interest factors, particularly since the harmful effects of Defendants' action are felt across Washington and the other States. Dkt. 97 at 14. This factor does not favor transfer.

Relative court congestion. This factor examines "whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984). "To measure congestion, courts compare the two fora's median time from filing to disposition or trial." *Brown v. Abercrombie & Fitch Co*., No. 4:13-CV-

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

20

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

05205 YGR, 2014 WL 715082, at *6 (N.D. Cal. Feb. 14, 2014). Defendants offer no data or evidence comparing time to disposition in this District and D.D.C. Instead, Defendants cite generally to U.S. Courts statistics showing that, as of June 2025, there were 452 pending cases per judge in the D.D.C., and 475 per judge in this District. Dkt. 97 at 14, n.6. To the extent that the sheer volume of pending cases is relevant to the public interest factors, there are just five percent more cases per judge in this District. This District and the D.D.C. are, at best, similarly busy and the relative court congestion factor is neutral.

In sum, the preponderance of § 1404(a) factors favor retaining the States' case in this district. At the absolute minimum, the factors demonstrate that the underlying dispute is "not centered on a single location." *Hutto*, 2025 WL 2782488 at *7. In such cases, the Plaintiffs' choice of forum is "determinative." *Id*. Because Defendants have not made the "strong showing of inconvenience" necessary to override that choice, Defendants' motion should be denied. *Decker Coal Co.,* 805 F.2d at 843.

## IV.    CONCLUSION

The States respectfully request that the Court deny Defendants' Motion to Transfer Venue.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1

2

DATED this 10th day of December, 2025.

3

I certify that this memorandum contains 7,272 words, in compliance with the Local Civil Rules.

4

5

**NICHOLAS W. BROWN**
Attorney General of Washington

6

7

*/s/ Sarah E. Smith-Levy*
SARAH E. SMITH-LEVY, WSBA # 55770
C. L. JUNINE SO, WSBA # 58779

8

LEAH A. BROWN, WSBA # 45803
TERA HEINTZ, WSBA # 54921

9

ANDREW HUGHES, WSBA # 49515

10

Assistant Attorneys General
Environmental Protection Division

11

800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

12

206-464-7744
sarah.e.smith-levy@atg.wa.gov
junine.so@atg.wa.gov

13

leah.brown@atg.wa.gov
tera.heintz@atg.wa.gov

14

Andrew.hughes@atg.wa.gov

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
VENUE
No. 2:25-cv-02015-TMC

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744