The Honorable Tiffany M. Cartwright

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8
9

STATE OF ARIZONA, et al.,

                PLAINTIFFS,

   v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; and LEE ZELDIN, in his
official capacity as Administrator of the
U.S. Environmental Protection Agency,

                DEFENDANTS.

NO. 2:25-CV-02015-TMC

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION

NOTE ON MOTION CALENDAR:
DECEMBER 12, 2025

ORAL ARGUMENT SET FOR
JANUARY 8, 2026, 1:30PM

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ...................................................................................................................... 2

    A.    This Court Has Jurisdiction ........................................................................................ 2

        1.    The Tucker Act Does Not Strip This Court of Jurisdiction ............................. 2

        2.    Plaintiffs Request Relief That Would Redress Their Injuries ........................... 4

    B.    Plaintiffs Are Likely to Succeed on the Merits .......................................................... 5

        1.    The Deobligation Directive Is Contrary to H.R. 1 ........................................... 5

        2.    The Deobligation Directive Is Arbitrary and Capricious ................................. 7

        3.    *Dalton* Does Not Bar Plaintiffs' Constitutional Claims .................................... 8

    C.    Plaintiffs Face Irreparable Harm ................................................................................ 9

    D.    Equity Favors an Injunction ..................................................................................... 12

III.   CONCLUSION ................................................................................................................ 13

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

i

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

# I.    INTRODUCTION

Defendants concede the key point: H.R. 1 did not authorize rescission of obligated Solar for All (SFA) funds. Defendants thus fail to defend their sole rationale for terminating the SFA Program and deobligating funds, exposing their actions as unlawful. Even if Defendants could rely on post-hoc rationalizations, their newfound argument that Congress silently authorized EPA to claw back and impound billions in federal funding conflicts with the text and history of H.R. 1 and controlling caselaw. While Defendants seek to avoid accountability for their illegal and unconstitutional usurpation of Congressional spending power, every argument fails.

This Court has jurisdiction over Plaintiffs' challenge to agency guidance under Supreme Court and Ninth Circuit precedent. Defendants ignore this controlling authority, citing nonbinding, inapposite case law to assert a maximalist interpretation of *NIH v. Am. Pub. Health Assoc.*, 145 S.Ct. 2658 (2025), that conflicts with *NIH* itself. Here, Plaintiffs seek to freeze SFA funds where they are, not reinstate any grants, to prevent irreparable harm from Defendants repurposing or reverting the funds back to Treasury. This Court can order this relief.

Plaintiffs have also demonstrated irreparable harm and that the balance of equities favors an injunction. Defendants are simply wrong that the harm from closeouts have "already occurred." As of now, no one has closed out Plaintiffs' SFA grants. And absent an injunction, Plaintiffs face imminent risk that federal funding will be swept beyond this Court's reach. Defendants do not dispute that the Administration has repeatedly and unlawfully repurposed appropriated funding, creating an imminent risk of permanent loss of SFA funding. Instead, they assert nothing more than generalized harm from not immediately implementing their preferred policies, which the Ninth Circuit has recognized would defeat all preliminary injunctive relief against the Government.

This Court should grant Plaintiffs' motion.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

## II.    ARGUMENT

### A.    This Court Has Jurisdiction

Plaintiffs are entitled to a determination that the Program Termination and Deobligation Directives are unlawful, and an order vacating and enjoining them. Defendants suggest such relief would be an empty gesture because the only relief that would remedy Plaintiffs' injury is grant reinstatement, which this Court cannot order, Resp. 11-18[1], and that "this Court cannot" "requir[e] EPA to resurrect the SFA 'program'" because H.R. 1 "repealed the statute authorizing the SFA program and rescinded funds to carry out the program," Resp. 18. Both arguments hinge on the mistaken view that H.R. 1's recission of unobligated funds and repeal of Section 134 required EPA to terminate SFA root-and-branch. Not only is this wrong, it presupposes Defendants are correct on the merits. But "simply repeating an assertion over and over does not make it true." *Rhode Island v. Trump*, Case No. 1:25-cv-128-JJM-AEM, 2025 WL 3251113, at *6 (D.R.I. Nov. 21, 2025).

This Court has jurisdiction over Plaintiffs' claims.

### 1.    The Tucker Act Does Not Strip This Court of Jurisdiction

Defendants' challenged actions nullified $7 billion in Congressional appropriations, including around $2.75 billion to Plaintiffs. These actions are unlawful not because of any contract, but because they are contrary to statute and the Constitution. To be sure, downstream of these directives, Defendants also unlawfully terminated grants to Plaintiffs—terminations challenged in a parallel suit—but this trickle-down law-breaking does not strip this Court of jurisdiction.

