1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF ARIZONA, et al., | Case No. 2:25-cv-02015-TMC |
| Plaintiffs, | ORDER DENYING MOTION TO TRANSFER |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

## I.    INTRODUCTION

This case is one of several challenging the United States Environmental Protection Agency's ("EPA") decision to terminate its Solar for All ("SFA") program that provided grants for the development of residential solar energy projects. On November 19, 2025, Defendants moved to transfer this case to the U.S. District Court for the District of Columbia. Dkt. 97. For the reasons discussed below, the Court DENIES Defendants' motion.

## II.    BACKGROUND

In 2022, Congress amended the Clean Air Act, adding Section 134 and establishing the "Greenhouse Gas Reduction Fund," which directed the EPA to:

> [M]ake grants . . . to States, municipalities, Tribal governments, and eligible recipients for the purposes of providing grants, loans, or other forms of financial

ORDER DENYING MOTION TO TRANSFER - 1

> assistance, as well as technical assistance, to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies, including distributed technologies on residential rooftops, and to carry out other greenhouse gas emission reduction activities, as determined appropriate by the [EPA] Administrator.

42 U.S.C. § 7434 (2024) ("Section 134"), *repealed by*, One Big Beautiful Bill Act, Public Law 119-21, 139 Stat. 72, 154 (July 4, 2025).

On April 22, 2024, the EPA created the SFA program and selected sixty qualified SFA recipients to receive $7 billion appropriated by Congress. Dkt. 1 ¶ 2. Plaintiffs—22 states, or their governmental bodies overseeing CFA grants, and the District of Columbia—were among those selected. *Id.* ¶¶ 3, 14–36. Plaintiffs allege that they executed Assistance Agreements with the EPA, received awards in their Automated Standard Application for Payments ("ASAP") accounts, and "got to work building out their state SFA programs" to "fulfill Congress's mandate to make solar energy accessible to all, including low-income and other disadvantaged communities." *Id.* ¶ 5.

On July 4, 2025, the President signed the "One Big Beautiful Bill Act," or H.R. 1, which repealed Section 134 and rescinded "the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act)." 139 Stat. 72, 154.

Plaintiffs allege that Defendants "erroneously interpreted H.R. 1 to eliminate the statutory basis for the SFA Program" and began "illegally and arbitrarily" removing previously obligated SFA funds from Plaintiffs' ASAP accounts on August 7, 2025. Dkt. 1 ¶¶ 8, 10. Within one week, Defendants removed "approximately 90% of the funds that were obligated to Plaintiffs before August 16, 2024, despite the fact that H.R. 1 explicitly limited recission to funds that were unobligated as of July 3, 2025." *Id.* ¶ 10. Plaintiffs bring Administrative Procedure Act ("APA"), Appropriations Clause, and *ultra vires* claims. *Id.* ¶ 131–76.

ORDER DENYING MOTION TO TRANSFER - 2

1

2      Defendants filed the present motion on November 19, 2025, arguing that the Court

3   should transfer venue of the case to D.D.C. under 28 U.S.C. § 1404. Dkt. 97. Defendants assert

4   that a similar case, *Harris County v. U.S. Env't Prot. Agency*, No. 1:25-cv-03646 (D.D.C.), was

5   filed before this one and transfer to D.D.C. is thus appropriate under the "first-to-file" rule or, in

6   the alternative, under the convenience considerations of § 1404(a). *Id*. 97 at 6. Plaintiffs

7   responded on December 10, and Defendants replied on December 17. Dkts. 103, 109.

### III.    DISCUSSION

**A.    First-to-file rule**

       The first-to-file rule allows a district court to dismiss, stay, or transfer a case if it involves

substantially similar parties and issues as another case that was filed first. *Kohn Law Grp., Inc. v.

Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Pacesetter Sys., Inc. v.

Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). "The rule is primarily meant to alleviate the

burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of

conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292

(N.D. Cal. 2013). Accordingly, the first-to-file rule "should not be disregarded lightly." *Alltrade,

Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v.

United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

       Courts analyze three factors to determine whether the first-to-file rule applies: (1) The

chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues.

