The Honorable Tiffany M. Cartwright

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

STATE OF ARIZONA, et al.,

*Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Defendants*.

Civil Action No. 2:25-cv-02015-TMC

**DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**NOTED FOR HEARING: MAY 8, 2026, 1:30 P.M.**

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL AND FACTUAL BACKGROUND ........................................................................ 3

    I.    Congress Authorizes and EPA Implements a Solar Energy Grant Program. .................... 3

    II.    EPA Enters Grant Agreements with Plaintiffs. ................................................................ 4

    III.    EPA Evaluates Impact of OBBBA on Its Administration of SFA ................................... 5

    IV.    EPA Terminates Plaintiffs' SFA Grants ........................................................................... 7

PROCEDURAL HISTORY ................................................................................................... 8

LEGAL STANDARD ........................................................................................................... 9

ARGUMENT ...................................................................................................................... 10

    I.    This Court Lacks Jurisdiction Over Plaintiffs' Claims. .................................................. 10

        A.    Under *NIH* and *California*, Plaintiffs' Claims Belong in the Court of Federal Claims. 10

        B.    Lack of Redressability Dooms Plaintiffs' Article III Standing. ................................... 17

        C.    Plaintiffs Are Not Within OBBBA's Zone of Interests. ............................................... 19

        D.    The Purported "Directives" Are Not Final Agency Actions. ........................................ 19

    II.    Plaintiffs' Claims Fail as a Matter of Law. ..................................................................... 21

        A.    All Claims Challenging Termination of the SFA "Program" Fail .............................. 21

        B.    EPA's Decision to Terminate the SFA Grants Did Not Violate OBBBA. .................... 22

        C.    EPA's Termination of SFA Grants Did Not Violate Any Constitutional Doctrine or Provision. ................................................................................................................... 25

        D.    EPA's Decision to Terminate SFA Grants Was Not Arbitrary or Capricious. .............. 28

    III.    Any Remedy Should Be Limited to Remand. ................................................................. 31

        A.    Plaintiffs Have Not Shown Remand is Insufficient. ................................................... 31

        B.    Plaintiffs Fail to Justify a Permanent Injunction. ....................................................... 32

            1.    The Discrete, Months-Old Termination of a Repealed Program Presents No Redressable Irreparable Injury. ........................................................................... 32

            2.    The Public Interest is Not Served By Devoting Resources to a Congressionally Defunct Program. ................................................................................................ 35

    IV.    Any Equitable Relief Should Be Narrowly Tailored. ..................................................... 36

CONCLUSION .................................................................................................................... 36

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

i

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Aetna Life Ins. Co. of Hartford, Conn., v. Haworth*,
300 U.S. 227 (1937) .................................................................................. 17

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) ..................................................................... 14

*Allen v. Grand Cent. Aircraft Co.*,
347 U.S. 535 (1954) .................................................................................. 25

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ................................................................... 34

*Am. Trucking Ass'n, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ................................................................... 34

*A—Z Int'l v. Phillips*,
323 F.3d 1141 (9th Cir. 2003) ..................................................................... 9

*Bennett v. Spear*,
520 U.S. 154 (1997) .................................................................................. 20

*Blue Mountains Biodiversity Project v. Jeffries*,
99 F.4th 438 (9th Cir. 2024) ..................................................................... 30

*Boaz Hous. Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ................................................................. 11

*Bostock v. Clayton Cty.*,
590 U.S. 644 (2020) ............................................................................ 22, 23

*Brock v. Pierce Cnty.*,
476 U.S. 253 (1986) .................................................................................. 35

*California ex. rel. Becerra v. Azar*,
950 F.3d 1067 (9th Cir. 2020) ........................................................ 28, 29, 31

*California v. Texas*,
593 U.S. 659 (2021) ............................................................................ 17, 18

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

*Caribbean Marine Servs. Co. v. Baldrige*,
 844 F.2d 668 (9th Cir. 1988) ................................................................................ 34

*Carney v. Adams*,
 592 U.S. 53 (2020) ................................................................................................ 17

*Chavez v. United States*,
 660 F. Supp. 3d 964 (S.D. Cal. 2023) ................................................................... 12

*Cincinnati Soap Co. v. United States*,
 301 U.S. 308 (1937) .............................................................................................. 22

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
 401 U.S. 402 (1971) ................................................................................................ 9

*City & Cnty. of San Fran. v. United States*,
 130 F.3d 873 (9th Cir. 1997) .................................................................................. 9

*City & Cnty. of San Francisco v. Trump*,
 897 F.3d 1225 (9th Cir. 2018) .............................................................................. 27

*Clark v. United States*,
 19 App. D.C. 295 (D.C. Cir. 1902)........................................................................ 21

*Ctr. for Biological Diversity v. Haaland*,
 58 F.4th 412 (9th Cir. 2023) ................................................................................. 20

*Dalton v. Specter*,
 511 U.S. 462 (1994) ........................................................................................ 25, 26

*De La Rama S. S. Co. v. United States*,
 344 U.S. 386 (1953) .............................................................................................. 25

*Dep't of Educ. v. California*,
 604 U.S. 650 (2025) ........................................................................................ passim

*Dep't of the Army v. Blue Fox, Inc.*,
 525 U.S. 255 (1999) ........................................................................................ 10, 11

*DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*,
 76 F.3d 1212 (D.C. Cir. 1996)............................................................................... 20

*Dunn & Black v. United States*,
 492 F.3d 1084 (9th Cir. 2007) .............................................................................. 11

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

iii

*East Palo Alto v. U.S. Department of Health & Human Services*,
155 F.4th 1099 (9th Cir. 2025) ......................................................................... 16

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) ............................................................................ 32

*Env't Def. Fund v. EPA*,
922 F.3d 446 (D.C. Cir. 2019) .......................................................................... 29

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......................................................................................... 28

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) .......................................................................................... 28

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) .......................................................................................... 31

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ............................................................................ 33

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ............................................................................ 33

*Glob. Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) ............................................................. 26, 31, 34

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) .......................................................................................... 12

*Harger v. Dep't of Lab.*,
569 F.3d 898 (9th Cir. 2009) ..................................................................... 10, 11

*Herb Reed Enters. v. Fla. Entm't Mgmt. Inc.*,
736 F.3d 1239 (9th Cir. 2013) .......................................................................... 35

*Hum. Rts. Def. Ctr., Inc. v. Uttecht*,
161 F.4th 1141 (9th Cir. 2025) ......................................................................... 32

*Indep. Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) .......................................................................... 20

*Kansas v. United States*,
249 F.3d 1213 (10th Cir. 2001) ........................................................................ 34

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

iv

*Key v. Qualcomm Inc.*,
  129 F.4th 1129 (9th Cir. 2025) ................................................................................... 33

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .................................................................................................. 9

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) ................................................................................ 32

*Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ................................................................................. 34

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004) ................................................................................................ 22

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .................................................................................. 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................ 19

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ................................................................................................ 29

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) ................................................................................................ 23

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................... 17, 18

*Maryland v. King*,
  567 U.S. 1301 (2012) .............................................................................................. 35

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) .......................................................................................... 19, 20

*Matthews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................................ 35

*McCormack v. Hiedeman*,
  694 F.3d 1004 (9th Cir. 2012) ................................................................................ 36

*McGuire v. United States*,
  550 F.3d 903 (9th Cir. 2008) ............................................................................ 10, 11

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

v

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir.1982) ....................................................................... 11, 12, 13, 14

*Melendres v. Maricopa Cnty.*,
  897 F.3d 1217 (9th Cir. 2018) ................................................................................. 32, 33

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011) ........................................................................................................ 23

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) .................................................................................................. 31, 32

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) ............................................................................................. passim

*New York v. Trump*,
  490 F. Supp. 3d 225 (D.D.C. 2020) ............................................................................. 34

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................................ 32

*Novo Nordisk A/S*,
  566 U.S. 399 (2012) ........................................................................................................ 21

*Occidental Eng'g Co. v. INS*,
  753 F.2d 766 (9th Cir. 1985) .......................................................................................... 9

*Off. of Pers. Mgmt. v. Richmond*,
  496 U.S. 414 (1990) ........................................................................................................ 26

*Oklahoma v. Castro-Huerta*,
  142 S. Ct. 2486 (2022) ................................................................................................... 22

*Oracle USA, Inc. v. Rimini St., Inc.*,
  81 F.4th 843 (9th Cir. 2023) ......................................................................................... 36

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
  810 F.3d 631 (9th Cir. 2015) ......................................................................................... 33

*Pacito v. Trump*,
  No. 25-1313, -- F.4th --, 2026 WL 620449 (9th Cir. Mar. 5, 2026) ......................... 16

*Price v. U.S. Gen. Servs. Admin.*,
  894 F.2d 323 (9th Cir. 1990) .......................................................................................... 9

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

vi

*Pure Wafer Inc. v. City of Prescott*,
275 F. Supp. 3d 1173 (D. Ariz. 2017) ............................................................... 34

*Regents of Univ. of Cal.*,
591 U.S. 1 (2020) .......................................................................................... 6, 7, 8

*Republic of Sudan v. Harrison*,
139 S. Ct. 1048 (2019) ....................................................................................... 21

*Rhode Island v. Trump*,
--F. Supp. 3d.--, 2025 WL 3251113 (D.R.I. Nov. 21, 2025) ............................ 17

*Sahm v. Select Portfolio Servicing, Inc.*,
No. 2:22-CV-00165, 2022 WL 1203825 (W.D. Wash. Apr. 22, 2022) .............. 33

*Skydive Arizona, Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012) ........................................................................... 32

*Smith v. United States*,
No. 2:19-CV-00060, 2020 WL 30354 (W.D. Wash. Jan. 2, 2020) ..................... 9

*Star Alaska v. United States*,
14 F.3d 36 (9th Cir. 1994) ............................................................................ 11, 12

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ............................................................................................. 17

*Sustainability Inst. v. Trump*,
165 F.4th 817 (4th Cir. 2026) ...................................................................... 13, 26

*Thakur v. Trump*,
148 F.4th 1096 ................................................................................................... 34

