The Honorable Tiffany M. Cartwright

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

STATE OF ARIZONA, *et al.*,

Plaintiffs,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,

Defendants.

Case No. 2:25-cv-02015-TMC

**BRIEF OF SENATORS WHITEHOUSE, SANDERS, MERKLEY, REPRESENTATIVES FLETCHER, CLEAVER, AND 44 ADDITIONAL MEMBERS OF CONGRESS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Vanessa R. Waldref, WSBA # 44396
SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822
VWaldref@singletonschreiber.com

Alexandra L. St. Romain (*pro hac vice pending*)
Center for Applied Environmental Law and Policy
712 H Street NE, Suite 90006
Washington, DC 20002
(973) 477-3766
alex.st.romain@caelp.org

*Counsel for Members of Congress* Amici Curiae

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

INTEREST OF *AMICI CURIAE* .......................................................................1

INTRODUCTION ...............................................................................................2

ARGUMENT.......................................................................................................3

I.      The OBBBA does not provide cover for EPA's unlawful cancellation of the Solar for All program. ..........................................................................................................3

        A.      The OBBBA only rescinded unobligated funds. ......................................4

        B.      The GGRF repeal addressed potential future re-obligation, not currently obligated grants.........................................................................................7

        C.      The OBBBA neither sanctions EPA's unlawful termination of Solar for All nor renders that termination unreviewable. ......................................9

II.     The Court can vacate EPA's unlawful termination of Solar for All...................11

CONCLUSION..................................................................................................12

APPENDIX: LIST OF *AMICI CURIAE*............................................................14

BRIEF OF MEMBERS OF CONGRESS                    ii
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

# TABLE OF AUTHORITIES

**Cases**

*BedRoc Ltd. v. United States*,
   541 U.S. 176 (2004).................................................................................................... 4

*Biden v. Nebraska*,
   600 U.S. 477 (2023).................................................................................................. 10

*City & Cnty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ............................................................................... 2, 4

*Climate United Fund v. Citibank, N.A.*,
   778 F. Supp. 3d 90 (D.D.C. 2025).............................................................................. 8

*Climate United Fund v. Citibank, N.A.*,
   154 F.4th 809 (D.C. Cir. 2025), *vacated and reh'g granted*, 2025 WL 3663661
   (D.C. Cir. Dec. 17, 2025)........................................................................................... 3

*Immigrant Defs. L. Ctr. v. Noem*,
   145 F.4th 972 (9th Cir. 2025) ................................................................................... 11

*INS v. Chadha*,
   462 U.S. 919 (1983)................................................................................................... 11

*In re Aiken Cnty.*,
   725 F.3d 255 (D.C. Cir. 2013)..................................................................................... 2

*Keystone-Conemaugh Projects LLC v. EPA*,
   100 F.4th 434 (3d Cir. 2024) ..................................................................................... 11

*Lamie v. U.S. Trustee*,
   540 U.S. 526 (2004)..................................................................................................... 5

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*,
   595 U.S. 109 (2022) ................................................................................................... 10

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022), *overruled on other grounds*, *United States v. Texas*, 599 U.S.
   670 (2023)................................................................................................................... 11

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014)..................................................................................................... 9

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

*Vartelas v. Holder*,
    566 U.S. 257 (2012)................................................................................................ 5

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 1................................................................................... 2, 4

U.S. Const. art. I, § 9, cl. 7................................................................................... 2, 4

**Statutes**

2 U.S.C. § 683(b) ....................................................................................................... 9

31 U.S.C. § 1552 ........................................................................................................ 9

42 U.S.C. § 7434 ............................................................................................... 2, 4, 10

H.R. Res. 7148, 119 Cong. (2026).......................................................................... 10

Pub. L. No. 117-169, § 60103, 136 Stat. 1818 (2022)............................................... 2

Pub. L. No. 117-169, § 60105, 136 Stat. 1818 (2022)............................................... 7

Pub. L. No. 117-169, § 60109, 136 Stat. 1818 (2022)............................................... 7

Pub. L. No. 119-21, § 60002, 139 Stat. 72 (2025)................................................ 2, 4

Pub. L. No. 119-74, 140 Stat. 5 (2026).................................................................... 10

