# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| STATE OF ARIZONA, et al., | NO. 2:25-cv-02015-TMC |
| Plaintiffs, | PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, | |
| Defendants. | NOTED FOR HEARING: MAY 8, 2026, 1:30PM |

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
 NO. 2:25-CV-02015-TMC

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

      A.   This Court Has Jurisdiction ........................................................................ 2

           1.   The Tucker Act does not strip this Court of jurisdiction ................... 2

           2.   Plaintiffs have standing ..................................................................... 6

           3.   Plaintiffs challenge final agency action ............................................ 8

      B.   Plaintiffs' Claims Succeed on the Merits .................................................. 11

           1.   The Directives are contrary to law .................................................. 11

                a.   The Directives are contrary to H.R. 1 .................................... 11

                b.   The Directives violate the Constitution .................................. 14

           2.   The Directives are arbitrary and capricious ..................................... 16

      C.   Plaintiffs are Entitled to Vacatur and Injunctive and Declaratory Relief ............... 20

           1.   The Directives should be vacated, and the Court should award
                declaratory relief ............................................................................. 20

           2.   The Court should permanently enjoin implementation or enforcement of
                the Directives ................................................................................... 20

III.  CONCLUSION ................................................................................................. 23

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

i

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

## I.    INTRODUCTION

Defendants unlawfully terminated the Solar for All (SFA) Program, unilaterally cancelling $7 billion in Congressional appropriations in clear derogation of the Constitution, the Administrative Procedure Act, and Congressional intent. Having publicly terminated SFA, Defendants now seek to avoid accountability by insisting that it was Congress, not EPA, that terminated the Program, and that there is nothing this Court can do and no relief available to Plaintiffs. But at every turn, the facts and the law show this is not so. The administrative record makes clear that Defendants chose to terminate SFA based on flawed legal reasoning designed to reach a predetermined policy-driven outcome. Now, faced with litigation, Defendants try to avoid the consequences of their actions by rewriting history and H.R. 1. The Court should reject these efforts and grant Plaintiffs summary judgment.

This Court has jurisdiction because Plaintiffs seek to enjoin unlawful directives, not compel payment of money in this lawsuit. *NIH* and its progeny plainly allow suits like this to be brought in district court. Defendants' other arguments to avoid this Court's jurisdiction— whether framed as redressability, zone of interests, or final agency action—fail too.

Defendants are also wrong on the merits. The record shows that EPA itself "made the decision to terminate the SFA program," Dkt. #126-40 at p.2, pursuant to EPA's legally unsound conclusion that H.R. 1 required EPA to terminate SFA. Defendants terminated an entire program, not just individual grants. This was not what Congress authorized or instructed EPA to do, and Defendants' actions therefore violated the law and the Constitution. It was also arbitrary and capricious, as Defendants have offered insufficient, contradictory explanations for their actions and failed to adequately account for Plaintiffs' reliance interests. This is especially so where, as here, Plaintiffs were on the cusp of expanding or launching their distributed solar programs after expending significant financial resources and staff time to develop community and industry relationships and meet ambitious climate goals—interests that Defendants entirely

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

ignored in their single-minded attempt to eliminate SFA.

Because Plaintiffs are entitled to judgment as a matter of law on their claims, the Court should grant Plaintiffs summary judgment, deny Defendants' motion, vacate and enjoin the Directives that led to the termination of SFA, and declare that H.R. 1 does not authorize or require the termination of SFA.

## II.    ARGUMENT

### A.    This Court Has Jurisdiction

#### 1.    The Tucker Act does not strip this Court of jurisdiction

In eliminating SFA, Defendants nullified $7 billion in Congressional appropriations, including approximately $2.8 billion to Plaintiffs. These actions are unlawful not because of any contract, but because they are contrary to statute and the Constitution. Defendants attempt to defeat this Court's jurisdiction by recasting Plaintiffs' claims as a disguised contract action subject to the Tucker Act. But this argument fares no better than it did at the preliminary injunction stage.

To determine whether an action is "founded … upon any express or implied contract with the United States" under the Tucker Act, courts look to two factors: (1) the source of the rights upon which a plaintiff bases its claims, and (2) the type of relief sought. *Pacito v. Trump*, -- F.4th ---, 2026 WL 620449, at *18 (9th Cir. 2026) (citing *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023),[1] and *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)). Moreover, courts "categorically reject the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum.*

---

[1] Contrary to Defendants' misrepresentations, Dkt. #137 at p.26 n.5, the question here is whether Plaintiffs' claims arise out of the terms of a contract, not whether there is some connection to a contract. *Pacito*, 2026 WL 620449, at *18-19 (distinguishing between procurement contracts and grants or cooperative agreements, and holding that plaintiffs' claims arose out of statutes, plaintiffs' cooperative agreements, and standard terms and conditions).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

2

*Servs.*, 155 F.4th 1099, 1102 (9th Cir. 2025) ("*CLS*").[2] Applying the *Megapulse* factors*,* jurisdiction here is plainly proper.

First, Plaintiffs' claims arise out of the APA and the Constitution. *CLS*, 155 F.4th at 1104 ("non-contractual source of Plaintiffs' rights is dispositive"). Plaintiffs are here because Defendants violated the APA and the Constitution by adopting policies terminating SFA and clawing back funds. As a majority of the Supreme Court has ruled, this type of challenge to agency directives is within the district court's jurisdiction. *Nat'l Institutes of Health v. Am. Public Health Assoc.*, 606 U.S. ---, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring) (agreeing with four other justices that agency directives can be challenged in district court); *see also Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1139 (9th Cir. 2025) (plaintiffs' claims not disguised contract claims where plaintiffs alleged actions related to grant discontinuances were unlawful under agency regulations and statutory obligations); *New York v. Trump*, -- F.4th --, 2026 WL 734941, at *16 (1st Cir. 2026) (affirming preliminary injunction that prohibited federal government from implementing unlawful funding freeze policy); *Rhode Island v. Trump*, 810 F.Supp.3d 283, 298 (D.R.I. 2025); *Colorado v. U.S. Dep't of Health & Human Servs.*, 788 F.Supp.3d 277, 296 (D.R.I. 2025).

