The Honorable Tiffany M. Cartwright

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

STATE OF ARIZONA, et al.,

*Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Defendants*.

Civil Action No. 2:25-cv-02015-TMC

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT**

**NOTED FOR HEARING:**
**MAY 8, 2026, 1:30 P.M.**

DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiffs Cannot Overcome this Court's Lack of Jurisdiction. .......... 2

A. This Court Lacks Jurisdiction Over Plaintiffs' Claims. .......... 2

B. EPA's Termination of Grants is the Only Final Agency Action. .......... 5

C. Plaintiffs Cannot Demonstrate Redressability. .......... 6

II. Plaintiffs' Claims Fail as a Matter of Law. .......... 8

A. EPA's Termination Decision Did Not Violate OBBBA. .......... 8

B. Plaintiffs Fail to Bring Cognizable Constitutional Claims. .......... 10

C. EPA's Termination of SFA Grants Was Not Arbitrary or Capricious. .......... 11

III. Any Remedy Must Be Limited to Remand. .......... 13

CONCLUSION .......... 15

DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

i

**INTRODUCTION**

Plaintiffs build this litigation on two pillars: (1) Solar for All ("SFA") grants that were terminated in August 2025; and (2) a statute that Congress repealed on July 4, 2025. Because neither can support relief in this Court, the lawsuit collapses.

The Supreme Court and the Ninth Circuit are clear that district courts lack jurisdiction over grant terminations. Rather than abide by that clear conclusion, Plaintiffs try to evade it, arguing the Court may review so-called "Directives" to terminate "SFA" and deobligate funds. But Tucker Act jurisdiction cannot be avoided through artful pleading. The only final agency action here was grant termination. Congress repealed the statutory authority for "SFA, moving forward," as Plaintiffs acknowledge. Pls.' Reply for Summ. J. and Opp., Dkt. #144 at 11 ("Pl. Opp."). Following enactment of the One Big Beautiful Bill Act ("OBBBA"), all that remained were the residual SFA grants and their subsequent terminations by EPA. Plaintiffs' request for the Court to review various alleged "Directives" under the APA is nothing more than a disguised request to review the grant terminations. And Plaintiffs' requested reliefs ultimately ask the Court to reinstate their grants. But the Court lacks jurisdiction to review or remedy grant terminations, regardless of Plaintiffs' evasions. The Court should grant summary judgment for the Defendants for this reason alone.

Plaintiffs' merits arguments are similarly specious and rewrite OBBBA. Through OBBBA, Congress repealed Section 134 and rescinded the remaining administrative funds for EPA to administer the SFA grants. Plaintiffs contend OBBBA required EPA to continue the now-orphaned SFA grants. But that contention is nowhere in OBBBA's plain language and thus cannot support any claim here—whether asserted under the APA, the Constitution, or any *ultra vires* theory. The Court should enter judgment in Defendants' favor.

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

# ARGUMENT

## I. Plaintiffs Cannot Overcome this Court's Lack of Jurisdiction.

### A. This Court Lacks Jurisdiction Over Plaintiffs' Claims.

Because *NIH*, *California*, and *Thakur* bar this Court's review of grant terminations, Plaintiffs invent the so-called "Program Termination Directive" and "Deobligation Directive" to mask their request to review grant terminations. Pl. Mot. 9. This ploy cannot change the factual record. On August 7, 2025, more than a month after OBBBA's enactment, EPA issued individual grant termination letters to the SFA grantees. *See e.g.*, Dkt. #126-40 ("Termination Notice"), WD_Wash_000585–587. These grant terminations are the only final agency action at issue, and this Court lacks jurisdiction to review it. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2658 (2025) ("*NIH*"); *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) ("*California*"); *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025).