Defendants' argument that this Court lacks jurisdiction over the States' statutory and constitutional challenges to EPA guidance conflicts with the preliminary reasoning from the Supreme Court's stay order in *NIH*. Here, the States have brought their "challenges to the grant terminations" in the Court of Federal Claims. *See NIH,* 145 S.Ct. at 2662 (Barrett, J.,

---

[1] Oddly, the Government suggests in parallel Court of Federal Claims litigation that this Court could order grant reinstatement. *See* So. Decl. ¶ 9, Ex. C.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

concurring). This case, meanwhile, challenges EPA's agency-wide directives, from which the terminations later resulted. This is the "two-track" litigation Justice Barrett contemplated in *NIH*; the mere fact that "agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded ... upon' contract that only the CFC can hear." *Id.* at 2661 (Barrett, J., concurring).

The Ninth Circuit likewise recognized that district courts can hear challenges to agency directives and guidance because such challenges are not founded upon grants. *See, e.g.*, *Washington v. United States Dep't of Educ.*, -- F.4th --, 2025 WL 3486895, at *2 (9th Cir. Dec. 4, 2025) (unanimously denying stay of order that "merely [froze] funds at issue until the Department makes a revised continuation or discontinuation determination or wins on the merits of its claims" and did not "order payment of any funds"); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, 155 F.4th 1099, 1104 (9th Cir. 2025) ("non-contractual source of Plaintiffs' rights is dispositive" of court's jurisdiction to resolve constitutional and APA claims); *Thakur v. Trump*, 148 F.4th 1096, 1103 (9th Cir. 2025) ("Plaintiffs' APA claim is not premised on any rights derived from their grants or any purported contract and thus resolving the claim does not require analyzing the terms of any grant or contract.").

Retaining jurisdiction here comports with the two-part *Megapulse* test, which determines jurisdiction based on the source of rights for plaintiffs' claims and the type of relief sought. *United Aeronautical Corp. v. USAF*, 80 F.4th 1017, 1025 (9th Cir. 2023) (following *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)). Both prongs support jurisdiction.

First, Plaintiffs' claims are statutory and constitutional—not contractual. *See* Compl. ¶¶ 11-12, 131-176. Defendants violated the APA and the Constitution by implementing an agencywide policy to terminate SFA and claw back obligated funds in derogation of Congress' clear statutory commands. *See* Mot. 13-21. This has nothing to do with the particular terms of any grant agreement, and everything to do with Defendants' failure to follow the law. For that

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  reason, a majority of the Supreme Court concluded in *NIH* that district courts have jurisdiction

2  to entertain APA challenges to agency policies involving grant funding. *See NIH*, 145 S.Ct. at

3  2661 (Barrett, J., concurring).

4        Second, Plaintiffs do not seek contractual relief. They seek declaratory and injunctive

5  relief and vacatur of the Program Termination and Deobligation Directives—"run-of-the-mill

6  APA requests" that do not order Defendants to pay money. *See Bd. of Educ. for Silver Consol.*

7  *Sch. v. McMahon*, 791 F.Supp.3d 1272, 1282 (D.N.M. 2025). The Court of Federal Claims

8  does not have jurisdiction to award such equitable relief. 28 U.S.C. § 1491. And vacating these

9  Directives would not automatically result in money flowing to Plaintiffs: it would instead

10  clarify the Directives are illegal and prevent EPA from relying on them. Although Defendants

11  urge this Court to look at what they contend is the "heart" of Plaintiffs' claims, *see* Resp. 16,

12  the key inquiry under *NIH* is the action Plaintiffs challenge and the relief they seek.

13  *Washington v. United States Dep't of Educ.*, 2025 WL 3486895, at *2 (distinguishing *NIH*

14  because those "plaintiffs explicitly sought, and the district courts ordered, the immediate

15  payment of past-due grant obligations and the continued payment of ongoing obligations based

16  on midyear grant terminations") (citation omitted). Plaintiffs challenge agency guidance and do

17  not seek an order requiring EPA to pay money. *See* Compl. ¶ 13.

18        **2.**     **Plaintiffs Request Relief That Would Redress Their Injuries**

19        Plaintiffs have standing to challenge Defendants' unlawful actions because they face

20  actual or imminent injury fairly traceable to Defendants' conduct, which this Court can redress.

21  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants are incorrect that

22  the only meaningful relief Plaintiffs can obtain is grant reinstatement, and that their only injury

23  was grant termination. *Contra* Resp. 16-18.