*NWDC Resistance v. Immigr. & Customs Enf't*, No. 3:18-CV-5860-RBL, 2019 WL 12262490, at

*2 (W.D. Wash. May 30, 2019) (citing *Kohn*, 787 F.3d at 1240). However, the first-to-file rule is

"not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view

to the dictates of sound judicial administration." *Id*. (quoting *Pacesetter*, 678 F.2d at 95). The

rule is discretionary and, in some circumstances, "may be dispensed with for equitable reasons."

1    *Id.* (citing *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1146 (E.D. Cal. 1999)). "District courts in the

2    Ninth Circuit have expressly distinguished the first-to-file rule from 28 U.S.C. § 1404(a), which

3    permits transfer for the convenience of parties and witnesses." *Pars Equality Ctr. v. Pompeo*, No.

4    C18-1122JLR, 2018 WL 6523135, at *7 (W.D. Wash. Dec. 12, 2018).

5        *1.    Chronology of actions*

6        For purposes of analyzing which case was filed first, "the Ninth Circuit has held that a

7    'federal action is commenced by the filing of the complaint.'" *NWDC Resistance*,

8    2019 WL 12262490, at *2 (quoting *Pacesetter*, 678 F.2d at 96 n.3). The *Harris County* action

9    was filed in D.D.C. on October 13, 2025, three days before Plaintiffs filed their complaint in this

10   case. No. 1:25-cv-03646, Dkt. 1. Defendants argue this factor weighs in favor of transferring the

11   present case to D.D.C. and consolidating it with *Harris County*. Dkt. 97 at 13.

12       Plaintiffs contend the chronology inquiry is not so simple. They argue that another case

13   concerning SFA grants, *Rhode Island AFL-CIO v. U.S. Env't Prot. Agency*, No. 1:25-cv-00510

14   (D.R.I.), was filed on October 6, 2025—meaning that *Harris County* was not actually the "first-

15   filed" case. Dkt. 103 at 6, 9–10. Plaintiffs ask the Court to interpret the first-to-file rule in a

16   broad sense, considering the filing dates of all similar actions rather than just those actions in the

17   court to which the movant seeks transfer. *Id.*

18       Plaintiffs assert that such a reading is more consistent with the policy rationales of

19   "economy, consistency, and comity" behind the first-to-file rule. *Id.* (quoting *Fisher v. Duff*, No.

20   C15-5944 BHS, 2016 WL 3280429, at *2 (W.D. Wash. June 15, 2016)). According to Plaintiffs,

21   transferring the case to D.D.C. would allow Defendants to "choose among any of the earlier

22   venues and demand that all cases be heard there." *Id.* at 10. Plaintiffs claim that, because *Harris

23   County* is "just one among several cases challenging the EPA's termination of the Solar for All

24   program, the first-to-file rule cannot support transfer of this case to D.D.C." *Id.*

In reply, Defendants maintain that the relevant inquiry is simply whether "the action in the transferee district court" was filed "prior to the action in the transferor district court." Dkt. 109 at 4 (quoting *Zimmer v. Dometic Corp.*, No. 2:17-CV-06913, 2018 WL 1135634, at *3 (C.D. Cal. Feb. 22, 2018)). According to Defendants, "[t]o properly apply the first-to-file rule [with regard to chronology], the district court need only find that . . . a pending case in another federal court was filed previously." *Id.*; *Zimmer*, 2018 WL 1135634, at *3 (quoting *Luckett v. Peco Foods, Inc.*, No. 3:07-cv-86-KS-MTP, 2008 WL 534760 at *2 (S.D. Miss. Feb. 22, 2008)). In other words, the chronology factor should be interpreted in a vacuum—ignorant of similar cases in other districts that may have been filed before the case in the transferee district.

Like others in this District, however, this Court declines to adopt such a narrow approach. "Viewed broadly, the chronology factor weighs against transfer" where the case in the transferee district is filed after another similar case. *Pars Equality Ctr.*, 2018 WL 6523135, at *4. But if the parties and issues of the case in the transferee district are closer to the present one, that case "would constitute the first-filed action for purposes of the first-to-file rule." *Id.* As Plaintiffs note, this broad approach also avoids frustrating the rationales of "economy, consistency, and comity" by consolidating into what is actually the *second* case. Dkt. 103 at 9–10.