*Thakur v. Trump*,
163 F.4th 1198 (9th Cir. 2025) ..................................................... 10, 13, 16, 34

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
585 F. App'x 390 (9th Cir. 2014) ...................................................................... 35

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ............................................................................................. 9

*Trump v. Casa, Inc.*,
606 U.S. 831 (2025) ........................................................................................... 36

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

vii

*Trump v. Sierra Club*,
  140 S. Ct. 1 (2019) ........................................................................................ 19

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
  136 F.3d 641 (9th Cir. 1998) ..................................................................... 14, 19

*United Aeronautical Corp. v. U.S. Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ....................................................................... 11

*United States v. MacCollom*,
  426 U.S. 317 (1976) ...................................................................................... 27

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ...................................................................................... 27

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ...................................................................................... 30

*Virginia Uranium v. Warren*,
  587 U.S. 761 (2019) ...................................................................................... 24

*Washington v. U.S. Department of Commerce*,
  No. C25-1507, 2025 WL 2978822 (W.D. Wash. Oct. 22, 2025) ................... 34

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ...................................................................................... 20

*WildEarth Guardians v. EPA*,
  751 F.3d 649 (D.C. Cir. 2014) ...................................................................... 29

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................................... 32, 33

**Constitutional Provision**

U.S. Const. art. I, § 9, cl. 7 ............................................................................ 26

**Statutes**

1 U.S.C. § 109 ......................................................................................... 24, 25

5 U.S.C. § 301 ................................................................................................ 27

5 U.S.C. § 551(13) ......................................................................................... 19

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

viii

28 U.S.C. § 1491(a)(1) ................................................................................................ 11, 12

31 U.S.C. § 503(a)(2) ....................................................................................................... 27

42 U.S.C. 7434 .................................................................................................................. 21

42 U.S.C. § 7434(a) ..................................................................................................... 15, 27

42 U.S.C. § 7434(a)(1) .............................................................................................. 1, 22, 27

42 U.S.C. § 7434(a)–(c) ..................................................................................................... 3

42 U.S.C. § 7434(c)(1) ....................................................................................................... 6

Pub. L. No. 117-169 ........................................................................................................... 3

Pub. L. No. 119-21 ......................................................................................................... 1, 5

**Rules**

Federal Rule of Civil Procedure 56 ................................................................................... 1

**Regulations**

2 C.F.R. § 200 ..................................................................................................................... 4

2 C.F.R. § 200.339 ............................................................................................................ 30

2 C.F.R. § 200.340 ...................................................................................................... passim

2 C.F.R. § 200.344 ............................................................................................................. 8

2 C.F.R. 1500.2 ................................................................................................................. 27

**Other Authorities**

Executive Order 14008 .................................................................................................. 3, 4

Executive Order 14091 .................................................................................................. 3, 4

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

ix

Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rules 7 and 56, and the Court's scheduling order dated January 28, 2026 (Dkt. #124), Defendants U.S. Environmental Protection Agency ("EPA") and Lee Zeldin, in his official capacity as EPA Administrator, respectfully ask the Court to grant summary judgment for Defendants with respect to all of Plaintiffs' claims.

### INTRODUCTION

In 2022, Congress appropriated $27 billion to create a Greenhouse Gas Reduction Fund ("GGRF"), including $7 billion for grants that EPA called "Solar for All."  *See* 42 U.S.C. § 7434(a)(1) (repealed 2025).  Just one year into the multi-year Solar for All ("SFA") grants, Congress reversed course, repealing the statutory authorization for GGRF and rescinding all unobligated funding, including the remaining $19 million to administer the grants.  *See* One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025).  Devoid of any statutory basis or designated funding to oversee the grants, EPA terminated them.

Plaintiffs are state recipients of SFA grants who sue under the Administrative Procedure Act ("APA") seeking an order to vacate EPA's termination of the SFA "program" as a pretense to force grant reinstatement.  *See, e.g.*, First Am. Compl. ¶¶ 1–2, Dkt. #128 ("FAC").  However, Congress, not EPA, terminated the authority for any program eight months ago, when it enacted OBBBA.  Plaintiffs' allegations thus amount to no more than claims that EPA improperly terminated grants and a request to undo that termination.  As twice explained by the Supreme Court, the APA "does not provide" federal district courts "with jurisdiction to adjudicate claims 'based on' … grants" or to "order relief designed to enforce any 'obligation to pay money' pursuant to those grants."  *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2658 (2025) ("*NIH*") (quoting *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam) ("*California*")).  Instead, claims challenging grant termination can only be litigated in the Court

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

1

of Federal Claims for monetary damages. Judgment therefore must be entered for Defendants due to the Court's lack of jurisdiction over this matter.

Even if it were possible to litigate termination of an SFA "program" distinct from the grants—and it is not—this case would still fail. Plaintiffs' attempted end-run around the Court's lack of APA jurisdiction crashes into Article III: because Plaintiffs have no cognizable injury other than the loss of grant funds, their focus on a fictional "program" leaves them with no redressable injury in this Court. And their request to restore a freestanding "program" apart from the grants is relief this Court cannot give. Congress repealed the SFA program when it passed OBBBA, and neither this Court nor EPA can reverse that congressional action. Plaintiffs therefore lack standing to bring this litigation.

Plaintiffs are also not in the "zone of interests" of the statute they purport to enforce. Plaintiffs bring this action under OBBBA § 60002, *see, e.g.*, FAC ¶¶ 138–42, 151–52, but that statute *repeals* the statute that authorized SFA. In no way does OBBBA purport to empower Plaintiffs to resurrect the very statute it repeals. Further, in their efforts to manufacture APA jurisdiction, Plaintiffs conjure various "Directives" to review. But the so-called "Directives" are not final agency actions with any legal consequence. Again, the only final agency action here that impacted Plaintiffs was EPA's termination of the SFA grants.

Plaintiffs' claims fare no better on the merits. Plaintiffs' purported challenge to EPA's termination of the SFA "program" fails because Congress, not EPA, repealed any SFA program, and neither this Court nor EPA can restore it. Even assuming the Court can consider the merits of the grant terminations—and it cannot—EPA did not violate any statute by terminating the grants. Plaintiffs' constitutional claims are not cognizable because they mirror the alleged statutory violations. And Plaintiffs' arbitrary and capricious claim fails because OBBBA's repeal of the authorizing statute and rescission of funds to administer the SFA grants provided adequate reason to terminate the SFA grants, and EPA reasonably explained its decision to do so.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

2

For these reasons, the Court should deny Plaintiffs' motion for summary judgment and enter judgment in favor of Defendants on all claims. If the Court nonetheless grants Plaintiffs' motion, any remedy should be limited to a narrowly tailored remand to the agency.

## LEGAL AND FACTUAL BACKGROUND

**I.  Congress Authorizes and EPA Implements a Solar Energy Grant Program.**

In 2022, Congress passed, and former President Biden signed into law, the Inflation Reduction Act ("IRA"). Pub. L. No. 117-169, § 60103, 136 Stat. 1818, 2065–66. The IRA amended the Clean Air Act to add a new Section 134 ("Section 134"), which appropriated $26.97 billion to the EPA Administrator for a "Greenhouse Gas Reduction Fund" ("GGRF") aimed at reducing greenhouse gas emissions and other forms of air pollution. *See* 42 U.S.C. § 7434(a)–(c) (repealed 2025). Congress appropriated $7 billion of that total to EPA "to make grants, on a competitive basis" to States, municipalities, Tribes, and eligible nonprofits "to enable low-income and disadvantaged communities to deploy or benefit from zero emission technologies … and to carry out other greenhouse gas emission reduction activities, as determined appropriate by the Administrator in accordance with this section." *Id.* § 7434(a)(1). The $7 billion appropriation would "remain available until September 30, 2024." *Id.* Congress appropriated an additional $30 million to EPA "for the administrative costs necessary to carry out activities under this section," which would remain available until September 30, 2031. *Id.* § 7434(a)(4).

EPA announced a Notice of Funding Opportunity on June 28, 2023, to implement Section 134(a)(1). *See* Dkt. #126-34, WD_Wash_000308–90 ("NOFO"). The NOFO described a competitive process to award the $7 billion appropriation through a new grant program EPA called "Solar for All" ("SFA"). *Id.* The NOFO explained that SFA would "advance[] the Biden-Harris Administration's equity and environmental justice priorities" as detailed in former President Biden's now-revoked Executive Orders 14091 and 14008. *Id.* at WD_Wash_000311. Through SFA, EPA would "award up to 60 grants" to eligible recipients "to expand the number

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

3

of low-income and disadvantaged communities primed for distributed solar investment." *Id.* at WD_Wash_000312. The NOFO made clear that grantees must "expand existing low-income solar programs" or design "new [SFA] programs," and that "EPA [would] not fund individual projects." *Id.* at WD_Wash_000312.

## II.   EPA Enters Grant Agreements with Plaintiffs.

EPA selected Plaintiffs among the 60 grantees to receive SFA funding. Under the SFA grants, as amended, EPA agreed "to cost-share 100.00% of all approved budget period costs incurred, up to" the grant amount. Dkt. #126-39 ("SFA Grant")[1] at WD_Wash_000539. In exchange, each Plaintiff agreed to, *inter alia*, (1) "comply with the current EPA General Terms and Conditions," *id.* at WD_Wash_000542; (2) "comply with the statutory requirements of Section 134 of the Clean Air Act," *id.* at WD_Wash_000573; (3) implement "its EPA-approved Solar for All Workplan," *id.* at WD_Wash_000560; and (4) adhere to numerous grant regulations within 2 C.F.R. Part 200, *see, e.g.*, *id.* at WD_Wash_000560–64. The SFA Grant provided EPA with termination rights under 2 C.F.R. § 200.340. *Id.* at WD_Wash_000575.