**Other Authorities**

Alex DeMarban, *EPA axes program that would have injected $125 million in Alaska for small-scale solar projects*, Anchorage Daily News (Aug. 24, 2025), https://perma.cc/PR54-JWYZ . 6

Bill Heniff Jr., Cong. Rsch. Serv., RL30862, *The Budget Reconciliation Process: The Senate's "Byrd Rule"* (Sep. 28, 2022), https://www.congress.gov/crs-product/RL30862 ....................... 7

Cong. Budget Off., *CBO Explains How It Estimates Savings From Rescissions* (May 26, 2023), https://www.cbo.gov/publication/59209 ........................................................ 9

Cong. Budget Off., *Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline* (June 29, 2025), https://www.cbo.gov/publication/61534 ........................................................ 5

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

iv

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

Donald J. Trump, *Former President Trump Remarks at the Economic Club of New York*, C-SPAN (Sep. 5, 2024), https://www.c-span.org/program/campaign-2024/former-president-trumpremarks-at-the-economic-club-of-new-york/648558 ....................................................... 4

Gillian E. Metzger, *Taking Appropriations Seriously*, 121 Colum. L. Rev. 1075 (2021) ………11

H. Comm. on Energy & Com., *Full Committee Markup of Budget Reconciliation Text* (May 13, 2025), https://energycommerce.house.gov/events/full-committee-markup-of-budget-reconciliation-text .................................................................................................... 6

*In re Funding of Replacement Contracts*, 60 Comp. Gen. 591 (1981)........................................ 12

*In re Navajo Nation Oil & Gas Co.*, B-270723, 96-1 Comp. Gen. Proc. Dec. ¶ 187, 1996 WL 174689 (Comp. Gen. Apr. 15, 1996) ..................................................................... 12

Lee Zeldin (@EPALeeZeldin), X (Aug. 7, 2025, 2:07 PM), https://x.com/epaleezeldin/status/1953518426602803684 ......................................................... 4

Letter from Sen. Sheldon Whitehouse, Ranking Mem. of S. Comm. on Env't & Pub. Works, *et al.*, to Lee Zeldin, Adm'r of U.S. Env't Prot. Agency (Aug. 14, 2025), https://perma.cc/9YL9-QFPL ................................................................................... 5, 7

*The Federalist No. 47* (James Madison) (Clinton Rossiter ed., 1961) .......................................... 2

U.S. Env't Prot. Agency, Off. of Inspector Gen., *Audit of the EPA's Greenhouse Gas Reduction Fund Solar for All Program* (Jan. 7, 2026), https://perma.cc/M2CJ-VZJC ............................. 10

U.S. Env't Prot. Agency, *About EPA Office of Inspector General*, (Dec. 20, 2025), https://perma.cc/F2YF-6G2A ................................................................................... 10

U.S. Gov't Accountability Off., GAO-04-261SP, *Principles of Federal Appropriations Law*, 4th ed. (Washington, D.C.: Jan. 2004).............................................................................. 9

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

v

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* listed in the attached appendix are 49 members of Congress. *Amici curiae* include the Ranking Member of the Senate Committee on Environment and Public Works, which is the committee with jurisdiction over the Greenhouse Gas Reduction Fund ("GGRF"); the original champions of the Solar for All program and GGRF in Congress; the Ranking Member of the Senate Committee on the Budget; multiple members of the Senate and House Committees on Appropriations, which have jurisdiction over appropriations and recissions; and other members of Congress.

*Amici* have a strong interest in ensuring that Congress's statutory mandates and plenary power over the purse are protected. They submit this brief because of the important separation-of-powers issues implicated by the Environmental Protection Agency's ("EPA's") unauthorized, wholesale termination of obligated Solar for All grants. As members of Congress, *amici curiae* are well-positioned to provide insights that may assist the Court in evaluating the parties' arguments concerning Congressional intent, the appropriations process, and separation-of-powers principles.

---

[1] No party or counsel for any party authored this brief in whole or in part, no party or party's counsel contributed any money intended to fund the preparation or submission of this brief, and no person other than *amici* or their counsel contributed money intended to fund this brief. *See* L.C.R. 7(*o*)(4); Fed. R. App. P. 29(a)(4)(E) (*amicus* brief disclosure requirements).