Second, Plaintiffs do not seek contractual relief: they seek review of final agency action and declaratory and injunctive relief as well as vacatur of the Directives—"run-of-the-mill APA request[s]" that do not order Defendants to pay money damages. *Bd. of Educ. v. McMahon*, 791 F.Supp.3d 1272, 1282 (D.N.M. 2025). As the Ninth Circuit recently held, this sort of relief is within the district court's jurisdiction because it "would not result in the automatic reinstatement … of … grants or the payment of any money to grantees." *Washington*, 161 F.4th at 1140; *see City of Chicago v. U.S. Dep't of Homeland Sec.*, -- F.Supp.3d --, 2025 WL 3043528, at *11 (N.D. Ill. 2025) (court had jurisdiction over challenges

---

[2] Defendants argue *CLS* is inapposite because it was brought by third parties to agreements. Dkt. #137 at p.26. But what matters is whether Plaintiffs' claims arise out of the terms of a contract. As in *CLS*, Plaintiffs "may challenge the Government's decision … without reference to the Government's existing contractual obligations." 155 F.4th at 1104.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION NO. 2:25-CV-02015-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

to government's decision to freeze funding and terminate federal shelter program because claims "would not require the Court to reverse or vacate past grant terminations, or otherwise require the government to pay money past due"). Defendants latch onto Plaintiffs' mention of "derivative acts" in their requested relief, but Plaintiffs are not arguing that the Court should set aside the terminations themselves. By "derivative acts," Plaintiffs refer to Defendants' follow-on decisions caused by the unlawful Directives (including EPA's demand that Plaintiffs close out their grants, the denial of their administrative appeals as moot, and any other consequences that EPA may impose while the Directives are in effect). Plaintiffs request that the Court vacate these subsequent activities together with the unlawful Directives. Vacating the derivative acts that flow from an unlawful directive is well within the scope of traditional APA remedies. *See* Pls. Mot. Summ. J., Dkt. #129 at p.28 ("Pls. Mot."). These unlawful derivative acts, which only this Court can remedy, further demonstrate Plaintiffs are not seeking a mere advisory opinion or relief subject to the Tucker Act. *Contra* Opp. 28. Vacating and enjoining the Directives and any derivative acts would not automatically result in money flowing to Plaintiffs; it would instead clarify that the Directives are illegal and prevent EPA from relying on them or their underlying rationales going forward. This is the basic stuff of APA litigation.

Following *NIH*, the Ninth Circuit and other courts have distinguished between claims seeking an order directing payments and claims seeking to vacate or enjoin unlawful directives. *See, e.g.*, *Washington*, 161 F.4th at 1140 (distinguishing *NIH* and *California* because in those cases, "plaintiffs explicitly sought, and the district courts ordered, the immediate payment of past-due grant obligations and the continued payment of ongoing obligations"); *New York*, 2026 WL 734941, at *17, 19 (affirming preliminary injunction that prohibited federal agencies from implementing unlawful funding freeze policy because it was not an order to enforce a contractual obligation to pay money, but vacating a limited portion of the order that instructed agencies "to release and transmit any disbursements to the States on awarded grants [or] executed contracts"). And, in any event, "a district court's jurisdiction is not barred by the

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

possibility that an order setting aside an agency's action may result in the disbursement of funds." *California v. Dep't of Educ.*, 604 U.S. 650, 651 (2025) (internal quotation and citation omitted).

What matters is whether Plaintiffs seek an order directing payment. They do not, and that is why Defendants' cited cases miss the mark. *Contra* Defs. Cross Mot. Summ. J. and Opp., Dkt. #137 at pp.21-23 ("Opp."). In *Thakur v. Trump*, the court held it lacked jurisdiction over Plaintiffs' APA claim because Plaintiffs explicitly sought reinstatement of terminated grants. 163 F.4th 1198, 1204 (9th Cir. 2025). But at the same time, the court acknowledged jurisdiction over the Plaintiffs' First Amendment claim, which was not predicated on the terms of any grant agreements. *Id.* Similarly, in *Sustainability Institute v. Trump*, the court reversed a district court decision because it directed the Government to "restore Plaintiffs['] access to grant funds immediately." 165 F.4th 817, 826-27 (4th Cir. 2025). Here, by contrast, Plaintiffs do not seek monetary compensation, whether as damages, backpay, or even a guarantee of continued funding. They seek only vacatur, and injunctive and declaratory relief, which do not directly require payment but instead clarifies Defendants' legal obligations going forward. This is relief that the Court of Federal Claims cannot grant.

Finally, Defendants misinterpret *NIH* as applying only to "guidance" relating to grants "going forward." Opp. 25-26. This just repackages Defendants' merits arguments, which fail as discussed below. *Infra* Section II.B. Defendants seem to argue that *NIH* only applies if a grant program exists in perpetuity, or if the grants in question can be awarded again in the future. *See* Opp. 25 ("[Section 134] did not create any ongoing program apart from the grants."). But this bungles Justice Barrett's meaning. Justice Barrett stated: "If a district court decides that agency guidance violates the APA, it may vacate the guidance, preventing the agency from using it going forward." *NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring). This is precisely what Plaintiffs here seek. Among other relief, Plaintiffs seek prospective relief that prohibits EPA from relying on the Directives or their underlying rationale "going forward" as it reconsiders

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

5

whether it must continue SFA. *NIH* plainly does not prohibit the Court from issuing this type of prospective relief that prohibits Defendants from effectively re-adopting the Directives under a different name. *New York*, 2026 WL 734941, at \*16. This Court has jurisdiction.

### 2.    Plaintiffs have standing

Plaintiffs have standing to challenge Defendants' unlawful actions because they face actual or imminent injury fairly traceable to Defendants' conduct, which this Court can redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' burden to establish redressability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). Plaintiffs have shown that they have been injured and will continue to be injured by the unlawful termination of SFA, Pls. Mot. 29-31, and that the relief they seek would remedy these harms by undoing the unlawful termination of SFA, *infra* Section II.C. None of Defendants' arguments to the contrary have merit.

Defendants insist that Plaintiffs' injuries are tied to the grant terminations and thus do not flow from the unlawful directives and cannot be remedied by the relief Plaintiffs seek in this action. This is wrong at least twice over.

First, the fact that much—but, as discussed below, not all—of Plaintiffs' harm comes from grant cancellations downstream of the unlawful Directives does not change the analysis. Defendants' attempt to manufacture a new threshold bar to this Court's jurisdiction has no footing in the law. In *NIH*, for example, the Court had no reason to parse separate harms between the challenge to the unlawful policies and the challenge to the resulting terminations.

But Plaintiffs also have harms unique to this litigation. Only this case can prevent and remedy non-monetary harms flowing from EPA's unlawful termination of SFA, including harms from unlawful closeout, *see, e.g.*, Dkt. #73 ¶42, Dkt. #74 ¶46; harms to Plaintiffs' climate and clean energy goals, Dkt. #65 ¶39, Dkt. #76 ¶37, Dkt. #84 ¶35, Dkt. #88 ¶¶40-41; and a loss of technical support for their solar energy programs, *see, e.g.* Dkt. #73 ¶41, Dkt. #77 ¶39, Dkt. #79 ¶38, Dkt. #80 ¶57, Dkt. #90 ¶41, Dkt. #131 ¶34. Defendants contend these

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

harms are not redressable because H.R. 1 prohibits this Court from entering an order that could lead to reinstatement of SFA. Opp. 28-29. But this argument presupposes that Defendants are right on the merits. If Plaintiffs are right that H.R. 1 did not require or permit EPA to terminate SFA root-and-branch, then the Court plainly can vacate and remand the matter to EPA to reconsider its decision in compliance with the APA, without reliance on H.R. 1, which could lead to EPA deciding to reinstate SFA. This is sufficient for standing. *See Iten v. Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023).