Plaintiffs argue that their lawsuit can overcome *NIH* and *California* because they challenge the so-called "Program Termination Directive" and the "derivative acts" resulting from that termination. Pl. Opp. 4.[1] But Plaintiffs' own cited authorities, *see id*. 3–4, demonstrate why the Court lacks jurisdiction here. In each of those cases, the challenged directives provided grant-related guidance or instructions to agency employees or funding recipients to apply moving forward; none of those directives merely *terminated* federal grants, thus distinguishing them from the challenges at issue *NIH*, *California*, *Thakur*, and here. *See, e.g.*, *Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d. 1222, 1235–36 (W.D. Wash. 2025) (exercising jurisdiction over challenge to "Directive on Department Grant Priorities" instructing agency to "conduct an internal review of all new grant awards, [notices of funding opportunities], and issued grants …

[1] Plaintiffs also argue this Court has jurisdiction because Plaintiffs "may challenge the Government's decision … without reference to the Government's existing contractual obligations." Pl. Opp. 2–3, n.2. (citing *Cmty. Legal Servs. in E. Palo Alto v. HHS*, 155 F.4th 1099, 1104 (9th Cir. 2025)). But Plaintiffs' concession that OBBBA repealed the statutory authority for SFA, Pl. Opp. 11, makes clear that this lawsuit can only be based on EPA's contractual obligations.

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

[to ensure] that Department grants do not fund discriminatory practices," among other things); *Washington v. U.S. Dep't of Health & Human Servs.*, No. 6:25-CV-01748-AA, 2025 WL 3002366, *4 (D. Or. Oct. 27, 2025) (exercising jurisdiction over challenge to Government letters to states and territories directing removal of "all content concerning gender ideology from [PREP] curricula, program materials and any other aspect of [recipient's] program delivery"); *see also New York v. Trump*, 133 F.4th 51, 57 (1st Cir. 2025) (exercising jurisdiction over challenge to "OMB Directive … that 'require[d] Federal agencies to identify and review all Federal financial assistance programs and supporting activities consistent with the President's policies and requirements'" and paused funding while the review took place).[2]

Plaintiffs next argue that the Court has jurisdiction because they do not "seek an order directing payment," Pl. Opp. 5, nor do they ask the Court "to reinstate Plaintiffs' grant agreements," Pl. Opp. 23. This too is a ploy: Plaintiffs unabashedly seek relief that would vacate the grant terminations. *See* Proposed Order, 1–2, Dkt. #129-1; Am. Compl. at 34, Dkt. #128. Such relief is "designed to enforce an[] 'obligation to pay money'" and cannot be ordered by this Court. *NIH*, 145 S. Ct. at 2659 (quotation omitted). Plaintiffs further claim the so-called "derivative acts" refer to "follow-on decisions caused by the unlawful Directives" such as grant closeouts but not the grant terminations. But closing out terminated grants is what EPA is required to do following any grant termination. 2 C.F.R. § 200.344. Thus, vacating any completed closeout process or otherwise enjoining closeout would require the vacatur of the grant termination that led to it. This Court cannot order such relief. *NIH*, 145 S. Ct. at 2659.

Plaintiffs' efforts to create jurisdiction by purporting to challenge EPA's termination of the SFA "program" instead of the grant terminations, *see* Pl. Opp. 8–9, also fail. The plaintiffs

---

[2] The First Circuit also recently vacated the district court's direction to agencies to resume payments and clarified that "under the Supreme Court's recent pronouncements regarding the interaction between the APA and the Tucker Act, it is likely the District Court cannot [order specific performance with respect to payment]." *New York v. Trump*, No. 25-1236, 2026 WL 734941, *17 (1st Cir. Mar. 16, 2026).

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

(eight of the states who sue here) unsuccessfully argued the same in *California*. There, the Department of Education terminated all grants under two congressionally-mandated grant programs. *See California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 75 (D. Mass. 2025) ("The record reflects that there was no individualized analysis of any of the programs; rather, it appears that *all* TQP and SEED grants were simply terminated.") (emphasis in original).[3] And, as here, the plaintiffs framed their claims as challenges to the agency's "programmatic decision" under the APA based on "statutes and regulations, not contracts" and sought "equitable relief," not money damages. *California* Opp. at 22, 25. Nonetheless, the Supreme Court stayed the district court's order temporarily enjoining the agency from terminating the grants, holding that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *California*, 604 U.S. at 651 (citation omitted).