24        Plaintiffs' burden to establish redressability is "relatively modest." *Bennett v. Spear*,

25  520 U.S. 154, 171 (1997). "Plaintiffs need not demonstrate that there is a guarantee that their

26  injuries will be redressed by a favorable decision." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    Cir. 2012) (citation omitted). They need only show a favorable decision would result in a

2    "change in a legal status" and that a "practical consequence of that change would amount to a

3    significant increase in the likelihood that the plaintiff would obtain relief that directly redresses

4    the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002).

5    In *Department of Education*, the Ninth Circuit upheld jurisdiction over states' claims

6    seeking "vacatur of the allegedly unlawful discontinuation decisions so the Secretary can make

7    new decisions in accordance with Plaintiff States' theory of the law." 2025 WL 3486895, at *2.

8    So, too, here. Not only can this Court order relief protecting Plaintiffs from the harm of

9    unlawful closeout and deobligation of SFA funds, as detailed below, but enjoining the Program

10   Termination and Deobligation Directives means, at a minimum, these decisions can be

11   remanded to EPA for reconsideration with the benefit of this Court's guidance. Presumably,

12   once Defendants know what the law is, they will follow it.

13   Defendants argue this Court cannot grant any "forward-looking" relief, Resp. 17, and,

14   relatedly, that "this Court cannot" "require[e] EPA to resurrect the SFA 'program'" because

15   H.R. 1 "repealed the statute authorizing the SFA program and rescinded funds to carry out the

16   program," Resp. 18. But this merely repackages Defendants' merits arguments, which as

17   discussed below, fail. Plaintiffs easily meet their "relatively modest" burden on redressability.

18   **B.    Plaintiffs Are Likely to Succeed on the Merits**

19   **1.    The Deobligation Directive Is Contrary to H.R. 1**

20   The Deobligation Directive contravenes H.R. 1, which neither rescinded obligated SFA

21   funds nor authorized Defendants to claw them back program-wide. Faced with this

22   unequivocal text, Defendants recast Plaintiffs' lawsuit as challenging individual grant

23   terminations, claiming that Plaintiffs read H.R. 1 to mean that "SFA grants issued under the

24   repealed Section 134 are untouchable." Resp. 23. But Plaintiffs don't argue that H.R. 1 or

25   Section 134 took away EPA's ability to terminate *individual* SFA grants. The power to decide

26   *who* gets Congressionally-appropriated money is not the same as the power to decide that *no*

1    *one* gets the money. Otherwise, agencies could terminate any competitive grant program

2    simply by awarding no grants. Congress's constitutional spending power cannot be so easily

3    circumvented. *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) ("Simply

4    put, 'the President does not have unilateral authority to refuse to spend the funds.'") (quoting

5    *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013)). EPA cannot categorically refuse

6    to spend money appropriated by Congress after they have already been obligated to Plaintiffs.

7          Once upon a time, Defendants insisted deobligation was *required* by H.R. 1. *See*

8    Nguyen-WA Decl. ¶ 23, Ex. 4. They now abandon that position, arguing instead that

9    "Congress removed GGRF from the United States' policy agenda," which gave them "a

10   reasonable basis [to] terminate the existing grants." Resp. 22. But neither the Recission nor the

11   Repeal Clauses of H.R. 1 permit Defendants to terminate SFA and claw back billions of

12   Congressional appropriations. Mot. 14-17. Tellingly, Defendants offer no response whatsoever

13   to Plaintiffs' statutory arguments.[2]

14         *Yakima Valley Memorial Hospital v. Washington State Department of Health*, 654 F.3d

15   919 (9th Cir. 2011), is inapposite. Resp. 25. There, a hospital challenged a state regulation

16   under the dormant Commerce Clause. The Court held a federal statute—which Congress

17   repealed without an explicit savings clause—did not authorize laws, including the one the

18   hospital challenged, that the Commerce Clause would otherwise forbid. *Id.* at 933. The Court

19   noted that Congress's repeal of the federal statute "at best, [left] it ambiguous" whether

20   Congress "contemplated the fate of state certificate of need programs," but no legislative

21   history offered a contrary interpretation of the repealing statute. *Id.* at 934. Here, H.R. 1's text

22   and history show that Congress intended only to limit future appropriations for the SFA

23   Program, and rescind *unobligated* funds. Mot. 16; Compl. ¶¶ 77-86.

24

25

26
---
[2] The Deobligation Directive is contrary to H.R. 1 regardless of whether it was done by "recission" or "termination." *See* Resp. 22, n. 9. Plaintiffs do not contest that EPA *terminated* their SFA grants. Plaintiffs are challenging those terminations in the Court of Federal Claims.