A review of *Rhode Island AFL-CIO* reveals that case is at least as similar to the instant case as *Harris County*. All three cases challenge the EPA's termination of the SFA program on APA, constitutional, and *ultra vires* grounds. *Compare* Dkt. 1 *with* No. 1:25-cv-00510, Dkt. 1 (D.R.I. Oct. 1, 2025) *and* No. 1:25-cv-03646, Dkt. 1 (D.D.C. Oct. 13, 2025). Indeed, Defendants also moved to transfer *Rhode Island AFL-CIO* to D.D.C. and consolidate it with *Harris County* in the interests of convenience. No. 1:25-cv-00510, Dkt. 27 (D.R.I. Dec. 1, 2025).[1] In doing so,

---

[1] The Rhode Island district court denied Defendants' motion on December 17, 2025. *See* No. 1:25-cv-00510 (D.R.I.).

they admitted that *Rhode Island AFL-CIO* is a "nearly identical action" to the present case and that some plaintiffs in *Rhode Island AFL-CIO* reside in states suing in this case. *Id.* at 5. Defendants now argue *Harris County* is more like this case because it too concerns "prime grantees," whereas *Rhode Island AFL-CIO* "was filed by subgrantees and purported beneficiaries." Dkt. 109 at 5. But in weighing this fact against the overlap between plaintiffs and issues, the Court finds that *Rhode Island AFL-CIO* and *Harris County* are roughly equidistant from this case.

Thus, because *Rhode Island AFL-CIO* was filed before *Harris County*, the chronology factor weighs against transfer.

### 2.    Similarity of the parties

Although the parties need not be identical, there must be "substantial similarity of parties" in the two actions for the first-to-file rule to apply. *NWDC Resistance*, 2019 WL 12262490, at *3 (quoting *Kohn*, 787 F.3d at 1240). Parties may be substantially similar, for example, if a party in the earlier action was absorbed in a merger and succeeded by the party in the later one, or where there is "significant overlap" between classes of individuals. *See id.* (collecting cases); *see also Kennedy v. Full Tilt Poker*, No. CV0907964MMMAGRX, 2012 WL 13071634, at *10 (C.D. Cal. Aug. 24, 2012) (finding that a proposed class action and a civil forfeiture action brought by the government sought to reimburse substantially the same individuals).

In contrast, courts decline to apply the first-to-file rule where there are "significant differences between the individual parties." *NWDC Resistance*, 2019 WL 12262490, at *3; *see Prescott v. CVS Health Corp.*, No. C17-803RSL, 2017 WL 5756873, at *2 (W.D. Wash. Nov. 28, 2017) ("The defendant manufacturers in this case produce glucose test strips, but they do not also produce diabetes medications, like insulin, which are at issue in the other complaints.").

1    This is true even where the defendants are the same in both cases. *See Dubee v. P.F. Chang's*

2    *China Bistro, Inc.*, No. C 10-01937 WHA, 2010 WL 3323808, at *2 (N.D. Cal. Aug. 23, 2010)

3    (parties not substantially similar where the class in the later action "could encompass the

4    plaintiff" in an earlier action, but that plaintiff's claims would not encompass the class in the

5    later action).

6            The parties are not substantially similar here. Although the defendants are the same in

7    both cases (except that this case does not include Devon Brown, an EPA Award Official), there

8    is no overlap between the plaintiffs. *Harris County*, No. 1:25-cv-03646 (D.D.C.). The sole

9    plaintiff in the D.D.C. action is Harris County, Texas. *Id*. Neither Harris County nor the State of

10   Texas is a plaintiff in the instant case, and none of the Plaintiffs here are party to Harris County's

11   suit. *Id*. Aside from the fact that both Harris County and Plaintiffs seek to recoup funds from the

12   same grant program, there is "little practical overlap" between a political subdivision of one state

13   and 23 other states themselves. *See NWDC Resistance*, 2019 WL 12262490, at *3. Defendants

14   have shown no relationship between Harris County and any of the Plaintiffs, let alone that one

15   represents the "same interests" as the other. *Aqua Connect, Inc. v. SHI Int'l Corp.*, No. CV 19-

16   05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019); *see Church v. California*

17   *Dep't of Managed Health Care*, No. 16-CV-00501-H-DHB, 2016 WL 11621588, at *6 (S.D.