EPA had significant administrative responsibilities under the SFA grants. These obligations "ensure[d] that eligible Recipients effectively carr[ied] out the significant scale, complexity, and novelty of the Solar for All program." *Id.* at WD_Wash_000580. For example, an EPA Project Officer was designated to "oversee and monitor" each SFA grant through various activities, including but not limited to: (1) "[p]articipating in project activities"; (2) "[r]eviewing the qualifications of key personnel"; (3) "[c]losely monitoring the Recipient's management and oversight of Subrecipients and procedures for ensuring that program beneficiaries adhere to program participation guidelines"; (4) "[c]losely monitoring the Recipient's performance"; and (5) "[v]erifying that the Recipient is expending the award on allowable activities," including

---

[1] As provided in the so-ordered Stipulated Motion, EPA produced the grant agreement issued to the Washington State Department of Commerce as a representative example of the agreements issued to Plaintiffs. Dkt. #124 at 3.

DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

4

"asking for information on draws from ASAP"[2] or reviewing "transactions to verify compliance with regulatory requirements and the terms and conditions of this award." *Id.* at WD_Wash_000580–81. These responsibilities mirror those listed in EPA's SFA Terms and Conditions, *see* Dkt. #126-33, WD_Wash_000265–307, which applied to all SFA grants.

Washington State Department of Commerce allocated its $156.12 million award, SFA Grant at WD_Wash_000539, into four programs intended to "complement existing programs and policies to support distributed solar in the state." Dkt. #126-38 ("Workplan") at WD_Wash_000492. Those existing programs included the Community Solar Expansion Program, the Solar plus Storage for Resilient Communities program, and "three tailored clean energy funding opportunities" comprising a $117 million program. *Id.* at WD_Wash_000498–99, 501. The state planned to spend the first year of its grant as a "planning period" laying the foundation for the work to be done under its grant. *See, e.g.*, *id.* at WD_Wash_000494.

**III.    EPA Evaluates Impact of OBBBA on Its Administration of SFA .**

On July 4, 2025, one year into the five-year SFA grants, Congress enacted and President Trump signed OBBBA, Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025). Section 60002 of OBBBA "repealed" Section 134—the statute that authorized the GGRF, including SFA—and "rescinded" all "unobligated balances of amounts made available to carry out that section," including the remainder of the $30 million for EPA to administer GGRF programs. *Id.*

Following OBBBA's enactment, EPA decided to terminate the SFA grants. EPA documented the rationale for its decision in an August 7, 2025 memorandum from its Associate Deputy Administrator, Travis Voyles, to the Deputy Administrator, David Fotouhi. *See* Dkt. ##126-14–15, WD_Wash_000088–96 ("Recommendation"). The Recommendation stated that the repeal of GGRF "eliminate[d] the Agency's substantive grantmaking authority" under

---

[2] ASAP refers to the Automated Standard Application for Payments system used by federal agencies to transfer money to recipients. *See* Dkt. #126-33, WD_Wash_000295.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

5

Section 134 and concluded that "the Agency no longer has the congressionally dedicated funding to carry out its oversight function or evaluate the effective performance and compliance of recipients with the terms of the SFA program." *Id.* at WD_Wash_000090 (citing 42 U.S.C. § 7434(c)(1), which defines eligible recipients, and Section III(W) of the SFA Terms and Conditions, which requires an EPA Project Officer to oversee each SFA grant).

In reaching this conclusion, EPA considered numerous reliance interests. First, it considered the reliance interests of grantees, like Plaintiffs, including their "initial plans, cost outlays, and staffing for various projects." *Id.* at WD_Wash_000090–91. EPA determined that such interests would be limited given "the program's relatively nascent status and the limited funding distributions which took place prior to enactment of the OBBB[A]," and such interests "could be lessened further by effective use of the closeout process," which provides "appropriate distributions for expenses reasonably incurred in reliance on the program." *Id.* at WD_Wash_000092. Second, EPA considered the reliance interests of sub-recipients and indirect beneficiaries of the awards, concluding many SFA grantees "ha[d] not yet begun to allocate to subs or plan on-the-ground projects in a concrete way" and therefore the projects had "not resulted in meaningful reliance interests on the part of potential or speculative individual household beneficiaries." *Id.*

Next, EPA considered the "impacts on the domestic solar energy industry in a more general sense." *Id.* at WD_Wash_000093–94. EPA recognized that industry participants "may have made initial capital outlays based on the expectation of federal assistance to pass-through grant recipients." *Id.* at WD_Wash_000093. However, EPA concluded the industry's expenses "are currently limited in scope due to the nascent status of program implementation" and "are not comparable to situations … [involving] decades of reliance and serious life-ordering decisions as a reason to forestall otherwise justified agency action." *Id.* at WD_Wash_000093–94 (citing *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 31 (2020), involving "DACA recipients [who] have

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

6

'enrolled in degree programs, embarked on careers, started businesses, purchased homes, and even married and had children, all in reliance' on the DACA program" since 2012). EPA also considered that the prior Administration had largely waived grantees' requirements to comply with the Build America, Buy America Act, meaning grantees could "purchase solar panels with foreign-manufactured solar components," limiting benefits to domestic industry. *Id.* at WD_Wash_000094.

Finally, EPA considered "reasonable alternatives" to terminating the SFA grants. *Id.* at WD_Wash_000095. EPA "evaluated a number of general funding appropriations by Congress for grant programs that did not include specifically appropriated funds for program implementation and oversight." *Id.* EPA concluded that, unlike those programs, the GGRF programs had a "specifically earmarked $30 million for oversight and administration," and "it would go against congressional intent to use funds dedicated for other purposes and programs" to continue administering SFA. *Id.* EPA likewise declined to "strip[] administration and oversight funding away from programs that Congress intended [EPA] to support through other dedicated funding, including [Environmental Programs and Management] appropriations." *Id.* EPA considered that the $7 billion scope of the SFA program meant that "the corresponding oversight and administration burden of the SFA program [was] larger than that for virtually all of [EPA's] other grant programs combined"; therefore, "[s]hifting any funding from these other programs would result in a significant shortfall in administration and oversight capabilities elsewhere." *Id.*

For these reasons, EPA leadership agreed with the recommendation to "terminate the SFA program and all existing grants." *Id.* at WD_Wash_000088; *see also* Dkt. #126-20 at WD_Wash_000105.

## IV.   EPA Terminates Plaintiffs' SFA Grants

On August 7, 2025, EPA terminated all SFA grants. To accomplish this, EPA sent substantially similar notices to all 60 SFA grantees, including Plaintiffs. *See* Dkt. ##126-22, 126-

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

7

23, WD_Wash_000108–12; *see also* Dkt. #126-40, WD_Wash_000585–87 (email to Washington State Department of Commerce attaching termination notice) ("Termination Notice").

As provided in the SFA grants, EPA invoked 2 C.F.R. § 200.340 to terminate the grants. Termination Notice at WD_Wash_000586.  The Termination Notice explained that OBBBA had repealed "the underlying authority for the [SFA] program at Section 134 of the Clean Air Act" and had "rescind[ed] unobligated amounts to carry out Section 134." *Id.*  EPA therefore no longer had "a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients." *Id.*  The Termination Notice also described the grant close-out process.  In doing so, EPA "recognize[d] that program participants may have begun to rely on" program funds and may have "made preliminary budgets, projections, outlays, and staffing decisions." *Id.*  EPA therefore provided assurance that such expenses would "be remedied and remediable by the close out processes," as "outlined in 2 C.F.R. § 200.344." *Id.*

## PROCEDURAL HISTORY

Plaintiffs filed suit on October 16, 2025, Compl., Dkt. #1, and amended their complaint on February 19, 2026, FAC.  Plaintiffs assert that Defendants violated the APA, OBBBA, and the Constitution, and took *ultra vires* actions.  FAC ¶¶ 132–77.  Plaintiffs request declaratory judgment and vacatur of the "H.R.1 Interpretation, Program Termination Directive, and Deobligation Directive." *Id.* at 34.  Plaintiffs further request that the Court order EPA "to reinstate the SFA Program" and enjoin EPA from reobligating funding from Plaintiffs' grants, among other relief. *Id.*

On February 24, 2026, Plaintiffs moved for summary judgment.  Pls.' Mot. for Summ. J., Dkt. #129 ("Pl. Mot.").  Plaintiffs request that this Court: (i) declare that OBBBA "does not require, authorize, or allow" EPA to terminate the SFA "Program" or alter "funds obligated to Plaintiffs"; (ii) vacate the Directives and "[a]ny derivative actions based on either [Directive],"

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

8

including requiring Plaintiffs to closeout terminated SFA grants; and (iii) permanently enjoin Defendants from terminating the SFA "Program" and deobligating funds "obligated to Plaintiffs." Proposed Order at 1–3, Dkt. #129-1.

## LEGAL STANDARD

"Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction.'" *Smith v. United States*, No. 2:19-CV-00060, 2020 WL 30354, at *2 (W.D. Wash. Jan. 2, 2020) (quoting *A—Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)). Therefore, before a court "may reach the merits," it "must first consider whether [it] ha[s] subject matter jurisdiction over [plaintiff's] claims." *Price v. U.S. Gen. Servs. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990). Jurisdictional limits are "not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Instead, a court must "presume[] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). Plaintiffs thus bear the burden of proving (1) they have standing to bring each claim asserted, *see Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017), and (2) the Court has jurisdiction to hear the claims, *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

When reviewing an administrative decision under the APA, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*.; *see City & Cnty. of San Fran. v. United States*, 130 F.3d 873, 877 (9th Cir. 1997). Therefore, judicial review in an APA case is based upon the "full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

9

## <u>ARGUMENT</u>

### I.     This Court Lacks Jurisdiction Over Plaintiffs' Claims.

Plaintiffs have failed to establish this Court's jurisdiction.  Under Supreme Court and Ninth Circuit authority, the Court of Federal Claims has exclusive jurisdiction to adjudicate grant termination claims.[3]  This alone sinks Plaintiffs' case.  Moreover, Plaintiffs lack Article III standing because this Court cannot redress their only potentially cognizable injury: loss of grant funding.  Finally, the APA provides no harbor for Plaintiffs who are outside OBBBA's zone of interest, and Plaintiffs' concocted EPA "Directives" are not reviewable final agency actions.