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

1

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**INTRODUCTION**

The Founders divided power between the three branches to prevent "accumulation of all powers, legislative, executive, and judiciary, in the same hands," because such accumulation "may justly be pronounced the very definition of tyranny." *The Federalist No. 47*, at 301 (James Madison) (Clinton Rossiter ed., 1961).  The Constitution grants the power of the purse to Congress, not the President or his agents.  U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause).  Congress obligates funds for specific programs, and an agency "may not decline to follow a statutory mandate or prohibition simply because of policy objections." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) (quoting *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.)).

This case concerns EPA's ongoing attempts to evade its statutory obligations, aggrandizing executive power at the expense of settled legislative prerogatives.  As part of the Inflation Reduction Act ("IRA") of 2022, Congress created the GGRF and appropriated $27 billion—$7 billion of which was designed to "enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies."  Pub. L. No. 117-169, § 60103, 136 Stat. 1818, 2065–67 (2022) (creating a new § 134 of the Clean Air Act, 42 U.S.C. § 7434).  EPA created the Solar for All program in accordance with this statutory directive and obligated all GGRF grant funding, including all $7 billion in Solar for All funding, before the program's statutory deadline of September 30, 2024.  In Section 60002 of the One Big Beautiful Bill Act ("OBBBA"), enacted after all grant funding had been obligated and authorization for this program had expired, Congress rescinded *unobligated* GGRF funds and repealed the GGRF. The only unobligated funds remaining at the time were $19 million that Congress had separately appropriated to EPA for GGRF administrative costs.  Yet, following the OBBBA's enactment, EPA Associate Deputy Administrator Travis Voyles instructed EPA staff to "terminate the Solar for All (SFA) program and existing grants."  Defs.' Admin. R., Dkt. #126-20, at 1.  EPA then sent every Solar for All grantee a near-identical termination notice, claiming that the OBBBA's rescission of unobligated administrative funding and repeal of the GGRF program justified

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

2

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

EPA's termination of the obligated grant funds. *See* Pls.' Mem. of Law in Supp. of Mot. for Summ. J., Dkt. #129, at 8 ("Pls.' MSJ").

EPA has provided "shifting, post-hoc, and unsupported allegations" to justify its termination of the GGRF programs, including Solar for All. *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 842 (D.C. Cir. 2025) (Pillard, J., dissenting), *vacated and reh'g granted*, 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025). EPA now seeks to avoid accountability for its unlawful cancellation of the Solar for All program, in violation of the plain text of the OBBBA and explicit Congressional intent.

The Solar for All funds were fully obligated by September 2024. Congress's subsequent repeal of the by-then expired GGRF program and rescission of unobligated administrative funds did not sanction EPA's wholesale elimination of the already obligated Solar for All program. EPA's elimination of the Solar for All program was not justified, and this Court should vacate EPA's wrongful terminations.

**ARGUMENT**

I.     **The OBBBA does not provide cover for EPA's unlawful cancellation of the Solar for All program.**

By its plain text, the OBBBA rescinded only *un*obligated funds and repealed the GGRF program *prospectively*. Congress could not have made clearer its intention to leave the already obligated Solar for All grants untouched, as evident in the statutory text and in contemporaneous statements. EPA nonetheless cancelled *all* Solar for All grants, claiming that the OBBBA justified that termination. EPA now argues that, regardless, the OBBBA renders its cancellation of the obligated Solar for All grants unreviewable. Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., Dkt. #102, at 18–19 ("Defs.' PI Opp'n"). It simply cannot be the case that an executive agency can unilaterally cancel a Congressionally mandated program in its entirety—and in violation of the terms of a reconciliation bill—and then use that same statute as cover to evade accountability for its unlawful action.

---

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

3

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**A.      The OBBBA only rescinded unobligated funds.**

Congress holds the power of the purse.  U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause).  When Congress obligates funds for specific programs, an agency's policy objections cannot override those Congressional mandates. *City & Cnty. of San Francisco*, 897 F.3d at 1232.  EPA has been vocal in its animosity to the Solar for All program, with Administrator Zeldin publicly calling Solar for All a "grift" and a "boondoggle" and announcing his intention to "end this program for good."  Lee Zeldin (@EPALeeZeldin), X (Aug. 7, 2025, 2:07 PM), https://x.com/epaleezeldin/status/1953518426602803684.  Yet EPA does not allege, or even suggest, in this Court that grantees acted in bad faith or committed fraud.  In pursuit of its single-minded quest to cancel Solar for All, which President Trump has derided as part of the "Green New Scam,"[2] EPA contends that OBBBA forecloses review of an action OBBBA did not authorize.