Second, Plaintiffs can show that a favorable decision would result in a "change in legal status" and that a "practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002). Vacating and enjoining the Directives, would, at a minimum, mean that Defendants' decision to terminate SFA can be remanded to EPA for reconsideration with the benefit of this Court's guidance. *See, e.g.*, *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 780 F.Supp.3d 897, 914 (N.D. Cal. 2025) (requested injunctive relief was likely to redress injury to plaintiff organizations' mission). This is meaningful relief.

Defendants have admitted as much in parallel litigation. Before the Court of Federal Claims, Defendants have argued that a favorable ruling from this Court would be dispositive of liability in that forum. *See, e.g.*, *Maryland Clean Energy Ctr. v. United States*, Case No. 1:25-01738-LAS, Order, Dkt. #58 (Fed. Cl. Jan. 21, 2026); *id.*, Defendants' Motion to Stay, Dkt. #50 (Fed. Cl. Dec. 9, 2025). A favorable ruling here could remove a barrier to relief in the Court of Federal Claims and therefore satisfies redressability. *Utah*, 536 U.S. at 463.

Defendants also argue that Plaintiffs are not within the zone of interest of H.R. 1, Opp. 29, but they conflate this argument with the lack of a private cause of action under H.R. 1. The zone-of-interest test applies when a plaintiff asserts a "statutory cause of action": it asks whether the plaintiff's interests are within the zone protected "by the law invoked." *Lexmark*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

7

*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (internal quotation omitted). Plaintiffs assert claims under the APA and the Constitution. As to both categories of claims, Plaintiffs allege that no law authorized Defendants to unilaterally eliminate SFA; "where the very claim is that no statutory or constitutional provision authorized a particular governmental action, it makes little sense to ask whether any statutory or constitutional provision was written for the benefit of any particular plaintiffs." *Sierra Club v. Trump*, 929 F.3d 670, 701 (9th Cir. 2019). The zone-of-interests test thus does not apply at all. *Id.* at 700.

Even assuming that the doctrine applied, Plaintiffs can easily satisfy it. The zone-of-interests test for claims brought under the APA's judicial review provision is "lenient" and "not especially demanding." *Lexmark*, 572 U.S. at 130 (internal quotation omitted). It is satisfied if the plaintiff's interests are "arguably" protected or regulated. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). "The test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 225 (internal quotation omitted). Doubtless they do here. Plaintiffs are plainly within the zone of interest of the Inflation Reduction Act, which authorized SFA and appropriated funds for it in the first place. *See Train v. City of New York*, 420 U.S. 34, 41 (1975) (analyzing executive's refusal to spend appropriations by examining the relevant appropriations act). And Plaintiffs' claims are not "so marginally related" to H.R. 1, which did not touch funds that had already been obligated under the IRA, to be outside the zone of interest of that law. *Patchak*, 567 U.S. at 227. The Court should disregard this flimsy argument.

### 3.    Plaintiffs challenge final agency action

Defendants contend that there is no reviewable final agency action here because (1) Congress, not EPA, terminated the SFA Program, and so Plaintiffs have no program-wide agency action to challenge, and (2) the Directives were not final. Opp. 29-30. This is incorrect.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

First, EPA made clear throughout the administrative record that EPA—not Congress—terminated the Program:

- On August 7, 2025, EPA Associate Deputy Administrator Travis Voyles emailed Deputy Administrator David Fotouhi "a memorandum detailing the recommendation that *the Agency terminate the Solar for All (SFA) program* and all existing grants." Dkt. #126-14 (emphasis added).

- The memorandum stated that "the Office of the Administrator is weighing options for the future of the [SFA] program," Dkt. #126-15 at p.1, and concluded that "it is reasonable and *well within the Agency's discretion* as a matter of appropriations law *to wind down and halt further implementation of the SFA program.*" *Id.* at p.3 (emphasis added).

- Three hours later, Mr. Fotouhi replied: "I agree with the recommendation to terminate the SFA program and existing grants." Dkt. #126-14.

- Mr. Voyles responded: "We will work immediately implement [sic] the termination of the SFA program and existing grants." *Id*.

- Thirty minutes later, Mr. Voyles emailed EPA staff: "*Agency leadership has decided to terminate the Solar for All Program* and existing grants." Dkt. #126-16 at p.1 (emphasis added); *see also* Dkt. #126-20.

- The Termination Memoranda sent to Plaintiffs also made explicit EPA's decision to terminate the Program: "The EPA has been weighing options for the future of [SFA] and has made the decision to terminate the SFA program and existing grants." Dkt. #126-40 at p.2.

This is plainly agency action. 5 U.S.C. § 551(13); *Whitman v. Am. Trucking Ass'ns, Inc.,* 531 U.S. 457, 478 (2001) ("agency action" is "meant to cover comprehensively every manner in which an agency may exercise its power"). Defendants also offer no substantive argument in support of their position that there was no SFA Program, and/or no agency action to end that

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

Program. And, as detailed below, Congress did not touch obligated grant funding, demonstrating that it intended for the SFA Program to continue with respect to those obligated grants. *Infra* Section II.B.1.a.

The Directives are also *final* agency action. The Directives mark the consummation of the agency's decision-making process, because EPA's position here is "definitive," *Her Majesty the Queen in Right of Ontario v. U.S. E.P.A.*, 912 F.2d 1525, 1531 (D.C. Cir. 1990), and not "merely tentative" or "interlocutory." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). The Directives reflect Defendants' decisions to immediately terminate SFA and claw back funds obligated to SFA recipients. Defendants "not only decided to take these steps, [they] then in fact … implemented them." *New York v. Trump*, 767 F.Supp.3d 44, 76 (S.D.N.Y. 2025). Courts have routinely found similar directives to be final agency actions. *See, e.g.*, *Washington v. U.S. Dep't of Educ.,* No. C25-1228-KKE, 2025 WL 3690779, at *9 (W.D. Wash. Dec. 19, 2025) (directive changing prioritization of grants *and* grant discontinuation notices was final agency action); *Washington v. U.S. Dep't of Health & Hum. Servs.*, No. 6:25-CV-01748-AA, 2025 WL 3002366, at *4 (D. Or. Oct. 27, 2025) (directive removing "gender ideology" from school curricula was final agency action); *New York v. Trump*, 133 F.4th 51, 67 (1st Cir. 2025) (finding government not likely to succeed on argument that policy directive and implementation of broad, categorical freezes did not constitute discrete final agency actions). Similarly, because of the Directives here, Plaintiffs can no longer implement their State-level programs and will be forced to scale back or shutter existing projects. Stripping Plaintiffs of their ability to carry out a major program is plainly a "concrete consequence[]" signifying final agency action. *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 956 (D.C. Cir. 2019).