EPA's termination of 60 grants likewise does not create jurisdiction in this Court. In *NIH*, the agency terminated over 1,000 grants, many of which were issued pursuant to congressional mandates. *See* States' Stay Opposition at 6–10, *NIH*, 145 S. Ct. 2658 (25A103) (describing grants awarded under 42 U.S.C. §§ 285t(c), 285a-6, 285b-7a, 283p).[4] Those plaintiffs similarly brought APA, constitutional, and *ultra vires* claims against the agency—all claims challenging: (1) NIH guidance directing the review of grants for "DEI"; and (2) NIH's termination of grants based on that review. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). The district court vacated the guidance and the terminations. *Massachusetts v. Kennedy*, No. 1:25-CV-10814, 2025 WL 1747213, at *2 (D. Mass. June 23, 2025). The Supreme Court stayed the vacatur of grant

---

[3] *See also* States' Stay Opposition at 4–5, 8–9, *California*, 604 U.S. 650 (24A910) ("*California* Opp.") (describing termination of grant programs under 20 U.S.C. §§ 1022 and 6672(a)). The parties' Supreme Court briefs in *California* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/24a910.html.

[4] The parties' Supreme Court briefs in *NIH* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/25a103.html.

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

terminations. *NIH*, 145 S. Ct. at 2559. Relying on *California*, the Supreme Court reiterated that the APA "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* (citation and quotations omitted).

Plaintiffs also fail to distinguish this case from *Thakur*. *See* Pl. Opp. 5. There, the researcher-plaintiffs did "not rely on the terms of the [federal grant] agreements to support their claims," and they "exclusively [sought] injunctive and declaratory relief," rather than "money damages." *Thakur v. Trump*, 787 F. Supp. 3d 955, 990 (N.D. Cal. 2025). The district court granted their request for a preliminary injunction. *Id.* But the Ninth Circuit reversed, concluding, "We are bound by *NIH*." *Thakur*, 163 F.4th at 1204. The Ninth Circuit held that plaintiffs' claims were "disguised contract claims" because they "challenge[d] the government's termination of research grants," and the relief sought (and ordered) was the "vacatur of the termination notices and reinstatement of the terminated grants." *Id*. Plaintiffs here make similar attempts to avoid the Tucker Act but ultimately assert the same APA claims and seek the same relief as the plaintiffs in *Thakur*. *See* Pl. Opp. 5. "[T]he APA's limited waiver of sovereign immunity [does] 'not provide the District Court with jurisdiction to adjudicate'" the case. *Thakur*, 163 F.4th at 1204 (quoting *NIH*, 145 S. Ct. at 2559).

### B. EPA's Termination of Grants is the Only Final Agency Action.

The only final agency action at issue here is grant termination. The so-called "Directives" are artifices created by Plaintiffs to describe EPA's decision to terminate grants, and the steps leading to and effectuating those grant terminations. Defs. Cross Mot. Summ. J. and Opp., Dkt. #137 at 20 ("Def. Mem."). But, even if such "Directives" existed as separate actions, they are not final agency actions reviewable under the APA. An agency action is only final "if it both (1) 'mark[s] the consummation of the agency's decisionmaking process—it must not be a merely tentative or interlocutory nature,' and (2) is 'one by which rights or obligations have been

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

determined, or from which legal consequences will flow.'" *Ctr. for Bio. Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Only EPA's termination of SFA grants meets the standard for a "final agency action," as it represents the consummation of EPA's decision-making, and it determined Plaintiffs' rights and obligations. *Haaland*, 58 F.4th at 417. The "Program Termination Directive" is a fiction because Congress, not EPA, ended the SFA program. And to the extent this so-called "Directive" is another way of describing EPA's interpretation of OBBBA, that analysis was a step leading to EPA's termination of the SFA grants, not a separate final agency action subject to APA review. *See Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999) (steps leading to final agency action, such as agency recommendations, are not final agency actions themselves). The "Deobligation Directive" likewise is not a separate agency action but merely the necessary consequence of the grant terminations. Treml. Decl. ¶ 8, Dkt. #102-1.[5] Thus, Plaintiffs' reliance on these non-final "Directives" cannot support APA jurisdiction.

**C. Plaintiffs Cannot Demonstrate Redressability.**

Plaintiffs persistently fail to demonstrate redressability in light of this Court's inability to reinstate the terminated SFA grants. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103 (1998). Plaintiffs assert harms from the closeout process, harms to Plaintiffs' climate and energy goals, and loss of technical support for their solar energy programs. Pl. Opp. 6. But all these are downstream (and largely speculative) effects of the termination of the SFA grants. Plaintiffs argue that if they prevail on their interpretation of OBBBA, then the Court can "vacate and remand the matter to EPA … which

---

[5] The "deobligation" of 93% of Plaintiffs' SFA grant funds concerned Plaintiffs' ability to access the funds through their ASAP accounts is not an injury, let alone, a distinct one; it followed the grant terminations. As Plaintiffs know, regardless of whether the amounts are recorded as obligated or deobligated in EPA's financial system, the SFA grant funds will remain through September 2031 in the same Treasury account. *See* Treml Decl. ¶ 10; 42 U.S.C. § 4370f.