PLAINTIFFS' REPLY IN SUPPORT OF                    6               ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                             Environmental Protection Division
INJUNCTION                                                         800 Fifth Avenue STE 2000
NO. 2:25-CV-02015-TMC                                             Seattle, WA 98104
                                                                  206-464-7744

Insofar as Defendants argue H.R. 1 "left EPA discretion" to systematically claw back SFA funds, Resp. 23, Defendants read too much into the statute. Under Defendants' reading, H.R. 1 authorizes any act it did not explicitly prohibit. But H.R. 1 explicitly rescinded only *unobligated* funds; its Repeal Clause cannot be understood to authorize the Deobligation Directive without giving it unlawful retroactive effect and rendering the Recission Clause surplusage—facts Defendants ignore. Mot. 15-16. And Defendants' newfound reliance on 2 C.F.R. § 200.340(a)(4), Resp. 23, to terminate an award that "no longer effectuates the program goals or agency priorities," is not only an impermissible post-hoc rationalization as discussed below, but also inapposite to Plaintiffs' program-wide challenge.

The Deobligation Directive was therefore contrary to H.R. 1.

## 2.    The Deobligation Directive Is Arbitrary and Capricious

Defendants' Deobligation Directive lacked a reasoned basis and failed to consider reliance interests. Ignoring the programmatic nature of Plaintiffs' challenge, Defendants offer myriad (ineffective) arguments for why their individual grant terminations were not arbitrary and capricious. This is beside the point: Defendants never provided *any* contemporaneous explanation for the Deobligation Directive.

Now, Defendants suggest the Deobligation Directive's rationale can be found in the Termination Memoranda. Resp. 8, 20. But Defendants' primary explanation for the Termination Memoranda—that H.R. 1 renders the program "no longer legally permissible"—is flatly wrong and therefore arbitrary and capricious. *See Safe Air For Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1101 (9th Cir. 2007). Moreover, Defendants have never explained their view that SFA funds were lawfully "deobligated upon termination," Resp. 8—not only flouting the presumption that deobligation is not proper until after closeout, *see* 2 C.F.R. § 200.344(f), but also betraying the hollowness of the dispute process Defendants offered.

Defendants' shifting justifications confirm the capriciousness of their actions. Defendants previously asserted that H.R. 1 compelled the Termination Directive. *See* Nguyen-

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    WA Decl. ¶ 23, Ex. 4 ("Congress has made its intent clear [that] the SFA program is no longer

2    to operate"). But, faced with demands to explain themselves, Defendants now claim EPA

3    exercised its *discretion* to terminate SFA, Resp. 21, 23, as "a contractual decision." Resp. 20.

4    Defendants' reliance on their "existing authority to terminate grants" was entirely absent from

5    the Termination Memoranda and is an "impermissible *post hoc* rationalization." *Dep't of*

6    *Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 22 (2020).

7        Defendants misunderstand Plaintiffs' reference to the March 2024 budget request.

8    Resp. 21. Plaintiffs never contended the 2024 budget request was the sole source of EPA's

9    authority to administer SFA. Rather, Plaintiffs argue: (1) EPA's continued authority to

10   administer existing SFA grants follows from Congress's decision to leave obligated SFA funds

11   untouched by H.R. 1; (2) the 2024 budget request demonstrates that EPA expected to have

12   additional sources of funding to operate the SFA Program beyond Section 134; and (3) EPA

13   has funding to administer SFA using its Environmental Programs and Management

14   appropriations account, which it previously tapped for GGRF implementation. Mot. 16. Thus,

15   H.R. 1 did not require that the SFA Program be terminated in its entirety, since EPA still had

16   administrative funding to operate the obligated SFA Program outside of Section 134.

17       Finally, for all their post-hoc justifications, Defendants still fail to demonstrate how

18   they accounted for Plaintiffs' reliance interests. Mot. 19-20. Committing to a closeout process,

19   as legally required, does not count. Resp. 21-22. Accepting such a "contrived reason" strains

20   logic; "[i]f judicial review is to be more than an empty ritual, it must demand something

21   better" than a rote explanation that Defendants took reliance interests into account by doing

22   what the law already requires of them. *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

23       ### 3.    *Dalton* Does Not Bar Plaintiffs' Constitutional Claims

24       Plaintiffs' constitutional claims are also likely to succeed. Through the Deobligation

25   Directive, Defendants unilaterally ordered the cancellation of funds appropriated by Congress,

26   usurping Congress's exclusive spending powers. Mot. 20-21. Defendants cite no binding

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

caselaw to the contrary, and the balance of cases support Plaintiffs' position. *See, e.g.*, *Rhode Island*, 2025 WL 3251113, at *15-16 (granting summary judgment on separation of powers and Take Care Clause claims); *Colorado v. U.S. Dep't of Health and Human Servs.*, 788 F.Supp.3d 277, 309-210 (D.R.I. 2025) (finding plaintiffs likely to succeed on separation of powers claim).