18   Cal. Apr. 15, 2016) (parties not substantially similar where defendants were "the only parties

19   common to the two actions," even though plaintiffs retained the same counsel and previously

20   joined in filing an administrative complaint).

21           Defendants posit that Plaintiffs "represent the same interests" as Harris County because

22   "they are SFA grantees that assert the same claims against the same federal agency and seek the

23   same relief." Dkt. 109 at 7–8. But such a broad view of the second prong risks conflating it with

24   the third. Whether parties share the "same interests" is not a matter of whether they seek similar

relief, but whether their ability to recover—or their exposure, if they are defendants—"flow[s] from" their relationship to a party in the other case. *See Aqua Connect*, 2019 WL 8883452, at *3 ("To the extent that in the Delaware action the Patents-In-Suit are found to be valid and infringed, TeamViewer US—which manages all sales in the U.S.—would be liable for any damages for sales of the accused TeamViewer GmbH products in the U.S.").

Finally, Defendants have assured Harris County that funds would remain available through September 30, 2031 "to satisfy any remaining obligations for allowable costs" under SFA grant agreements, and that the EPA would "not take any action on [Harris County's] pending administrative dispute prior to a decision by" the D.D.C. court. *Harris County*, No. 1:25-cv-03646 (D.D.C.), Dkt. 20-1 ¶¶ 5–8. Harris County withdrew its motion for a preliminary injunction after receiving these assurances, believing "that the status quo would remain unchanged while the Parties litigate Harris County's claims on the merits." *Id.*, Dkt. 21 ¶ 6.

In contrast, Defendants have provided only some of the same assurances here. For example, Defendants have not agreed to avoid taking any action on Plaintiffs' administrative disputes before the EPA. *Compare* Dkt. 102-1 *with Harris County*, No. 1:25-cv-03646, Dkt. 20-1 ¶ 8 (D.D.C. Nov. 10, 2025); *see* Dkt. 105-1 at 3 (Plaintiff counsel's email requesting that the EPA hold their appeals in abeyance). Plaintiffs have also sought clarity on assurances regarding the availability of funds. *Id*. Because Defendants did not oblige these requests, Plaintiffs—unlike Harris County—refused to abandon their motion for a preliminary injunction. Dkt. 105 ¶¶ 5–9. Defendants' disparate treatment of Plaintiffs, and Plaintiffs' decision to maintain their motion for a preliminary injunction, signal further differences between themselves and Harris County. In total, the differences between the two parties resolve the second factor against transfer.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

       3.     *Similarity of the issues*

As with the parties, "[t]he issues in both cases also need not be identical, only substantially similar." *NWDC Resistance*, 2019 WL 12262490, at *4 (quoting *Kohn*, 787 F.3d at 1240). When comparing the issues, courts look to whether there is "substantial overlap" between the allegations, the parties' claims, and the remedies sought. *Id*. (citing *Pacesetter*, 678 F.2d at 95). In essence, there must be a similarity in allegations that would require the Court "to make similar determinations." *Id*.; *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010).

Plaintiffs assert that some legal issues exist here but may not exist in *Harris County*, or vice versa. Dkt. 103 at 15. For example, Defendants argued that the Tucker Act[2] bars Harris County's suit because "challenge to a grant termination is a contract claim that must be pursued in the Court of Federal Claims." *Harris County*, No. 1:25-cv-03646, Dkt. 20 at 15–16 (D.D.C. Nov. 10, 2025). Plaintiffs here have already filed challenges in the Court of Federal Claims, however, which they argue invalidate this attack on jurisdiction. Dkt. 103 at 15 (citing *Maryland Clean Energy Ctr. v. United States*, Civ. No. 25-cv-01738 (Fed. Cl. Oct. 15, 2025)).

Despite these differences, the two cases largely consider the same substantive issue of whether the EPA unlawfully interpreted H.R. 1 and froze SFA funds in violation of the APA and constitutional limits on executive authority. *Compare Harris County*, No. 1:25-cv-03646, Dkt. 1 ¶¶ 91–109 (D.D.C. Oct. 13, 2025) *with* Dkt. 1 ¶¶ 131–76. The Court would need "to make similar determinations" on the merits of Plaintiffs' claims as those called for in *Harris County*. This third factor therefore weighs in favor of transfer.