### A.     Under *NIH* and *California*, Plaintiffs' Claims Belong in the Court of Federal Claims.

Plaintiffs' only potentially cognizable harm is EPA's termination of their SFA grants, which the Court lacks jurisdiction to review.  In 2025, the Supreme Court unequivocally instructed that challenges to grant terminations must be pursued in the Court of Federal Claims.  *See NIH*, 145 S. Ct. at 2660; *California*, 604 U.S. at 651.  As the Ninth Circuit recently explained, courts are "bound by *NIH*, which held that APA's limited waiver of sovereign immunity did 'not provide the District Court with jurisdiction to adjudicate' similar APA claims challenging grant terminations."  *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025) (quoting *NIH*, 145 S. Ct. at 2658).

Sovereign immunity "shields the Federal Government and its agencies from suit" unless Congress has expressly waived immunity.  *Harger v. Dep't of Lab*., 569 F.3d 898, 903 (9th Cir. 2009) (quoting *Dep't of the Army v. Blue Fox, Inc*., 525 U.S. 255, 260 (1999)).  "Such waiver cannot be implied, but must be unequivocally expressed."  *McGuire v. United States*, 550 F.3d

---

[3] Plaintiffs do not attempt to establish the Court's jurisdiction over their *ultra vires* claim (Count IV) or otherwise advance the merits of that claim—based on their false conclusion that Defendants conceded APA review is available.  Pl. Mot. 25 n.3.  Defendants made clear in opposing a preliminary injunction that APA review is *not* available.  Dkt. #102, at 11–19. Judgment on Plaintiffs' *ultra vires* claim should be entered for Defendants.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

903, 910 (9th Cir. 2008) (citation omitted). This is "a 'high standard.'" *Harger*, 569 F.3d at 903–04 (quoting *Blue Fox*, 525 U.S. at 261). Unless a plaintiff "satisfies the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed." *McGuire*, 550 F.3d at 910 (quoting *Dunn & Black v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007)).

No such unequivocally expressed waiver of sovereign immunity applies here. The APA's limited waiver of sovereign immunity for claims against the United States "seek[ing] relief other than money damages," *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (quoting 5 U.S.C. § 702), does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *California*, 604 U.S. at 651 (same). "Where a statute vests exclusive jurisdiction over a category of claims in a specialized court (*e.g.*, the Court of Federal Claims), it 'impliedly forbids' an APA action brought in federal district court." *United Aeronautical*, 80 F.4th at 1022.

The Tucker Act "impliedly forbids" the relief sought here. Under the Tucker Act, the "Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). This prohibition extends to claims founded on grants that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).

Plaintiffs cannot nullify this APA limitation through artful pleading. Even if Plaintiffs style their claims as seeking "to enforce extracontractual Constitutional and statutory obligations," the jurisdictional question nonetheless turns on the "source of the rights upon which the plaintiff bases its claims." *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994) (quoting *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C. Cir.1982)). In other words, "courts do not allow a plaintiff's artful pleading to dictate whether a claim is … contractual in nature."

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

11

*Chavez v. United States*, 660 F. Supp. 3d 964, 972 (S.D. Cal. 2023) (quotations omitted). Although Plaintiffs assert APA claims that the terminations are "contrary to law and violate constitutional [] principles," Pl. Mot. 10—this Court lacks jurisdiction because this lawsuit is "at its essence" contractual. *N. Star Alaska*, 14 F.3d at 37 (quoting *Megapulse*, 672 F.2d at 967–68).

In 2025, the Supreme Court twice emphasized that the Tucker Act precludes district courts from hearing grant termination challenges. In *California*, certain states obtained a temporary restraining order "enjoining the Government from terminating various education-related grants" and requiring the Government to pay grant obligations. 604 U.S. at 650. The Supreme Court stayed the district court order, holding that "the Government is likely to succeed in showing the District Court lacked jurisdiction" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

The Supreme Court reiterated this conclusion in *NIH*, where a district court "vacat[ed] the Government's termination of various research-related grants." 145 S. Ct. at 2660. Relying on its reasoning in *California*, the Supreme Court stayed that judgment. The Court explained that the APA "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* (quotations omitted); *see id.* at 2662 (Barrett, J., concurring) ("[M]y preliminary judgment is that the plaintiffs' challenges to the grant terminations belong in the CFC."). The only judgment the Supreme Court did not stay was the district court's decision vacating NIH's "[g]oing forward" policy guidance—a decision which did not (and could not) reinstate the terminated grants. *Id.* at 2661 (Barrett, J., concurring).

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

12

In December 2025, following these Supreme Court precedents, the Ninth Circuit found itself "bound by *NIH*" and stayed a district court order enjoining agencies from terminating federal awards. *Thakur*, 163 F.4th at 1204. Plaintiffs in *Thakur* sued certain agencies following the April 2025 termination of federal grants. *Id.* at 1202. Like Plaintiffs here, they asserted APA and constitutional claims and sought an order vacating and enjoining the agencies' termination decisions. *Id.* After the district court preliminarily enjoined the grant terminations, the government appealed and moved for a partial stay, arguing that the court lacked jurisdiction to adjudicate the plaintiffs' APA claims. *Id.* at 1203. The Ninth Circuit agreed with the government. *Id.* at 1204. Applying the two-pronged *Megapulse* analysis, the Ninth Circuit held (1) the plaintiffs' "source of rights" was their "research-related grants"—just like those at issue in *NIH*; and (2) "the type of relief sought" was the vacatur of the termination notices—just like the relief sought in *NIH*. *Id.* (citing *NIH*, 145 S. Ct. at 2658). The Ninth Circuit recognized that under *NIH*, such relief was "designed to enforce an obligation to pay money pursuant to the grants" at issue. *Id.* (cleaned up). Accordingly, the Ninth Circuit concluded the government made a "strong showing" that the district court likely lacked jurisdiction to review the plaintiffs' APA claim. *Id.*;[4] *see also Sustainability Inst. v. Trump*, 165 F.4th 817, 829 (4th Cir. 2026) (holding the court lacked jurisdiction to adjudicate APA claims "challenging the freezing or termination of [plaintiffs'] [federal] grants and to order enforcement of those grants").

These precedents compel the conclusion that this Court lacks jurisdiction over this litigation because Plaintiffs' claims are essentially contractual. Starting with "the source of the rights," *Megapulse*, 672 F.2d at 968, Plaintiffs have no entitlement to SFA funding except

---

[4] The Ninth Circuit did not stay the order relating to termination of DEI grants, concluding that grantees were likely to prevail on First Amendment claims. *Thakur*, 163 F.4th at 1206. No First Amendment claims apply here; Plaintiffs' purported Appropriations Clause and separation of power claims (Count III) in this case are either disguised contract claims or disguised statutory claims that fail as a matter of law. *See infra* at 25–27.

DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

through their grants. None of the APA, OBBBA, or the Constitution confers any substantive right on Plaintiffs to receive SFA funding. Only the grant agreement does that. *See, e.g.*, SFA Grant at WD_Wash_000539 (grant terms awarding $156.12 million to Washington State). For instance, Plaintiffs challenge EPA's "[withdrawal of] approximately $2.7 billion from Plaintiffs' ASAP accounts." Pl. Mot. 8.; *see also* FAC ¶ 107 (alleging EPA "claw[ed] back" Plaintiffs' SFA funds). SFA funds were only made available to Plaintiffs through their grant agreements and it was the grant agreements that mandated the use of ASAP accounts. *See* SFA Grant at WD_Wash_000539 (designating ASAP as grant Payment Method). Whether EPA lawfully terminated Plaintiffs' grants and "clawed back" funds thus "turns *entirely* on the terms of" the grants. *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (emphasis in original). Because Plaintiffs' asserted rights "do not exist independent of" their grants, the "source of rights" is the grant agreements. *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998).

As to the "relief sought," *Megapulse*, 672 F.2d at 968, the heart of Plaintiffs' challenge is their desire to obtain continued disbursement of SFA funding by reversing EPA's terminations. *See* FAC at 34; Proposed Order at 2–3. By requesting this Court to vacate the termination decision and "[a]ny derivative actions," including grant closeout, Proposed Order at 2, Plaintiffs seek relief "designed to enforce an[] obligation to pay money pursuant to th[e] grant[s]." *NIH*, 145 S. Ct. at 2659. Similarly, Plaintiffs' challenge to EPA's "clawing back [the SFA] funds," Pl. Mot. 11, merely reframes an effort to enforce EPA's obligation to pay. Plaintiffs have no statutory or constitutional entitlement to SFA funding. Granting Plaintiffs' requests to undo termination and continue the grants would be indistinguishable from the contractual remedy of specific performance, which the Court lacks jurisdiction to award. *See Tucson Airport Auth.*, 136 F.3d at 647 (Plaintiff "seeks specific performance of the contract. The conclusion follows that these claims are contractually-based."); *see also NIH*, 145 S. Ct. at 2664 (Gorsuch, J.,

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

U.S. Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

14

concurring) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants.").

Plaintiffs superficially appear to acknowledge that the Court cannot review grant terminations and attempt to avoid the Tucker Act's jurisdictional bar through artful pleading. They claim to "seek declaratory and injunctive relief and vacatur of the Program Termination and Deobligation Directives." Pl. Mot. 11. But these alleged "Directives" are labels Plaintiffs invented to disguise their challenge to grant termination. The only EPA action here was EPA's terminations of existing grants, as reflected in termination notices sent to each grantee. *See, e.g.*, Termination Notice at WD_Wash_000111.

The relevant statutes refute Plaintiffs' attempt to manufacture agency action apart from the grant terminations. Section 134 only ever authorized EPA to use a one-time appropriation to award and administer grants; it did not create any ongoing program apart from the grants. *See* 42 U.S.C. § 7434(a)–(c) (repealed). Moreover, Congress has since repealed Section 134. Yet Plaintiffs ask the Court to enjoin EPA "*going forward*." Pl. Mot. 11 (emphasis added). There is no "going forward" policy or guidance for SFA post-OBBBA.