The OBBBA rescinded *unobligated* funds from numerous IRA grant programs, including unobligated GGRF funds.  In keeping with this pattern, the OBBBA section relating to the GGRF provided: "Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the *unobligated* balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act) are rescinded."  Pub. L. No. 119-21, § 60002, 139 Stat. at 154 (emphasis added).  This language largely tracks a pattern repeated throughout the OBBBA—the rescission of *un*obligated funds from numerous IRA grant programs.  While the GGRF language also included a prospective repeal, nothing suggests that the repeal changes the distinction between obligated and unobligated funds.

"The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there."  *BedRoc Ltd.*

---

[2] Donald J. Trump*, Former President Trump Remarks at the Economic Club of New York*, C-SPAN (Sep. 5, 2024), https://www.c-span.org/program/campaign-2024/former-president-trumpremarks-at-the-economic-club-of-new-york/648558 (21:05-21:35).

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

4

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

*v. United States*, 541 U.S. 176, 183 (2004).  In the absence of ambiguity or absurd results—neither of which is present here—courts decline to "read an absent word into the statute." *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004).  Thus, the OBBBA rescinded only unobligated GGRF funds (of which the only remaining funds were GGRF's administrative funds), and it did not create authority for EPA to cancel obligated grant funds.  The Solar for All grants were fully obligated and not within the scope of the OBBBA rescission on July 3, 2025.  And, in case there was any doubt, Section 60002 has no retroactive effect.  "[C]ourts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012).  Section 60002 contains no such unambiguous instruction.

The budget score from the non-partisan Congressional Budget Office ("CBO") reinforces this reading of the plain statutory text.  Lawmakers relied on CBO's "score," or the estimated cost or savings of each provision, to ensure the reconciliation bill met each committee's savings or spending instructions as set by the Budget Committees.  *See* Cong. Budget Off., *Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline* (June 29, 2025), https://www.cbo.gov/publication/61534.

When the repeal and rescission of unobligated GGRF funds was initially proposed in the Senate Environment and Public Works Committee, CBO scored the provision as saving $19 million of the original $30 million in funding appropriated separately from the grant programs for GGRF administration.  *Id.*  The upshot is that not a penny from the actual grant programs would be saved, because those funds were already obligated; only the unobligated administrative funds would be recoupable.  If the OBBBA had authorized EPA to claw back GGRF grant money that the federal government had already obligated, the budget score would have reflected savings of another $27 billion: $7 billion for Solar for All and $20 billion for the GGRF's green bank programs.  CBO further confirmed that repeal of the program language did not create any additional savings.  *See* Letter from Sen. Sheldon Whitehouse, Ranking Mem. of S. Comm. on

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

Env't & Pub. Works, *et al.*, to Lee Zeldin, Adm'r of U.S. Env't Prot. Agency (Aug. 14, 2025), https://perma.cc/9YL9-QFPL ("Sen. Whitehouse Letter").

Consistent with the statutory text and CBO's budgetary score, members of Congress confirmed that the OBBBA did not claw back obligated Solar for All grant funding or authorize EPA to do so.  During the House Committee on Energy & Commerce markup of the OBBBA on May 13, 2025, Congressman Morgan Griffith, then-Chair of the Subcommittee on Environment, stated:

> I just want to point out that these provisions that we are talking about only apply as far, as this bill is concerned, to the unobligated balances.  So if a grant was already given, as far as this bill is concerned, then that would still be going forward. . . .  [W]e can't rescind expenditures that have already been obligated.

H. Comm. on Energy & Com., *Full Committee Markup of Budget Reconciliation Text* (May 13, 2025).[3]  And after EPA cancelled the Solar for All program, the office of Senator Lisa Murkowski, Chair of the Senate Appropriations Committee's Subcommittee on Interior, Environment, and Related Agencies, reiterated the impropriety of that cancellation and emphasized that EPA must reinstate the grants:

> We disagree with EPA's termination of all obligated funding under the Solar For All program.  The reconciliation bill explicitly rescinded unobligated balances and we had assurances from the agency through the morning of the announcement that no Alaska recipients would be harmed.  *After an investigation and potentially litigation, we expect EPA to reverse course and reinstate previously obligated funds for this program.*

Alex DeMarban, *EPA axes program that would have injected $125 million in Alaska for small-scale solar projects*, Anchorage Daily News (Aug. 24, 2025), https://perma.cc/PR54-JWYZ (emphasis added).