Defendants cannot deflect responsibility for their actions. While it may be true that EPA was purporting to implement Congressional directives, that does not shield Defendants' decisionmaking from review; indeed, implementing Congressional directives (within the bounds of any discretion granted by Congress) is what agencies routinely do. *See Louisiana Pub. Serv.*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION NO. 2:25-CV-02015-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

*Comm'n v. FCC*, 476 U.S. 355, 357 (1986) ("[A]n agency literally has no power to act … unless and until Congress confers power upon it."). Defendants' attempts to distance themselves from their decision and avoid this Court's jurisdiction should be rejected.

**B.      Plaintiffs' Claims Succeed on the Merits**

**1.      The Directives are contrary to law**

**a.      The Directives are contrary to H.R. 1**

Defendants lacked authority to terminate SFA and refuse to spend the billions of dollars Congress appropriated for SFA. The Directives contravene H.R. 1, which neither rescinded obligated SFA funds nor authorized Defendants to claw them back program-wide. Section 60002 of H.R. 1 did two things: it repealed the authority for the Greenhouse Gas Reduction Fund (GGRF) programs, including SFA, moving forward, and it rescinded unobligated funds. H.R. 1 did not rescind any funding other than $19 million to administer SFA, despite Defendants' misleading suggestion that that $19 million was only one of multiple items "includ[ed]" in the rescission. *Contra* Opp. 11, 15, 32.

Defendants do not seriously contend with Plaintiffs' statutory interpretation arguments. They cannot explain why Congress said it was rescinding "unobligated" funds if its intent was to rescind obligated funds as well. *See* Pls. Mot. 19. They cannot explain how the *prospective* repeal of Section 134 required (or permitted) the *retrospective* clawback of obligated funds. *See id.* at 20. Nor can they explain why the rescission of one pot of administrative funds stripped them of the power to administer SFA, when they had other administrative funds they could use for that purpose. *See id.* at 21. And they assuredly cannot explain why, if Congress wanted to do something as significant as rescinding a $7 billion Congressional appropriation, it would have done so by rescinding $19 million in administrative funds. *See id.* at 22.

So, what do they argue? Primarily, that H.R. 1 "imposed no limit on EPA's pre-existing right to terminate those grants according to their terms." Opp. 33. But Plaintiffs do not argue that H.R. 1 or Section 134 took away EPA's ability to terminate *individual* SFA grants. Indeed,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

*Defendants* did not even make that argument at the time they terminated SFA. For example, the Voyles Memo makes no mention of the termination provisions in individual grant agreements except to argue that the possibility of termination meant that grantees lacked a reliance interest in SFA's continued existence. *See* Dkt. #126-15 at pp.4-5. And the termination letters EPA sent to Plaintiffs did not say the termination was based on any of the grounds contained in 2 C.F.R. § 200.340, despite mentioning the regulation in the subject line. Dkt. #126-40 at p.2. The letters were clear: all grants were terminated because EPA was eliminating SFA entirely, and not because of any of the grounds contained in 2 C.F.R. §200.340, such as failure to comply with award terms and conditions, or because the award no longer effectuated program goals or agency priorities. *Id.*

Regardless, the power to decide *who* gets Congressionally appropriated money is not the same as the power to decide that *no one* gets the money. Otherwise, agencies could terminate any competitive grant program simply by awarding no grants, or by issuing pro forma awards that are immediately terminated based on boundless termination provisions. Either way, Congress's intent would be thwarted, and agencies would be acting far beyond the limited authority granted them by Congress. *Ctr. for Food Safety v. Regan*, 56 F.4th 648, 660 (9th Cir. 2022). Congress's constitutional spending power cannot be so easily circumvented. *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) ("Simply put, 'the President does not have unilateral authority to refuse to spend the funds.'") (quoting *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013)).

H.R. 1's Repeal Clause does not change this bedrock legal principle because, as Defendants concede, it can only have prospective effect. *See* Opp. 34. Section 134 explicitly directed Defendants to "make [SFA] grants" by September 30, 2024; EPA complied with this mandate not only by "creating a competitive grant process … and selecting 60 eligible recipients before the deadline," *see* Opp. 32-33, but also by obligating those funds to recipients—including Plaintiffs—by the statutory deadline. Now that Section 134 "is repealed," Defendants are correct

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

that EPA lacks authority to make *new* SFA grants "prospectively, *i.e.*, after July 4, 2025." Opp. 34. However, repealing the authority to make *new* SFA grants had no effect on the grants that EPA had already made to Plaintiffs almost a year before H.R. 1 was passed. *See* Dkt. #140 at pp.12-13 (discussing congressional intent in enacting Section 60002's repeal of GGRF language "to address the much narrower scenario of potential reobligation" for other GGRF programs). Defendants offer no explanation for why their reading would not render H.R. 1's explicit rescission of only unobligated funds superfluous. Pls. Mot. 19. And Defendants are wrong that H.R. 1 repealed EPA's authority to continue administering the SFA grants that had already been obligated because H.R. 1 unequivocally rescinded only "unobligated balances." By leaving obligated funds untouched, Congress intended for EPA to continue administering SFA as to those funds.

Again, this is plainly how Congress understood H.R. 1. *See* Pls. Mot. 17-18; Dkt. #140 at pp.9-11. Defendants find no support for their position in legislative history. For example, while Defendants cite a House Report for the proposition that Section 60002 supposedly "'repeals' both 'the authorizations' and the 'unobligated balances of funds'" for SFA, Opp. 33-34, that report explicitly recognizes that by "*repealing authorizations*[,] rescinding unobligated funds that were appropriated to [EPA]," and repealing certain vehicle standards, Section 60002 would reduce the federal deficit by *less than one percent* of the $7 billion obligated to SFA. H.R. Rep. No. 119-106, at 556 (2025) (emphasis added); *see also* Dkt. #140, at pp.10-11 (noting that the Congressional Budget Office scored Section 60002 as saving $19 million as a result of the repeal and rescission together). This confirms that Congress did not terminate SFA or deobligate any related funding by passing H.R. 1, *contra* Opp. 32, nor did Congress pass H.R. 1 with the intent to compel or authorize EPA to do so.