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

could lead to EPA deciding to reinstate SFA." *Id.* at 7. Plaintiffs miss the mark. First, the alleged harms can only be redressed by reinstating the grants, which is beyond this Court's jurisdiction under *NIH*, *California*, and *Thakur*. Second, if the Court vacates the "Program Termination Directive" without reinstating the SFA grants, Plaintiffs will receive no relief because they would not receive any funding or support without the grants. The SFA grants would remain terminated, and EPA would have no grants to administer, with no Congressional authority to issue new grants and no designated funding. Def. Mem. 18.

Plaintiffs' pending Court of Federal Claims case does not resolve their redressability problem. First, they fail to explain how a favorable decision here could "remove a barrier to relief in the Court of Federal Claims." Pl. Opp. 7. Plaintiffs seem to contemplate a judgment to guide the Court of Federal Claims (or perhaps the agency), reducing the Court's output to an impermissible advisory opinion. Def. Mem. 18. Second, even assuming some "barrier" would be lifted in the Court of Federal Claims, Plaintiffs must demonstrate relief *in this Court* that would redress their injuries asserted here. *Id.* 17. Plaintiffs' cited cases do not suggest otherwise. *Utah v. Evans*, 536 U.S. 452 (2002) involved a census report that, if set aside, would have changed the legal status of the state. *Id.* at 463–64. But here, the Court cannot set aside the grant terminations, leaving Plaintiffs' harms beyond redress. Likewise, contrary to Plaintiffs' argument, *see* Pl. Opp. 6, *NIH* did not consider the issue of redressability, so that case does nothing to support Plaintiffs' redressability argument.

Lastly, Plaintiffs are not within the zone of interests of OBBBA—the statute they say EPA violated—and therefore Plaintiffs have no statutory cause of action. *See* Def. Mem. 19. In response, Plaintiffs argue they are "within the zone of interest of the Inflation Reduction Act [IRA])." Pl. Opp. 8. But that is irrelevant. First, the relevant portion of the IRA (creating Section 134) was repealed. Second, Plaintiffs do not claim EPA violated Section 134. Thus, even if Plaintiffs fell within Section 134's zone of interests, they would still lack standing to

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

assert a cause of action under OBBBA. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (holding that the interest asserted "must be arguably within the zone of interests to be protected or regulated *by the statute that he says was violated*") (quotations omitted) (emphasis added).

**II. Plaintiffs' Claims Fail as a Matter of Law.**

**A. EPA's Termination Decision Did Not Violate OBBBA.**

Plaintiffs admit OBBBA "repealed the authority for [GGRF] programs, including SFA, moving forward." Pl. Opp. 11. This action brought "to challenge EPA's abrupt termination of [the SFA] program" therefore fails on its own terms. Am. Compl. ¶¶ 2, 8, Dkt. #128. Plaintiffs nonetheless persist in challenging EPA's termination of "SFA," by which they transparently mean termination of the SFA grants. That challenge cannot be brought in this Court. *Supra* at 2–8.

Regardless, Plaintiffs' statutory claims fail, as neither OBBBA nor the general savings statute prohibited EPA from terminating the grants. Def. Mot. 22–25.[6] OBBBA's repeal of Section 134 took that law off the books entirely, and with it any congressional mandate concerning the SFA grants.[7] Plaintiffs' attempt to convert OBBBA's silence on obligated funds into a prohibition against terminating the SFA grants, *e.g.*, Pl. Opp. 11, 13, suffers from the "problem" that "inheres in most incorrect interpretations of statutes: It asks [the Court] to add words to the law to produce what is thought to be a desirable result." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). Instead, the Court must understand OBBBA's

---

[6] Despite asserting an *ultra vires* cause of action, Am. Compl. ¶¶ 171–77, Plaintiffs chose not to establish *ultra vires* jurisdiction, *see* Pl. Mem. 25, n.4, Def. Mem. 10, n.3, and only cursorily discusses it again on reply in a footnote, Pl. Opp. 19-20, n.4. This belated attempt to establish *ultra vires* jurisdiction fails because the *ultra vires* exception "does not apply simply because an agency has arguably reached a conclusion which does not comport with the law" and is not "an easy end-run around the limitations" of "judicial review statutes." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation and quotations omitted).