*Dalton v. Specter*, 511 U.S. 462 (1994), does not change this analysis. Resp. 24. The Ninth Circuit takes "an expansive view of the constitutional category of claims highlighted in *Dalton*" and recognizes a challenge as constitutional where plaintiffs allege the executive has "violat[ed] ... constitutional separation of powers principles" because the President's action lacked both "statutory authority" and "background constitutional authority." *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023). Plaintiffs easily clear this bar: they allege Defendants lacked statutory and constitutional authority to eliminate the SFA Program or drain Plaintiffs' SFA accounts and so "acted in violation of constitutional separation of powers principles." *Sierra Club v. Trump*, 929 F.3d 670, 696 (9th Cir. 2019). Defendants' remaining arguments rehash their belief that H.R. 1 gave them permission to deobligate the funds, which, again, is wrong.

## C.    Plaintiffs Face Irreparable Harm

Absent a preliminary injunction, Plaintiffs will be irreparably harmed by Defendants' unlawful closeout demand or potential unilateral closeout of Plaintiffs' SFA grants, and the risk of reprogramming or repurposing SFA funds. Defendants' arguments to the contrary again assume, incorrectly, that they are right on the merits.

The risk that Defendants will reprogram, repurpose or recharacterize SFA funds, revert them back to the Treasury general fund, or remove remaining funds from Plaintiffs' SFA accounts, poses obvious irreparable harm because "[t]he funds, if spent on other purposes" or otherwise made unreachable by EPA "will be lost forever." *Washington v. Fed. Emergency Mgmt. Agency*, No. CV 25-12006-RGS, 2025 WL 2229394, at *5 (D. Mass. Aug. 5, 2025)

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    (citing *Dep't of Educ. v. California*, 145 S.Ct. 966, 969 (2025)); *see also Population Inst. v.*

2    *McPherson*, 797 F.2d 1062, 1081 (D.C. Cir. 1986) ("if the government [is] permitted to

3    distribute the [funds at issue elsewhere] Appellant will suffer irreparable injury [because] this

4    court will be unable to grant effective relief"). Defendants' nonbinding statement that

5    remaining SFA funds "will remain" in a Treasury Account until September 30, 2031 "to satisfy

6    any remaining obligations for allowable costs under the SFA agreements," Resp. 8, does not

7    prevent Defendants from repurposing or reobligating those funds as this Administration has

8    repeatedly and undisputedly done. Resp. 8; Mot. 9. Moreover, assurance that funds will remain

9    available "to satisfy any remaining obligations for allowable costs" provides cold comfort

10   when Defendants are wrong on what those costs entail. Plaintiffs cannot trust Defendants' say-

11   so to mean that *all* SFA funds will be safe until September 2031.

12        Harms from closeouts have not "already occurred." Resp. 7. Although the 120-day

13   deadline to submit closeout reports passed on December 5 and 8, *see* 2 C.F.R. § 200.344(b),

14   Plaintiffs notified Defendants that they would not close out because of pending litigation in

15   early November. *E.g.,* Nguyen-WA Decl. ¶ 31, Ex. 9. And Plaintiffs require injunctive relief

16   preventing Defendants' future actions including: (1) unilaterally closing out Plaintiffs' SFA

17   grants under 2 C.F.R. § 200.344(h), (2) reporting Plaintiffs for "material failure to comply"

18   with federal grants conditions "in *SAM.gov*" within a year of closeout as provided in 2 C.F.R.

19   § 200.344(i), and (3) "pursu[ing] other enforcement actions" based on Defendants' unlawful

20   closeout demands under 2 C.F.R. § 200.339. Defendants do not claim to have taken these

21   actions and this Court has power to enjoin them from doing so.