---

[2] 28 U.S.C. § 1491.

ORDER DENYING MOTION TO TRANSFER - 9

1    Taken together, however, the Court finds the three first-to-file factors weigh against

2    transfer here. The Court will next consider whether to transfer the case pursuant to the

3    convenience considerations of 28 U.S.C. § 1404(a).

4    **B.    Convenience considerations under 28 U.S.C. § 1404(a)**

5    Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

6    interest of justice, a district court may transfer any civil action to any other district or division

7    where it might have been brought or to any district or division to which all parties have

8    consented." 28 U.S.C. § 1404(a). The decision to transfer a case under § 1404(a) requires an

9    "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*,

10   376 U.S. 612, 622 (1964). Factors that may be considered include: "(1) the location where the

11   relevant agreements were negotiated and executed, (2) the state that is most familiar with the

12   governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

13   forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

14   differences in the costs of litigation in the two forums, (7) the availability of compulsory process

15   to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of

16   proof." *Prescott*, 2017 WL 5756873, at *2 (W.D. Wash. Nov. 28, 2017) (quoting *Jones v. GNC

17   Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)). The *Jones* factors are not exhaustive,

18   however, and they "cannot be mechanically applied to all types of cases." *Id.* (quoting

19   *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005)). In addition, the

20   court generally affords the plaintiff's choice of forum "great weight." *Bodo v. Angasan*, No.

21   2:22-CV-01377-LK, 2023 WL 1778836, at *1 (W.D. Wash. Feb. 6, 2023) (citing *Lou v.

22   Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

23   Aside from the convenience provided by consolidating this matter with *Harris County*,

24   the facts indicate D.D.C. is not a more convenient forum than this one. Plaintiffs argue that the

1   State of Washington is a lead plaintiff in this matter, Washington officials "spent more than

2   5,000 employee hours" developing the SFA program, and Washington received its SFA

3   termination notice in this District. Dkt. 103 at 20 (citing Dkt. 1 ¶ 59). In addition to the "great

4   weight" afforded to Plaintiffs' choice of forum here, these case-specific ties to Washington

5   support Plaintiffs' argument against transfer.

6          Moreover, this case alleges violations of federal law by a federal agency affecting nearly

7   two dozen state-plaintiffs across the country—making many of the *Jones* factors neutral to

8   transfer. Neither district is more suited to rule on claims under federal law, for example. *Roth v.*

9   *Adtran, Inc.*, No. CV13-1735-PHX DGC, 2013 WL 6058294, at *2 (D. Ariz. Nov. 18, 2013).

10  The Court acknowledges that D.D.C. may encounter more cases involving federal agency

11  defendants. But the Court agrees with Plaintiffs that this does not entitle those agencies to a

12  "presumptive tiebreaker" making D.D.C. the more convenient forum in all cases "by diverse

13  plaintiffs against a federal agency." Dkt. 103 at 18.

14         Cost and accessibility factors are similarly neutral. The parties agree that Plaintiffs'

15  claims rely heavily on the EPA's administrative record and that "the location of witnesses or

16  physical documents matters little" to the litigation. Dkt. 97 at 20–21; Dkt. 103 at 21. Defendants

17  note that a majority (16 of 23) of Plaintiffs are closer to D.D.C. than this District, and that

18  Defendants and their counsel are based in the District of Columbia. Dkt. 97 at 19. But courts

19  disfavor transferring venue when "transfer would merely shift rather than eliminate" costs and

20  convenience. *Nat'l Prods., Inc. v. Wireless Accessory Sols., LLC*, No. C15-2024JLR, 2018 WL

21  1709494, at *5 (W.D. Wash. Apr. 9, 2018) (quoting *Decker Coal Co. v. Commonwealth Edison*

22  *Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Transfer to D.D.C. would simply shift travel costs to

23  Plaintiffs in the western U.S., including two lead Plaintiffs (Washington and Arizona).

24  Dkt. 103 at 19.

ORDER DENYING MOTION TO TRANSFER - 11

Because most of the *Jones* factors are either neutral or lean against transfer, the Court concludes that transferring this case to D.D.C. is not in the interests of justice.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to transfer venue. Dkt. 97.

Dated this 7th day of January, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER DENYING MOTION TO TRANSFER - 12