The lack of any forward-looking policy distinguishes this case from the surviving claims in *NIH*; Plaintiffs' reliance on Justice Barrett's concurrence in *NIH* is mistaken. Pl. Mot. 11. *NIH* instead only demonstrates why this case must be dismissed. Under *NIH*, the Supreme Court declined to stay the vacatur of internal guidance directing the agency not to award grants based on certain policies "[g]oing forward." 145 S. Ct. at 2661 (Barrett, J. concurring). EPA issued no such forward-looking guidance here; indeed, there is no *possibility* of any similar forward-looking policy because EPA cannot award new SFA grants after OBBBA repealed the program. The only "guidance" to review here is EPA's decision to terminate orphaned grants previously awarded under a now-repealed law. As to that decision, Justice Barrett made clear that "plaintiffs

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

15

cannot end-run [CFC's exclusive jurisdiction over grant terminations] simply by packaging them with a challenge to agency guidance." *Id.* at 2661–62 (quoting *California*, 604 U.S. at 651).

Justice Barrett also concluded in *NIH* that a challenge to an agency policy "does not necessarily void" grant terminations effectuated under that policy. *NIH*, 145 S. Ct. at 2661 (Barrett, J. concurring). Thus, even assuming arguendo that there were any "Directives" to review, as Plaintiffs contend, vacating the purported "Directives" would not restore the grants. Contrary to their own contentions, Plaintiffs claim they "do not seek an order reinstating funds," Pl. Mot. 12, but they nonetheless demand that this Court unwind the grant terminations, *see* Proposed Order at 2 (requesting the Court set aside "[a]ny derivative actions based on [the Directives]"), which is beyond this Court's jurisdiction. *See NIH*, 145 S. Ct. at 2659; *California*, 604 U.S. at 650; *see also Thakur*, 163 F.4th at 1204 (holding *NIH* barred "vacatur of the termination notices and reinstatement of the terminated grants" because it was "'designed to enforce an obligation to pay money pursuant to the grants'") (quoting *NIH*, 145 S. Ct. at 2658).[5]

Plaintiffs' reliance on *Community Legal Services in East Palo Alto v. U.S. Department of Health & Human Services*, 155 F.4th 1099 (9th Cir. 2025) ("*CLS*") is also mistaken. *See* Pl. Mot. 11. In that case, the Ninth Circuit concluded that the Tucker Act did not preclude the district court's jurisdiction because no agreements existed between the plaintiffs and the government. 155 F.4th at 1106. In contrast, Plaintiffs' rights here stem from grant agreements. *CLS* also analyzed a decision to cease funding an ongoing, congressionally mandated program. *Id.* at 1104. Again, in this case, Plaintiffs cannot enforce any congressional mandate to operate a

---

[5] The Ninth Circuit's decision in *Pacito v. Trump*, No. 25-1313, -- F.4th --, 2026 WL 620449, *19 (9th Cir. Mar. 5, 2026) is inapplicable because the Ninth Circuit there determined that the cooperative agreements at issue were not contracts. Plaintiffs acknowledge that the grant agreements here are contracts. *See* Pl. Mot. 9 (referencing Plaintiffs' lawsuit in the Court of Federal Claims "seeking damages for EPA's breach of their SFA grants").

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

forward-looking program because Congress repealed the program, leaving only EPA's decision to terminate the previously awarded grants.[6]

### B.   Lack of Redressability Dooms Plaintiffs' Article III Standing.

The Supreme Court is clear that this Court cannot reinstate terminated grants. *See NIH*, 145 S. Ct. at 2660; *California*, 604 U.S. at 650.  Plaintiffs pay lip service to this prohibition, Pl. Mot. 12, but nonetheless effectively demand that relief, *see* Proposed Order at 2.  To do so, Plaintiffs invent theories that, upon examination, only demonstrate their inability to establish redressability necessary for Article III standing.

"The Constitution limits the exercise of judicial power to 'cases' and 'controversies.'" *Aetna Life Ins. Co. of Hartford, Conn., v. Haworth*, 300 U.S. 227, 239 (1937) (citing U.S. Const. art. III, § 2).  That phrase "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020).  For a "case or controversy" to exist, a litigant must have standing to bring the claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff has standing only if he can "allege personal injury … likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668–69 (2021) (citations omitted).  "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *Id*. at 671.  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

---

[6] *Rhode Island v. Trump*, --F. Supp. 3d.--, 2025 WL 3251113, at *6 (D.R.I. Nov. 21, 2025) also does not aid Plaintiffs here.  In *Rhode Island*, the court found the primary challenge to be the dismantling of agencies.  This case, in contrast, only concerns grant termination, review of which is squarely foreclosed by *NIH* and *California*.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

17

Plaintiffs cannot satisfy the element of redressability. First, an injunction setting aside program termination exceeds this Court's authority. OBBBA "repealed" Section 134, eliminating the statutory basis for SFA. OBBBA § 60002. OBBBA further "rescinded" all "unobligated balances" that Congress made available to EPA to carry out Section 134. *Id.* As of today, EPA has neither statutory authority nor funding to administer SFA as it existed on July 3, 2025. Neither EPA nor the Court can restore this program. *Infra* at 21–22.

Even more starkly, the loss of grant funds is Plaintiffs' only injury. *See, e.g.*, Pl. Mot. 8 ("EPA swiftly blocked access to Plaintiffs' SFA funds" after terminating the SFA grants); Dkt. #88, ¶¶ 32–34 (discussing "various programs [Washington] intended to offer using SFA funding," "SFA funding was expected to create at least 700 new green jobs," and "premature end of SFA funding also harms [Washington] as an employer"). Plaintiffs disavow seeking restoration of the grants—the only relief that would remedy the injury of lost funding. *California v. Texas*, 593 U.S. at 671.[7] Regardless of this litigation's outcome, the grants will thus remain terminated and Plaintiffs will remain former grantees of a still-repealed grant program. Because the Court cannot reinstate terminated grants, Plaintiffs' request for a declaration about the meaning and effect of OBBBA would amount to an "advisory opinion" "without the possibility of any judicial relief." *Id*. at 673 (quotations and citations omitted). That is the "very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.*

Plaintiffs' other arguments further illustrate the redressability problem. Some Plaintiffs complain about a lack of continued partnership with the federal government. For example, Washington explained that "[t]he SFA Program also allowed Commerce to work closely with EPA with its work plan." Dkt. #88 ¶ 43. Similarly, Virginia claims "EPA provided crucial programmatic support to Virginia Energy, including monthly meetings …. That ongoing

---

[7] Of course, Plaintiffs only partially disavow this relief. Plaintiffs ask the Court to set aside any "derivative actions" from the "Directives," Proposed Order ¶ 3, which presumably means they want the Court to vacate the grant terminations.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

18

collaboration and programmatic support had value … and the loss of that collaboration and programmatic support cannot be remedied through funding alone." Dkt. #131 ¶¶ 33–34. To redress those injuries, not only would the Court have to restart SFA funding, it would also have to direct EPA to work with grantees despite OBBBA's repeal of Section 134 and rescission of EPA's administrative funding. This is manifestly beyond the Court's power. *Tucson Airport Auth.*, 136 F.3d at 647.

### C.    Plaintiffs Are Not Within OBBBA's Zone of Interests.

Plaintiffs also lack cognizable APA claims because they are not within OBBBA's "zone of interests." The Supreme Court "has long held that a person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quotation omitted); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–30 (2014) (plaintiff must show its interests "fall within the zone of interests protected by the law invoked") (citation omitted). Plaintiffs do not meet this test. There is no indication that Congress intended to give SFA grantees any private cause of action under OBBBA, which repealed Section 134. *See Trump v. Sierra Club*, 140 S. Ct. 1, 1 (2019). This is yet another reason why Plaintiffs' APA claims must fail.

### D.    The Purported "Directives" Are Not Final Agency Actions.

Plaintiffs' ploy of challenging EPA "Directives" as separate actions from EPA's decision to terminate grants, *see* Pl. Mot. 9, fails to create APA jurisdiction in this Court. Under the APA, "agency action" "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency action is only final "if it both (1) 'mark[s] the consummation of the agency's decisionmaking process—it must not be a merely tentative or interlocutory nature,' and (2) is 'one by which rights or obligations

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

19

have been determined, or from which legal consequences will flow.'" *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). EPA needs to "have rendered its last word on the matter" for its action to be "'final' and thus reviewable." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). The "final agency action" requirement is jurisdictional. "If the agency action is not final, the court [] cannot reach the merits of the dispute." *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212 (D.C. Cir. 1996) (citation omitted). Courts "lack[] authority to review claims where 'an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party.'" *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (citation omitted).

The only relevant agency action here is grant termination. Plaintiffs nevertheless challenge the so-called "H.R. 1 Interpretation," "Program Termination Directive" and "Deobligation Directive." *See, e.g.*, FAC ¶¶ 8, 10; Pl. Mot. 9. However, the "H.R. 1 Interpretation" refers to EPA's internal interpretation of OBBBA, which is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Haaland*, 58 F.4th at 417. And the "Deobligation Directive" is likewise not final agency action, as it represents EPA's internal accounting practice following grant terminations. *See* SFA Grant at WD_Wash_000575 (provision deobligating uncommitted funds upon termination); Treml Decl. ¶ 8 (EPA deobligated 93% of SFA grant funds after terminations, with funds being available through September 2031). Finally, the "Program Directive," is not agency action at all. Congress, not EPA, terminated the SFA "program." *See infra* at 21–22. That leaves EPA's termination of the SFA grants as the only final agency action, which is not reviewable in district court. *Supra* at 10–17; *see Patchak*, 567 U.S. at 215 (recognizing that 5 U.S.C. § 702 "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes").

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

20

## II.     Plaintiffs' Claims Fail as a Matter of Law.

Even if this Court has jurisdiction, judgment should be entered for Defendants because Plaintiffs' claims fail as a matter of law.  First, Congress, not EPA, terminated the SFA program through OBBBA, so any claim based on "program" termination fails.  Second, EPA's decision to terminate the SFA grants was not contrary to OBBBA, as OBBBA did nothing to limit EPA's pre-existing contract right to terminate.  Third, because Plaintiffs' constitutional claim repackages the statutory claim, it is not a separate cause of action and fails for that reason; at any rate, EPA did not violate any constitutional provision or doctrine.  Fourth, EPA's decision to terminate the SFA grants was reasonable and reasonably explained, as reflected in the administrative record.