---

[3] https://energycommerce.house.gov/events/full-committee-markup-of-budget-reconciliation-text.

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

6

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**B.    The GGRF repeal addressed potential future re-obligation, not currently obligated grants.**

EPA mischaracterizes Section 60002's repeal of the GGRF language as enabling the Agency to claw back existing obligations.  Defs.' PI Opp'n, Dkt. #102, at 22–23.  But Congress repealed the GGRF language to address the much narrower scenario of potential re-obligation.

Congress enacted the OBBBA through the budget reconciliation process.  Under the Senate's "Byrd Rule," only provisions with budgetary impacts may be included in reconciliation bills.  *See* Bill Heniff Jr., Cong. Rsch. Serv., RL30862, *The Budget Reconciliation Process: The Senate's "Byrd Rule"* (Sep. 28, 2022), https://www.congress.gov/crs-product/RL30862.  As described above, the CBO scored Section 60002 as having $19 million in budgetary savings— the amount saved by the rescission of the unobligated administrative funds that remained in the GGRF program—and confirmed that the repeal language did not create any additional savings. *See* Sen. Whitehouse Letter.

If the GGRF repeal had no budgetary impact, then how did it make it into a reconciliation bill, notwithstanding the Byrd Rule?  The GGRF repeal survived the Byrd Rule because of the potential for a limited "re-obligation."  The initial GGRF appropriation required EPA to issue all Solar for All grants by September 30, 2024.  That early deadline to obligate the GGRF funding was an outlier in the IRA; the statutory deadlines for other EPA-jurisdictional IRA programs were years later.[4]  Sometimes, however, funds are re-obligated, for instance if a grantee does not spend its entire grant or if EPA *lawfully* terminates a grant.  Re-obligation was a salient possibility in the case of the GGRF program because EPA had already sought to cancel the other two GGRF programs, the National Clean Investment Fund and Clean Communities Investment Accelerator.  In fact, litigation over those attempted cancellations was already in progress when

---

[4] *See, e.g.*, Pub. L. No. 117-169, § 60105, 136 Stat. 1818, 2067 (2022) (Air Pollution Monitoring Grants) (authorizing a grant program until September 30, 2031); Pub. L. No. 117-169, § 60109, 136 Stat. 1818, 2093 (2022) (Funding for Hydrofluorocarbons Phaseout) (authorizing a grant program until September 30, 2026).

the OBBBA was passed.[5] As such, there was a known possibility that if a court upheld EPA's terminations of those grant programs, then the $20 billion in funding from those programs might revert to EPA. And if that funding reverted to EPA with the GGRF program still on the books, then EPA would likely have to issue replacement grants. In other words, repealing the GGRF language addressed that possibility, ensuring that if EPA prevailed in the *Climate United* litigation, then the $20 billion would revert to the Treasury via funds that could no longer be re-obligated and would therefore be considered savings under a budgetary impact analysis.[6] It is due to this potential $20 billion savings that the repeal provision of Section 60002 did not run afoul of the Byrd Rule. The repeal thus reflects Congress's decision that if EPA were to prevail in the *Climate United* litigation, the Agency should not be required to start the obligations process anew for those grant programs.

In contrast, at the time Congress passed the OBBBA, EPA had not yet attempted to terminate the fully obligated Solar for All program. So there is simply no way that Congress could have expected—much less intended—that the repeal would sanction EPA's cancellation of Solar for All and attempted claw back of the $7 billion in obligated Solar for All grant funds.

EPA's argument here puts the cart before the horse. Recognizing that the repeal had a budgetary impact *in case* a court ruled in EPA's favor in the *Climate United* litigation is not the same as EPA's argument here—that EPA's termination of the Solar for All program means a court *must* rule in EPA's favor and refrain from judicial review. The fact that Congress repealed GGRF so that EPA would not need to redistribute lawfully re-obligated funding does not provide cover for EPA to unlawfully terminate grants and then claim that Plaintiffs have no recourse.