Defendants also argue that reading H.R. 1 to terminate SFA does not violate the General Savings Statute because Plaintiffs could seek reimbursement for allowable pre-termination costs and contract damages via the Court of Federal Claims, and thus that liability

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION NO. 2:25-CV-02015-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

"did survive" post-H.R. 1. Opp. 25. But that presupposes that Defendants' reading of H.R. 1 is correct (it is not) and that Defendants lawfully terminated SFA (they did not). Defendants' misreading also elides the General Savings Statute's key language: "The repeal of any statute shall not have the effect to release or extinguish any … liability incurred under such statute, unless the repealing Act shall so expressly provide." 1 U.S.C. § 109. Against this backdrop, Defendants cannot avoid the conclusion that Congress intended EPA to fulfill its existing SFA obligations, notwithstanding passage of H.R. 1. *Hertz v. Woodman*, 218 U.S. 205, 217 (1910) (General Savings Statute establishes "a rule of construction … to be read and construed as a part of all subsequent repealing statutes, in order to give effect to the will and intent of Congress."); *De la Rama S.S. Co. v. United States*, 344 U.S. 386, 389 (1953) (rejecting narrow reading of General Savings Statute); *Deal v. Fed. Housing Admin.*, 260 F.2d 793, 800 (8th Cir. 1958) (noting that the term "liability" in General Savings Stature "has been broadly construed" to include "all obligations arising out of any breach of a statutory duty").

Accordingly, because H.R. 1 did not authorize or require EPA to eliminate SFA, EPA acted without legal authority in violation of the APA.

### b.     The Directives violate the Constitution

Plaintiffs offer a second, independent basis to conclude that Defendants' actions were unlawful: the Directives violate the Constitution. Pls. Mot. 19-21.

Preliminarily, Plaintiffs' constitutional claims are cognizable. Defendants cite *Dalton* for the broad proposition that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." Opp. 36. But *Dalton* does not bar all constitutional claims that also involve a statutory violation. *See Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023) (recognizing Ninth Circuit "jurisprudence weighs in favor of justiciability by taking an expansive view of the constitutional category of claims highlighted in *Dalton*"). In *Murphy*, the Court held that "specific allegations regarding separation of powers," such as an allegation that the executive

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

"violated separation of powers by directing the Secretary to act in contravention of a duly enacted law," states a constitutional claim that is reviewable under *Dalton*. *Id.* Plaintiffs have alleged such a violation here. *See* First Am. Compl., Dkt. #128 at ¶165 ("Section 60002 of H.R.1 did not authorize or direct Defendants to terminate the SFA Program."); ¶166 ("Section 60002 of H.R. 1 did not authorize or direct Defendants to rescind any funds that were obligated prior to the date that H.R. 1 was enacted."); ¶167 ("Section 60002 expressly excluded Plaintiffs' awards from rescission because Plaintiffs' awards were fully obligated months prior to 'the day before the date of enactment of [the] Act.'").

Indeed, Defendants do not even purport to have acted pursuant to *any* authority bestowed upon them by H.R. 1 (or any other statute). To the extent Defendants admit that EPA did in fact terminate SFA, Defendants contend that they only terminated "the grants" pursuant to a freestanding "contractual right" which Congress "did nothing to restrict." Opp. 37. But the crux of Plaintiffs' constitutional claim is that EPA was entirely without authority to unilaterally terminate SFA and categorically refuse to spend money appropriated by Congress and already obligated to recipients. Pls. Mot. 21. So understood, *Dalton*'s limited holding cannot deprive Plaintiffs of their constitutional claim.[3]

Defendants' sole argument on the merits is that "EPA's decision to terminate *the SFA grants* under 2 C.F.R. § 200.340 … does not implicate the Appropriations Clause or separation of powers doctrine" because "Congress knew that EPA had a right to terminate the grants per their terms" and "did nothing to restrict that contractual right." Opp. 37 (emphasis added). This is irrelevant. EPA did not terminate the grants per their terms. *See* Dkt. #126-15; Dkt. #126-40 at p.2. EPA terminated SFA wholesale pursuant to an incorrect interpretation of H.R. 1.

---

[3] Defendants also cite *Global Health Council v. Trump*, 153 F. 4th 1 (D.C. Cir. 2025), for the proposition that a "separation of powers claim in [a] case challenging grant terminations [is] not cognizable under *Dalton*." Opp. 26. But Plaintiffs are not challenging any grant terminations and, even if they were, *Global Health Council* is not binding on this Court. *See also id*. at 18-19 (Pan, J., dissenting).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

15

Congress did not need to explicitly tell EPA again to spend the money as Congress originally commanded. *S.F.,* 897 F.3d at 1232.

The relevant inquiry is whether EPA was authorized to dismantle SFA and take back the funds it had previously obligated in accordance with Congress's directive. The answer, of course, is that the executive "may not decline to follow a statutory mandate or prohibition simply because of policy objection." *Id.* (*quoting Aiken County*, 725 F.3d at 229). Here, Congress appropriated $7 billion for EPA to spend on the SFA Program, EPA established the required Program, and it timely obligated all $7 billion to that Program. Congress did not direct or authorize EPA to terminate those obligated grants or dismantle SFA. *See supra* Section II.B.1.a. Because H.R. 1 did not authorize EPA to retroactively dismantle SFA, EPA's decision to do so violates the Appropriations Clause and separation of powers doctrine.

### 2. The Directives are arbitrary and capricious

The Directives are arbitrary and capricious because Defendants have not reasonably explained them, offering only post-hoc and pretextual rationales, and because Defendants failed to adequately consider Plaintiffs' significant reliance interests.

Defendants' Termination Directive was not reasonable or reasonably explained. Indeed, Defendants offered inconsistent justifications for the decision, alternately claiming that EPA was *required* to terminate SFA while also somehow exercising its *discretion* to do so, Pls. Mot. 26, and still other times arguing that Congress, not EPA, terminated SFA. *E.g.*, Opp. 31-32. Not only do Defendants fail to address this contradictory reasoning in their briefing, they also fail to justify or even acknowledge the Deobligation Directive—likely because no rational explanation exists. Defendants make no attempt to square their decision to remove 93% of Plaintiffs' SFA funds from their ASAP accounts months before closeout deadlines with record evidence that EPA's

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION NO. 2:25-CV-02015-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

internal policies and guidance authorize staff to reduce the funds in a grant recipient's ASAP account only *after* closeout occurs. *See* Dkt. #126-25 at p.1; Dkt. #126-27.

Defendants' constantly evolving, post-hoc justifications underscore the arbitrary and capricious nature of their Directives. For example, Defendants now rely on 2 C.F.R. § 200.340 to justify their decision to terminate SFA and claw back all funds. But, as discussed above, the Voyles Memo refers to § 200.340 only in explaining SFA recipients' purported lack of reliance interests. *See* Dkt. #126-15. This passing reference to a contractual "mechanism for termination" does not amount to a contemporaneous explanation of Defendants' litigation position that 2 C.F.R. § 200.340 authorized EPA to nullify a $7 billion Congressional appropriation. Similarly, the fact that Defendants sent termination notice letters to grantees in which the only reference to 2 CFR § 200.340 is in the subject line does not explain or even foreshadow Defendants' current theory that this regulation gave EPA the discretion to terminate SFA in its entirety. *Contra* Opp. 40. This is especially so when that position is otherwise contradicted by Defendants' claims in the Termination Memoranda that H.R. 1 *required* EPA to end SFA. *See, e.g.,* Dkt. #126-40 at p.2 (arguing H.R. 1 made clear "that the SFA program is no longer to operate").