[7] Plaintiffs' authorities concerning Congress's spending power are thus inapposite, as the cases did not address repealed law. *See* Pl. Opp. 12; *Ctr. For Food Safety v. Regan*, 56 F.4th 648, 660 (9th Cir. 2022); *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018).

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

"silence as exactly that: silence." *Id.* And by its plain terms the general savings statute at most *allowed* EPA to continue administering the grants after OBBBA's repeal of Section 134—it did not *require* EPA to do so. *See* 1 U.S.C. § 109.

Plaintiffs' efforts to downplay OBBBA all fail. First, Plaintiffs' assertion that OBBBA's repeal of Section 134 was intended only to prevent EPA from replacing grants that had previously been terminated under the other two GGRF programs, Pl. Opp. 13, is belied by the statute itself. OBBBA's plain text repealed Section 134 in full, without differentiating between GGRF programs, and rescinded the remaining designated funding to administer all GGRF grants. *See* OBBBA § 60002. Attempts to use legislative history to undermine the repeal's full effect or give OBBBA different meanings as applied to different GGRF programs cannot be countenanced.

Next, Plaintiffs argue that OBBBA's rescission of unobligated administrative funds evinces Congress's "inten[t] for EPA to continue administering SFA as to" the grants. Pl. Opp. 13. But that interpretation fails because it adds terms not found in the statute while reducing the rescission to a nullity. In Plaintiffs' view, the rescission *required* EPA to continue running the SFA program while *also requiring* EPA to expend funds to administer the grants. But OBBBA does not say any of that. OBBBA instead *rescinds* unobligated administrative funding. Yet Plaintiffs fail to give that rescission any effect. *See Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) (rescission of appropriated grant funds "could not be clearer" that Congress "did not want any part of the remaining funds to be expended for the . . . grant program"); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quotations omitted). Plaintiffs thus offer no support for their contention that Congress rescinded funding only to require EPA to find a workaround for that rescission. Pl. Opp. 11.

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

Plaintiffs' remaining statutory arguments also fail. First, Plaintiffs' argument that OBBBA's repeal of the "authority to make new grants" had "no effect on the [existing] grants," Pl. Opp. 13, ignores OBBBA's rescission of EPA's designated funding to administer them. That rescission affected existing grants, as it forced EPA to decide whether to use other funds to continue them. Second, EPA did not retroactively "clawback" grant funds. Pl. Opp. 11. EPA invoked the grants' preexisting termination clauses to terminate the grants. Def. Mot. 24. Those terminations honored allowable pre-termination costs and were not retroactive. *See* Termination Notice at WD_Wash_000587; *Martin v. Hadix*, 527 U.S. 343, 360–61 (1999) (new statutory cap on attorney fees was not impermissibly retroactive when applied to work performed after the cap's effective date). Third, OBBBA's rescission of funds was not superfluous to the repeal of statutory authority. Pl. Opp. 13. The plain meaning of OBBBA is that the repeal and rescission work together to terminate the SFA program, with the repeal canceling the program's statutory authorization and the rescission canceling the program's remaining administrative funding. Def. Mem. 21–22. Finally, the general savings statute does not support Plaintiffs' argument that Congress required "EPA to fulfill its existing SFA obligations." Pl. Opp. 14. That statute does not purport to—and indeed cannot—carry forward the prior congressional mandate of any statute Congress has repealed. 1 U.S.C. § 109; *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908) (The general savings statute "cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment."). Plaintiffs' statutory claims thus fail.

**B. Plaintiffs Fail to Bring Cognizable Constitutional Claims.**

Plaintiffs' constitutional claims fail because they are not cognizable under *Dalton v. Specter*, 511 U.S. 462 (1994), and, like the statutory claims, they lack merit. Def. Mem. 25–28. Plaintiffs argue "*Dalton* does not bar all constitutional claims that also involve a statutory violation." Pl. Opp. 14 (citing *Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023)). But *Murphy*

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

*Co.* holds that plaintiffs must assert a "specific allegation regarding separation of powers" to survive dismissal of their constitutional claims, 65 F.4th at 1130, while Plaintiffs merely regurgitate their statutory claims here, without making any specific assertion related to EPA's purported violation of the separation of powers doctrine. Pl. Opp. 15 (stating that OBBBA "did not authorize or direct Defendants to terminate the SFA Program;" "did not authorize or direct Defendants to rescind any funds that were obligated prior to [OBBBA's enactment];" and "expressly excluded Plaintiffs' awards from rescission"). Thus, these claims are mirror images of Plaintiffs' statutory claims and fall squarely within *Dalton*.