22        This relief is urgently necessary. If Defendants report Plaintiffs' SFA grant recipients

23   for "material failure to comply" with conditions triggered by termination, Plaintiffs will have a

24   black mark on their record that could jeopardize their access to federal funding. *See* 2 C.F.R. §

25   200.206(b) (requiring federal agencies to consider funding applicants' "history of

26   performance" including their "conformance to the terms and conditions of Federal awards"

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

before issuing awards); *see, e.g.,* CA-Tesfai Decl. ¶ 46 (negative reporting in SAM.gov would make it more difficult for California Public Utilities Commission to receive grants or partner with federal grantees). Further, if EPA determines that Plaintiffs' purported "noncompliance cannot be remedied by imposing specific conditions," 2 C.F.R § 200.339 empowers EPA to "[i]nitiate suspension or debarment proceedings," risking Plaintiffs' eligibility for federal funding writ large—a disastrous outcome for Plaintiffs. *See, e.g.*, WA-Nguyen Decl. ¶ 4 (Washington's Department of Commerce receives hundreds of millions of federal funding dollars). Although Defendants argue that Plaintiffs "control" their own compliance with closeout requirements, *see* Resp. 9, n. 4, Plaintiffs should not have to buckle to illegal demands to avoid harm.

None of these harms are purely economic or fully redressable post-judgment. Beyond the imminent reputational harm of being reported in SAM.gov, Plaintiffs risk losing an avenue for relief if closeout is forced upon them or if Defendants are not required to maintain all of the SFA funds previously obligated to Plaintiffs while litigation is pending. *Cf. Washington v. United States Dep't of Educ.*, No. C25-1228-KKE, 2025 WL 3004675, at *10 (W.D. Wash. Oct. 27, 2025) ("[O]nce [the funds at issue] are awarded elsewhere, Grantees may lose access to funding entirely without preliminary relief."). Faced with this type of irreparable harm, courts have exercised their equitable powers to preliminarily enjoin the federal government from repurposing funds—an "appropriately narrow" injunction that "merely prevent[s] the Government from spending the funds elsewhere, not to compel the payment of any sum"—in order to preserve the status quo. *Washington*, 2025 WL 2229394 at *5.

Defendants make much of Plaintiffs' purported months-long delay, to no avail. Plaintiffs had no reason to suspect that Defendants would misinterpret H.R. 1 to illegally terminate SFA. The timeline here reflects the unsettled environment caused by *NIH*, which was decided merely two weeks after Defendants terminated the SFA Program. That Plaintiffs took

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1   the time necessary to understand and respond to *NIH* does nothing to reduce the irreparable

2   harm they face and that only this Court can remedy.

3           Nor did Plaintiffs have reason to expect that Defendants would refuse the courtesy of

4   maintaining the status quo while in litigation, *see* So Decl., as is routinely done in other

5   funding litigation. *See, e.g., Washington v. U.S. Dep't of Homeland Security*, Case No. 2:25-

6   cv-01401-BJR, Dkt. 11 (W.D. Wash. Sept. 16, 2025) (stipulating that Defendants would not re-

7   obligate funds at issue in exchange for Plaintiff's agreement not to seek preliminary

8   injunction); *Vera Inst. of Justice v. U.S. Dep't of Justice*, Case No. 1:25-cv-01643-APM, Dkt.

9   29 (D.D.C. June 10, 2025) (stipulating to stay certain closeout obligations pending resolution

10  of preliminary injunction motion). Because "the magnitude of the potential harm [became]

11  apparent gradually," it was "prudent" to file after confirming the effect of Defendants'

12  unlawful actions and exhausting other avenues for relief. *ARC of California v. Douglas*, 757

13  F.3d 975, 990-91 (9th Cir. 2014); *see also Washington v. U.S. Dep't of Transp.*, 792 F.Supp.3d

14  1147, 1188 (W.D. Wash. 2025) (granting injunction despite 12-week delay, noting courts are

15  "loath to withhold relief solely on that ground").

16  **D.      Equity Favors an Injunction**

17          The equities plainly favor an injunction. The narrow relief Plaintiffs seek preserves the

18  status quo and rule of law. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir.

19  2018). Indeed, "the public interest cannot be disserved by an injunction that brings clarity to all

20  parties and to citizens dependent on public services." *S.F.*, 897 F.3d at 1244.