### A.     All Claims Challenging Termination of the SFA "Program" Fail.

Plaintiffs' claims all fail to the extent they challenge the termination of an SFA "program" as separate from EPA's termination of the SFA grants.  Congress—*not EPA*—created the program when it passed Section 134 and then repealed the program when it passed OBBBA.

"We begin 'where all such inquiries begin: with the language of the statute itself.'" *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1055–56 (2019) (quoting *Caraco Pharm. Labs., Ltd.. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012)).  Section 60002 of OBBBA provides:

> [Section 134] (42 U.S.C. 7434) is repealed and the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act) are rescinded.

*Id.*  Based on this plain language, and as Plaintiffs acknowledge, Congress "repealed the statutory authorizations that created [the] SFA" program.  Pl. Mot. 1 (citing OBBBA § 60002); At that point, Section 134, and with it EPA's authority to maintain any SFA program apart from the existing grants, "ceased to exist." *Clark v. United States*, 19 App. D.C. 295, 297 (D.C. Cir. 1902); *see* REPEAL, Black's Law Dictionary (12th ed. 2024) (defining "repeal" as the abrogation, revocation, rescission, or annulment of an existing law).  Moreover, OBBBA rescinded all "unobligated balances," withdrawing the remaining funding EPA had to administer

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

21

any GGRF program.  OBBBA therefore not only repealed EPA's statutory authority to run the SFA program but also took away its dedicated funding to do so.  *See Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) ("[N]o money can be paid out of the Treasury unless it has been appropriated by an act of Congress.").  EPA therefore did not (and could not) violate OBBBA, the Constitution, or the APA by terminating this program.  Congress created the program, and Congress ended it.  The "place to make new legislation, or address unwanted consequences of old legislation, lies in Congress," not in district court in a lawsuit against EPA. *Bostock v. Clayton Cty.*, 590 U.S. 644, 680–81 (2020).  For these reasons, all Plaintiffs' claims based on any "program" termination fail as a matter of law.

**B.    EPA's Decision to Terminate the SFA Grants Did Not Violate OBBBA.**

Plaintiffs' APA statutory claim (Count I) also fails.  As explained above, Congress terminated the SFA program, and EPA terminated the 60 SFA grants one month later.  EPA's decision to terminate these grants was not contrary to OBBBA.  "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). "The Court may not 'replace the actual text with speculation as to Congress' intent.'  Rather, the Court 'will presume more modestly' that 'the legislature says what it means and means what it says.'"  *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496–97 (2022) (citations omitted).

OBBBA's text is plain: it "repealed" Section 134—the statute that authorized the GGRF, including SFA—and "rescinded" all "unobligated balances of amounts made available to carry out that section," including whatever remained of the $30 million for EPA to administer all GGRF programs.  OBBBA § 60002.  Section 134, in turn, appropriated $7 billion for EPA to "make grants, on a competitive basis" to eligible recipients by September 2024 to advance zero-emission technologies in low-income areas.  42 U.S.C. § 7434(a)(1) (repealed).  EPA complied with Section 134 by creating a competitive grant process, *see* NOFO at WD_Wash_000308–90,

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

U.S. Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

22

and selecting 60 eligible recipients before the deadline.  EPA and each SFA recipient then executed a grant agreement, and that agreement, including the regulations and the guidance incorporated therein, gave EPA the right to terminate.  *See, e.g.*, SFA Grant at WD_Wash_000575 (describing how "EPA maintains the right to terminate the [SFA grant]" under 2 C.F.R. § 200.340 and additional circumstances).  OBBBA, by its plain language, did nothing to change this contractual right.

Congress's omission of "obligated funds" from OBBBA does not mean Congress intended to restrict EPA's ability to terminate SFA grants.  It is a "fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'"  *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020) (quotations and citation omitted).  "This principle applies not only to adding terms not found in the statute, but also to imposing limits on an agency's discretion that are not supported by the text."  *Id.* (citation omitted).  Here, the plain language of OBBBA repealed the statutory authority for any SFA program, rescinded the dedicated funds to administer the existing SFA grants, and imposed no limit on EPA's pre-existing right to terminate those grants according to their terms.  "By introducing a limitation not found in the statute," Plaintiffs ask the Court "to alter, rather than to interpret" OBBBA.  *Id*.  That request should be denied.

Plaintiffs' other arguments are unavailing.  Their reliance on legislative history, *see* Pl. Mot. 14–15, should be ignored because OBBBA's plain terms are unambiguous, and Plaintiffs do not argue otherwise.  *See Bostock*, 590 U.S. at 674 ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it.") (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)).  And, regardless, OBBBA's legislative history only supports the plain reading of the statute.  The House Report of the Committee on the Budget accompanying OBBBA made clear that OBBBA "repeals" both "the authorizations" and the "unobligated balances of funds" of "programs … which were authorized for the first time" through the IRA,

DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

23

including the Section 134 GGRF programs.  H.R Rep. No. 119-106, at 557 (2025). Representatives Griffith (R-VA) and Guthrie (R-KY), who Plaintiffs cite, Pl. Mot. 15, only shared their view that OBBBA did not rescind obligated balances.  Neither representative opined on whether OBBBA did anything to restrict EPA's contractual rights under existing grants.  Nor did they contest that OBBBA repealed EPA's authorization to administer GGRF programs.

Defendants do not dispute that OBBBA has "prospective effect."  Pl. Mot. 14.  OBBBA repealed EPA's authority to make grants and administer any SFA program prospectively, *i.e.,* after July 4, 2025, and it also rescinded the "unobligated balances" for EPA to administer all existing SFA grants prospectively, *i.e.*, after July 4, 2025, forcing the agency to decide whether and how it could do so.  But what OBBBA did not do is change or restrict EPA's contractual right to terminate under 2 C.F.R. § 200.340, based on the agency's reasonable assessment that, without designated funding, it lacked the resources to oversee and manage a $7 billion program for the next four years.  *Infra* at 28–31.  If Congress had wanted to alter EPA's pre-existing contractual right to terminate, it would have said so.  "In this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium v. Warren*, 587 U.S. 761, 765 (2019).  Plaintiffs' interpretation to the contrary should be rejected.[8]

The general savings statute, 1 U.S.C. § 109, does not support Plaintiffs' interpretation of OBBBA.  Under that law, a repealed statute remains in effect only "for the enforcement of such penalty, forfeiture, or liability" that had been "incurred under such statute."  1 U.S.C. § 109.

---

[8] Plaintiffs argue that if Congress had wanted EPA to terminate the grants, it would have made that clear.  *See* Pl. Mot. 16.  But EPA had the right to terminate the SFA grants before OBBBA under the grant agreements, which incorporated 2 C.F.R. § 200.340.  If Congress wanted to change the existing state of the law, Congress would have done that.  This is particularly true, because Congress knew that EPA had already exercised its right to terminate grants under two other GGRF programs before OBBBA.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

24

Here, Plaintiffs claim that EPA violated OBBBA—the law that repealed Section 134. Pl. Mot. 12. The general savings statute, by its terms, does not apply to enforce a liability incurred under *the repealing law*. Moreover, even if Plaintiffs claim that EPA violated Section 134, this repealed statute lacks any enforcement provisions that Plaintiffs could revive through 1 U.S.C. § 109.[9] The general savings statute thus does not save any aspect of Section 134. And, finally, to the extent the SFA grants are a "liability incurred" under Section 134, that liability *did* survive post-OBBBA, as EPA continued to reimburse Plaintiffs for allowable costs until August 7, 2025.[10] Post-termination, Plaintiffs may seek damages against EPA through a breach-of-contract suit in the Court of Federal Claims, and they have already done so. *See* Pl. Mot. 9 ("On October 15, 2025, Plaintiffs sued in the Court of Federal Claims seeking damages for EPA's breach of their SFA grants."). The savings statute does not change that single avenue of relief.

### C. EPA's Termination of SFA Grants Did Not Violate Any Constitutional Doctrine or Provision.

Plaintiffs' constitutional claim (Count III) fails as a matter of law. To start, this claim repackages Plaintiffs' statutory claim (Count I) and cannot survive as a separate, independent cause of action. That problem aside, EPA's termination decision did not violate the Appropriations Clause or any separation of powers doctrine.

---

[9] Plaintiffs' cited cases, *see* Pl. Mot. 14, do not support their position: they involve the application of the savings statute to impose liability under the contract-related enforcement provisions of a repealed law. *See De La Rama S. S. Co. v. United States*, 344 U.S. 386, 387 (1953) (applying 1 U.S.C. § 109 because the repealed War Risk Insurance Act of 1940 included "enforcing provisions" "that [had] special relation to" the policy issued under the statute); *Allen v. Grand Cent. Aircraft Co.*, 347 U.S. 535, 554 (1954) (applying 1 U.S.C. § 109 to allow government's action under expired enforcement provisions of the Defense Production Act of 1950). By contrast, Section 134 does not have any such contract-related enforcement provisions.

[10] EPA also has post-termination obligations to reimburse grantees for pre-termination and closeout costs through the closeout process, as explained in the Termination Notice. *See, e.g.*, Termination Notice at WD_Wash_000586.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

An executive agency action that allegedly violates a statute is not *ipso facto* a constitutional violation. *Dalton v. Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the claimants—like Plaintiffs here—argued that, *because* agency officials violated a statute on which the Executive's decision rested, the Executive thereby "act[ed] in excess of his statutory authority" and therefore "violate[d] the constitutional separation-of-powers doctrine." *Id*. at 471–72. But the Supreme Court rejected the claimants' effort to "eviscerat[e]" the well-established "distinction between claims that an official exceeded his *statutory* authority, on the one hand, and claims that he acted in violation of the *Constitution*, on the other." *Id*. at 474 (emphasis added). As the Court explained, its "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. So too here.