---

[5] *See Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 116 (D.D.C. 2025) ("*Climate United*").

[6] This outcome was only a possibility if EPA prevailed in the litigation. If the plaintiffs prevailed, EPA's terminations of the GGRF green bank programs would be vacated. *See infra* Part II.

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

8

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**C.      The OBBBA neither sanctions EPA's unlawful termination of Solar for All nor renders that termination unreviewable.**

Just as the OBBBA did not authorize EPA to terminate obligated Solar for All grants, the Act did not foreclose judicial review of EPA's unlawful termination.  It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate."  *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).  Yet EPA goes even further here, inventing authority that simply cannot be found in the text of the OBBBA.  EPA's claim that the OBBBA prevents this Court from redressing Plaintiffs' injuries by vacating EPA's elimination of the Solar for All program, Defs.' PI Opp'n, Dkt. #102, at 18–19, is simply wrong.

Rescissions are a relatively commonplace tool Congress uses to retake control of unobligated funds.  But that tool cannot extend to already-obligated funds; that is, funds for which another party may have a legal claim.[7]  *See* U.S. Gov't Accountability Off., GAO-04-261SP, *Principles of Federal Appropriations Law*, 4th ed., ch. 5, § 2.a (Washington, D.C.: Jan. 2004) ("Congress may pass a law to rescind the unobligated balance of a[n] . . . appropriation at any time prior to the accounts closing."); Impoundment Control Act, 2 U.S.C. § 683(b) (describing rescission as relating to amounts "available for obligation"); Cong. Budget Off., *CBO Explains How It Estimates Savings From Rescissions* (May 26, 2023), https://www.cbo.gov/publication/59209 (explaining that a rescission will not impact funds that are obligated).

Nor did the rescission of those unobligated administrative funds deprive EPA of oversight authority over the already obligated Solar for All grants.  To start, the $30 million for

---

[7] Congress has separately established a procedure for closing accounts, five years after a Congressional authorization ends.  *See* 31 U.S.C. § 1552.  That housekeeping provision enables the cancellation of even obligated funds at that point, on the theory that if there is still money in the account, it is unlikely to be needed to meet obligations.  In the case of Solar for All and the other GGRF programs, this provision would not go into effect until five years from September 30, 2024, and thus this procedure did not apply.

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

9

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

EPA administration provided in the GGRF was never intended to be the sole source of EPA's oversight authority over the program: the statute specifically states that the $30 million was to be used for "administrative costs," "[i]n addition to amounts otherwise available."  42 U.S.C. § 7434(a)(4) (2022) (repealed 2025).  EPA itself expected to exhaust those funds during fiscal year 2026, so in any case, EPA would have ultimately needed to draw on other funding sources for oversight.  *See* U.S. Env't Prot. Agency, Off. of Inspector Gen., *Audit of the EPA's Greenhouse Gas Reduction Fund Solar for All Program* 5 (Jan. 7, 2026), https://perma.cc/M2CJ-VZJC.  EPA has other sources of oversight funds, including those available to its Office of Inspector General, whose mission is to "detect and prevent fraud, waste, and abuse" and to "conduct and oversee audits, evaluations, and investigations."  U.S. Env't Prot. Agency, *About EPA Office of Inspector General* (Dec. 20, 2025), https://perma.cc/F2YF-6G2A.  Congress routinely creates and funds grant programs without allocating funds specifically for oversight.  *See, e.g.*, Pub. L. Nos. 119-74, 140 Stat. 5, 122, 128 (2026); H.R. Res. 7148, 119 Cong. at 310 (2026).  The expectation is that EPA will oversee Congressionally created and funded programs using the sources of general funding available to it, not that EPA will refuse to administer the programs due to a purported lack of program-specific earmarks for administration.