Defendants do not meaningfully contest Plaintiffs' argument that EPA offered contrived reasons for terminating SFA and clawing back obligated funds beyond citing Plaintiffs' reliance on extra-record evidence. Opp. 40. This deflection ignores the evidence that Plaintiffs relied upon, which shows that EPA made its decision with startling and unusual speed. Pls. Mot. 23. That an EPA decisionmaker took only three hours to approve a recommendation wiping out a $7 billion grant program, which was already fully obligated pursuant to Congress's directive, is indicative of a decision that was pre-ordained rather than thoughtfully made. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 51 (D.D.C. 2025) ("[I]t is unclear whether twenty-four hours is sufficient time for an agency to independently review a single grant, let alone

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION NO. 2:25-CV-02015-TMC

17

hundreds of thousands of them."); *see also Pub. Power Council v. Johnson*, 674 F.2d 791 (9th Cir. 1982) ("courts will go beyond the agency record when agency bad faith is claimed").

Defendants also ignore Plaintiffs' significant reliance interests. Pls. Mot. 20-22. Defendants admit that they failed to consider Plaintiffs' reliance on the SFA Program to meet state-level climate goals or justify the time and efforts Plaintiffs have already invested at their own expense. Opp. 40-41. Instead, Defendants cite a case with no discussion of reliance interests for the proposition that "the APA review standard does not require EPA to consider every possible reliance interest." *Id.* (citing *Yankee Nuclear Power Corp. v. Nat. Res. Def. Council.*, 435 U.S. 519, 551 (1978)). But Plaintiffs do not argue that Defendants must consider "every possible reliance interest." Rather, Plaintiffs contend that Defendants did not consider Plaintiffs' significant reliance interests beyond those that could be addressed by closeout costs. *See* Pls. Mot. 23-25. Indeed, Plaintiffs have introduced unrebutted evidence that they relied on SFA to launch or expand distributed solar programs—to benefit both their populations and their environments—at a time where energy costs and temperatures are soaring across America. *See, e.g.*, Dkt. #82 ¶35; Dkt. #88 ¶40. Defendants' myopic focus on one category of reliance interests (*i.e.*, those that may be addressed by closeout costs) to the exclusion of other, significant categories is arbitrary and capricious. *See* Pls. Mot. 21 (citing cases); *see also, e.g.*, *Doe v. Noem*, --- F.Supp.3d ---, 1:25-CV-10495-IT, 2026 WL 184883 (D. Mass. Jan. 25, 2026) (agency's policy change was unreasoned where the agency head had acknowledged certain reliance interests without acknowledging other significant ones).

Finally, Defendants do not meaningfully grapple with the reality that there is nothing stopping EPA from using funds beyond the specific GGRF administrative appropriation to administer SFA, contrary to Defendants' claims in the Voyles Memo. *See, e.g.*, Dkt. #126-15 at p.3 (SFA "was meant to be implemented, administered, and overseen using that specifically appropriated funding," *i.e.*, the administrative appropriation under Section 134). Beyond Section 134's clear statement that EPA was to use the administrative appropriation in that statute to

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

18

administer SFA "*[i]n addition to amounts otherwise available*," Section 134(a)(4) (emphasis added), EPA's authority to use other funds comes from those other general appropriations themselves. *See, e.g.*, Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026, Pub. L. No. 119-74, 140 Stat. 5, 126 (2026) (appropriating over $3 billion "[f]or environmental programs and management, *including necessary expenses not otherwise provided for*") (emphasis added); *see also* Dkt. #140 at p.15 (describing other oversight funds available to EPA).

But for the reasons discussed above, the lack of dedicated funding cannot justify cancelling billions of appropriated and obligated funds. EPA's assertion that "[s]hifting any funding" would "result in a significant shortfall" in oversight capabilities illustrates another point: Defendants cannot rely on EPA's discretion to choose its own priorities to avoid spending this money. *See* Opp. 39. Any discretion EPA retains is bounded by statute. EPA cannot usurp Congress's mandate with its own preferred priorities. Here, Congress intentionally left obligated funds and intended for EPA to continue administering SFA as to the grants to which those funds had been obligated. Dkt. #140 at p.13. EPA was therefore required to "choose its priorities" within the bounds of the requirement that it continue administering the existing SFA grants Congress left untouched. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014) (it is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate"). Defendants' position also highlights their inexplicable hostility towards SFA; there is no justification offered for EPA's refusal to even consider devoting fewer resources to SFA oversight as an alternative to terminating SFA entirely. *See* Pls. Mot. 9 (discussing groundless OIG investigation into SFA). EPA's conclusion that it would be "legally suspect, operationally risky, and inadvisable" to continue administering SFA using other sources of administrative funding therefore lacked reasonable explanation.[4]

---

[4] Plaintiffs have shown that APA review is available and that Plaintiffs are entitled to judgment on their claims. *See supra* Sections II.A.3 and II.B. If this Court disagrees, this Court should grant judgment to Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

19

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**C.      Plaintiffs are Entitled to Vacatur and Injunctive and Declaratory Relief**

**1.      The Directives should be vacated, and the Court should award declaratory relief**

Defendants concede that vacatur and remand to EPA is a proper remedy if the Court finds that the Directives were unlawful and do not even address Plaintiffs' request for declaratory relief. Opp. 41-42, 46. The Court should, at a minimum, vacate the Directives and declare that Section 60002 of H.R. 1 does not require or allow EPA to terminate SFA or claw back obligated funds wholesale.

Defendants appeal to *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), in an effort to limit the relief the Court can provide to Plaintiffs. Opp. 46. But federal courts regularly vacate unlawful agency actions in toto. Indeed, the APA *requires* that they do so. 5 U.S.C. § 706 ("[A] reviewing court shall … hold unlawful and set aside [unlawful] agency action."); *CASA Inc.*, 606 U.S. at 873 (Kavanaugh, J., concurring) (district courts retain ability to "set aside an agency rule under the APA" even if such relief could be the "functional equivalent of a universal injunction"); *see also id.* at 847 n.10 ("Nothing we say today resolves the distinct question whether the [APA] authorizes federal courts to vacate federal agency action."). That some nonparties may incidentally benefit from complete relief to Plaintiffs here does not mean that vacatur is overbroad. *S.F.*, 897 F.3d at 1244. Because Defendants acted unlawfully in terminating SFA, the Court must set aside Defendants' actions and restore the status quo. *See Nat'l TPS Alliance v. Noem*, 166 F.4th 739, 767 (9th Cir. 2026) (universal vacatur necessary where plaintiffs challenged "the Secretary's very authority to act").