Plaintiffs mistakenly question whether Congress authorized EPA to "dismantle SFA." Pl. Opp. 16. After OBBBA repealed Section 134, there was no SFA left for EPA to "dismantle." Plaintiffs argue that "the executive 'may not decline to follow a statutory mandate or prohibition simply because of policy objection.'" *Id.* (citation omitted). But when it terminated the grants after OBBBA repealed Section 134, EPA did not "decline to follow" a statutory mandate or prohibition because no such mandate or prohibition existed. *Id.* Plaintiffs thus failed to raise cognizable constitutional claims.

**C. EPA's Termination of SFA Grants Was Not Arbitrary or Capricious.**

Because a repealed statute cannot support reinstatement of any SFA "program," this litigation fails as a matter of law, regardless of EPA's rationale for grant termination. Nonetheless, EPA's termination of the SFA grants was both reasonable and reasonably explained. *See* Def. Mem. 28–31. Plaintiffs' arguments otherwise are unavailing. First, EPA did not offer "contrived reasons" to terminate the SFA grants or otherwise ignore "significant reliance interests." Pl. Opp. 17–18. As provided in the record, EPA terminated the grants because, *inter alia*, OBBBA rescinded the designated funding to administer them; the work performed under the grants was still in the early stages; the domestic solar energy market would be largely unaffected; and reimbursement to grantees was still available "for all reasonably incurred and

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

allowable expenses prior to termination." *See* Recommendation at WD_Wash_000089–96. EPA thus "assess[ed] whether there were reliance interests, determine[d] whether they were significant, and weigh[ed] any such interests against competing policy concerns." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020). That is all the APA requires. *Id.*; *see also* Def. Mem. 29.

Nor does EPA offer a "*post hoc* justification" for terminating the SFA grants. Pl. Opp. 16–17. OBBBA indisputably rescinded EPA's designated funding to administer the grants and repealed authority to continue any program separate from those grants; EPA therefore had to decide whether to administer the grants with another source of funds, and it chose not to: that was EPA's position on August 7, 2025, and that is EPA's position now. Plaintiffs' taking a few sentences from the Recommendation out of context does not change that. *See Am. Legion v. Derwinski*, 54 F.3d 789, 798 (D.C. Cir. 1995) ("[E]ven if some of the agency's remarks might appear erroneous when read in isolation, the court will uphold agency action that, considered in its entirety, is based on appropriate considerations and otherwise complies with relevant statutes and the [APA].") (alteration and quotations omitted).

Lastly, Section 134's authorization for EPA to use "amounts otherwise available" does not help Plaintiffs' case because Section 134 had been repealed. Pl. Opp. 18–19. And the availability of a general appropriation does not compel EPA to continue administering the SFA grants. EPA determined that doing so "would likely require stripping administration and oversight funding away from programs that Congress intended the Agency to support." Recommendation at WD_Wash_000095, *see also* Def. Mem. 29. Use of other funds was particularly difficult because the SFA grants dwarfed EPA's typical grant programs and "the corresponding oversight and administration burden of the SFA program is larger than that for virtually all of [EPA's] other grant programs combined." Recommendation at WD_Wash_000095. EPA thus reasonably decided and explained why it chose not to use other

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

funding to administer grants made under a repealed program. And that decision is not reviewable, as it is committed to agency discretion by law. *See* Def. Mem. 29–30 & n.12 (citing *Lincoln v. Vigil*, 508 U.S. 182 (1993)).