21          Defendants argue they are harmed by *any* injunction preventing them from eliminating

22  the SFA Program. Resp. 26-27. But accepting Defendants' position would mean that "no act of

23  the executive branch asserted to be inconsistent with a legislative enactment could be the

24  subject of a preliminary injunction. That cannot be so." *Doe #1 v. Trump*, 957 F.3d 1050, 1059

25  (9th Cir. 2020); *see also Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (harm of

26

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC                    12                    ATTORNEY GENERAL OF WASHINGTON
                                                              Environmental Protection Division
                                                              800 Fifth Avenue STE 2000
                                                              Seattle, WA 98104
                                                              206-464-7744

1   perceived institutional injury is not irreparable, because the government "may yet pursue and

2   vindicate its interests in the full course of this litigation").[3]

3                          **III.    CONCLUSION**

4        This Court should grant Plaintiff's Motion.

5

6        DATED this 12th day of December, 2025.

7   / / /

8   / / /

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[3] Given the significant harm Plaintiffs risk compared to Defendants, no bond requirement should issue. *See Washington v. U.S. Dep't of Transportation*, 792 F.Supp.3d 1147, 1193-94 (W.D. Wash. 2025).

PLAINTIFFS' REPLY IN SUPPORT OF          13          ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                 Environmental Protection Division
INJUNCTION                                                 800 Fifth Avenue STE 2000
NO. 2:25-CV-02015-TMC                                          Seattle, WA 98104
                                                              206-464-7744

1    I certify that this memorandum contains 4,030 words, in compliance with the Local

2  Civil Rules.

3

4  **KRISTIN K. MAYES**                          **NICHOLAS W. BROWN**
   Attorney General of Arizona                   Attorney General of Washington
5

6  By: */s/ Mary M. Curtin*                      */s/ C. L. Junine So*
   MARY M. CURTIN                                C. L. JUNINE SO, WSBA # 58779
7  Senior Litigation Counsel                     SARAH E. SMITH-LEVY, WSBA # 55770
   ALEXA G. SALAS                                TERA HEINTZ, WSBA # 54921
8  Assistant Attorney General                    ANDREW HUGHES, WSBA # 49515
   Office of the Arizona Attorney General        LEAH A. BROWN, WSBA # 45803
9  2005 N. Central Ave.                          Assistant Attorneys General
   Phoenix, Arizona 85004                        800 Fifth Avenue, Suite 2000
10 Mary.Curtin@azag.gov                          Seattle, Washington 98104
   Alexa.Salas@azag.gov                          206-464-7744
11                                               junine.so@atg.wa.gov
                                                 sarah.e.smith-levy@atg.wa.gov
12 *Attorneys for the State of Arizona*          tera.heintz@atg.wa.gov
                                                 andrew.hughes@atg.wa.gov
13                                               leah.brown@atg.wa.gov

14                                               *Attorneys for the State of Washington*

15 **KEITH ELLISON**                             **BRIAN L. SCHWALB**
   Attorney General of Minnesota                 Attorney General for the District of Columbia
16

17 By: */s/ Ryan Pesch*                          By: */s/ Lauren M. Marks*
   RYAN PESCH                                    LAUREN M. MARKS
18 CAT RIOS-KEATING                              Special Assistant Attorney General
   *Special Assistant Attorneys General*         Office of the Attorney General
19 BRIAN CARTER                                  for the District of Columbia
   *Special Counsel*                             400 6th Street, N.W., 10th Floor
20 Office of the Minnesota Attorney General      Washington, D.C. 20001
   445 Minnesota Street, Suite 600               Lauren.marks@dc.gov
21 St. Paul, MN  55101
   (651) 728-7116                                *Attorneys for the District of Columbia*
22 ryan.pesch@ag.state.mn.us
   catherine.rios-keating@ag.state.mn.us
23 brian.carter@ag.state.mn.us

24

25 *Counsel for the State of Minnesota*

26

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1   **ROB BONTA**
    Attorney General of California
2

3   By: */s/ Marie Elizabeth Logan*
    MARIE ELIZABETH LOGAN
4   REBECCA HUNTER
    ABIGAIL BLODGETT
5   DYLAN C. REDOR
    THEODORE A. MCCOMBS
6   MYUNG PARK
    Deputy Attorneys General
7   California Department of Justice
    1515 Clay Street
8   Oakland, CA 94612
    Marie.Logan@doj.ca.gov
9

10  *Attorneys for the State of California*

11

12

13  **WILLIAM TONG**
    Attorney General of Connecticut
14

15  By: */s/ Jill Lacedonia*
    JILL LACEDONIA
    Assistant Attorney General
16  165 Capitol Avenue
    Hartford, CT 06106
17  (860) 808-5250
    Jill.Lacedonia@ct.gov
18

19  *Attorneys for the State of Connecticut*

20

21

22

23

24

25

26

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Carrie Noteboom*
CARRIE NOTEBOOM
Assistant Deputy Attorney General
DAVID MOSKOWITZ
Deputy Solicitor General
CYNTHIA VITALE
Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
Carrie.Noteboom@coag.gov
David.Moskowitz@coag.gov
Cynthia.Vitale@coag.gov