Plaintiffs argue that EPA's termination decision "subvert[ed]" Congress's intent under OBBBA. *See* Pl. Mot. 17 (citation omitted). That is the same assertion Plaintiffs make in support of Count I, their claim that Defendants exceeded their statutory authority under OBBBA. *Compare* FAC. ¶¶ 137–42 (alleging in Count I that EPA "unlawfully exceed[ed] Defendants' statutory authority under [OBBBA § 60002]") *with id.* ¶¶ 164–68 (alleging in Count III that EPA "contravene[d] [Section 60002]'s plain language and Congress's legislative intent"). Because Plaintiffs' constitutional claim repackages their statutory claim, *Dalton* squarely applies, and the constitutional claim cannot survive. *See Glob. Health Council v. Trump*, 153 F.4th 1, 13–17 (D.C. Cir. 2025) (holding separation of powers claim in case challenging grant terminations was not cognizable under *Dalton*); *Sustainability Inst.*, 165 F.4th at 829–32 (rejecting separation of powers and Presentment Clause claims concerning terminated federal grants).

*Dalton* aside, Defendants did not violate the Appropriations Clause or the separation of powers doctrine. The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

This requires that "the payment of money from the Treasury" "be authorized by a statute." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). The separation of powers doctrine likewise recognizes that the Constitution "grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018).

EPA's termination decision did not violate these principles. Congress appropriated $7 billion for EPA to "make grants, on a competitive basis" by September 2024 to advance solar energy in low-income areas. 42 U.S.C. § 7434(a)(1) (repealed). EPA complied with this directive. *See* Pl. Mot. 17. After doing so, EPA retained discretion to oversee and manage the SFA grants according to their terms and federal law. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014) ("The power of executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law's administration."). Congress through OBBBA then rescinded funding for EPA to administer the SFA grants and repealed the SFA program's authorizing statute, including the provision authorizing the use of "amounts otherwise available." 42 U.S.C. § 7434(a) (repealed). EPA's decision to terminate the SFA grants under 2 C.F.R. § 200.340 after that repeal and rescission does not implicate the Appropriations Clause or any separation of powers doctrine. Congress knew EPA had a right to terminate the grants per their terms and under that regulation.[11] Yet Congress did nothing to restrict that contractual right. EPA would have undermined congressional intent by shifting funds from other ongoing programs to administer the existing SFA grants. *See United States v. MacCollom*, 426 U.S. 317, 321 (1976) ("The established rule is

---

[11] The termination regulation, 2 C.F.R. § 200.340, is part of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards ("UAR"), which existed years before Congress passed Section 134 and OBBBA. *See* 31 U.S.C. § 503(a)(2) (authorizing OMB to establish governmentwide financial policies, including the UAR) (effective Dec. 12, 2017); 2 C.F.R. 1500.2 (EPA's adoption of UAR to give "regulatory effect to the OMB guidance as supplemented by this part" through the Administrator's authority under 5 U.S.C. § 301) (effective Nov. 12, 2020).

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress.") (citation omitted). For these reasons, Plaintiffs' Count III fails.

### D.    EPA's Decision to Terminate SFA Grants Was Not Arbitrary or Capricious.

Plaintiffs' APA arbitrary and capricious claim (Count II) fails as a matter of law, as EPA rationally explained its decision to terminate the SFA grants. A court's review of agency action under the APA "is narrow and deferential." *California ex. rel. Becerra v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020) (citation omitted). At bottom, the APA requires only that agency action be "reasonable and reasonably explained." *F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). A court must uphold an agency's action if it has "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Becerra*, 950 F.3d at 1096 (citation omitted). "This requirement is satisfied when the agency's explanation is clear enough that its path may reasonably be discerned," "even where an agency's decision is 'of less than ideal clarity.'" *Id.* (quoting *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)).

EPA's termination decision was "reasonable and reasonably explained." *Prometheus*, 592 U.S. at 423. As EPA observed, OBBBA repealed Section 134 and stripped EPA of the designated funding to administer the SFA grants going forward. Recommendation at WD_Wash_000089. EPA thus reasonably concluded that it "no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients." *Id*. EPA then explained this decision to the SFA grantees. *See, e.g.*, Termination Notice at WD_Wash_000585–87.

EPA reached this conclusion after it "examined the relevant considerations" and "articulated a satisfactory explanation for its action," *Becerra*, 950 F.3d at 1096, as reflected in the Recommendation, dated August 7, 2025. *See* Recommendation at WD_Wash_000089–96.

DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

28

First, EPA considered the reliance interests of the grant recipients and intended beneficiaries. *Id.* at WD_Wash_000092. In doing so, EPA recognized that many grant recipients had "not yet begun to plan projects or have made minimal progress toward planning such projects," and had "not yet incurred substantial fixed or long-term obligations" in reliance on SFA funds. *Id.* EPA also recognized that "individual household beneficiaries" did not have "meaningful reliance interests" at that time, because the pass-through structure of the program (with most funds going to recipients then passed through to subrecipients, contractors, individuals, etc.) meant that "on the ground benefits" had not been realized yet. *Id.* And for any "on-the-ground projects" that had incurred allowable pre-termination expenses, EPA could reimburse those expenses through the closeout process. *Id.*

EPA then considered the reliance interests of the domestic solar industry. *Id.* at WD_Wash_000094. It recognized that impacts from SFA termination would be "significantly lessened by the prior administration's decision to grant waivers" under the Build America, Buy America Act. *Id.* It also concluded that the solar industry was a sophisticated market; the market participants would know that SFA was subject "to change based on congressional action"; and the industry would be minimally impacted given the early stage of the program. *Id.*

EPA also considered alternatives to termination, such as using funding dedicated to other programs to administer the SFA grants, and EPA reasonably concluded that "[s]hifting any funding from these other programs would result in a significant shortfall in administration and oversight capabilities"—particularly given the sheer size of the SFA program compared to all other much smaller EPA programs. *Id.* at WD_Wash_000095.[12]

---

[12] Plaintiffs disagree with EPA's decision not to use other funds. *See* Pl. Mot. 24. But Plaintiffs cite to no authority (beyond the repealed Section 134) requiring or giving EPA authority to use such funds. *Id.* And even if EPA could do so, "[i]t is not for [the court] to 'second-guess'" what the agency chooses to prioritize. *Env't Def. Fund v. EPA*, 922 F.3d 446, 457 (D.C. Cir. 2019) (quoting *WildEarth Guardians v. EPA*, 751 F.3d 649, 656 (D.C. Cir. 2014)); *see also Lincoln v. Vigil*, 508 U.S. 182, 183 (1993) ("[W]here Congress merely appropriates lump-sum amounts

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

29

Plaintiffs' arguments to the contrary are unavailing.  EPA does not advance a "post-hoc" rationale for exercising its right to terminate the grants under 2 C.F.R. § 200.340.  Pl. Mot. 19.  In the Recommendation, EPA acknowledges that "the grant agreements provide the mechanism for termination"—citing to the termination regulations.  *See* Recommendation at WD_Wash_000093 (citing 2 C.F.R. § 200.339 and 2 C.F.R. § 200.340).  EPA therefore cited that "mechanism for termination" in its Termination Notice to each grantee.  *See, e.g.*, Termination Notice at WD_Wash_000586 (subject: "Termination … under 2 CFR 200.340").  EPA's argument now (and in prior briefing) that the regulation allowed EPA to terminate is anything but "post-hoc."

EPA's termination decision was not "contrived."  Pl. Mot. 19–20.  As reflected in the record, *see* Recommendation at WD_Wash_000089–96, EPA terminated the SFA grants because OBBBA repealed Section 134 and rescinded the administrative funding for it.  EPA had no other express authority or policy interest in shifting money from other programs to support SFA.  Plaintiffs' argument to the contrary relies on non-record evidence, *i.e.*, an online X.com post, a September 2024 Politico.com article, and an amicus brief, *see* Pl. Mot. 19 (citing So Decl. Exs. 4, 9, and 11), and it fails for that reason alone.  *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024) ("We assess the lawfulness of agency action based on the reasons offered by the agency.").[13]

Lastly, Plaintiffs complain that EPA failed to consider their reliance on SFA funds to meet their state-level climate energy goals and justify prior staffing expenditures.  Pl. Mot. 21–22.  But

---

without statutory restriction, a clear inference may be drawn that it does not intend to impose legally binding restrictions . . . .").

[13] The window of time between the email transmission of the Recommendation and the subsequent decision does not show a "pretense and lack of reasoned decision-making."  Pl. Mot. 20.  The Recommendation—an eight-page document with numerous factual and legal citations represents one step in a deliberative process.  *See Blue Mountains*, 99 F.4th at 445 (recognizing that "official agency actions" are entitled to a "presumption of regularity").

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

the APA review standard does not require EPA to consider every possible reliance interest. *See, e.g.*, *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 551 (1978) (holding that agency's assessment does not fail simply "because the agency failed to ferret out every possible alternative, regardless of how uncommon or unknown that alternative may have been at the time the project was approved").[14]

For all these reasons, the Court should conclude that EPA "examined the relevant considerations and provided a reasoned analysis." *Becerra*, 950 F.3d at 1097.  Judgment should be entered for Defendants on Count II.

### III.    Any Remedy Should Be Limited to Remand.

Even if the Court were to conclude that it has jurisdiction and EPA's termination of the SFA grants was unlawful, the Court should not award an injunction because Plaintiffs have not shown that remand is insufficient or met their burden for injunctive relief.

#### A.    Plaintiffs Have Not Shown Remand is Insufficient.

For the reasons already discussed, Plaintiffs' claims lack merit.  But even if the Court concludes otherwise, the Court should limit any remedy to remand.  After concluding that an agency has violated the APA, "the proper course, except in rare circumstances, is to remand to the agency." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  A court should not issue a permanent injunction unless it would "have [a] meaningful practical effect independent of [the policy's] vacatur." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  An injunction only has that effect if vacatur is insufficient to redress respondents' injury. *Id.* at 165–66.  Here, Plaintiffs' requested injunction would simply stop EPA from implementing the so-

---

[14] Plaintiffs also complain that Defendants fail to justify the "Deobligation Directive." Pl. Mot. 24.  As previously noted, *see supra* at 19–20, "deobligation" was not a separate agency action.  Rather, it was an internal agency practice and consequence of EPA's decision to terminate the SFA grants; in other words, deobligation is what happens following an agency's termination of any grant. *See* SFA Grant at WD_Wash_000575 (providing that uncommitted funds should be "de-obligated" if EPA "partially or fully terminates" the SFA grant).