And the government cites no authority for its central proposition, *i.e.*, that the rescission of unobligated administrative funds for a program would amount to an implicit repeal or rescission of already obligated program funds.  Agencies such as EPA are "creatures of statute" that "possess only the authority that Congress has provided."  *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 117 (2022); *see also Biden v. Nebraska*, 600 U.S. 477, 494, 503 (2023) (explaining that agencies may neither "rewrite [a] statute from the ground up" nor "seiz[e] the power of the Legislature").  If Congress itself could not rescind obligated Solar for All funds through the OBBBA, it is self-evident that EPA cannot use the OBBBA as cover to do so—especially using language that says no such thing.  Such a position would represent a dizzying accrual of power to the Agency at the expense of Congress's constitutional appropriations power.  Indeed, it is difficult to see what appropriations authority Congress retains if EPA can rely on a

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

statutory rescission of unobligated administrative funds to retroactively claw back obligated grant funds that Congress deliberately and expressly did not touch.[8]

## II.    The Court can vacate EPA's unlawful termination of Solar for All.

Plaintiffs ask this Court to vacate EPA's unlawful termination of the Solar for All program.  Pls.' MSJ, Dkt. #129, at 25.  EPA argues that this Court cannot "resurrect" the Solar for All program and that the only way to remedy the Agency's unlawful grant termination would be to issue replacement grants, which EPA claims it cannot do post-OBBBA.  Defs.' PI Opp'n, Dkt. #102 at 8 n.3, 18–19.  That is not correct.  When an agency action is contested and a reviewing court confirms that the action was unlawful, the court can set aside that action.  *See, e.g.*, *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 990 (9th Cir. 2025) (recognizing that judicial vacatur "does nothing but re-establish the status quo absent the unlawful agency action") (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022), *overruled on other grounds*, *United States v. Texas*, 599 U.S. 670 (2023)); *Keystone-Conemaugh Projects LLC v. EPA*, 100 F.4th 434, 446 (3d Cir. 2024) ("[A] vacated agency action is a nullity that has no force and effect.").

The Court need not reach the question of whether EPA has authority to issue replacement grants; that question is a red herring.  If this Court finds EPA's termination unlawful, it can vacate that termination.  EPA cites two Comptroller General opinions that are not germane to EPA's claims.  Defs.' PI Opp'n, Dkt. #102, at 8 n.3.  In *In re Navajo Nation Oil & Gas Co.*, the Comptroller General described that a "replacement contract doctrine" exists to "facilitate contract administration . . . should a replacement contract be required because, for example, the

---

[8] In the face of increasingly brazen executive encroachment, it is necessary for courts to exercise their fundamental role as protectors of the constitutional balance of powers.  *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 951 (1983) ("The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power . . . must be resisted."); Gillian E. Metzger, *Taking Appropriations Seriously*, 121 Colum. L. Rev. 1075, 1082 (2021) (cautioning that judicial reticence to wade into appropriations disputes has increasingly led to "the creation of a de facto presidential spending authority and a corresponding weakening of congressional control of the purse").

BRIEF OF MEMBERS OF CONGRESS                    11    SINGLETON SCHREIBER, LLP
AS *AMICI CURIAE* ISO PLAINTIFFS'                        450 Alaskan Way South, Suite 200
MOTION FOR SUMMARY JUDGEMENT                      Seattle, WA 98104
Case No. 2:25-cv-02015-TMC                              (509) 509-3822

initial contract is terminated for default because of poor performance or is terminated for convenience *because a court or other competent authority determines that a contract was improperly awarded.*"  B-270723, 96-1 Comp. Gen. Proc. Dec. ¶ 187, 1996 WL 174689, at *3 (Comp. Gen. Apr. 15, 1996) (emphasis added).  Nothing in that opinion supports the proposition that a replacement contract is the remedy required, rather than vacatur, when a court finds an agency's grant termination to be improper.  *See also In re Funding of Replacement Contracts*, 60 Comp. Gen. 591, 593 (1981) (making clear that a replacement contract enables an agency to contract with *a different party* after terminating a contract for default: "this reprocurement arrangement became known as a replacement contract").  The Comptroller General opinions assume regularity in an agency's termination and do not speak to the relief available where a court holds the agency's termination unlawful.  And they by no means question a court's ability to review the lawfulness of termination in the first place.  EPA's position mischaracterizes appropriations law and fails to show that a replacement contract is required to remedy unlawful terminations.

EPA has given no reason why its unlawful actions to unwind already obligated Congressional appropriations should stand.  This is not a case where a bankrupted recipient, a criminally charged senior executive, or a flooded-out physical location creates an occasion for executive "discretion" to withhold duly appropriated and obligated funds in a particular grant.  This is an agency's attempted (and out-of-time) blanket veto of a program.  This Court has the power—and duty—to vacate EPA's unlawful elimination of the Solar for All program.