**2.      The Court should permanently enjoin implementation or enforcement of the Directives**

The Court should also issue a permanent injunction that prevents Defendants from enforcing the Directives or relying on H.R. 1 in the future to eliminate SFA. Plaintiffs succeed

---

on their ultra vires claim because Defendants have acted in excess of legal authority by terminating SFA and clawing back funds, for the reasons set forth for Plaintiffs' APA and constitutional claims.

PLAINTIFFS' REPLY IN SUPPORT OF                                   20
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

on the merits of their claims, they stand to be irreparably harmed absent an injunction, and the balance of the equities and public interest support an injunction. *See* Pls. Mot. 29-31.

Defendants repeat their incorrect argument that Plaintiffs' alleged harms only stem from the termination of their grant agreements, which this Court cannot remedy. Opp. 42-43. Setting aside that this is just another attempt to litigate the merits, it is simply not true. *Supra* Section II.A.2.

A permanent injunction is vitally necessary here. *Contra* Opp. 43. Defendants have made no efforts to disguise their disdain for GGRF programs, including SFA. Pls. Mot. 8-9 (discussing Trump administration's attacks on GGRF programs). Given this open hostility, Defendants' assurances of good-faith willingness to comply with the Court's order in the future ring hollow. This is particularly so given Defendants' avowal that they will not reinstate SFA "[r]egardless of this litigation's outcome." Opp. 28. A permanent injunction will ensure Defendants do not simply adopt the reasoning of the Directives under a different name and will also provide Plaintiffs with certainty that SFA will not disappear once again by executive fiat. *See, e.g.*, *Washington v. U.S. Dep't of Educ.*, -- F.Supp.3d --, 2025 WL 36907799, at *17 (W.D. Wash. 2025) (granting permanent injunction as to all grantees within plaintiff States' borders in addition to vacatur); *New York v. U.S. Dep't of Energy*, Case No. 6:25-cv-01458-MTK, 2025 WL 3140578, at *18 (D. Or. Nov. 10, 2025) (granting permanent injunction where plaintiff States sought to prevent government from implementing a "substantially similar policy").

Plaintiffs have proven that they have been and will be irreparably harmed absent an injunction. Defendants ignore the plentiful evidence that the Directives caused Plaintiffs to lose vital federal support for their distributed solar programs, with cascading effects to their climate goals, environments, state-level programs, and budgets, not to mention the energy savings and security of their residents. *See* Pls. Mot. 5-8, 29-31; s*ee also Rhode Island v. Trump*, 155 F.4th 35, 49 (1st Cir. 2025) (concluding that follow-on effects from elimination of federal agencies,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

21

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

including loss of funding, constitutes irreparable harm). By their very nature, Plaintiffs' environmental and sovereign harms cannot be remedied by money damages. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Washington v. U.S. Dep't of Commerce*, C25-1507 MJP, 2025 WL 2978822, at \*10 (W.D. Wash. Oct. 22, 2025). Moreover, with the loss of the federal support for their distributed solar programs, Plaintiffs will be unable to launch or continue operating their state-level programs without profound impacts on Plaintiffs' budgets. *See* Pls. Mot. 5-8, 29-31. This damage to state programs is also irreparable. *Washington v. U.S. Dep't of Transp.*, 792 F.Supp.3d 1147, 1190 (W.D. Wash. 2025); *Planned Parenthood of Greater Washington and N. Idaho v. U.S. Dep't of Health and Human Servs.*, 328 F.Supp.3d 1133, 1150 (E.D. Wash. 2018).

Defendants deride the harms to Plaintiffs' relationships with vendors and communities as speculative, Opp. 44-45, but this conflicts with the evidence Plaintiffs submitted. *See, e.g.*, Dkt. #65 ¶¶40-41; Dkt. #69 ¶37; Dkt. #73 ¶37; Dkt #76 ¶38; Dkt. #78 ¶¶35-36; Dkt. #80 ¶¶58-60; Dkt. #82 ¶¶39-42; Dkt. #86 ¶32(i)-(j), (m). It also makes no sense. Defendants contend that Plaintiffs have not shown that vendors or community members have refused to work with Plaintiffs since SFA was terminated, but how can Plaintiffs work with anyone when they cannot operate their distributed solar programs as intended without Defendants' support? These reputational harms, coupled with Plaintiffs' environmental, constitutional, and APA injuries, cannot be remedied by money and warrant an injunction to prevent further harm.

Defendants' reference to Plaintiffs' Court of Federal Claims action, Opp. 43-44, is a red herring. That action challenges distinct harms caused by the termination of Plaintiffs' individual grant agreements and seeks different remedies that do not address the injuries and claims raised in this case. *See New York*, 2026 WL 734941, at \*14 (irreparable nonpecuniary harms cannot be redressed in Court of Federal Claims). And the precise scope of relief in the Court of Federal Claims is unclear. Indeed, as discussed above, that court stayed proceedings based on *Defendants'* arguments that this Court might declare the termination of Plaintiffs'

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

grants unlawful and might order reinstatement of those grants. *Maryland Clean Energy Ctr.*, Case No. 1:25-01738-LAS, Order, Dkt. #58. To be clear, Plaintiffs have never asked this Court to reinstate Plaintiffs' grant agreements. But in playing these two cases—and two federal courts—off each other, Defendants are trying to prevent Plaintiffs from recovering *any* relief in *any* forum. Defendants "cannot have [their] cake and eat it too" by insisting in each forum that this case belongs in the other. *Pacito*, at *19.

The balance of the equities and public interest favor a permanent injunction. *Contra* Opp. 45-46. Defendants maintain that the government is irreparably injured "[a]ny time" it is enjoined "from effectuating statutes enacted by representatives of its people[.]" *Id.* at 45 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). Accepting Defendants' reasoning would mean that the federal government can never be enjoined from implementing unlawful policies; this is clearly not the law. *See, e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (adopting the government's assertion that irreparable harm "is satisfied by the fact of executive action alone, [would mean that] no act of the executive branch asserted to be inconsistent with a legislative enactment could be" enjoined).

Defendants further argue that it is not in the public interest to require them to "reinstate and fund an aimless, congressionally defunct program." Opp. 45. However, as discussed above, Congress did not render SFA a nullity. Requiring EPA to continue operating the SFA Program in accordance with law is consistent with the public interest. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018).

Accordingly, the Court should issue a permanent injunction prohibiting Defendants from implementing the Directives, or relying on substantially the same rationale, in the future to eliminate the SFA Program.