**III. Any Remedy Must Be Limited to Remand.**

Even if this Court found jurisdiction and a meritorious claim, Plaintiffs fail to show relief beyond remand is warranted. Def. Mem. 31. To start, Plaintiffs fail to support their request for vacatur. Contrary to Plaintiffs' assertion, Pl. Opp. 20, the APA does not require courts to vacate agency actions they find unlawful. *See Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) ("Although the district court has power to do so, it is not required to set aside every unlawful agency action. The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity."); *see also* 5 U.S.C. § 706 (permitting courts to "set aside agency action"); *id.* § 551(13) (defining "agency action" to include "the whole or a part of an agency" order). OBBBA undeniably repealed the program's authorizing statute and rescinded designated administrative funding. Vacating "program" termination, alone, would require EPA to run a meaningless shell of program without any current grants or authority to issue future grants. Thus, even if the Court identifies some defect in EPA's decision-making, vacatur is not warranted.

Next, Plaintiffs fail to support their request for injunctive relief. *See* Def. Mot. 31–32. First, Plaintiffs contend injunctive relief is needed because of the Administration's "open hostility" to the other two GGRF programs before OBBBA was enacted. Pl. Opp. 21 (citing Pl. Mot. 8–9). But those allegations are irrelevant because EPA did not terminate the SFA grants until *after* OBBBA was enacted.

Second, Plaintiffs fail to show irreparable harm necessary to support injunctive relief. Plaintiffs have not identified any injury that can be remedied by an injunction in this case, nor shown that the monetary damages they can pursue in the Court of Federal Claims are inadequate,

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

*see* Def. Mem. 32–34. Instead, Plaintiffs simply trot out the same arguments they have made before, asserting that they have lost "vital federal support for their distributed solar programs, with cascading effects." Pl. Opp. 21; *see also id.* at 6. But, as already explained, the "vital federal support" is the SFA grants, no order from this Court can restore those grants, and monetary loss is insufficient to support a finding of irreparable harm. *See* Def. Mot. 33–35. That the Court of Federal Claims offers "different remedies" to those under the APA, Pl. Opp. 22, is irrelevant. The Court of Federal Claims is Congress's chosen forum for adjudicating contract claims against the government, and Plaintiffs have not shown the monetary remedies available there are inadequate.[8] Plaintiffs' invocation of "sovereign harms," *id.*, similarly fails for the reasons already explained. *See* Def. Mot. 33–34 & n.17. And Plaintiffs' argument that they cannot prove reputational harm[9] when they are no longer working with their community partners, Pl. Opp. 22, simply underscores Defendants' point that any such harm is speculative and does not meet the burden for injunctive relief, Def. Mot. 34–35.

Third, with respect to the balance of the equities and public interest, Plaintiffs continue to argue that EPA violated the law. Pl. Opp. 23. Plaintiffs thus fail to demonstrate they are entitled to the "extraordinary remedy" of permanent injunction, which is "never awarded as of right." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019).

Finally, Plaintiffs fail to explain why vacatur or an injunction cannot be narrowly tailored to Plaintiffs but instead requires relief to all 60 recipients of discrete SFA grants. *See* Def. Mot. 36; Pl. Opp. 20. As discussed above, the APA does not prevent courts from tailoring equitable remedies to the parties before the court. *Supra* at 13. Plaintiffs thus fail to show that relief beyond Plaintiffs is warranted. *See Trump v. Casa, Inc.*, 606 U.S. 831, 837 (2025).

---

[8] It should go without saying that it is Plaintiffs, not Defendants, who brought this case in this Court and are "playing the[] two cases—and two federal courts—off each other." Pl. Opp. 23.

[9] In any event, Plaintiffs conflate the loss of federal funding with harm to Plaintiffs' own reputation. Pl. Opp. 22.

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

**CONCLUSION**

For these reasons, Defendants respectfully request that judgment be entered in favor of Defendants.

Dated: April 14, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRK T. MANHARDT
Director

KEVIN P. VANLANDINGHAM
Assistant Director

/s/ *I-Heng Hsu*
TIFFINEY F. CARNEY
I-HENG HSU
BETHANY R. THERIOT
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521
tiffiney.carney@usdoj.gov
i-heng.hsu@usdoj.gov
bethany.theriot@usdoj.gov
*Attorneys for the Defendants*

DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

15

**LOCAL RULE 7(e)(6) CERTIFICATION**

I certify that this memorandum contains 4,956 words in compliance with the Local Civil Rules and the Court's order dated January 28, 2026 (Dkt. #124). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

*/s/ I-Heng Hsu*

I-Heng Hsu
Trial Attorney
U.S. Department of Justice

DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-02015

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

16