*Attorneys for the State of Colorado*


**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1

**KWAME RAOUL**
Attorney General of Illinois

2

3

By: */s/ Katharine Roller*
KATHARINE ROLLER

4

Complex Litigation Counsel
ELIZABETH B. SCOTT

5

Assistant Attorney General
Office of the Illinois Attorney General

6

115 LaSalle Street

7

Chicago, IL 60603
(773) 519-1842

8

Katharine.roller@ilag.gov

9

*Attorneys for the State of Illinois*

10

11

12

13

14

**AARON M. FREY**
Attorney General of Maine

15

By: */s/ Caleb Elwell*

16

CALEB E. ELWELL
Assistant Attorney General

17

Office of the Maine Attorney General
6 State House Station

18

Augusta, ME 04333

19

(207) 626-8545
Caleb.elwell@maine.gov

20

21

*Attorneys for the State of Maine*

22

23

24

25

26

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE**
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
*Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of Massachusetts

By: */s/ Amy Laura Cahn*
AMY LAURA CAHN
TERRENCE VALES
*Assistant Attorney General*
One Ashburton Place
Boston, MA 02108
(617) 963-2277
amy.laura.cahn@mass.gov
terrence.vales@mass.gov
*Attorneys for the Commonwealth of Massachusetts*


**MATTHEW J. PLATKIN**
Attorney General of New Jersey

By: */s/ Daniel Resler*
DANIEL RESLER
LAUREN E. VAN DRIESEN
JACK VENTURA
*Deputy Attorneys General*
Office of the Attorney General
33 Washington Street, Ninth Floor
Newark, NJ 07101
(973) 648-4726
Daniel.Resler@law.njoag.gov

*Counsel for the State of New Jersey*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
NEIL GIOVANATTI
POLLY SYNK
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
SynkP@michigan.gov

*Attorneys for the State of Michigan*


**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ J. Spenser Lotz*
J. SPENSER LOTZ
Assistant Attorney General
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 616-7560
slotz@nmdoj.gov

*Attorneys for the State of New Mexico*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  **LETITIA JAMES**
   Attorney General of New York
2

3  By: */s/ Matthew Eisenson*
   MATTHEW EISENSON
4  KELSEA SUAREZ
   *Assistant Attorneys General*
5  Environmental Protection Bureau
   Office of the Attorney General
6  28 Liberty Street, 19th Floor
   New York, NY 10005
7  (212) 416-8481
   matthew.eisenson@ag.ny.gov
8

9  *Attorneys for the State of New York*

10

11 **DAN RAYFIELD**
   Attorney General of Oregon
12

13 By: */s/ Coby Howell*
   COBY HOWELL
14 Senior Assistant Attorney General
   Oregon Department of Justice
15 100 SW Market St.
   Portland, OR 97201
16 Telephone: (971) 283-8657
   Fax: (971) 673-5000
17 Email: Coby.Howell@doj.oregon.gov

18 *Attorneys for the State of Oregon*

19

20

21

22

23

24

25

26

**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD
Chief Deputy Attorney General

By: */s/ Daniel T. Wilkes*
DANIEL T. WILKES
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncdoj.gov

*Attorneys for the State of North Carolina*

**MICHAEL A. BRAYMER**
Chief Counsel
Department of Environmental Protection

By: */s/ Michael J. Heilman*
MICHAEL J. HEILMAN
Litigation Coordinator
Department of Environmental Protection Office
of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222
Phone: 412-442-4241
Email: mheilman@pa.gov

*Attorney for JESSICA SHIRLEY, Chair of the
Pennsylvania Energy Development Authority*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

18

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**PETER F. NERONHA**
Attorney General of Rhode Island

By: /s/ Nicholas M. Vaz
NICHOLAS M. VAZ
Special Assistant Attorney General
Office of the Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Attorneys for the State of Rhode Island*

**WISCONSIN ECONOMIC
DEVELOPMENT CORPORATION**
Jennifer H. Campbell
Chief Legal Officer

By: /s/ Jennifer H. Campbell
JENNIFER H. CAMPBELL
2352 S. Park St., Suite 303
Madison, WI 53713
(608) 210-6811
jennifer.campbell@wedc.org

*Attorney for Wisconsin Economic
Development Corporation*


**pro hac vice application pending

**CHARITY R. CLARK**
Attorney General of Vermont

By:    /s/ Jonathan T. Rose
JONATHAN T. ROSE
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Attorneys for the State of Vermont*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY
INJUNCTION
NO. 2:25-CV-02015-TMC

19

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744