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

called Program Termination and Deobligation Directives. Proposed Order 2. The requested injunction is thus repetitive of Plaintiffs' request for vacatur of those directives, *see id.*, and should not issue.

### B. Plaintiffs Fail to Justify a Permanent Injunction.

"An injunction is an 'extraordinary remedy never awarded as of right.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Plaintiffs have not met their burden for permanent injunctive relief, as they have not shown either (1) that they have "suffered irreparable injury" for which "the remedies available at law are inadequate," or (2) that the equities and public interest favor an injunction.[15] *Hum. Rts. Def. Ctr., Inc. v. Uttecht*, 161 F.4th 1141, 1154 (9th Cir. 2025); *see Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance of equities and public interest merge when relief is sought from the government).

#### 1. The Discrete, Months-Old Termination of a Repealed Program Presents No Redressable Irreparable Injury.

"The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Plaintiffs have failed to identify irreparable injury supporting injunctive relief for several reasons. First, Plaintiffs' purported harm cannot support injunctive relief because it cannot be remedied by any injunction issued in this case. *See Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) (injunction must be "tailored to remedy the specific harm alleged"). Plaintiffs seek an injunction preventing EPA from terminating the SFA program or removing funds from Plaintiffs' ASAP accounts. Proposed Order 2. However, as Plaintiffs admit, the purported harm they identify results from their "loss of federal funding," Pl. Mot. 27,

---

[15] Moreover, "[c]ourts should not enjoin conduct that has not been found to violate any law." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012). Thus, if the Court determines that only the "Program Termination Directive" was contrary to law, the Court cannot issue an injunction focused on the "Deobligation Directive," and vice versa.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

meaning the loss of their SFA grants.  Indeed, Plaintiffs' only rights or interests in the SFA program and money stem solely from their SFA grant agreements.  *See supra* at 10–17.  This Court cannot adjudicate those contracts, *see id.*, as Plaintiffs implicitly concede, *see* Pl. Mot. 12.  Because this Court lacks jurisdiction over the grant terminations, the Court cannot order an injunction based on harm from the grant terminations.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (district court cannot issue an injunction if the claimed injury is not related to the challenged conduct); *Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) (a "mismatch" between plaintiff's claims and the "dangers she hopes to remedy" is fatal to a request for injunctive relief).

Second, Plaintiffs have identified no "threat of continuing violations" supporting permanent injunctive relief.  *Sahm v. Select Portfolio Servicing, Inc.*, No. 2:22-CV-00165, 2022 WL 1203825, at *1 (W.D. Wash. Apr. 22, 2022) (quotations omitted).  "As a general rule, past wrongs are not enough for the grant of an injunction; instead, an injunction will only issue if the wrongs are ongoing or likely to recur."  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020) (alterations and quotations omitted).  Plaintiffs' purported harm stems from discrete grant terminations that happened seven months ago, and they have failed to identify any "continuing violations" since that time.  *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) ("[A]n injunction should not be granted as punishment for past acts where it is unlikely that they will recur.") (quotations omitted).  Indeed, Plaintiffs argue to the contrary.  In their effort to maintain jurisdiction, Plaintiffs admit that "once EPA knows what the law is, it will follow it."  Pl. Mot. 29.

Third, Plaintiffs have not shown that monetary damages available in the Court of Federal Claims offer an inadequate remedy.  Monetary damages are the sole remedy Congress has chosen to provide in contract matters.  Though masqueraded as injury to Plaintiffs' "sovereign interest in addressing climate goals," loss of "programmatic support and technical assistance," and stymied

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

33

"solicitations and contracts," Pl. Mot. 26–27, Plaintiffs' purported harm is simply that without the SFA grants, Plaintiffs will not receive grant funding or performance under the agreements.[16] *See* Pl. Mot. 27 (admitting harm is "loss of federal funding"). The loss of grant funding is monetary injury capable of being remedied by a damages award in the Court of Federal Claims.[17] *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("[M]onetary injury is not normally considered irreparable.") (citation omitted); *Pure Wafer Inc. v. City of Prescott*, 275 F. Supp. 3d 1173, 1177 (D. Ariz. 2017) ("[A] permanent injunction will rarely issue based on a breach of contract.")

Finally, Plaintiffs have failed to prove their harm. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (plaintiffs "must *demonstrate*," not "merely allege," an immediate and concrete irreparable injury) (emphasis in original). Plaintiffs argue the loss of SFA funding will result in the loss of "trust and goodwill" of "[t]ribal and low-income residents." Pl. Mot. 28. But to support that argument, Plaintiffs simply show that they collaborated with tribes and engaged in community outreach. *See id.* at 4. Plaintiffs offer no evidence of tribal or low-income residents deriding Plaintiffs or refusing to work with Plaintiffs on other projects in

---

[16] For example, Plaintiffs clarify that the technical assistance at issue was "in-kind" assistance "awarded" through the grants. Pl. Mot. 3.

[17] The cases cited by Plaintiffs, Pl. Mot. 26, are inapposite. *Kansas v. United States*, 249 F.3d 1213, 1223 (10th Cir. 2001), and *New York v. Trump*, 490 F. Supp. 3d 225, 244 (D.D.C. 2020), concerned states' sovereign interests in governing land and protecting people within their borders—not non-sovereign interests in participating in a federal grant program. While *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), challenged a decision to allow logging of trees in a national forest, termination of the SFA grants does not directly affect the environment; it simply halts federal funding of certain solar projects. Unlike *American Trucking Associations, Inc. v. City of Los Angeles*, Plaintiffs here face no "Hobson's choice" between signing an unconstitutional agreement or potentially losing their businesses. 559 F.3d 1046, 1057–58 (9th Cir. 2009). And *Washington v. U.S. Department of Commerce*, No. C25-1507, 2025 WL 2978822, at *4–5 (W.D. Wash. Oct. 22, 2025), relies on the Ninth Circuit's August 21, 2025 decision in *Thakur v. Trump*, 148 F.4th 1096, which has since been withdrawn and superseded, 163 F.4th 1198.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

34

the seven months since their grants were terminated.  Plaintiffs' mere speculation that EPA's termination will somehow redound on Plaintiffs' reputations does not support injunctive relief. *See Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) ("[A] finding of reputational harm may not be based on 'pronouncements [that] are grounded in platitudes rather than evidence.'") (quoting *Herb Reed Enters. v. Fla. Entm't Mgmt. Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)).

> 2. *The Public Interest is Not Served By Devoting Resources to a Congressionally Defunct Program.*

Furthermore, no injunction should issue because Plaintiffs have not shown that the equities and public interest favor an injunction.  Plaintiffs proffer a circular argument: if they prevail on the merits, the public interest supports enjoining the unlawful agency action.  *See* Pl. Mot. 28.  But that just repackages the merits arguments, which, if successful, will be redressed by remand.

On the other hand, the injunction would harm the government.  "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).  This is especially true here.  Because the Court lacks jurisdiction to restore the grants, any injunction to restore a "program" would simply force EPA to maintain a meaningless shell of a program.  Requiring EPA to reinstate and fund an aimless, congressionally defunct program is contrary to "the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources."  *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976); *see also Brock v. Pierce Cnty.*, 476 U.S. 253, 262 (1986) ("[T]he protection of the public fisc is a matter that is of interest to every citizen.").  An injunction is also against public interest because it would interfere with the agency's ability to effectuate OBBBA § 60002 in accordance with Congress's will.

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

35

**IV.    Any Equitable Relief Should Be Narrowly Tailored.**

If the Court nonetheless issues a permanent injunction, it "must be tailored to remedy the specific harm alleged." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (citation omitted); *see Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 857 (9th Cir. 2023) ("[A]n overbroad injunction is an abuse of discretion.") (citation omitted).  A district court does not have equitable powers to issue a "universal injunction," barring the defendant from enforcing "a law or policy against anyone." *Trump v. Casa, Inc.*, 606 U.S. 831, 837 (2025) (emphasis in original).  While courts in equity may provide the aggrieved party with "complete relief," the concept of "'complete relief' is not synonymous with 'universal relief.'" *Id.* at 851; *see also id.* at 844 ("Neither declaratory nor injunctive relief … can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs.") (alterations and quotations omitted).

Plaintiffs seek the equitable remedies of vacatur, declaratory judgment, and injunctive relief with respect to the SFA program as a whole, not just with respect to Plaintiffs' grants.  Such relief would declare rights and provide relief with respect to SFA grantees who are not parties to this lawsuit, and who may not be challenging the termination of their SFA awards.  If the Court concludes that it has jurisdiction notwithstanding *California* and *NIH*, and concludes that Plaintiffs have prevailed on the merits, the remedy should be narrowly tailored, vacating EPA's termination decision only with respect to Plaintiffs and remanding the case to the agency to issue a new decision consistent with the Court's opinion.

**CONCLUSION**

For these reasons, Defendants respectfully request that Plaintiff's Motion for Summary Judgment be Denied, and that judgment be entered in favor of Defendants.

Dated: March 17, 2026

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRK T. MANHARDT
Director

KEVIN P. VANLANDINGHAM
Assistant Director

/s/___Tiffiney F. Carney__
TIFFINEY F. CARNEY
I-HENG HSU
BETHANY R. THERIOT
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521
tiffiney.carney@usdoj.gov
i-heng.hsu@usdoj.gov
bethany.theriot@usdoj.gov
*Attorneys for the Defendants*

## LOCAL RULE 7(e)(6) CERTIFICATION

I certify that this memorandum contains 12,408 words in compliance with the Local Civil Rules and the Court's order dated January 28, 2026 (Dkt. #124).  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

/s/ Tiffiney F. Carney

Tiffiney F. Carney
Trial Attorney
U.S. Department of Justice

DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521