### CONCLUSION

EPA asks this Court to find hidden in Section 60002 a loophole that directly conflicts with the plain meaning of its text, is inconsistent with federal appropriations law, and improperly aggrandizes EPA's power at the expense of Congress's constitutional appropriations authority.  Doing so would radically alter the balance of power between Congress and the executive.  It would also harm the American people, the intended beneficiaries of the Solar for All program.  This Court should not sanction EPA's attempted power grab.  This Court has the power to vacate

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

12

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

EPA's unlawful elimination of Solar for All, and *amici* respectfully urge the Court to exercise that power.

Dated: March 6, 2026

Respectfully submitted,

Vanessa R. Waldref, WSBA # 44396
SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822
VWaldref@singletonschreiber.com

Alexandra L. St. Romain (*pro hac vice* pending)
Center for Applied Environmental Law and Policy
712 H Street NE, Suite 90006
Washington, DC 20002
(973) 477-3766
alex.st.romain@caelp.org

*Counsel for Members of Congress* Amici Curiae

*I certify that this memorandum contains 4,157 words, in compliance with the Local Civil Rules.*

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

13

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

## APPENDIX: LIST OF *AMICI CURIAE*

**Sheldon Whitehouse**
    Senator from Rhode Island

**Robert C. "Bobby" Scott**
    Representative of Virginia

**Bernard Sanders**
    Senator from Vermont

**Nydia Velázquez**
    Representative of New York

**Jeff Merkley**
    Senator from Oregon

**Lloyd Doggett**
    Representative of Texas

**Richard Blumenthal**
    Senator from Connecticut

**Diana DeGette**
    Representative of Colorado

**Brian Schatz**
    Senator from Hawai'i

**Adam Smith**
    Representative of Washington

**Edward Markey**
    Senator from Massachusetts

**John B. Larson**
    Representative of Connecticut

**Cory Booker**
    Senator from New Jersey

**Jan Schakowsky**
    Representative of Illinois

**Chris Van Hollen**
    Senator from Maryland

**Stephen F. Lynch**
    Representative of Massachusetts

**Lizzie Fletcher**
    Representative of Texas

**Betty McCollum**
    Representative of Minnesota

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

14

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**Emanuel Cleaver, II**
          Representative of Missouri

**Ed Case**
          Representative of Hawai'i

**Kathy Castor**
          Representative of Florida

**Sylvia R. Garcia**
          Representative of Texas

**Steve Cohen**
          Representative of Tennessee

**Joe Neguse**
          Representative of Colorado

**Joe Courtney**
          Representative of Connecticut

**Kim Schrier**
          Representative of Washington

**André Carson**
          Representative of Indiana

**Greg Stanton**
          Representative of Arizona

**Mike Quigley**
          Representative of Illinois

**Rashida Tlaib**
          Representative of Michigan

**Paul D. Tonko**
          Representative of New York

**Shontel M. Brown**
          Representative of Ohio

**Jared Huffman**
          Representative of California

**Troy A. Carter, Sr.**
          Representative of Louisiana

**Bonnie Watson Coleman**
          Representative of New Jersey

**Deborah K. Ross**
          Representative of North Carolina

**Pramila Jayapal**
          Representative of Washington

**Melanie A. Stansbury**
          Representative of New Mexico

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

15

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**Madeleine Dean**
    Representative of Pennsylvania

**Marilyn Strickland**
    Representative of Washington

**Becca Balint**
    Representative of Vermont

**Daniel S. Goldman**
    Representative of New York

**Seth Magaziner**
    Representative of Rhode Island

**Morgan McGarvey**
    Representative of Kentucky

**Robert J. Menendez**
    Representative of New Jersey

**Brittany Pettersen**
    Representative of Colorado

**Laura Friedman**
    Representative of California

**Dave Min**
    Representative of California

**Emily Randall**
    Representative of Washington

BRIEF OF MEMBERS OF CONGRESS
AS *AMICI CURIAE* ISO PLAINTIFFS'
MOTION FOR SUMMARY JUDGEMENT
Case No. 2:25-cv-02015-TMC

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822