### III.    CONCLUSION

The Court should grant Plaintiffs' motion and deny Defendants' motion.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

23

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

DATED this 31st day of March, 2026.

I certify that this memorandum contains 7,996 words, in compliance with the Court's Order Setting Briefing Schedule and Word Limits, Dkt. #124.

<div style="display:flex">
<div>

**KRISTIN K. MAYES**
Attorney General of Arizona

By: */s/ Mary M. Curtin*
MARY M. CURTIN
Senior Litigation Counsel
ALEXA G. SALAS
Assistant Attorney General
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Mary.Curtin@azag.gov
Alexa.Salas@azag.gov

*Attorneys for the State of Arizona*

</div>
<div>

**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ C. L. Junine So*
C. L. JUNINE SO, WSBA # 58779
SARAH E. SMITH-LEVY, WSBA # 55770
TERA HEINTZ, WSBA # 54921
ANDREW HUGHES, WSBA # 49515
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
206-464-7744
junine.so@atg.wa.gov
sarah.e.smith-levy@atg.wa.gov
tera.heintz@atg.wa.gov
andrew.hughes@atg.wa.gov

*Attorneys for the State of Washington*

</div>
</div>

<div style="display:flex">
<div>

**KEITH ELLISON**
Attorney General of Minnesota

By: */s/ Ryan Pesch*
RYAN PESCH
CAT RIOS-KEATING
*Special Assistant Attorneys General*
BRIAN CARTER
*Special Counsel*
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 728-7116
ryan.pesch@ag.state.mn.us
catherine.rios-keating@ag.state.mn.us
brian.carter@ag.state.mn.us

*Counsel for the State of Minnesota*

</div>
<div>

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Lauren M. Marks*
LAUREN M. MARKS
Special Assistant Attorney General
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
Lauren.marks@dc.gov

*Attorneys for the District of Columbia*

</div>
</div>

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

24

**ROB BONTA**
Attorney General of California

By: */s/ Marie Elizabeth Logan*
MARIE ELIZABETH LOGAN
REBECCA HUNTER
ABIGAIL BLODGETT
DYLAN C. REDOR
THEODORE A. MCCOMBS
MYUNG PARK
Deputy Attorneys General
California Department of Justice
1515 Clay Street
Oakland, CA 94612
Marie.Logan@doj.ca.gov

*Attorneys for the State of California*


**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

*Attorneys for the State of Connecticut*


**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Carrie Noteboom*
CARRIE NOTEBOOM
Assistant Deputy Attorney General
DAVID MOSKOWITZ
Deputy Solicitor General
CYNTHIA VITALE
Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
Carrie.Noteboom@coag.gov
David.Moskowitz@coag.gov
Cynthia.Vitale@coag.gov

*Attorneys for the State of Colorado*


**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: */s/ Kaliko'onālani D. Fernandes*
DAVID D. DAY
Special Assistant to the Attorney General
KALIKO'ONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai'i*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

25

**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Katharine Roller*
KATHARINE ROLLER
Complex Litigation Counsel
ELIZABETH B. SCOTT
Assistant Attorney General
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(773) 519-1842
Katharine.roller@ilag.gov

*Attorneys for the State of Illinois*

**OFFICE OF THE GOVERNOR *ex rel.***
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
Attorney General of Maine

By: */s/ Caleb Elwell*
CALEB E. ELWELL
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8545
Caleb.elwell@maine.gov

*Attorneys for the State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
*Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of
Massachusetts

By: */s/ Amy Laura Cahn*
AMY LAURA CAHN
TERRENCE VALES
*Assistant Attorney General*
One Ashburton Place
Boston, MA 02108
(617) 963-2277
amy.laura.cahn@mass.gov
terrence.vales@mass.gov

*Attorneys for the Commonwealth of
Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
NEIL GIOVANATTI
POLLY SYNK
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
SynkP@michigan.gov

*Attorneys for the State of Michigan*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

26

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Daniel Resler*
DANIEL RESLER
LAUREN E. VAN DRIESEN
JACK VENTURA
*Deputy Attorneys General*
Office of the Attorney General
33 Washington Street, Ninth Floor
Newark, NJ 07101
(973) 648-4726
Daniel.Resler@law.njoag.gov

*Counsel for the State of New Jersey*

**LETITIA JAMES**
Attorney General of New York

By: */s/ Matthew Eisenson*
MATTHEW EISENSON
KELSEA SUAREZ
*Assistant Attorneys General*
Environmental Protection Bureau
Office of the Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8481
matthew.eisenson@ag.ny.gov

*Attorneys for the State of New York*

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Coby Howell*
COBY HOWELL
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
Telephone: (971) 283-8657
Fax: (971) 673-5000
Email: Coby.Howell@doj.oregon.gov

*Attorneys for the State of Oregon*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ J. Spenser Lotz*
J. SPENSER LOTZ
Assistant Attorney General
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 616-7560
slotz@nmdoj.gov

*Attorneys for the State of New Mexico*

**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD
Chief Deputy Attorney General

By: */s/ Daniel T. Wilkes*
DANIEL T. WILKES
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncdoj.gov

*Attorneys for the State of North Carolina*

**MICHAEL A. BRAYMER**
Chief Counsel
Department of Environmental Protection

By: */s/ Michael J. Heilman*
MICHAEL J. HEILMAN
Litigation Coordinator
Department of Environmental Protection
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222
Phone: 412-442-4241
Email: mheilman@pa.gov

*Attorney for JESSICA SHIRLEY, Chair of the Pennsylvania Energy Development Authority*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

27

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**PETER F. NERONHA**
Attorney General of Rhode Island

By: /s/ *Nicholas M. Vaz*
NICHOLAS M. VAZ
Special Assistant Attorney General
Office of the Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Attorneys for the State of Rhode Island*

**JAY JONES**
Attorney General of Virginia

By: /s/ *Tillman J. Breckenridge*
TILLMAN J. BRECKENRIDGE
Solicitor General
MIKAELA A. PHILLIPS
Assistant Solicitor General
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-2071
Fax: (804) 786-1991
solicitorgeneral@oag.state.va.us
mphillips@oag.state.va.us

*Attorneys for the Commonwealth of
Virginia*

**CHARITY R. CLARK**
Attorney General of Vermont

By: /s/ *Jonathan T. Rose*
JONATHAN T. ROSE
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Attorneys for the State of Vermont*

**WISCONSIN ECONOMIC
DEVELOPMENT CORPORATION**
Jennifer H. Campbell
Chief Legal Officer

By: /s/ *Jennifer H. Campbell*
JENNIFER H. CAMPBELL
2352 S. Park St., Suite 303
Madison, WI 53713
(608) 210-6811
jennifer.campbell@wedc.org

*Attorney for Wisconsin Economic
Development Corporation*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION
NO. 2:25-CV-02015-TMC

28

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744